UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JOHN KLOSTERMAN,<br>    Plaintiff, | Case No. 1:25-cv-312<br>Dlott, J.<br>Litkovitz, M.J. |
| vs. | |
| KONZA, LLC, et al.,<br>    Defendants. | **ORDER** |

This matter is before the Court on its own motion. Plaintiff John Klosterman, proceeding pro se, has filed a 104 page, 346 paragraph complaint, including 53 pages of exhibits, pursuant to the Racketeer Influenced Corrupt Organization Act (RICO), 18 U.S.C. § 1961, and 42 U.S.C. § 1983. Plaintiff names the following defendants: Konza, LLC, Richard Boydston, Dentons Bingham Greenebaum LLP, Tri-State Organization, Inc., Joseph Lentine, Angel Strunk, Jennifer Donathan, Keller Williams Advisors Realty, Terry James, City Of Cincinnati, Community Action Agency, and DOES 1-10. (Doc. 1). Plaintiff alleges 15 causes of action to include a variety of federal and state law claims. (*Id*.). Plaintiff also seeks to amend his complaint to add three new defendants. (Doc. 17).

As best the Court can discern, plaintiff's complaint concerns multiple incidents connected to a state court-appointed receivership and sale of plaintiff's property. Plaintiff's complaint, however, is replete with legal conclusions couched as factual allegations, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), argument (e.g., arguing why certain defendants are not entitled to governmental or nonprofit immunity), statutory citations, and case citations applying the law of the case to the complaint allegations. For example, paragraphs 61 through 69 of the complaint allege:

    VI. RICO ENTERPRISE AND RACKETEERING ACTIVITY

    A. The RICO Enterprise

61. Defendants formed an association-in-fact enterprise (the "Enterprise") for the purpose of defrauding Plaintiff, misappropriation of assets from the receivership estate, neutralizing Plaintiffs ability to impede their schemes through his wrongful prosecution, and leveraging regulatory authority to further damage Plaintiffs property interests.

62. Defendant Boydston's influence extended far beyond his formal role as receiver manager. Through both his position at Dentons and his relationships with City officials, he coordinated efforts across multiple domains—financial, regulatory, and criminal—to facilitate the Enterprise's objectives. His collaboration with former City attorney Jackolyn Martin in drafting the receivership order created extraordinary powers and protections that enabled the subsequent fraudulent activities and then when Martin left former City Solicitor, Andrew Garth, who is now employed by HCLRC [Hamilton County Land Reutilization Corporation], said it was ok for Lentine to stay even after the FBI arrest. It verified to Plaintiff of an inside fabricated hit job.

63. The Enterprise's reach is further evidenced by Defendant Boydston's ability to influence protection order enforcement against Plaintiff despite such matters being entirely outside the scope of legitimate receivership activities. This demonstrates how Defendants leveraged multiple legal systems simultaneously—civil receivership proceedings, foreclosure action, and protection orders—to create an interlocking web of restrictions that prevented Plaintiff from protecting his property interests.

64. The Enterprise maintained its continuity and effectiveness by neutralizing Plaintiff's ability to challenge their activities. When Plaintiff attempted to monitor receivership properties and document mismanagement by Defendant Lentine, Defendants responded not by addressing property security concerns but by engineering additional legal impediments to Plaintiff's oversight. This pattern of using legal processes to obstruct legitimate property oversight further demonstrates the Enterprise's coordination and continuing pattern of racketeering activity.

65. As established by the Supreme Court in United States v. Turkette, 452 U.S. 576, 583 (1981), an enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct" that is proved by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."

66. The Enterprise here satisfies all requirements established in Boyle v. United States, 556 U.S. 938, 948 (2009), having "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."

67. The Enterprise consisted of all named Defendants working in coordinated

> fashion through the following operational roles: a. Legal Cover and Authority: Konza, LLC and Richard Boydston used their court-appointed receiver status to provide legal protection for Lentine with regard to CAA fraud for the scheme to continue, b. Operational Management: TSO and Joseph Lentine managed the day-to-day property operations, including diversion of rental income and security deposits, c. Regulatory Fraud: Terry James issued fraudulent condemnation notices despite evidence of structural safety, (exhibit I: GFI report) d. Property Value Manipulation: Jennifer Donathan and Keller Williams artificially reduced property values and facilitated the "engineered sale" while collecting a $147,401 commission, e. Asset Control and Liquidation: Doe #1 allegedly participated in the structured transaction to acquire the properties at a fraction of their market value, f. Funding Facilitation: Community Action Agency processed and approved fraudulent rental assistance applications submitted by Defendants Lentine and Strunk, disbursing funds that were diverted from legitimate uses. CAA's participation enabled the Enterprise to access state and local funding streams, expanding the scope and profitability of the fraudulent scheme.
>
> 68. The Enterprise engaged in interstate commerce through: a. Using interstate wire and mail facilities to transmit fraudulent financial reports b. Submitting fraudulent applications for federal COVID-19 relief programs c. Conducting banking transactions across state lines d. Engaging in real estate transactions affecting interstate commerce.
>
> 69. The City of Cincinnati participated in the Enterprise through its building inspector Terry James, who used his regulatory authority to issue fraudulent condemnation notices that furthered the Enterprise's goals by destroying his income flow and Plaintiff's property values and facilitating the engineered sale scheme. The City's failure to properly supervise James and its customs or policies allowing such abuses enabled the Enterprise to operate effectively.

(Doc. 1).  The remainder of the complaint continues in a similar vein.

The Court is simply unable to discern or identify the factual allegations (as opposed to legal conclusions) attributable to each defendant in order to understand the substance of plaintiff's complaint.  Because of its length, level of detail, and over-inclusive nature of plaintiff's allegations, the complaint presents a difficult, if not impossible, challenge to the defendants in preparing a responsive pleading and for the Court to conduct orderly litigation. *See Shabazz v. Xerox*, No. 1:14-cv-578, 2014 WL 4181600, at *3 (S.D. Ohio Aug. 21, 2014) ("When a pleading is so verbose as to be indecipherable, the complaint may be dismissed for

3

failure to comply with the Federal Rules of Civil Procedure.") (citing *Plymale v. Freeman*, No. 90-2202, 1991 WL 54882 (6th Cir. Apr. 12, 1991) (affirming dismissal with prejudice of 119-page complaint with twenty-four counts for failure to comply with Rule 8); *Flayter v. Wisconsin Dep't of Corr.*, 16 F. App'x 507, 509 (7th Cir. 2001) (116-page 242-paragraph prisoner civil rights complaint "would, because of its length and level of detail, present a challenge to the defendants in filing a responsive pleading" and was a violation of Rule 8(a)(2)); *McHenry v. Renne,* 84 F.3d 1172, 1180 (9th Cir. 1996) ("Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint.")). *See also Kensu v. Corizon, Inc.*, 5 F.4th 646, 651 (6th Cir. 2021) ("[t]he district court and defendants should not have to 'fish a gold coin from a bucket of mud' to identify the allegations really at issue.") (quoting *Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003)). The complaint is simply too conclusory, voluminous, and unfocused to meet the requirements of Fed. R. Civ. P. 8.

Nevertheless, given plaintiff's status as a pro se litigant, the undersigned will allow plaintiff the opportunity to resubmit an amended complaint that complies with Fed. R. Civ. P. 8.

If plaintiff wishes to proceed in this action, he is **ORDERED** to file an amended complaint, **which must not exceed 20 pages in length**, setting forth in clear, short and concise terms the names of each defendant, the specific claims for relief attributable to each defendant, and the factual allegations supporting each such claim. The factual allegations and claims must also arise out of the same transaction or occurrence. Fed. R. Civ. P. 20(a)(2). If plaintiff seeks relief based on unrelated claims he must do so in a separate lawsuit by filing a separate complaint. Plaintiff must file his amended complaint within **thirty (30) days** of the date of this

4

Order.

The Court **STAYS** the deadlines for any responsive pleadings in this matter until plaintiff complies with this Order.

Plaintiff is advised that his failure to comply with this Order may result in the dismissal of this action for want of prosecution.

**IT IS SO ORDERED.**

Date: 6/26/2025

*Karen L. Litkovitz*
Karen L. Litkovitz
United States Magistrate Judge