# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JOHN KLOSTERMAN, et al
Plaintiff,

v.

Case No. 1:25-cv-00312-SJD-KLL

Judge Susan J. Dlott
Magistrate Karen L. Litkovitz

KONZA, LLC, RICHARD BOYDSTON,
and DENTONS BINGHAM
GREENEBAUM LLP, et al.,
Defendants.

## SECOND AMENDED COMPLAINT

### PLAINTIFF'S STATEMENT TO THE COURT

Plaintiff respectfully acknowledges this Court's June 26, 2025 Order and sincerely apologizes for the confusion caused by the initial 104-page complaint. Plaintiff's intention in the comprehensive original filing was to make certain that all bases were covered given the extraordinary complexity and scope of this criminal enterprise. However, Plaintiff understands this approach confused even this highly experienced Court, and Plaintiff apologizes to this Court.

Pursuant to Fed. R. Civ. P. 15(a)(2) and Fed. R. Civ. P. 5(d)(1), Plaintiff hereby states that all exhibits referenced in the original complaint (Doc. 1) are indisputable and remain as part of

the permanent court record and Plaintiff's core proof of the factual allegations contained herein. Unfortunately, there are hundreds of facts that Plaintiff seeks this Court to not only understand but find the persons who are at fault at trial.

This Amended Complaint focuses solely on the essential factual allegations attributable to each Defendant, stripped of legal argument and case citations, to provide clear notice of claims as required by Federal Rule 8(a).

_____

Plaintiff John Klosterman files this Second Amended Complaint and states:

I. PARTIES AND JURISDICTION

1. Plaintiff John Klosterman is a 76-year-old citizen of Ohio residing at 5615 Sidney Road, Cincinnati, Ohio 45238.

2. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), 18 U.S.C. § 1964(c) (RICO civil enforcement), and 28 U.S.C. § 1343 (civil rights).

3. Venue is proper under 28 U.S.C. § 1391(b) because defendants reside in this district and the claims arose here.

4. Defendants are: Konza, LLC (Ohio LLC); Richard Boydston (Ohio resident, Dentons partner); Dentons Bingham Greenebaum LLP (Indiana law firm, Cincinnati office); Tri-State Organization, Inc. (Connecticut corporation); Joseph Lentine (Ohio resident, TSO owner); Angel Strunk (Ohio resident, TSO employee); Jennifer Donathan (Ohio resident, real estate

agent); Keller Williams Advisors Realty (Ohio corporation); Terry James (Ohio resident, former Cincinnati building inspector); City of Cincinnati (Ohio municipal corporation).

## II. CORE FACTS

### A. The Receivership Setup (2020)

5. In February 2020, Hamilton County Court appointed Defendant Boydston through Konza, LLC as receiver over Plaintiff's 59 properties in Sedamsville, Cincinnati.

6. Boydston hired TSO/Lentine to manage daily operations, despite knowing Lentine had served 10 years in prison for fraud and had a pending fraud case for passing bad checks.

7. Boydston simultaneously billed the receivership $300/hour through Konza, LLC while billing Dentons $350/hour for the same activities.

### B. The "Engineered Sale" Confession (January 2025)

8. On January 15, 2025, during sworn testimony in Lentine v. Konza LLC, Defendant Boydston confessed under oath that the property sales were "engineered." (Exhibit A: Boydston testimony transcript)

9. When asked if the sale price reflected market value or was calculated to satisfy receivership expenses, Boydston testified: "It was hoped that would cover the expenses of the receivership...that was my belief at the time." (Exhibit B: Boydston testimony by Neiberding, Bench trial pg 214)

10. Boydston further testified: "The 800,000 was a negotiated number and it took into account all the claims." (Exhibit B: Boydston testimony)

11. Defendant Lentine corroborated this, testifying that this was "an engineered sale" rather than a legitimate market transaction. (Exhibit C: Lentine testimony, Bench trial pg 50)

C. The Fraudulent Sale Structure

12. Despite receiving a legitimate $1,000,000 cash offer from Kim Knoppe, Defendants rejected this offer in favor of HCLRC's $800,000 structured deal. (Exhibit D: Boydston testimony regarding Knoppe offer)

13. The original sales agreement stated "any balance after all bills were paid would go to Klosterman." (Exhibit E: Original sales document)

14. Defendants fraudulently modified this to state Klosterman has "no pecuniary interest or claims to any funds." (Exhibit F: Amended sales agreement)

15. HCLRC received exclusive interior access to properties denied to other bidders, as confirmed by Lentine's sworn testimony. (Exhibit G: Lentine testimony regarding HCLRC access)

16. Property values were artificially reduced: 685 Halsey (nearly an acre with cottage) valued at only $1,000; 636 Delhi reduced from $137,000 to $50,000. (Exhibit H: Property valuation documents)

D. Financial Fraud and Federal Crimes

17. TSO/Lentine collected approximately $437,000 in rental income and deposits during the receivership where most of it went into his pocket as he testified.

18. Defendants Lentine was sentenced to federal prison (63 months and guilty plea respectively) for PPP fraud and money laundering connected to this scheme. Strunk will be sentenced July 8 , 2025 in Federal court. (Exhibit I: Federal criminal sentencing documents) Both summons were returned to the plaintiff and will be served at their respective prisons.

19. Fraudulent rental assistance applications were submitted to the Community Action Agency for properties at 634 Delhi Avenue (outside the receivership) and 649 Sedam Street. (Exhibit J: CAA application documents)

20. After Plaintiff alerted CAA board member Matt Strauss about the fraud, Strauss acknowledged it "sounds like mail and bank fraud" but CAA took no corrective action. Boydston intervened and silenced the investigation requested by Plaintiff. (Exhibit K: Documentation of Strauss communication)

E. Malicious Prosecution to Silence Plaintiff

21. To prevent Plaintiff from exposing their scheme, Defendants coordinated false criminal charges against him.

22. On September 17, 2021, Defendants Lentine and Strunk filed false police reports alleging Plaintiff stalked them. (Exhibit L: False police reports)

23. Plaintiff possesses time-stamped receipts proving time and location fabrication at the alleged stalking time in Cincinnati: U-Haul receipt 8:00 AM, fuel receipts 8:28 AM and 10:46 AM. (Exhibit M: U-Haul and fuel receipts, September 17, 2021)

24. This resulted in Plaintiff's wrongful imprisonment for nearly one year, during which his wife of 40 years died alone.

25. Defendant Boydston's legal billing records show coordination with prosecutors, confirming his participation in the malicious prosecution. (Exhibit O: Boydston billing records)

F. Regulatory Abuse

26. Defendant Terry James allegedly at the urging of Boydston, and issued fraudulent condemnation notices for 621 Delhi Avenue despite a GEI engineering report confirming structural safety. (Exhibit P: GEI structural engineering report)

27. Former tenant Randy Hatfield provided an affidavit stating James later admitted "we didn't have to go through all this, because the building was structurally safe." (Exhibit Q: Randy Hatfield affidavit)

28. This fraudulent condemnation destroyed rental income and property value due to vandalism on a vacant building.

G. Personal Property Theft

29. Defendants converted Plaintiff's personal property including a historic BMW motorcycle worth $20,000 and irreplaceable Sedamsville Historical Society documents. (Exhibit S: Documentation of converted property)

30. Despite multiple written requests, Defendants refused to allow Plaintiff to retrieve his personal property via 2 Email requests.

## III. THE CRIMINAL ENTERPRISE

### A. Enterprise Structure and Purpose

31. Defendants formed an association-in-fact enterprise to systematically defraud Plaintiff through manipulation of the court-appointed receivership.

32. The Enterprise operated through coordinated roles:

- Legal Cover: Konza/Boydston provided court-appointed authority
- Operations: TSO/Lentine managed properties and diverted income from paying bills
- Regulatory: James/City issued fraudulent condemnations
- Sales: Donathan artificially reduced values and facilitated engineered sale

33. The Enterprise's purpose was to convert Plaintiff's $4.5+ million in property assets to HCLRC while preventing him from challenging their activities.

### B. Pattern of Racketeering Activity

34. Defendants engaged in multiple predicate acts over 34 months:

- Wire Fraud: 34 false monthly financial reports to court
- Mail Fraud: False billing statements and court filings
- Bank Fraud: Fraudulent PPP loan applications ($178,882 obtained)
- Money Laundering: Concealing sources of fraudulent proceeds

- Obstruction: Withholding bank records, filing false reports

35. These acts were related (same scheme), continuous (34 months), and posed threat of ongoing criminal activity.

IV. CAUSES OF ACTION

COUNT I: RICO VIOLATION (18 U.S.C. § 1962(c))

Against All Defendants

36. Defendants conducted the Enterprise through a pattern of racketeering activity consisting of wire fraud, mail fraud, bank fraud, money laundering, and obstruction of justice.

37. Plaintiff suffered $4,527,961 in damages directly caused by defendants' racketeering activities.

COUNT II: RICO CONSPIRACY (18 U.S.C. § 1962(d))

Against All Defendants

38. Defendants conspired to conduct the Enterprise through racketeering activity, as evidenced by the coordinated "engineered sale," false prosecutions, and systematic financial fraud.

COUNT III: CIVIL RIGHTS CONSPIRACY (42 U.S.C. § 1985)

Against All Defendants

39. Defendants conspired to deprive Plaintiff of constitutional rights through coordinated use of legal processes, regulatory authority, and false prosecutions.

COUNT IV: CIVIL RIGHTS VIOLATIONS (42 U.S.C. § 1983)

Against Boydston, James, and City of Cincinnati

40. Defendants acting under color of state law violated Plaintiff's Fifth Amendment (taking without compensation), Fourteenth Amendment (due process), and Fourth Amendment (unreasonable seizure) rights.

COUNT V: CONVERSION

Against All Defendants

41. Defendants intentionally converted over $4.5 million in property value, $437,000 in rental income, and $50,000+ in personal property.

COUNT VI: FRAUD

Against All Defendants

42. Defendants made material misrepresentations regarding property values, sale processes, and financial reports with intent to deceive.

COUNT VII: BREACH OF FIDUCIARY DUTY

Against Boydston, Konza LLC, Jennifer Donathan, Keller Williams

43. As court-appointed receiver, Defendants owed Plaintiff fiduciary duties which they breached through the admitted "engineered sale", and Board of Revision testimony.

## COUNT VIII: MALICIOUS PROSECUTION

Against Lentine, Strunk, and Boydston

44. Defendants initiated criminal proceedings against Plaintiff based on demonstrably false allegations, causing his wrongful imprisonment.

## COUNT IX: NEGLIGENT SUPERVISION

Against Dentons and City of Cincinnati

45. Dentons failed to supervise Boydston's conflicts and criminal associations. City failed to supervise James's fraudulent condemnations.

## COUNT X: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Against All Defendants

46. Defendants' coordinated scheme to imprison Plaintiff, steal his property, and destroy his life's work was extreme, outrageous, and caused severe emotional distress.

## V. DAMAGES

47. Plaintiff seeks:

- RICO treble damages: $13,583,883 (3x $4,527,961)
- Compensatory damages: $4,527,961

- Punitive damages for egregious misconduct
- Attorney fees and costs
- Disgorgement of $147,401 fraudulent commission and other ill-gotten gains

## VI. THE RECEIVERSHIP ENTERPRISE: A RICO ANALYSIS

48. This case represents a textbook example of how sophisticated people can exploit court-appointed receiverships to commit organized fraud. Defendant Boydston used his stature as a Dentons partner and court-appointed receiver to create an intricate criminal enterprise that operated with impunity for 34 months.

49. **Boydston: The Mastermind.** Boydston's legal billing records serve as Plaintiff's roadmap to this conspiracy. These records reveal Boydston's coordination with prosecutors, city officials, and co-conspirators in a scheme that goes far beyond simple receivership mismanagement. When Boydston hired convicted felon Joseph Lentine as his "straw man," he set in motion a criminal enterprise designed to systematically strip Plaintiff of $4.5+ million in property assets.

50. **The Fraudulent Financial Records.** Lentine's 4,100 financial records are so convoluted and fraudulent that a high school accounting student could produce better documentation. Defendants deliberately created this chaos to conceal their theft. For example, Lentine claimed extensive tile work at 705 Delhi and complete re-drywalling at 679 Delhi, but no material invoices exist for tile or drywall because Plaintiff had already completed this work months before the receivership began and has photograph evidence to prove it.

51. **Documentary Evidence of the Fraud.** Plaintiff possesses photographs of all buildings prior to TSO takeover in March 2020, detailed files on every property, and documentation comparing what Lentine claimed to have done versus what was actually accomplished. The health department reports and Mr. Cunningham's inspection reports confirm that Defendants billed for work never performed while allowing properties to deteriorate.

52. **Boydston's Willful Blindness Strategy.** It is breathtakingly beyond belief that receiver manager Richard Boydston had Quickbooks setup and refused by Lentine. Boydston, an experienced bankruptcy attorney, did not react and chose to allow fraud to continue for 34 months. Boydston deliberately ignored red flags, refused to implement proper accounting controls, and continued employing known criminals even after the FBI interviewed him just before the arrest. This was not negligence—it was calculated participation in the criminal scheme.

53. **The Land Grab: A Premeditated Conspiracy.** As one defendant aptly described it, Plaintiff's case represents only "the tip of the iceberg." This land grab was planned beginning in 2018 as part of a larger neighborhood redevelopment strategy. The execution was flawless, using often-employed strategies to transfer valuable urban properties to preferred developers at artificially reduced prices. Plaintiff provided the rope and defendants executed themselves.

54. **The HCLRC Connection: The Intended Beneficiary.** The "engineered sale" to Hamilton County Land Reutilization Corporation was not coincidental. HCLRC received exclusive access to properties, favorable financing terms, and properties cleared of code violations AND property taxes —advantages denied to legitimate market bidders. It has taken HCLRC

two years since acquisition to begin the redevelopment that Plaintiff had successfully managed for 30+ years, proving that the "urgent" receivership was unnecessary.

55. **The Constitutional Crisis: Takings Clause Violations.** This case presents fundamental questions about the Fifth Amendment's Takings Clause. When court-appointed receivers can "engineer" sales to benefit preferred buyers while depriving property owners of just compensation, the constitutional foundation of property rights crumbles. This Court's decision will be a landmark precedent on receivership conduct and constitutional property protections.

56. **The Cover-Up: Obstruction and Coordination.** The overt cover-up began when Boydston intervened with the Community Action Agency on behalf of Lentine, becoming a co-conspirator rather than a neutral receiver. When Boydston / Konza filed for liability insurance treating TSO employees as 1099 contractors despite knowing they were employees, he demonstrated consciousness of guilt about the fraudulent arrangement.

57. **The Human Toll: More Than Financial Loss.** Beyond the $4.5+ million in financial damages, this scheme destroyed Plaintiff's life work, caused his wrongful imprisonment, and resulted in his wife of 40 years dying alone while he was incarcerated on false charges. The legal costs have reached hundreds of thousands and will likely exceed one million if this case proceeds to trial—all because Defendants chose crime over honest business practices.

58. **RICO Application: Classic Enterprise Activity.** This case exemplifies why Congress enacted RICO: sophisticated criminals using legitimate institutions (courts, law firms, city agencies) to commit organized fraud. The Enterprise operated through distinct roles—legal cover (Boydston/Konza), operations (Lentine/TSO), regulatory manipulation (James/City),

and disposition (Donathan/Keller Williams)—exactly the type of coordinated criminal activity RICO was designed to address.

59. **The Enterprise's Continuing Threat.** Without judicial intervention, this Enterprise poses ongoing threats to property owners throughout Hamilton County. Boydston remains a Dentons partner with access to future receivership appointments. The City continues employing building inspectors with inadequate supervision. HCLRC continues acquiring properties through questionable transactions. Only RICO's comprehensive remedies can dismantle this criminal organization and deter similar schemes.

60. **Discovery Will Reveal the Full Scope.** Boydston's legal billing records will identify additional "Does" through discovery, revealing the complete scope of this conspiracy. The first month's abandonment of the agreed QuickBooks system, confirmed by Angel Strunk's sworn testimony, established the fraudulent pattern that continued for 34 months. The lower courts blindly accepted Boydston's filings as true, enabling the Enterprise to operate with impunity until this federal action.

61. **Justice at a Crossroads.** This case will determine whether sophisticated criminals can exploit judicial processes to steal property with impunity, or whether federal courts will enforce constitutional protections and criminal laws. Plaintiff has provided the evidence—now this Court must decide if justice still exists in America. The Constitution's Takings Clause hangs in the balance.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests:

A. Judgment against all Defendants;

B. RICO treble damages of $13,583,883;

C. Compensatory damages of $4,527,961;

D. Punitive damages;

E. Attorney fees and costs under 18 U.S.C. § 1964(c) and 42 U.S.C. § 1988;

F. Disgorgement of fraudulent commissions and fees;

G. Declaration that the "engineered sale" was fraudulent and dismissed with prejudice

H. Such other relief as the Court deems just and proper.

## VII. EXHIBIT LIST

The following exhibits from the original complaint are incorporated by reference:

Exhibit A: Boydston testimony transcript (January 2025 bench trial)

Exhibit B: Boydston testimony by Neiberding (Bench trial pg 214)

Exhibit C: Lentine testimony regarding "engineered sale" (Bench trial pg 50)

Exhibit D: Boydston testimony regarding rejection of Knoppe offer

Exhibit E: Original sales agreement showing Klosterman rights

Exhibit F: Amended sales agreement removing Klosterman rights

Exhibit G: Lentine testimony regarding HCLRC exclusive access

Exhibit H: Property valuation manipulation documents

Exhibit I: Federal criminal sentencing documents (Lentine)

Exhibit J: Fraudulent CAA rental assistance applications

Exhibit K: Documentation of Matt Strauss communication

Exhibit L: False police reports filed September 17, 2021

Exhibit M: U-Haul and fuel receipts establishing Plaintiff's alibi

Exhibit N: Court records documenting wrongful incarceration

Exhibit O: Boydston billing records showing prosecutor coordination

Exhibit P: GEI structural engineering report (621 Delhi)

Exhibit Q: Randy Hatfield affidavit regarding James admission

Exhibit R: Property damage documentation from fraudulent condemnation

Exhibit S: Documentation of converted personal property

## VIII. JURY DEMAND

Plaintiff demands trial by jury on all claims.

_____

Respectfully submitted,

**JOHN KLOSTERMAN**

*Plaintiff Pro Se*

5615 Sidney Road

Cincinnati, Ohio 45238

Phone: (513) 250-2610

Email: johncklosterman@gmail.com

## VERIFICATION

I, John Klosterman, verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

John Klosterman

Date: June 27, 2025