# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JOHN KLOSTERMAN, et al
 Plaintiff,

v.

Case No. 1:25-cv-00312-SJD-KLL

Judge Susan J. Dlott
Magistrate Karen L. Litkovitz

KONZA, LLC, RICHARD BOYDSTON,

and DENTONS BINGHAM

GREENEBAUM LLP, et al.,

Defendants.

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT MOTIONS FOR EXTENSION OF TIME, MOTION FOR IMMEDIATE CONSTRUCTIVE TRUST RELIEF, MOTION FOR BENCH TRIAL, AND MOTION TO ADD FRI MASON, LLC AND JENNIFER DONNATHAN AS DEFENDANTS

TO THE HONORABLE COURT:

Plaintiff John Klosterman respectfully opposes Defendants' coordinated requests for

additional time to respond to the Amended Complaint (Docs. #37, #38), moves for immediate

constructive trust relief over the subject properties based on defendants' own sworn

admissions of conducting an "engineered sale" - a fraudulent scheme that systematically

stripped Plaintiff of $4.5 million in property value, requests that this matter be tried to the Court without a jury, and moves to add FRI Mason, LLC d/b/a Keller Williams Advisors Realty and Jennifer Donnathan , personally .as defendants based on evidence of their knowing participation as documented in Plaintiff's Motion for Summary Judgment (Doc. #27).

## I. DEFENDANTS' KNOWING PARTICIPATION ELIMINATES ANY CLAIMED COMPLEXITY

### A. FRI Mason/Keller Williams' Motion Contains No Legitimate Basis for Extension

Defendant FRI Mason, LLC's motion (Doc. #37) requests additional time while already being in default. Despite being properly served on May 16, 2025, with a response deadline of June 6, 2025, FRI Mason failed to timely respond and now seeks to cure their default without showing good cause. Their coordinated filing with other defendants on nearly identical dates (July 2-3, 2025) demonstrates ongoing enterprise coordination rather than legitimate need for additional time.

### B. Evidence of Defendants' Knowing Participation

### 1. Jennifer Donnathan as Boydston's "Straw Woman"

As documented in Plaintiff's Motion for Summary Judgment (Doc. #27), Jennifer Donnathan acted as Defendant Boydston's "straw woman" to obtain favorable Board of Revision results. The evidence shows:

- Donnathan artificially reduced property valuations by over $100,000 at Boydston's direction

2

- **685 Halsey:** Valued at merely $1,000 despite being nearly an acre with a cottage

- **636 Delhi:** Reduced from $137,000 to $50,000 despite $1,300/month rental income

- She received $147,401 commission for facilitating the "engineered sale" while Boydston and HCLRC and others negotiated the sale.

## 2. Unprecedented Board of Revision Manipulation

At the Board of Revision hearing, an attorney from the Hamilton County Auditor's office (Doe #4) appeared with Boydston and sided AGAINST the county's own appraiser, Richard Cain, who testified the land alone was valued at $16,000-$18,000. In Plaintiff's 30+ years attending BOR hearings, he had never witnessed an attorney from the Auditor's office participate and contradict their own appraisers. This unprecedented coordination resulted in the absurd $1,000 valuation.

## 3. FRI Mason's Hidden Corporate Identity

FRI Mason, LLC deliberately concealed its corporate identity while operating as Keller Williams Advisors Realty. This concealment prevented Plaintiff from initially naming them as defendants and demonstrates consciousness of wrongdoing.

## C. Coordinated Defense Strategy Proves Enterprise Allegations

The simultaneous filing of extension requests—with FRI Mason/Keller Williams (Doc. #37) and the City/James/Konza/Boydston/Dentons group (Doc. #38) both seeking extensions to August 1, 2025—demonstrates ongoing enterprise coordination. Defendants cannot claim to be independent actors while coordinating defense strategies and sharing legal consultation.

## D. No Good Cause for Extensions Given Defendants' Prior Knowledge

### 1. Defendants Were Fully Aware of the Fraudulent Scheme

The evidence shows all defendants had actual knowledge of the fraud:

- Donnathan knew she was artificially devaluing properties

- FRI Mason/Keller Williams knew the transaction was not arm's length

- They knew about the rejected $1,000,000 cash offer from Kim Knoppe

- They participated despite knowing HCLRC received preferential treatment

### 2. Sophisticated Counsel Cannot Claim Surprise

Defendants retain highly sophisticated legal teams:

- SSP Law Co., LPA (representing FRI Mason/Keller Williams)

- Hoover Hull Turner LLP (Indianapolis firm)

- Strauss Troy Co., LPA

- City Solicitor's Office

- Dentons Bingham Greenebaum LLP

These firms routinely handle complex federal litigation within standard deadlines.

### 3. Dentons' Recent $32.5 Million Loss for Identical Misconduct

Under the principles established in *RevoLaze LLC v. Dentons US LLP*, 2022-Ohio-1392, law firms can be held liable for substantial damages when their partners breach fiduciary duties to clients or third parties affected by their professional activities. In RevoLaze, Dentons was

held liable for $32.5 million in damages for partner misconduct involving breach of fiduciary duties – precisely the same type of violations alleged here.

The arrogance of Dentons partner Richard Boydston – who, as he stated under oath, considers himself "a highly experienced attorney in receiverships" – led him to believe his respected reputation and firm partnership would shield him from consequences. The RevoLaze precedent demonstrates that neither Dentons' international reputation nor Boydston's claimed expertise provides immunity from massive liability when partners engage in systematic breach of fiduciary duties.

Dentons' recent $32.5 million loss should have served as a warning to exercise greater oversight of partner conduct. Instead, the firm allowed Boydston to orchestrate a $4.5 million property theft through an admitted "engineered sale" while collecting approximately $499,000 in fees. This pattern of enabling partner misconduct demonstrates that Dentons has learned nothing from its recent massive judgment and continues to profit from partner violations of fiduciary duties.

## II. MOTION FOR IMMEDIATE CONSTRUCTIVE TRUST RELIEF

### A. Legal Standard for Constructive Trust

Federal courts apply constructive trust principles when property has been acquired through fraud or other wrongful conduct. *Firestone v. Galbreath*, 747 F. Supp. 1556, 1580 (S.D. Ohio 1990) (imposing constructive trust where defendants obtained property through fraudulent schemes). The elements are:

1. Wrongful sale and acquisition of property

2. Unjust enrichment if defendant retains property

3. Equity requires defendant hold property for rightful owner

Under Ohio law, "a constructive trust arises by operation of law against one who through any form of unconscionable conduct holds legal title to property where equity and good conscience demands that he should not hold such title." *Dixon v. Smith*, 119 Ohio App.3d 308, 319, 695 N.E.2d 284 (3d Dist. 1997).

"Where one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means . . . either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy," equity will create a constructive trust. *Ferguson v. Owens*, 9 Ohio St.3d 223, 225, 459 N.E.2d 1293 (1984).

Constructive trusts are imposed "to prevent unjust enrichment when property has been acquired by fraud, duress, abuse of confidence, commission of wrong, or any form of unconscionable conduct." *Burkett v. Burkett*, 73 Ohio App.3d 110, 115 (1991).

**B. Defendants' Sworn Admissions Establish Fraudulent Acquisition**

**1. Boydston's Under-Oath Confession to "Engineered Sale"**

At the January 2025 trial, receiver Richard Boydston provided sworn testimony that destroys any claim of legitimate property acquisition:

Q: "Was this purchase price the value of the properties, or was this calculated to satisfy the expenses of the receivership?"

6

A: "It was hoped that that would cover the expenses of the receivership with agreed reductions."

Additional sworn admissions:

- **Reverse Engineering:** "The $800,000 was a negotiated number and it took into account all the claims and possible claims"
- **Predetermined Outcome:** Sale price calculated to "cover the expenses of the receivership" rather than market value
- **Coordinated Scheme:** "The negotiation...was in anticipation of a haircut for Konza, and a haircut for TSO"

This testimony conclusively establishes that the property acquisition was based on fraud, not legitimate market transactions.

## 2. HCLRC's Written Admissions of Coordination

HCLRC's own April 25, 2025 court filing contains multiple admissions proving their knowledge of the fraudulent scheme:

- **Predetermined Structure:** "The purchase agreement between the Receiver and HCLRC specifically set aside $800,000..."
- **Coordination Knowledge:** Admitted participation in predetermined price negotiations
- **Owner Exclusion:** Acknowledged sale structure deliberately excluded property owner from proceeds

## 3. Lentine's Corroborating Testimony

Co-conspirator Joseph Lentine (now serving 63 months federal prison) testified this was "an engineered sale" and that "Hamilton County Land Bank was given all sorts of special treatment."

**C. Systematic Fraud Underlying Property Acquisition**

**1. Rigged Bidding Process**

The property acquisition involved systematic elimination of legitimate competition:

- **Exclusive Access:** Only HCLRC allowed interior property inspections
- **Information Asymmetry:** Other bidders denied same access and information
- **Rejected Superior Offers:** $1,000,000 cash offer from Kim Knoppe rejected in favor of HCLRC's $800,000 bid
- **Predetermined Outcome:** Sale structured to ensure HCLRC acquisition regardless of competing offers

**2. Artificial Property Devaluations**

The scheme included systematic property devaluations:

- **Board of Revision Manipulation:** Donnathan artificially reduced valuations by over $100,000 at Boydston's direction
- **685 Halsey:** Nearly one acre with cottage valued at absurd $1,000
- **636 Delhi:** Reduced from $137,000 to $50,000 despite $1,300/month rental income
- **Auditor Coordination:** Unprecedented appearance of Auditor's attorney contradicting county's own appraiser

- **Building Department Coordination:** Terry James coordinated fraudulent condemnations, including 621 Delhi condemned despite structural engineer's safety certification

## D. Consciousness of Guilt and Deliberate Endangerment

### 1. Boydston's Request for Blanket Forgiveness

In his motion to Judge Cross in Case A1905588, Boydston explicitly asked the court to order forgiveness for all defendants for any wrongdoing they may have committed. This extraordinary request constitutes direct evidence of consciousness of guilt by all parties who colluded with him - an admission that wrongdoing occurred and that judicial protection from consequences was needed.

### 2. Deliberate Tenant Endangerment Despite Knowledge

At the bench trial, when directly questioned about the uninhabitable properties, Boydston's testimony revealed the systematic endangerment:

COURT: "Alright So let's do this, in terms of testimony. Did you tell Mr. Lentine or TSO not to rent those units because they were no good, they (the tenants) shouldn't have people in there?" (referring to 649, 654 Steiner, 679, 701, 705, 794 Delhi - properties ordered to remain empty with no certificates of occupancy)

BOYDSTON: "No"

This testimony proves Boydston's deliberate failure to protect tenant safety despite knowing the properties were uninhabitable. His legal billing records show over 100 entries for "drive

by the properties" – documenting his actual knowledge of the dangerous conditions he allowed to continue.

### 3. Coordinated Deception of Building Officials

Building inspector Matt Flannery was deliberately misled by Lentine and Boydston, who convinced him that building violations "would be brought up to code ASAP." The violations were never corrected, tenants were never relocated until after Lentine was finally fired, and all the damage was done.  No units are even close to being ready to rent or sell, with trash removal companies gutting properties that were previously rented. 638 Steiner's yard has never been maintained this year. One can't see the house for all the weeds. Pictures at trial.

### 4. Illegal Construction and Permit Violations

Boydston testified under oath that he authorized installation of "2 furnaces and a hot water tank at 649, 654 Steiner without permits and from unverifiable companies." This admission proves systematic building code violations under receiver management while tenants were illegally housed in condemned properties. Actions with impunity exercised by defendants.

### 5. Deliberate Fire Hazard Creation

Boydston, Flannery, and Lentine all knew tenants were prohibited from occupying the six addresses, yet tenants were deliberately allowed to remain. This conscious disregard for safety resulted in 2 costly fires - predictable consequences of the defendants' reckless endangerment. Had Plaintiff engaged in such conduct, he would face criminal prosecution. Instead, the receivership used its court influence to continue the dangerous scheme until the fraudulent sale was completed and the tenants relocated or were evicted.

**6. HCLRC's "Purchase of Judgment"**

Boydston testified under oath that HCLRC <u>"bought the judgment from the city"</u> -(pg 123 line 23-24)  revealing the predetermined nature of the property transfer and the coordination between municipal and quasi-governmental entities to effectuate the theft.

**7. Ongoing Institutional Protection**

The scheme continues even after exposure. Judge Cross must still rule on Plaintiff's objection to pay Konza and Boydston, and on objections to Magistrate Lui's bench trial ruling that finally revealed their conduct. Having hung themselves with their own testimony, defendants now will  claim "misunderstanding" while seeking continued judicial protection  requested from the Court for  any future consequences of their admitted criminal enterprise. Astounding!

**E. Financial Fraud Supporting the Scheme**

The property acquisition was funded through systematic theft and fraud:

**1. TSO Theft Operations**

- **Rent Diversion:** Over $437,000 in collected rents diverted for personal use
- **PPP Fraud:** $249,852 in fraudulent federal loans (federal conviction)
- **Billing Fraud:**  Konza LLC's $248,244 in  fees with no legal licence

**2. State, Local and  Federal Assistance Fraud**

- **CAA Fraud:** Over $50,000 in fraudulent rental assistance payments

- **False Applications:** Boydston completed fraudulent applications, Lentine provided signatures (628 Delhi "Scott" never lived there. She will testify
- **Cover-up:** CAA failed to investigate after direct fraud notification

## F. Unjust Enrichment Analysis

## 1. HCLRC's Massive Benefit from Fraud

HCLRC acquired $4.5 million in properties for less than $800,000 – a $3.7 million windfall from the fraudulent scheme:

- **Market Value:** Properties worth $4.5+ million based on rental income and size
- **Fraudulent Price:** Acquired for less than $800,000 (approximately 15% of value)
- **Continuing Benefit:** HCLRC continues to control with no development in over 2 years
- **Elimination of Owner's Rights:** Sale agreement returned any surplus to HCLRC (buyer) instead of property owner. A total disregard of Plaintiff welfare.

## 2. Defendants' Continuing Unjust Enrichment

Every day defendants retain the properties, they benefit from:

- **Property Appreciation:** Ongoing increase in property values
- **Development Potential:** Properties located in desirable Sedamsville area
- **Stolen Asset Control:** Exclusive control over $4.5 million property portfolio
- **Revenue Potential:** Rental income and development opportunities
- **Neighborhood is boarded up due to the damages from no maintenance**

## G. Federal Authority for Constructive Trust Relief

## 1. Civil Rights Context

In civil rights cases involving property deprivation, constructive trusts provide essential relief when government actors conspire to deprive citizens of property through fraudulent means. *Monroe v. Pape*, 365 U.S. 167, 172 (1961) (establishing federal civil rights liability for governmental deprivation of constitutional rights).

## 2. RICO Context

Federal courts routinely impose constructive trusts in RICO cases involving fraudulent property transfers to prevent defendants from benefiting from their racketeering activity. *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 398 (7th Cir. 1984).

## III. MOTION TO ADD FRI MASON AND DONNATHAN AS DEFENDANTS

### A. Legal Standard

Federal Rules of Civil Procedure 15(a)(2) and 21 permit adding parties when justice requires. Leave should be freely given absent undue delay, bad faith, or prejudice.

### B. Justice Requires Adding These Defendants

#### 1. Central Role in Fraudulent Scheme

As documented in Plaintiff's Motion for Summary Judgment (Doc. #27):

- Donathan served as Boydston's "straw woman" for property devaluations
- FRI Mason concealed its corporate identity while collecting $147,401
- Both were essential to executing the "engineered sale"

## 2. No Prejudice from Amendment

Adding these defendants causes no prejudice as:

- **The case is in early stages**

- **They already have notice through service of process**

- **Their indisputable conduct under oath is already documented in court filings**

- **They are already participating through extension motions**

## IV. MOTION FOR BENCH TRIAL

The complex legal issues, documentary evidence, and sophisticated fraud schemes favor trial by the Court rather than jury. The involvement of attorneys manipulating Board of Revision proceedings, coordinated property devaluations, and multi-entity conspiracies requires judicial expertise.

## V. PREJUDICE FROM CONTINUED DELAY

Every day of delay allows:

- **Continued property deterioration (95% vacancy)**

- **Further coordination among conspirators**

- **Additional harm to Plaintiff's remaining properties**

- **Defendants to benefit from their fraud**

## VI. SUPPORTING CASE LAW

### A. Federal Precedents Supporting Immediate Relief

14

**1. Property Rights as Civil Rights** *Lynch v. Household Finance Corp.*, 405 U.S. 538 (1972): Property rights are civil rights protected by § 1983, establishing federal court authority to provide immediate relief for property deprivation through governmental coordination with private parties.

**2. State Action Through Private Coordination** *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982): Government coordination with private parties in property deprivation violates due process and creates federal civil rights liability requiring immediate judicial intervention.

**3. Ohio Constructive Trust Law** *Ferguson v. Owens*, 9 Ohio St.3d 223, 225 (1984): Ohio Supreme Court mandating constructive trusts where property acquired through "fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct."

**4. Federal District Court Authority** *Firestone v. Galbreath*, 747 F. Supp. 1556 (S.D. Ohio 1990): Southern District of Ohio imposing constructive trust based on fraudulent property acquisition involving coordinated schemes among multiple parties.

## B. RICO Context Cases

**5.** *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384 (7th Cir. 1984)

- **Constructive trust appropriate remedy in RICO cases involving property fraud**
- **Held: RICO defendants cannot retain benefits of their racketeering activity**
- **Relevance: RICO context supports constructive trust for fraudulent property acquisition**

**6.** *Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339 (2d Cir. 1994)

- **Constructive trust prevents RICO defendants from benefiting from criminal enterprise**

- **Held: Courts must prevent defendants from retaining fruits of racketeering**

- **Relevance: Criminal enterprise coordination requires statutory relief**

## VII. SPECIFIC CONSTRUCTIVE TRUST RELIEF REQUESTED

### A. Property Subject to Constructive Trust

The Court should declare the following properties held in constructive trust for Plaintiff:

### 1. All Sedamsville Properties

- **All 59 properties fraudulently acquired in the "engineered sale"**

- **Properties of plaintiff currently held by HCLRC through fraudulent acquisition**

### 2. Related Assets

- **All rental income collected since fraudulent acquisition**

- **All proceeds from any property sales or transfers**

- **All development rights and future appreciation**

### B. Immediate Relief Requested

### 1. Constructive Trust Declaration

- **Declare properties held in constructive trust for Plaintiff**

- **Require HCLRC to hold properties as trustee for Plaintiff's benefit**

- **Prohibit any transfers, sales, or encumbrances without court approval**

16

**2. Accounting and Restoration**

- **Order complete accounting of all income, expenses, and property changes**
- **Require restoration to pre-receivership condition at defendants' expense**
- **Order payment of all rental income and profits to Plaintiff**

**3. Preventive Relief**

- **Enjoin further property deterioration or waste**
- **Require proper maintenance and insurance**
- **Prohibit coordination among defendants regarding properties**

## VIII. PRAYER FOR RELIEF

**Defendants' coordinated extension requests, following documented evidence of their knowing participation in fraud, demonstrate ongoing enterprise coordination requiring immediate intervention.**

**Plaintiff respectfully requests that this Court:**

**A. Procedural Relief**

- **DENY all pending motions for extension of time (Docs. #37, #38);**
- **GRANT Plaintiff leave to file Second Amended Complaint adding FRI Mason, LLC and Jennifer Donnathan as defendants;**
- **ORDER all defendants to respond within 14 days of this Order;**
- **ORDER bench trial pursuant to Fed. R. Civ. P. 39(c);**

### B. Immediate Constructive Trust Relief

- **DECLARE subject properties held in constructive trust for Plaintiff;**

- **REQUIRE HCLRC to hold properties as trustee for Plaintiff's benefit;**

- **PROHIBIT any transfers, sales, or encumbrances without court approval;**

- **ORDER complete accounting of all income, expenses, and property changes since fraudulent acquisition;**

- **REQUIRE restoration to pre-receivership condition at defendants' expense;**

- **ORDER payment of all rental income and profits to Plaintiff since fraudulent acquisition;**

- **REQUIRE proper maintenance and insurance at defendants' expense;**

- **PROHIBIT coordination among defendants regarding properties;**

### C. Additional Relief

- **AWARD such other relief as the Court deems just and proper.**

### IX. CONCLUSION

The evidence is overwhelming and undisputed: defendants acquired Plaintiff's properties through an "engineered sale" - a fraudulent scheme involving systematic deception, artificial devaluations,the judgment purchase  from City by HCLRC long before the sale and deliberate elimination of the property owner's rights. Defendants' own sworn testimony and written admissions conclusively establish the fraudulent nature of the property acquisition.

For four years, Plaintiff has filed countless motions and appeals - including bankruptcy and Chapter 11 proceedings - appearing before multiple attorneys at each hearing, all while being

systematically denied the very evidence that would prove his case. <u>The bank records.</u> Without access to Boydston's legal billing records, Plaintiff could only suspect negligence. Now, with those records finally revealed, the truth is clear: Boydston was not asleep at the wheel as Plaintiff suspected, but was actively orchestrating the scheme behind the scenes - coordinating every fraudulent step while collecting $499,000, most in legal fees - all at the direction of the higher-ups who "buttered his bread." Boydston and Lentine danced all the way to the bank with Plaintiff's stolen property proceeds. Both making a 6 month job a 4 year looting.

Every motion and filing Plaintiff made over these four years had merit - but the lower court systematically ignored Plaintiff's well-founded requests because the very evidence that would validate his claims was being deliberately concealed by the defendants who had orchestrated the theft. This Court now has before it the smoking gun evidence that was hidden for years: defendants' own sworn confessions to conducting an "engineered sale," and " purchased judgment from the City" by HCLR admitted by Boydston in sworn testimony.

Defendants have confessed under oath to conducting an "engineered sale" and their own court filings admit to coordinated fraud. Jennifer Donnathan's role as Boydston's "straw woman," the unprecedented Board of Revision manipulation with the Auditor's attorney contradicting their own appraiser, and FRI Mason's concealment of its corporate identity all demonstrate consciousness of guilt.

A constructive trust is the only remedy that can prevent continuing unjust enrichment from $4.5 million property theft and restore properties to their rightful owner before further irreparable harm occurs. Ohio law and federal authority demand immediate constructive trust

relief when property has been acquired through the systematic "unconscionable conduct" defendants have admitted under oath.

The four-year pattern of discovery obstruction and procedural manipulation can end. Their request for extensions represents continued coordination of the enterprise that defrauded Plaintiff of his constitutional property rights through systematic civil rights violations validated by federal criminal convictions of co-conspirators.

Respectfully submitted,

John Klosterman
Plaintiff
5615 Sidney Road
Cincinnati, OH 45238
johncklosterman@gmail.com

---

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon all parties listed below on or about July 7, 2025, by the following method(s):

Service Method: ☐ U.S. Mail, postage prepaid ☐ Email ☐ Other: _____

Parties Served:

- Konza, LLC c/o Registered Agent
- Richard Boydston c/o Dentons Bingham Greenebaum LLP
- Dentons Bingham Greenebaum LLP
- Tri-State Organization, Inc.
- Joseph Lentine [Prison address - summons returned, to be served at correctional facility]
- Angel Strunk [Prison address - summons returned, to be served at correctional facility]
- Jennifer Donathan
- Keller Williams Advisors Realty/FRI Mason LLC

- **Terry James**
- **City of Cincinnati City Solicitor's Office**

**I declare under penalty of perjury that the foregoing is true and correct.**

**JOHN KLOSTERMAN**
**Plaintiff**
**5615 Sidney Road**
**Cincinnati, Ohio 45238**
**Phone: (513) 250-2610**
**Email: johncklosterman@gmail.com**

**John Klosterman**
**Date:** July 7, 2025

**EXHIBIT REFERENCED**

- **EXHIBIT B: Pictures taken July 5-6, 2025**