# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOHN KLOSTERMAN, et al
Plaintiffs,


v.

KONZA, LLC, RICHARD BOYDSTON,

and DENTONS BINGHAM

GREENEBAUM LLP, et al.,

Defendants

Case No. 1:25-cv-00312-SJD-KLL

Judge Susan J. Dlott
Magistrate Karen L. Litkovitz


**"PLAINTIFF'S INFORMATIONAL MEMORANDUM REGARDING NEWLY DISCOVERED JUDICIAL ADMISSIONS BY NON-PARTY HCLRC", MOTION TO NEGATE FRAUDULENT PROPERTY ACQUISITION**

**TO THE HONORABLE COURT:**

After 35 years of historic preservation efforts, Plaintiff John Klosterman was systematically stripped of his $4.5 million property portfolio by criminal enterprises operating with breathtaking arrogance and malice. Now, with the main conspirators' schemes exposed through their own judicial admissions, Plaintiff respectfully submits this Memorandum to bring

to this Court's immediate attention the stunning confessions made by Hamilton County Land Reutilization Corporation ("HCLRC") in their April 25, 2025 filing.  (exhibit A) These admissions conclusively establish HCLRC's participation in the criminal enterprise and their knowledge and direct involvement of the fraudulent "engineered sale," requiring immediate negation of their property acquisition.

The  factual evidence reveals a systematic looting operation:

LENTINE/TSO: $437,000 THEFT OPERATION Co-conspirator Joseph Lentine (now serving 63 months federal prison) systematically looted $437,000 in accounts receivable, causing indescribable damage to Plaintiff's estate - damage now proven by defendants' own court filings and substitute Plaintiff HCLRC's sworn affidavits.

BOYDSTON/KONZA: $600,000 BILLING FRAUD

Receiver Konza , LLC and  Boydston was paid nearly$499,000 and totally billed nearly $600,000 in legal fees (including their September 9, 2024 payment request), where over 65% were unrelated to legitimate receivership actions and Konza's unlicensed billing at $300.00 per hour, and despite Plaintiff's email warnings about the criminal enterprise in April ,2020 and the  FBI investigation triggered by Plaintiff's whistleblowing, Boydston refused to replace the criminal Lentine/TSO operation and use the existing QuickBooks which had job costing installed.

HCLRC: THE ULTIMATE BENEFICIARY With the estate deliberately driven into shambles, HCLRC positioned itself as the "savior" through coordinated under-the-table agreements. Following the City of Cincinnati's directive to the Land Bank to "spend whatever it takes" (documented in HCLRC Board meeting minutes), HCLRC orchestrated the final theft through:

- Secret side agreements with Konza/Boydston

- Coordinated Keller Williams auction theater

- Lentine's NDA offer through Boydston and HCLRC

THE DEVASTATING RESULT:  HCLRC now controls what remains of a once-thriving $4.5 million historic property portfolio, leaving behind:

- No available cash

- Operating deficit exceeding negative $350,000 if all alleged criminals were properly paid

- Complete destruction of 35 years of historic preservation work.

This unconscionable result is documented across 642 court filings spanning 5,142 pages - a staggering waste of judicial resources that could have been avoided if the criminal enterprise had been stopped when Plaintiff first exposed it in April 2020! Now it is all tainted with fraud and fraudulent intent rendering it useless as any defense. That is why Plaintiff is in this Court. Plaintiff now seeks this Court's swift intervention to prevent HCLRC from completing their planned dissolution of these irreplaceable historic properties, as HCLRC intends to do, thereby erasing forever both Plaintiff's life work and Sedamsville's historic character.

## I. HCLRC'S DAMNING JUDICIAL ADMISSION

### A. The Fatal "Put Simply" Statement

In their April 25, 2025 court filing, HCLRC made this extraordinary judicial admission: "Put simply, the Receiver's actions and expenses in performing his duties have no relevance to and cannot be attributed to HCLRC."

### B. Why This Statement Proves Criminal Knowledge and Consciousness of Guilt

3

**1. Desperate Distancing from Known Criminal Activity** HCLRC's frantic attempt to distance themselves from the receivership reveals their knowledge that the receivership involved criminal conduct. Innocent parties don't make such defensive, emphatic denials of "relevance."

**2. Contradicted by Their Own Simultaneous Admissions** In the very same filing where HCLRC claims "no relevance," they admit:

- **Predetermined Transaction:** "The purchase agreement between the Receiver and HCLRC specifically set aside amounts"

- **Coordinated Structure:** "$674,017.00 was paid to satisfy the underlying foreclosure judgment" (paying themselves)

- **Direct Negotiation:** Acknowledgment of direct negotiations with the Receiver

- **Exclusive Access:** Receipt of preferential treatment denied to other bidders

**3. The Legal Impossibility of "No Relevance"** HCLRC cannot claim "no relevance" to receivership actions while simultaneously:

- **Negotiating directly with the Receiver**

- **Structuring payments to benefit themselves**

- **Receiving exclusive insider information**

- **Participating in predetermined price setting**

## II. HCLRC BELIEVES THEY CAN STEAL THE ENTIRE ESTATE WITHOUT CONSEQUENCES

**A. HCLRC's Criminal Strategy Exposed**

4

HCLRC's judicial admission reveals their belief that they can take the entire $4.5 million estate along with their secret side agreements while avoiding the consequences of participating in a fraudulent sale to them.

The "put simply" statement is HCLRC's attempt to:

1. **Claim the Benefits:** Keep the $4.5 million property portfolio

2. **Avoid the Consequences:** Deny responsibility for the fraudulent acquisition

3. **Maintain Secret Agreements:** Preserve undisclosed arrangements with co-conspirators

4. **Escape Criminal Liability:** Distance themselves from the "engineered sale" they helped create

## B. Consciousness of Guilt Analysis

HCLRC's defensive statement demonstrates classic consciousness of guilt:

- **Why Distance Themselves?** Only if they knew crimes were committed

- **Why Claim "No Relevance"?** Only if they feared legal consequences

- **Why Make False Denials?** Only if they knew their conduct was criminal

## III. HCLRC'S FEDERAL CRIMES AND ENTERPRISE LIABILITY

### A. HCLRC's Federal RICO Predicate Acts Supporting CAA's Enterprise Liability

**PREDICATE ACT #1: MAIL FRAUD (18 U.S.C. § 1341)**

HCLRC's Elements Established:

- **Scheme to Defraud:** HCLRC admits "purchase agreement...specifically set aside amounts" proving predetermined outcome

- **Use of Mails:** Sale documents and court filings transmitted via mail

- **Intent to Defraud:** "No relevance" claim proves knowledge of fraud

**Legal Standard:** Under 18 U.S.C. § 1341, mail fraud prohibits use of mail to execute "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises."

**CAA Connection:** CAA's federal fund fraud was part of the same enterprise that culminated in HCLRC's fraudulent property acquisition.

**PREDICATE ACT #2: WIRE FRAUD (18 U.S.C. § 1343)**

**HCLRC's Elements Established:**

- **Electronic Coordination:** Court filings and fund transfers via interstate wires

- **Scheme Coordination:** Despite claiming "no relevance," coordinated predetermined transaction

- **Intent:** False statements prove awareness of underlying fraud

**Legal Standard:** Wire fraud applies when defendants use interstate wire communications to execute fraudulent schemes.

**CAA Connection:** CAA's electronic processing of fraudulent rental assistance applications used the same wire facilities as HCLRC's coordination.

**PREDICATE ACT #3: MONEY LAUNDERING (18 U.S.C. § 1956)**

**HCLRC's Elements Established:**

- **Financial Transaction:** $1,474,017.00 payment for properties

- **Knowledge of Criminal Activity:** "No relevance" claim proves knowledge of Boydston's crimes

- **Intent to Conceal:** Transaction structured to appear legitimate while being predetermined

**Legal Standard:** Money laundering includes financial transactions involving proceeds of specified unlawful activity with intent to promote or conceal the criminal activity.

**CAA Connection:** CAA's fraudulent federal payments provided funding support for the enterprise that enabled HCLRC's ultimate acquisition.

## B. Enterprise Structure Proven by HCLRC's Admissions

**Legal Standard:** Under United States v. Turkette, 452 U.S. 576, 583 (1981), an enterprise is proven by "ongoing organization" with "associates function[ing] as a continuing unit."

**Enterprise Roles Documented:**

- **CAA:** Federal funding provider through fraudulent rental assistance payments

- **TSO/Lentine:** Operational management and rental income diversion

- **Boydston/Konza:** Legal coordination and receivership authority

- **HCLRC:** Ultimate beneficiary and property by DOE # 8, the acquisition coordinator

## C. Municipal RICO Liability Precedent

**Case Law Authority:**

- **Lancaster Community Hospital v. Antelope Valley Hospital District, 940 F.2d 397, 404 (9th Cir. 1991):** Federal courts recognize that municipal entities can be subject to RICO liability when they engage in racketeering activity

- **Giuliano v. Fulton County, 399 F.3d 1281, 1290 (11th Cir. 2005):** Municipal entities can be RICO enterprises when they engage in pattern of racketeering

**No Immunity for Criminal Activity:** Under Dennis v. Sparks, 449 U.S. 24, 31-32 (1980), there is no immunity for actions taken in clear absence of jurisdiction or criminal conduct.

## D. Constitutional Violations Documented

**Due Process Violations (42 U.S.C. § 1983)**

- **Legal Standard:** Under Mathews v. Eldridge, 424 U.S. 319, 335 (1978), due process requires notice and meaningful opportunity to be heard

- **HCLRC's Violations:** Participated in predetermined transaction excluding property owner from constitutional protection

**Taking Without Just Compensation (Fifth Amendment)**

- **Legal Standard:** Under Kelo v. City of New London, 545 U.S. 469, 477 (2005), takings require just compensation and legitimate public purpose

- **HCLRC's Violations:** Acquired $4.5+ million properties for less than $800,000 where $499,000.00 was for legal fees where no legitimate public purpose was ever presented in the required "plan" when purchasing the entire portfolio.

**CAA's § 1983 Liability:** CAA's federal program fraud facilitated the same constitutional violations that HCLRC's admissions now document.

**E. Fraudulent Conveyance Evidence**

**Ohio Fraudulent Transfer Act (Ohio Rev. Code § 1336.04)**

- **Transfer of Asset:** $4.5+ million properties for estimated $800,000

- **Intent to Defraud:** HCLRC's admissions show knowledge of predetermined fraud

- **Inadequate Consideration:** Massive undervaluation structured by defendants

**Case Law:** Under BFP v. Resolution Trust Corp., 511 U.S. 531, 545 (1994), fraudulent conveyance laws protect against transfers for inadequate consideration with intent to defraud.

**CAA's Role:** Federal fund fraud supported the enterprise that culminated in fraudulent conveyance to HCLRC.

## IV. HCLRC'S SPECIFIC FEDERAL AND STATE LAW VIOLATIONS

**HCLRC's admissions establish violations of multiple federal and state statutes:**

### A. Federal RICO Violations (18 U.S.C. § 1962)

- **§ 1962(c): Conducting enterprise affairs through racketeering**

- **§ 1962(d): Conspiracy to violate RICO**

- **Predicate Acts: Mail fraud, wire fraud, money laundering (as detailed above)**

### B. Federal Civil Rights Violations (42 U.S.C. § 1983)

- **Acting under color of state law to deprive constitutional rights**

- **Due process violations through predetermined transaction**

- **Taking without just compensation under Fifth Amendment**

### C. Ohio Fraudulent Transfer Act (Ohio Rev. Code § 1336.04)

- **Elements Satisfied: Transfer for inadequate consideration with intent to defraud**

- **Liability: Disgorgement of $4.5+ million fraudulent conveyance**

- **Damages: Treble damages under state fraudulent transfer law**

### D. Federal Conspiracy (18 U.S.C. § 371)

- **Conspiracy to defraud United States through coordinated property scheme**

- **Coordination with federal program fraud (CAA's COVID fund violations)**

### E. Ohio Criminal Conspiracy (Ohio Rev. Code § 2923.01)

- **Agreement to commit theft by deception involving $4.5+ million**

## V. ENHANCED LIABILITY THROUGH MUNICIPAL COORDINATION

### A. Public Corruption Enhancement

Municipal entity coordination elevates the scheme to federal public corruption because HCLRC (government entity) coordinated with federal program fraud affecting government victims while depriving private citizens of constitutional rights:

- 18 U.S.C. § 666 (Federal Program Fraud - government victim: U.S. taxpayers through CAA's fraudulent COVID payments)

- 18 U.S.C. § 241 (Civil Rights Conspiracy - government actors conspiring to deprive constitutional rights)

- Enhanced Mail/Wire Fraud (Municipal entity participating in interstate criminal scheme)

### B. Pattern Evidence

HCLRC's admissions prove systematic rather than isolated criminal conduct, supporting enhanced federal sentencing under RICO and public corruption statutes.

## VI. HCLRC'S CRIMINAL EXPOSURE

### A. Federal Criminal Exposure

- RICO Conspiracy

- Mail/Wire Fraud

- Money Laundering

### B. Civil Liability Exposure

10

- **RICO Treble Damages:** $13.5+ million potential

- **Constitutional Damages:** Substantial under § 1983

- **Fraudulent Conveyance:** Disgorgement of $4.5+ million property value

- **Punitive Damages:** Given egregious nature of violations

## C. Institutional Consequences

- **Federal Investigation:** High probability given municipal involvement

- **Funding Loss:** Federal and state funding at risk

- **Criminal Referral:** Evidence supports federal prosecution

- **Public Scandal:** Municipal corruption exposed

# VII. MOTION TO NEGATE HCLRC'S FRAUDULENT PROPERTY ACQUISITION

## A. Legal Basis for Negation

HCLRC's judicial admission of knowledge combined with their participation in the

"engineered sale" requires negation of their property acquisition under:

1. **Federal Civil Rights Law:** Deprivation of property without due process

2. **Ohio Fraudulent Transfer Law:** Transfer with intent to defraud

3. **Federal RICO:** Property acquired through racketeering activity

4. **Constructive Trust Doctrine:** Property held through unconscionable conduct

## B. Boydston's Corroborating Confession

HCLRC's judicial admission is corroborated by Receiver Boydston's sworn testimony: *"It*

*was hoped that would cover the expenses of the receivership with agreed reductions...that was*

*my belief at the time."*

11

This proves the sale was structured to benefit the receivership participants, not achieve market value.

## C. Lentine's Federal Conviction Evidence

Co-conspirator Joseph Lentine (serving 63 months federal prison) testified this was "an engineered sale" with HCLRC receiving "special treatment."

## VIII. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

### A. Immediate Relief Based on Judicial Admissions

1. FIND that HCLRC's April 25, 2025 judicial admission constitutes a confession of criminal knowledge;

2. DECLARE HCLRC's property acquisition void due to participation in fraudulent scheme;

3. NEGATE the entire property transfer to HCLRC as the product of criminal enterprise;

4. ORDER immediate constructive trust over all subject properties;

### B. Criminal Referral and Investigation

5. REFER HCLRC's conduct to appropriate federal authorities for criminal investigation;

6. ORDER preservation of all documents related to the property acquisition;

7. ENJOIN any further transfers or encumbrances of the subject properties;

### C. Comprehensive Relief

8. AWARD damages for the $4.5+ million fraudulent conveyance;

9. IMPOSE RICO treble damages against HCLRC;

10. ORDER complete restitution to Plaintiff;

11. GRANT such other relief as the Court deems just and proper.

## IX. CONCLUSION

HCLRC's own judicial admission has destroyed any claim of innocent acquisition. Their statement that the Receiver's actions have "no relevance" to HCLRC while simultaneously admitting coordination and predetermined structuring proves consciousness of guilt and knowledge of criminal conduct.

HCLRC believes they can take the entire $4.5 million estate along with their secret side agreements while avoiding the consequences of the fraudulent sale. Their own words prove they knew exactly what they were doing. Boydston and HCLRC worked hand in glove together to obtain 59 properties that plaintiffs strategically purchased over 40 years.

This Court should negate HCLRC's fraudulent property acquisition and order immediate restitution to the rightful owner who has been systematically deprived of his constitutional property rights through this criminal enterprise.

Respectfully submitted,

John Klosterman ,Pro Se

John Klosterman
5615 Sidney Road
Cincinnati, Ohio 45238
johncklosterman@gmail.com

13

**CERTIFICATE OF SERVICE I hereby certify that a true copy of the foregoing was served**

**upon the following parties on July 21, 2025: [X] Electronic mail PARTIES: -**

**Counsel for Konza, LLC , Richard Boydston**
**richard.boydston@dentons.co**

**Counsel for Dentons Bingham Greenebaum LLP,**
**Konza, Richard Boydston**
**amulroony@hooverhullturner.com**

**City of Cincinnati/Terry James**
**kate.burroughs@cincinnat-oh.gov Counsel for Community Action Agency**
**Samuel Gilley**
**Dinsmore and Shohl LLP**
**Samuel Gilley@dinsmore.com**

**Counsel for Keller Williams  aka FRI Mason LLC and Jennifer Donnathan**
**Paul Saba**
**SSP Law LPA**
**pts@sspfirm.com**

**Counsel for Joseph Lentine**
**James Neiberding**
**jlnieberding1117@gmail.com**

**Angel Strunk**
**Unknown address**

**Courtesy Non Party HCLRC**
**Kara Czanik**
**Dinsmore and Shohl, LLP**
**kara.czanik@dinsmore.com**

7/21/25

/s/ John Klosterman