COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | |
|---|---|
| **CITY OF CINCINNATI,**<br>an Ohio municipal corporation,<br><br>Plaintiff,<br><br>v.<br><br>**JOHN KLOSTERMAN a/k/a**<br>**JOHN C. KLOSTERMAN a/k/a**<br>**JOHN CAMPBELL KOSTERMAN, et al.,**<br><br>Defendants. | Case No. A 1905588<br><br>Judge Wende C. Cross<br><br>Chief Magistrate Judge Anita P. Berding |

**SUBSTITUTE PLAINTIFF HAMILTON COUNTY LAND REUTILIZATION CORPORATION'S OBJECTIONS TO MAGISTRATE'S DECISION AS TO TSO, LENTINE AND KONZA CLAIMS AND COUNTERCLAIMS**

Hamilton County Land Reutilization Corporation ("HCLRC"), by and through counsel, pursuant to Civ.R. 53(D)(3)(b), submits its Objections to the Magistrate's Decision ("Decision") on the claims and counterclaims of the Receiver Konza, LLC ("Receiver"), Tri-State Organization Inc. ("TSO"), and Joseph Lentine ("Lentine"). HCLRC objects to the Magistrate's Decision to the extent that it taxes any award to TSO as an administrative cost of the Receivership pursuant to R.C. § 2735.04. The grounds for HCLRC's objections are more fully set forth below.

**I. BACKGROUND AND FACTS**

The underlying Receivership has been in existence for over **five years**. On February 14, 2020, the Court appointed the Receiver to take possession of fifty-nine tracts of land in the Sedamsville neighborhood (the "Properties"). Order Appointing Receiver (entered Feb. 14, 2020). That Order gave the Receiver certain powers to administer the Properties, which included the power to "retain contractors . . . to make repairs to the Properties and to Maintain the Properties."


EXHIBIT A pg 7

*Id.* ¶ 3. Unfortunately, the Receiver elected to maintain TSO, which was in place before the Receiver was appointed. The Receiver and TSO proceeded without a written contract. Magistrate's Decision as to TSO, Lentine & Konza ("Decision") at 4–5 (filed Apr. 11, 2025). Under their arrangement, TSO purportedly collected rents from the Properties but never actually tendered them to the Receiver. *Id.* at 3; Affidavit of Richard Boydston ¶¶ 13–14 (filed June 5, 2023). According to TSO's proprietor Lentine, TSO immediately applied the rents as reimbursement for its own costs in maintaining the Properties. Decision at 8. TSO's retention of rents resulted in TSO obtaining at least $437,799.42 of income. *See* HCLRC's Memorandum in Opposition to TSO and Lentine's Application for Payment of Costs, Expenses, and Fees (filed June 5, 2023). The Receiver proceeded with this arrangement for nearly two years, until terminating TSO on January 20, 2023. *See* Decision at 2.

The Order Appointing Receiver also entitled the Receiver "to **reasonable** compensation for services rendered and to reimbursement for expenses incurred, all as approved by the Court." *Id.* ¶ 18 (emphasis added). Accordingly, the Receiver was supposed to file monthly reports with the Court detailing activities and expenses. *Id.* ¶ 21. The Receiver filed thirty-nine monthly reports, between March 2020 and May 2023. These reports do not detail the Receiver's own reimbursement, most noting only that "[t]he Receiver has incurred fees for work as receiver," that "[a]n itemization of fees and expenses will be submitted for approval by the Court," and that, "[u]ntil there is improvement of cash flow . . . , no request for approval of payment of those fees and expenses will be sought by the Receiver." *E.g.,* Receiver's Thirty-Second Report at 1 (filed November 7, 2022). Indeed, under the Receiver's arrangement with TSO, the Receiver was operating the Properties **at a loss**, as TSO claimed the income did not support the upkeep required. *See* Decision at 3, 8.

2

On September 26, 2022, pursuant to R.C. § 2735.04(D)(1)(a), the Receiver moved to approve the sale of the Properties to HCLRC, which the Court approved on October 19, 2022. Under the terms of the sale, HCLRC paid $1,474,017.00 to purchase the Properties "**free of all liens, claims, charges and encumbrances** . . . , except for real estate taxes . . . on the Propert[ies]." Motion to Approve Sale (filed Sept. 26, 2022), Ex. A at 1–2. Out of the purchase price, $674,017.00 was paid to satisfy the underlying foreclosure judgment. *Id.* The remaining $800,000.00 went to closing costs, the balance on a mortgage, and "**all costs expenses and fees, as approved by the Court, payable to or for the benefit of Konza, LLC.**" *Id.* On December 5, 2022, the Receiver filed an application to have his expenses and fees paid, in the amount of **$499,717.76**. The Court approved the Receiver's application on December 22, 2022, leaving $85,960.00 as the sole remaining asset of the Receivership Estate.

The purchase agreement between the Receiver and HCLRC specifically set aside amounts for the Receiver's "expenses," including expenses "payable . . . for the benefit of" the Receiver. This includes any expenses for the "contractors" retained by the Receiver, and the sum set aside from the purchase price should have been more than sufficient to cover the Receiver's reimbursement, meaning all fees, costs, and expenses for maintaining the Properties through the sale. Sadly, after receiving nearly a half million dollars, the Receiver asked for more.

The Receiver filed a *separate* application for TSO's expenses. Motion by Receiver for Approval of Fees and Expenses of Tristate Organization, Inc. (filed Dec. 5, 2022). Despite taking $437,799.42 in income from the Properties, TSO asserted that it had been undercompensated by roughly $156,441.20. *Id.* at 2. In other words, TSO alleged that it and the Receiver operated the Properties **at a loss** for nearly two years, resulting in a $156,441.20 deficiency. The Receiver did not consult the Court before incurring this deficiency, nor did he consult the Parties about incurring

3

this deficiency, nor did he incorporate this deficiency into his own application for fees. The Receiver's separate application for TSO acknowledges that HCLRC disputed TSO's accounting. *See id.* at 2–3. While HRLRC requested additional documentation from TSO, the Receiver does not appear to have conducted any investigation beyond facilitating HCLRC's request. In effect, the Receiver's separate application for TSO deferred the issue, which led to TSO and Lentine filing numerous applications, motions, and collateral actions.[1]

The sale of the Properties to HCLRC closed on May 1, 2023. *See* Report of Sale (filed May 22, 2023). Pursuant to R.C. § 2735.04(D)(1)(a), the sale was free and clear of any and all liens, with the sole exception of outstanding real estate taxes. HCLRC took possession of the Properties, which are no longer assets of the Receivership Estate. (Again, the only remaining asset in the Receivership Estate is $85,960.00 held in a trust account.) Five months after HCLRC took possession of the Properties free and clear, on September 8, 2023, the Receiver filed a second application for reimbursement for $104,438.75. Taking into account the claims of TSO, Lentine,

---

[1] After TSO's termination, Lentine filed a number of procedurally invalid attempts to collect additional payments:

- March 2, 2023: a Motion for Demand for Payment (denied by Magistrate's Order, March 16, 2023 without objection);
- March 2, 2023: a Motion for Leave of Court to file a collateral action in the Southern District of Ohio (denied by Magistrate's Order, March 16, 2023 without objection);
- March 2, 2023: a Motion for Temporary Restraining to halt evictions in Sedamsville (denied by Magistrate's Order, March 16, 2023 without objection);
- March 2, 2023: a Motion to Vacate Order Approving HCLRC as Substitute Plaintiff and Motion for Order Denying Sale of Klosterman Properties to HCLRC (denied by Magistrate's Order, March 16, 2023 without objection);
- March 14, 2023: a Motion to Intervene;
- March 23, 2023: a Motion to Intervene;
- March 23, 2023: a "Filing" by Lentine again demanding payment;
- May 5, 2023: an Application for Payment of Costs, Expenses and Fees of Tri State Organization Inc.; and
- June 20, 2023: an Amended Motion to Intervene.

TSO and Lentine also filed a federal lawsuit in the Southern District of Ohio, *Tri-State Organization Inc. v. Konza LLC*, S.D. Ohio 1:23-cv-00777-DRC, which they voluntarily dismissed. On September 22, 2023, TSO and Lentine moved to assert claims against the Receiver, which the Court granted on March 21, 2024. Those claims were ultimately tried and resulted in Magistrate's Decision to which HCLRC presently objects.

4

and the Receiver, which regardless of their merits or lack thereof after operating at a loss, the Receivership Estate would be at a deficiency of $75,749.93. Despite the deficiency, the Receiver has asked for additional compensation – even though it received compensation of nearly half a million dollars, and that its expenditures were incurred litigating with the contractor it did not sufficiently monitor, without any written contract governing the relationship.

In January and February 2025, the Court held a trial on the issue of the outstanding deficiency amount alleged by TSO. The resulting Magistrate's Decision awarded TSO $57,271.18, holding that the Receiver had been unjustly enriched. Decision at 12.. According to the Decision, the Receiver operated the Properties at a loss, and TSO was therefore entitled to compensation for services provided beyond the value of rent collected. *Id.* at 3–5. The Decision specified that the award to TSO should be taxed as an administrative cost pursuant to R.C. § 2735.04.

## II. ARGUMENT

The Receivership Estate (and, in particular, the Properties that HCLRC purchased out of the Receivership) should not be responsible for additional costs not contemplated during the sale of the Properties. The purchase agreement between HCLRC and the Receiver provided for specific assets to cover all costs, fees, and expenses incurred—including the expenses incurred by the Receiver's contractor, TSO. Taxing the award to TSO as an administrative cost will make the Receivership Estate insolvent. With the Receiver's pending second application, the Estate already faces claims for $18,478.75 more than it has. Adding the $57,271.18 awarded as an administrative cost saddles HCLRC with burdens to which it did not agree, and which were not contemplated by the purchase contract nor by the Order approving the sale. HCLRC objects to any liability for administrative costs beyond the funds of the Receivership Estate held in escrow. Saddling HCLRC

with costs that could have been avoided when it's purchase agreement, approved by the Court, and the Order approving the sale made clear that HCLRC was taking the Properties free and clear is both inequitable and contrary to R.C. § 2735.04(D)(1)(a).

"The purpose of a receivership is to conserve property pending an ultimate disposition of it by the court." *United States Bank, N.A. v. Gotham King Fee Owner, LLC*, 8th Dist. No. 98618, 2013-Ohio-1983, 2013 Ohio App. LEXIS 1859, ¶ 16 (May 16, 2013). While courts grant receivers broad powers to accomplish their purpose, their purpose remains <u>limited</u>: "to maintain the status quo regarding the property in controversy and to safeguard said property from being dissipated." *Id.* Accordingly, receivers <u>do not</u> have "broad discretionary power" to "reorganize troubled concerns." *Id.* Certainly, receivers do not have the discretion to operate a business **at a loss** without incurring some liability to the estate. *See Cole v. Up-to-Date Tailoring Co.*, 25 Ohio N.P. (n.s.) 481, 1925 Ohio Misc. LEXIS 1469, at *2–6 (Hamilton Cnty. C.P. July 1925) ("When . . . the receiver[] discovered that the business could not be carried on without loss, . . . it was his plain duty to so advise the court. **No prudent man would hold property, knowing it was surely being eaten up by expenses.**" (emphasis added)). Such a breach of duty can make the Receiver personally liable for losses. *Id.* at *6.

Moreover, "if the expenditures are extraordinary, and involve a large outlay of money, the receiver should first apply to the court and obtain authority for making the expenditures." *Am. Sav. Bank Co. v. Union Tr. Co.*, 124 Ohio St. 126, 130–31 (1931). Notice of large expenditures is especially important when the expenditure could be taxed as administrative cost, as this could have the effect of altering the terms of a property sale or encumbering property after sale. *Id.* at 130 ("The parties in interest must be held to have known that the ordinary costs of the action, including reasonable fees for the receiver and his attorney, would follow the suit; but, . . . [they] apparently

6

did not know until after the sale that these extraordinary expenditures would be allowed as costs, thus becoming a lien upon the property, to be deducted from the bid price."). To the extent that large expenditures surprise the parties, it is inequitable to tax them as administrative costs. *Id.*

Here, taxing the $57,271.18 award as an administrative cost is simply inequitable. The Court tasked the Receiver with preserving the Properties and to "maintain the status quo." The Court did not authorize the Receiver to operate the Properties as a failing business concern. The Receiver permitted TSO to collect all rent and spend that money at TSO's discretion, allegedly resulting in a net loss for the Properties. A cash deficiency from operating a business at a loss for two years is not a "reasonable expense," and the Receivership Estate should not be responsible for this lack of prudence.

Moreover, the Receiver never approached the Court or the Parties with the possibility that TSO's deficiency could become an administrative cost saddled by the Estate. Instead, the Receiver filed a separate application for payment, noted HCLRC's objections, and moved forward with the sale. That sale set aside significant sums of money to cover costs, fees, and expenses owed to the Receiver, and the Receiver obtained $499,717.76 in reimbursement. Now, nearly two years after HCLRC paid for the properties, HCLRC faces additional costs that risk making the Estate insolvent by a margin of $75,749.93. It has the effect of rewriting the sale, adding costs not contemplated by the Parties after the fact.

Put simply, the Receiver's actions and expenses in performing his duties have no relevance to and cannot be attributed to HCLRC. Pursuant to the sale contract, the order approving the sale and R.C. 2735.04(D)(1)(a), HCLRC purchased the Properties free and clear of **all** liens, claims and interests (except taxes). This includes any claims or interests of the Receiver or any other party in this case. Neither HCLRC nor the Properties should be forced to absorb or incur fees and

7

other expenses that arose prior to HCLRC's purchase of the Properties free and clear of all liens, claims and interests. Finding otherwise would directly contradict the express terms of the sale contract, the order approving the sale and the requirements in R.C. § 2735.04(D)(1)(a).

Under these circumstances, it is inequitable and legally improper to tax the award to TSO as an administrative cost against HCLRC. The Court should assess the award as damages to be paid by the Receiver.

### III. CONCLUSION

For the foregoing reasons, Substitute Plaintiff Hamilton County Land Reutilization Corporation objects to the Magistrate's Decision, to the extent that the Decision taxes the award to TSO as an administrative cost pursuant to R.C. § 2375.04.

Respectfully submitted,

/s/ Kara A. Czanik
Kara A. Czanik (0075165)
Brian E. Schultz (0102339)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel: (513) 977-8200
Fax: (513) 977-8141
kara.czanik@dinsmore.com
brian.schultz@dinsmore.com
*Counsel for Hamilton County
Land Reutilization Corporation*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a true and accurate copy of the foregoing were served upon the following parties via U.S. Mail this 25th day of April, 2025:

James L. Nieberding, Esq.
Nieberding & Nieberding Co LPA
810 Sycamore St., Suite 423
Cincinnati, Ohio 45202

Richard Boydston, Esq.
Dentons Bingham Greenebaum LLP
312 Walnut St., Suite 2450
Cincinnati, Ohio 45202-4028

Christian D. Donovan, Esq.
Luper Neidenthal & Logan
1160 Dublin Road, Suite 400
Columbus, OH 43215-1052

James S. Sayre, Esq.
230 East Ninth Street, Suite 4000
Cincinnati, OH 45202

John Klosterman
5615 Sidney Rd.
Cincinnati, Ohio 45238

Kate Burroughs, Esq.
Shannon Price, Esp.
Erica Faaborg, Esq.
Counsel for City of Cincinnati
214 City Hall
801 Plum Street
Cincinnati, OH 45202

Amy K. Kaufman, Esq.
150 East Gay Street
Columbus, OH 43215-3130

Teresa Perkins, Esq.
222 E. Central Pkwy. 6NW711
Cincinnati, Ohio 45202

*/s/ Kara A. Czanik*
Kara A. Czanik (0075165)