UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN KLOSTERMAN, | : | Case No.  1:25cv312 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | **MOTION TO DISMISS AMENDED** |
| | : | **COMPLAINT BY DEFENDANTS** |
| KONZA, LLC, et al., | : | **CITY OF CINCINNATI AND TERRY** |
| | : | **JAMES PURSUANT TO FED. R.** |
| Defendants. | : | **12(B)(6)** |

---

Defendants City of Cincinnati and Terry James (hereinafter, collectively "City Defendants"), by and through undersigned counsel, respectfully request the Court dismiss all claims alleged against the City Defendants in Plaintiff John Klosterman's Amended Complaint (Doc. 33), pursuant to Federal Rule of Procedure 12(B)(6). A Memorandum in Support is attached to the Motion.

Respectfully submitted,

**EMILY SMART WOERNER (0089349)**
**CITY SOLICITOR**

*/s/ Rebecca P. Salley*
Rebecca Salley (0097269)
Johnnie Fitzpatrick (0100476)
Mark Manning (0088331)
Assistant City Solicitors
801 Plum Street, Suite 214
Cincinnati, OH 45202
Phone: (513) 352-4576
Fax: (513) 352-1515
johnnie.fitzpatrick@cincinnati-oh.gov
rebecca.salley@cincinnati-oh.gov
mark.manning@cincinnati-oh.gov
*Counsel for City of Cincinnati and Terry James*

i

## TABLE OF CONTENTS

I.   STATEMENT OF THE CASE .................................................................. 1

III. LEGAL STANDARD ON A MOTION TO DISMISS .............................. 6

IV.  ARGUMENT ........................................................................................ 7

    A.   Plaintiff's Claims are Barred by the *Rooker-Feldman* Doctrine. ................ 7

    B.   Plaintiff's Claims are Barred by Collateral Estoppel. ............................... 9

    C.   Plaintiff Has Not Sufficiently Alleged RICO Conspiracy. ......................... 11

        i.   *The City, a government entity, is incapable of forming intent to engage in racketeering.* .......................................................................... 12

        ii.   *Plaintiff fails to allege City Defendants were part of an enterprise.* ...... 12

        iii.   *Plaintiff fails to allege the City Defendants engaged in racketeering activity or a pattern thereof.* .......................................................... 13

        iv.   *Plaintiff fails to plead City Defendants' conduct caused his injury.* ...... 16

    D.   Plaintiff's Constitutional and State Law Claims are Barred Because Plaintiff Failed to Administratively Exhaust Enforcement Orders. .................... 16

    E.   Plaintiff Has Not Sufficiently Alleged Claims Under 42 U.S.C. § 1983. ....... 17

        i.   *Plaintiff's Section 1983 Claims are Time-Barred.* ........................... 17

        ii.   *Plaintiff fails to allege facts to state constitutional violations.* ............ 19

        iii.   *Plaintiff's Amended Complaint fails to plead Monell liability.* .............. 22

    F.   Plaintiff Has Not Sufficiently Alleged a Claim Under 42 U.S.C. § 1985. ...... 23

    G.   Plaintiff's State Law Claims Must Be Dismissed. ................................... 24

        i.   *R.C. 2744.04(A) Time Bars Plaintiff's State Law Claims.* ............... 24

        ii.   *The City is immune to intentional torts and negligence claims for the performance of governmental functions under Ohio law.* ................... 25

        iii.   *Terry James is entitled to immunity under Ohio law.* ....................... 27

        iv.   *Plaintiff has Failed to Plead Facts in Support of His Tort Claims.* ........ 28

V.   CONCLUSION ...................................................................................... 29

4919-2603-0165, v. 2

## MEMORANDUM IN SUPPORT

## I. STATEMENT OF THE CASE

Plaintiff John Klosterman, frustrated by his deposition as the king of a dominion of distressed, deteriorating properties in Cincinnati's Sedamsville neighborhood, asks this Court to unravel the results of multiple state and federal court lawsuits. As adjudicated in *United States v. Klosterman*, Case No. 1:18-CV-194 (S.D. Ohio) and *City of Cincinnati v. John Klosterman, et al*, Hamilton Cty. Common Pleas Case Nos. A1703772 and A1905588, Mr. Klosterman ordered his fiefdom around the relentless sexual harassment of low-income tenants and a persistent refusal to address unsafe and blighted conditions at the properties he owned and managed. In a variation on a familiar theme, Plaintiff's Amended Complaint (Doc. 33), filed June 27, 2025, attempts to draw the City of Cincinnati and its retired building inspector employee, Terry James into a lawsuit alleging a vast conspiratorial "land grab" accomplished via a court-ordered receivership resulting in the court-approved sale of Plaintiff's properties. Capitalizing on the prosecutions of Joseph Lentine III and Angel Strunk, two employees of Tri-State Organization ("TSO"), a business hired by the receiver ("Konza, LLC," or "Receiver") to manage receivership properties, Plaintiff repackages prior unsuccessful attempts to implicate the City in criminal activity.

Plaintiff has already litigated and lost claims on the core theory of conspiracy he asserts in this lawsuit. Only a few paragraphs and stray references in the Amended Complaint address City Defendants. Plaintiff alleges "James/City issued fraudulent condemnations" as part of an "association-in-fact [criminal] enterprise,"

1

(Doc. 33, PageID#368), and the City "failed to supervise James' fraudulent condemnations." (*Id.*, PageID#371). The substantive allegations against the City Defendants stem from Terry James' issuance in 2020 of vacate orders at 621 Delhi, a non-receivership property, due to significant structural decay making it unsafe for tenants. The allegations total as follows:

> 26. Defendant Terry James allegedly at the urging of Boydston, and issued fraudulent condemnation notices for 621 Delhi Avenue despite a GEI engineering report confirming structural safety. (Exhibit P: GEI structural engineering report).
> 27. Former tenant Randy Hatfield provided an affidavit stating James later admitted "we didn't have to go through all this, because the building was structurally safe." (Exhibit Q: Randy Hatfield affidavit)
> 28. This fraudulent condemnation destroyed rental income and property value due to vandalism on a vacant building.

(*Id.*, PageID#367).

Based on these thin allegations, Plaintiff seeks money damages, "dismissal" of state court judgments, and fees against the City Defendants on eight claims, including 18 U.S.C. § 1962(c) and (d), 42 U.S.C. § 1983 and 1985, conversion, fraud, intentional infliction of emotional distress, and negligent supervision. As a threshold matter, the relief sought by Plaintiff Klosterman is largely outside the jurisdiction of the federal courts, barred by the *Rooker-Feldman* doctrine, collateral estoppel, and failure to exhaust available administrative remedies under state law. The events described in the Amended Complaint occurred outside the applicable statutes of limitations, and Plaintiff's claims are largely barred by straightforward application of immunity doctrines. Ultimately, Plaintiff provides only the most barebones and

2

conclusory allegations to undergird his claims and fails to state any claim against the City Defendants. Plaintiff's claims against the City Defendants must be dismissed.

## II.    PROCEDURAL BACKGROUND[1]

In 2017, following decades of enforcement actions to abate nuisances at Plaintiff's properties, the City exercised its statutory right to file an action ("Collection Action") to recover costs it incurred to abate those nuisances, as well as unpaid fees, water bills, and fines incurred at Plaintiff's properties.[2] After the state court awarded summary judgment in the City's favor in the Collection Action, the City sought to enforce its certified judgment by filing a foreclosure action ("Foreclosure") against John Klosterman's properties on November 25, 2019.[3]

In December 2019, the City's Building Department received an anonymous complaint about possible building code violations at 621 Delhi, a residential rental property managed and owned by Plaintiff through a limited liability company. Building inspector Terry James, a City employee, was assigned to the case and began a nine-month course of inspecting the property, issuing multiple notices of violation to Plaintiff including orders to vacate tenants from the property, and monitoring Plaintiff's non-compliance with those orders. Other inspectors took over enforcement activity at 621 Delhi after September 2020. 621 Delhi was not named in the Foreclosure action and the City did not seek to enforce a lien on the property. Plaintiff never administratively appealed the vacate orders on 621 Delhi.

---

[1] References to docket entries in this section are to the Foreclosure action, *City of Cincinnati v. John Klosterman*, Hamilton Cty. Common Pleas Case No. A1905588, unless otherwise specified. The Common Pleas Court identifies filings by date and does not assign a docket number. Filings are available online at https://www.courtclerk.org
[2] *City of Cincinnati v. John Klosterman*, Hamilton Cty. Court of Common Pleas Case No. A1703772 (Jul. 19, 2017)
[3] *City of Cincinnati v. John Klosterman*, Hamilton Cty. Common Pleas Case No. A1905588; CJ 19003416.

On February 14, 2020, the Hamilton County Court of Common Pleas exercised statutory authority to appoint the Receiver to control and maintain the properties during the pendency of the Foreclosure.[4] On February 24 and 28, 2020, Plaintiff filed motions to vacate the order appointing the Receiver and for an emergency stay of the order, alleging, in part, that the City engaged in a conspiracy to obtain judgment against Plaintiff in order to force divestment of his properties made "false representations" about the conditions at his properties, including issuance of code violations made "capriciously, maliciously, and retalitorily." (*sic*). (Ex. A, Mot. to Vacate Order Appointing Receiver (Feb. 24, 2020). *See also*, Emer. Mot. to Stay Order Appointing Receiver (Feb. 28, 2020)). Plaintiff then filed and withdrew an appeal of the court's Order Appointing Receiver. (Ex. B, Notice of Appeal (Feb. 28, 2020) and Notice of Withdrawal of Appeal, 1st Dist. No. C200100 (Apr. 1, 2020)).

On February 26, 2020, Plaintiff filed a federal lawsuit in this Court, alleging the City was engaged in a "'money-grab' scheme" to force the sale of his properties, selectively enforced the building code against him, and that the City's building code enforcement administrative process violated his due process rights. *See* Ex. C, Am. Compl., *Klosterman v. Sedamsville Community Development Group, et al.*, Case No. 1:20-cv-119 (S.D. OH.). This Court dismissed all claims in November 2020.[5]

Plaintiff raised objections and allegations of fraud and conspiracy against the City, the Receiver, TSO, and others throughout the Foreclosure action, which the

---

[4] *See* Defs.' Mot. For Judicial Review, Doc. 13-1, Ex. A, Order Appointing Receiver (Feb. 14, 2020).

[5] Ex. D, ECF 67 & 68, Report & Recommendation ("R&R) and Order Adopting R&R, *Klosterman v. Sedamsville Community Dev. Grp., et al.*, Case No. 1:20-cv-119 (S.D. OH.). Plaintiff filed a federal lawsuit in November 2020 against the Receiver, TSO, and Richard Boydston which was dismissed on jurisdictional grounds. *See* ECF 9 & 12, R&R and Order Adopting R&R, *Klosterman v. Boydston, et al.*, Case No. 1:20-cv-878 (S.D.OH.)

4

state court considered.[6] Defendants Lentine and Strunk were, in fact, federally prosecuted on fraud charges related to COVID-19 relief loans incurred through multiple business entities, with criminal complaints filed against each of them in August 2021. *United States v. Lentine*, No. 1:21-mj-0633-KLL (S.D. Ohio Aug. 31, 2021); *United States v. Strunk*, No. 1:22-cr-00070 (S.D. Ohio Aug. 31, 2021). No City employee was arrested or indicted for criminal activity in relation to that scheme. The state court entered an Order and Final Decree granting summary judgment on the City's foreclosure claims on October 7, 2021, after Plaintiff was provided opportunity to be heard on the issue. (*See* City Mem. in Opp to Def.'s Mot. for Continuance (Sep. 27, 2021), at 1-2). In a final appealable order, the Court rendered judgment in the City's favor, finding City liens on receivership properties valid, and ordering foreclosure sale of all receivership properties.[7] Plaintiff did not appeal.

On December 7, 2021, Plaintiff filed an untimely appeal in the Common Pleas Court of several magistrate decisions relating to the appointment of the Receiver and sale of the properties, alleging fraud, due process violations, and "criminal enterprise" against most of the Parties named in this suit—though notably not the City Defendants. (Notice of Appeal, C2100645 (Dec. 7, 2021); Entry Denying Mot. Appeal and Dismissing Appeal C2100645 (Jan. 12, 2022)). The magistrate also dismissed Plaintiff's January 4, 2022 Motion to Dismiss, which alleged the City engaged in fraudulent or conspiratorial activity with Strunk, Lentine, and Boydston. (Ex. H,

---

[6] *See e.g.,* Mot. to Replace Receiver (Aug. 17, 2020), denied Sep. 16, 2020; Ex. E, Mot. to Alter or Amend J. (Sep. 30, 2020) and Entry Denying Mot. to Alter or Amend J. (Aug. 17, 2021); Ex. F, Mag. Order on Defendant John C. Klosterman's Motions (Nov. 3, 2021). Plaintiff filed dozens of motions raising similar issues and arguments.
[7] Ex. G, Entry Adopting Mag. Decision and Final Decree in Foreclosure (Oct. 7, 2021), at 43.

Mot. to Dismiss; Ans. City Mot. to Dismiss (Jan. 4, 2022) and Mag. Order Denying Klosterman Motion to Dismiss (Feb. 10, 2022)).

Following the City's May 2022 assignment of its judgment lien to the Hamilton County Land Reutilization Corporation ("the Landbank"), the Court permitted the substitution of the Landbank as Plaintiff in place of the City. (Ex. I, Assignment of Judgment (May 20, 2022) and Order Granting Mot. to Sub. Party Plaintiff (Oct. 19, 2022)). The City was no longer a party to the Foreclosure action.

In October 2022, three years after the initiation of the Foreclosure, and after entertaining hearings and motions on the issue, the magistrate approved the Receiver's motion to sell the properties in the receivership to the Landbank.[8] Plaintiff filed objections to the Receiver's motion and magistrate's appealable order on distribution of sale proceeds, but did not file an appeal; the court construed the objection as a motion to set aside and denied the motion.[9] The sale closed in May 2023. Though the Foreclosure action is still pending, neither the City nor John Klosterman are parties to the remaining disputes, which resulted in a February 2025 bench trial on breach of contract claims between Konza, Lentine, and TSO.[10]

## III.    LEGAL STANDARD ON A MOTION TO DISMISS

Under 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed if it fails to state a valid claim against the defendant. Fed. R. Civ. P.

---

[8] Receiver Mot. to Approve Sale (Sep. 26, 2022); Notice of Hearing on Mot. to Approve Sale (Oct. 3, 2022); Mag. Order on Mot. By Receiver to Approve Sale (Oct. 19, 2022).
[9] Klosterman Obj. to Receiver's Mot. for Approval of Fees and Expenses of TSO (Dec. 14, 2022); Mag. Order on Mot. by Receiver for Approval of Fees and Expenses and Order Directing Payment (Dec. 20, 2022); Klosterman Obj. to Mag. Order to Distribute Fraudulent Sales Funds to Receiver and Richard Boydston (Dec. 28 2022); Entry Denying Klosterman Mot. to Set Aside Mag. Order (Jan. 18. 2023)
[10] Mag. Decision as to TSO, Lentine, & Konza Claims & Counterclaims (Apr. 11, 2025), adopted Jul. 22, 2025.

12(b)(6). When considering a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). The Court need not, however, accept as true legal conclusions or unwarranted factual inferences. *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1988). A pro se plaintiff's claims are subject to dismissal if the complaint does not "allege with any degree of specificity which of the named defendants were personally involved in or responsible for each" alleged violation of rights. *Frazier v. Michigan*, 41 Fed. Appx. 762, 764 (6th Cir. 2002).

## IV. ARGUMENT

The claims against the City of Cincinnati and Terry James in Plaintiff's Amended Complaint should be dismissed in their entirety. This Court does not have jurisdiction to unwind the state court judgments at issue. Each of Plaintiff's claims is barred by collateral estoppel and statutes of limitations. Plaintiff fails to adequately plead his RICO claim. Finally, his constitutional and state law claims are barred by applicable immunity doctrines and failure to exhaust his administrative remedies, and are not supported by facts.

### A. Plaintiff's Claims are Barred by the *Rooker-Feldman* Doctrine.

Plaintiff, having been identified as a vexatious litigator in Ohio's state courts,[11] now seeks relief the federal courts cannot provide. The *Rooker-Feldman* abstention

---

[11] *See* Jul. 10, 2023 Mag. Decision Granting HCLRC's Mot. S.J., *Hamilton Cty. Land Reutilization Corp. v. John Klosterman*, Hamilton Cty. Common Pleas Case No. A2300473 (declaring Klosterman a vexatious litigator under Ohio Rev. Code 2323.52).

7

doctrine "prevents the lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced." *Dates v. HSBC*, 721 F. Supp. 3d 616, 625 (S.D. Ohio 2024) (citing *Abbott v. Michigan*, 474 F.3d 324, 328 (6th Cir. 2007)); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *Patmon v. Michigan Supreme Court*, 224 F.3d 504, 506-07 (6th Cir.2000). A party raising a federal question must appeal a state court decision through state courts and then proceed directly to the Supreme Court of the United States. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983); *Rooker*, 263 U.S. at 415-16.

Federal courts also lack jurisdiction to review constitutional claims that are inextricably intertwined with the state court's decision. *Feldman*, 460 U.S. at 486-87; *Patmon*, 224 F.3d at 509-10. While parties can collaterally allege that a law or statute is unconstitutional, plaintiffs cannot relitigate in federal court the application of those laws from state court proceedings. *Jenkins v. City of Burlington*, 2011 U.S. Dist. LEXIS 51706, at *12 (E.D. Ky. May 12, 2011). *See also Patmon*, 224 F.3d at 509-10. This Court recently abstained from exercising jurisdiction over a nuisance property owner's federal lawsuit, because the complaint alleged that city defendants "violated [plaintiff's] constitutional rights when they engaged in the very activities the state court approved." *Akil Childress v. City of Cincinnati*, 765 F. Supp. 3d 662, 687 (S.D. Ohio Feb. 10, 2025).

Here, the core of Plaintiff's claims is that government and private Defendants "manipulat[ed]" the "court-appointed receivership" to accomplish a conspiratorial

8

"land grab" in the Foreclosure action. (Doc. 33, PageID#368,373). The Hamilton County Court of Common Pleas established and has overseen the Receivership during the pendency of the Foreclosure, pursuant to the governing state procedural statute, Ohio Rev. Code § 2735.01, and the Court's Order Appointing Receiver.[12] The relief Plaintiff seeks on each claim—including a "declaration that the 'engineered sale' was fraudulent" and money damages which would directly undermine the state court's Foreclosure decree and rulings on Receivership issues. (Doc. 33, PageID#376)—would require this Court to "undo" the findings of the state court. *Childress*, 765 F. Supp. 3d at 685. Plaintiff seeks review of issues "inextricably intertwined" with the state court's decisions, which is not permissible. *See Patmon*, 224 F.3d at 510. This Court does not have jurisdiction to review Plaintiff's claims against City Defendants and his claims should be dismissed.

### B. Plaintiff's Claims are Barred by Collateral Estoppel.

Federal courts must give the same preclusive effect to state-court judgments and decisions as those judgments and decisions would receive in the state courts. 28 U.S.C. § 1738; *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007); *Young v. Twp. of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006). The preclusive effect of a state court judgment is determined by that state's law. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under Ohio law, the doctrine of *res judicata* dictates that:

> [A] final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a

---

[12] The preclusive effect of the state court's consideration is discussed *infra*, Section IV.B.

> complete bar to any subsequent action on the same claim or cause of
> action between the parties or those in privity with them.

*Johnson's Island, Inc. v. Bd. of Twp. Trustees*, 431 N.E.2d 672, 674 (1982). Application

of the doctrine of *res judicata* does not depend on whether the original claim explored

all possible theories of relief. *Brown v. Dayton*, 2000-Ohio-148, 730 N.E.2d 958, 962

(2000). Rather, "a valid, final judgment upon the merits of the case bars any

subsequent action 'based upon any claim arising out of the transaction or occurrence

that was the subject matter of the previous action.'" *Grava v. Parkman Twp.*, 1995-

Ohio-331, 653 N.E.2d 226, 231 (1995). Furthermore, "[w]here a claim could have been

litigated in the previous suit, claim preclusion also bars subsequent actions on that

matter." *O'Nesti v. DeBartolo Realty Corp.*, 2007-Ohio-1102, ¶ 6, 862 N.E.2d 803, 806

(2007).

Plaintiff's claims against the City Defendants are barred by res judicata, since

Plaintiff either raised or should have raised each claim in a prior action. Repeatedly

in the Foreclosure action, Plaintiff raised his claims that the City engaged in a

conspiracy to divest Plaintiff of his properties, that the City "materially mispresented

facts" to the state court, and that code violations were issued against his properties

with "no basis in fact."[13] Plaintiff's ownership interests in the Foreclosure properties

were conclusively litigated in the Foreclosure action. In his federal lawsuit, Plaintiff

raised constitutional challenges to City building code enforcement activities,

including for excessive fines and fees and due process violations. Plaintiff now seeks

to weave his untimely allegations against James into the same conspiracy narrative

---

[13] *See supra* Section II; *see e.g.*, Exs. A, B, E, F, H.

he presented in the Foreclosure action and his 2020 federal lawsuit.[14] All claims in Plaintiff's Amended Complaint are part of "the same transaction or occurrence that was the subject matter of []previous action[s]" and should be dismissed.

### C. Plaintiff Has Not Sufficiently Alleged RICO Conspiracy.

Plaintiff's claims against the City Defendants for civil RICO violations under 18 U.S.C. § 1962(c) and (d) are not sufficiently pleaded and must be dismissed. Plaintiff has failed to allege the City Defendants were part of an enterprise, took part in a pattern of racketeering activity, or that such activity proximately caused him injury.

Plaintiff summarizes his allegation of illegal acts against City Defendants as follows: "James/City issued fraudulent condemnations." (Doc. 33, PageID#368). To plead a RICO conspiracy under 18 U.S.C. § 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *West Hills Farms, LLC v. ClassicStar Farms, Inc. (In re ClassicStar Mare Lease, Litig.)*, 727 F.3d 473, 483, 2013 U.S. App. LEXIS 14518, *17 (6th Cir.), 2013 WL 3746220. Additionally, "civil RICO plaintiffs must show that the RICO violation was the proximate cause of the injury to their business or property." *In re ClassicStar Mare Lease, Litig.*, 727 F.3d 473, 484.

In addition to the claim under 18 U.S.C. 1962(c), Plaintiff's Count II alleges a claim against the City Defendants under 18 U.S.C. § 1962(d). To state a claim under 18 U.S.C. 1962(d), which makes it unlawful to conspire to violate 1962(a)-(c), a

---

[14] *See infra*, Section IV.E: James issued orders to vacate 621 Delhi by posting and mailing to Plaintiff in January 2020. Plaintiff filed his federal lawsuit on February 26, 2020.

4919-2603-0165, v. 2

plaintiff "must…plausibly allege all the elements of a substantive RICO violation." *Kerrigan v. Visalus, Inc.*, 112 F. Supp. 3d 580, 611 (E.D. Mich 2015). Because Plaintiff has failed to plausibly allege the elements of his claims against City Defendants under 1962(c), he cannot state a claim under 1962(d).

### i. *The City, a government entity, is incapable of forming intent to engage in racketeering.*

As a threshold matter, lower courts in the Sixth Circuit have held that "a governmental entity is incapable of forming the malicious intent necessary" to state a civil RICO claim, making Plaintiff's RICO claim against the City untenable. *See Hammoud v. Cnty. of Wayne*, Case No. 15-cv-14461, 2016 U.S. Dist. LEXIS 117831, *16 (E.D. Mich. Sep. 1, 2016); *Mathis v. Ohio Dep't of Job & Family Servs.*, No. 2:11-cv-395, 2011 U.S. Dist. LEXIS 123436, *4-5, 2011 WL 5075824 (S.D. Ohio Oct. 25, 2011).

### ii. *Plaintiff fails to allege City Defendants were part of an enterprise.*

Plaintiff fails to plead facts establishing the City Defendants had relationships with other Defendants for the purpose of engaging in criminal enterprise.[15] An association-in-fact enterprise—"a group of persons associated together for the common purpose of engaging in a course of conduct"—requires a plaintiff to plead three structural features: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Childress*, 765 F. Supp. at 697. The City regularly exercises its

---

[15] Plaintiff alleges that all Defendants engaged in a pattern of racketeering consisting of "wire fraud, mail fraud, bank fraud, money laundering, and obstruction of justice," the "engineered sale" of his properties, false prosecutions, and systematic financial fraud." (Doc. 33, PageID#369).

4919-2603-0165, v. 2

statutory rights and responsibilities to enforce building codes, pursues its right to recovery in court, and seeks court appointments of receivers. Pleadings that "suggest no more than a 'routine business relationship'" amongst entities do not sufficiently plead the existence of a RICO enterprise. *Id.*

Plaintiff's factual allegations involving James span only three paragraphs, relating to James' issuance of vacate orders at one property—621 Delhi—which was not subject to the receivership at the core of the alleged conspiracy. (Doc. 33, PageID#367).[16] Plaintiff alleges James issued vacate orders "allegedly at the urging of Boydston," (*Id.*, PageID#367), but provides no date, medium, or context of this "urging"; he otherwise fails to allege that James shared in any racketeering purpose, maintained any relationships with any other party to the conspiracy, or communicated with Boydston. Plaintiff fails to plead that James was part of a "continuing" unit, or that James "participated in the operation of management of the enterprise itself." *VanDenBroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699, 2000 U.S. App. LEXIS 8522, *5, 2000 FED App. 0153P (6th Cir.) citing *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).

### iii. Plaintiff fails to allege the City Defendants engaged in racketeering activity or a pattern thereof.

"Racketeering activity," is statutorily defined via an exhaustive list in 18 U.S.C. § 1961(1), and must include an indictable predicate act. To sustain a claim under 18 U.S.C. 1962(c), the plaintiff must allege a "*particular defendant*" committed

---

[16] Aside from the conclusory allegation that the City failed to supervise building inspectors, the City of Cincinnati is absent almost entirely from Plaintiff's factual recitation.

a "pattern" consisting of at least two of these statutory predicate acts. *Kerrigan*, 112 F. Supp. 3d at 605 (emphasis in original). Plaintiff has failed to allege facts to identify any "racketeering activity" by the City, nonetheless a pattern. No facts in the Amended Complaint suggest, or create an inference, that the City engaged in requisite "predicate acts" under U.S.C. § 1961. The City was not engaged in racketeering when it exercised the legal right to institute the Foreclosure action, and "inadequate supervision" is not a predicate act under U.S.C. § 1961. (Doc. 33, PageID#375). Thus, Plaintiff has not pleaded a § 1962(c) claim against the City.

The Amended Complaint also fails to allege James engaged in a "pattern of racketeering activity." It is unclear which § 1961(1) predicate act, if any, Plaintiff alleges against James: "fraudulent condemnation" is not an indictable criminal act. Further, fraud-based predicate acts require compliance with the heightened pleading standard of Fed. R. Civ. P. 9(b), which Plaintiff has not met. Klosterman's theory of "fraudulent condemnation" is premised on two alleged "facts": (1) James allegedly ignored or defied a report by Plaintiff's privately-hired engineering firm which declared 621 Delhi structurally safe, and (2) James allegedly stated to a vacated tenant shortly after the tenant's relocation that "the building was structurally safe." (Doc. 33, PageID#367). Plaintiff's own Amended Complaint and attached documents neutralize these allegations and render Plaintiff's claims insufficiently pleaded.

First, the "621 Delhi - Structural Investigation" report by GEI Engineering ("the GEI Report"), dated September 18, 2020, is attached to Plaintiff's Complaint as

Exhibit I (Compl., Doc. 1, Ex. I) and is central to Plaintiff's allegations.[17] The GEI Report did not "confirm structural safety" of 621 Delhi. In fact, it did the opposite. The GEI Report stated that areas of the basement wall and first floor framing of 621 Delhi were "deteriorated," that floor joists were "in poor structural condition and need to be repaired or replaced," and that "existing temporary shoring is not adequate to support the code required loads." (Doc. 1, Ex. I). This litany of structural safety issues is mirrored substantially in the multiple notices of code violations issued by the City. *See* Ex. J, 621 Delhi Notices of Violation.[18] Because the Court may consider documents attached to the pleadings to assess the motion to dismiss, the Court need not accept as true Plaintiff's allegation that the GEI Report contradicted James' orders. But even if the GEI Report had contradicted the findings of the Building Department, the City's ability to engage in enforcement action was not subjugated to the opinion of Plaintiff's engineer, and would not suffice to allege fraudulent conduct by James.

Second, James' alleged statement—purportedly made some time *after* issuance of the vacate orders—does not suffice to allege or create an inference that James included any intentional misrepresentations in the vacate orders (i.e. that he knew 621 Delhi was safe at the time orders issued). The facts alleged against James do not

---

[17] The Court may properly consider "exhibits attached to a defendant's motion to dismiss if they are referenced in the complaint and central to the plaintiff's claims." *Akil Childress v. City of Cincinnati*, 765 F. Supp. 3d 662, 679 (S.D. Ohio Feb. 10, 2025).

[18] In addition to being referenced in and central to Plaintiff Klosterman's allegations against the City, these notices and notes are public records appropriate for judicial notice under Fed. Evid. R. 201. *Hancock v. Miller*, 852 Fed. App'x 914, 919 (6th Cir. 2021). The notices state the reasons for vacating the building included, in part: "Support framing is rotted and collapsing; sills, plates, joists, beams, and posts have rotted away and the attempted shoring of these structural members is inadequate[...]; floors have sagged, walls have cracked, ceilings have failed[.]"

15

suggest even a "mere possibility of misconduct" and cannot meet the heightened requirements of Rule 9(b).

### iv. *Plaintiff fails to plead City Defendants' conduct caused his injury.*

Finally, Plaintiff has failed to allege that the City Defendants proximately caused his claimed injury: "destroyed rental income and property value due to vandalism on a vacant building." (Doc. 33, PageID#367). Because Plaintiff has not pleaded that City Defendants engaged in racketeering activity, he cannot claim such activity caused his injury. Furthermore, Plaintiff did not miss out on rental income due to the vacate orders because Plaintiff did not comply with the order.[19] Plaintiff does not provide facts relating to the alleged vandalism, nor does he allege how the City Defendants proximately caused such third-party acts when it was Plaintiff's legal responsibility to secure his vacant property. All federal RICO claims must be dismissed.

### D. Plaintiff's Constitutional and State Law Claims are Barred Because Plaintiff Failed to Administratively Exhaust Enforcement Orders.

Plaintiff failed to exercise his right to administratively appeal the vacate orders issued by the Building Department and failed to exercise his right to appeal the result of administrative appeal to the Hamilton County Court of Common Pleas. "[A] due process claim for the deprivation of [a nuisance property owner's] alleged

---

[19] Plaintiff's pleadings admit tenants remained in 621 Delhi in September 2020, nine months after it was first ordered vacant. Plaintiff attached to his Complaint the unsigned affidavit of Randy Hatfield, which is improper and inadmissible. *See Newman v. Univ. of Dayton,* 2017 U.S. Dist. LEXIS 148877, *13, 2017 WL 4076517 (S.D. Ohio 2017). To the extent the Court considers the document part of Plaintiff's allegations, it states that Hatfield and others lived in the units of 621 Delhi in of September 2020. The document also states Hatfield "rarely paid rent over the years" when he resided at Plaintiff's properties.

property interest is not cognizable in a federal district court where state courts provide a remedy for the deprivation of that property interest." *Pappas v. Nash*, No. 1:04 CV 01641, 2006 U.S. Dist. LEXIS 70456, at *12 (N.D. Ohio Sep. 28, 2006) citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The Cincinnati Municipal Code provides a process for the administrative appeal of building code enforcement orders which are appealable to the Court of Common Pleas for review of constitutionality, illegality, or arbitrariness. *See* C.M.C. 1101-83; R.C. 2506. Here, the City issued multiple Notices of Violation to Plaintiff, apprising Plaintiff of the basis for action and appeal procedures, but Plaintiff never availed himself of these avenues for relief. *See* Ex. J. He has not shown these remedies were inadequate and is not now entitled to seek relief from this Court on the basis that the vacate orders were unconstitutional, illegal, or arbitrary.

### E. Plaintiff Has Not Sufficiently Alleged Claims Under 42 U.S.C. § 1983.

Count IV of Plaintiff's Amended Complaint alleges the City and Terry James violated Plaintiff's rights in violation of 42 U.S.C. § 1983. First, all conduct of the City Defendants alleged by Plaintiff to have violated his constitutional rights occurred in 2020. Any claim relating to such conduct is significantly beyond the statute of limitations. Second, Plaintiff's claims are barred by res judicata and are factually insufficient.

#### i. *Plaintiff's Section 1983 Claims are Time-Barred.*

The statute of limitations for Section 1983 claims in Ohio is set by Ohio Rev. Code § 2305.10. *See Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989). To

4919-2603-0165, v. 2

plead a plausible § 1983 claim, an Ohio plaintiff must allege that their claim accrued within two years of filing. *See* Ohio Rev. Code § 2305.10; *Basista Holdings, LLC v. Ellsworth Twp.*, 710 F. App'x 688, 691 (6th Cir. 2017). Federal law provides that a limitation period begins to run "when a plaintiff 'knows or has reason to know of the injury which is the basis of his action.'" *Childress*, 765 F. Supp. 3d at 681.

Plaintiff's Amended Complaint does not specify exactly which conduct, and by which Defendant, allegedly violated his Fourth, Fifth, or Fourteenth Amendment rights, and he has pleaded no set of facts placing his claims within the statute of limitations. To the extent Plaintiff alleges the City violated his constitutional rights by foreclosing on his properties, those claims against the City expired in October 2023, two years after the state court's entry of the final Foreclosure Decree.[20] *Lyndon's LLC v. City of Detroit*, 2024 U.S. App. LEXIS 17690, *7, 2024 WL 3427176 (6th Cir.) (reaffirming that in the Sixth Circuit, the statute of limitations on a Fifth Amendment Takings claim runs from the time the government receives "absolute title" to property, as when court enters final decree in foreclosure; related due process claim would accrue during foreclosure proceedings).

To the extent that James' conduct underlies Plaintiff's § 1983 claims, any action taken by James occurred in September 2020 or earlier. Public records indicate James first inspected 261 Delhi following an anonymous complaint in December 2019, first ordered the building vacant in January 2020, issued notices of violation and monitored Plaintiff's non-compliance with City orders several times between

---

[20] The Court entered the Final Decree in the Foreclosure case on October 7, 2021, extinguishing Plaintiff's equity of redemption—and any interest in the Foreclosure properties—three days later on October 10, 2021. *See* Ex. G.

February and September 2020, and finally performed two inspections of the property in September 2020. *See* Ex. J; Ex. K, 621 Delhi Property Activity Record.[21] Public records indicate—and Plaintiff's allegations do not contradict—that James took no further action related to 621 Delhi after September 29, 2020. Insofar as the takings claim is premised on James' enforcement action to vacate 621 Delhi, that claim accrued no later than September 2020 and is time-barred. *See Childress*, 765 F. Supp. at 682. Plaintiff's due process and unreasonable seizure claims arising from the same set of facts would also be untimely under R.C. § 2305.10.

All alleged conduct by the City Defendants occurred well over four years prior to the filing of the present suit. Plaintiff's § 1983 claims are untimely and must be dismissed.

### ii. *Plaintiff fails to allege facts to state constitutional violations.*

In addition to being time-barred and subject to res judicata, each of Plaintiff's alleged constitutional claims fails because the City Defendants are entitled to qualified immunity, and the Amended Complaint does not contain facts to adequately state the claims.

#### 1. *James is entitled to qualified immunity.*

The doctrine of qualified immunity provides that, in civil suits for monetary damages, government officials acting in their official capacity and performing discretionary functions are generally shielded from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

---

[21] The Court may properly consider these records because they are the notices and inspection notes related to 621 Delhi alleged to be fraudulent, and also because they are "public records the Court may consider to determine their operative effect" including applicability of statutes of limitations. *Childress*, 765 F.Supp. 3d at 680-681.

reasonable person would have known." *McLaurin v. Morton*, 48 F.3d 944, 947 (6th Cir. 1995) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome immunity, claimants must show (1) that officers violated their constitutional rights and (2) that the constitutional right at issue is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Flaskamp v. Dearborn Pub. Schs*, 385 F.3d 935, 940-41 (6th Cir. 2004) (citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). Since James committed no constitutional violation, he is entitled to qualified immunity.

> ### 2. *Plaintiff failed to plead facts that City Defendants violated his due process rights.*

Plaintiff has not pleaded a due process violation. In the context of a city's action to address a public nuisance property, Fourteenth Amendment "[d]ue process requires 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action' before the government may take property." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 311 (6th Cir. 2021). Here, Plaintiff does not allege that he did not receive the multiple notices of violation posted at the property[22] and mailed to him by the Building Department, nor does he allege that he was deprived of the opportunity to be heard on his objections to the vacate order on the property.[23] Based on the facts alleged and contained in the documents central to the claims, Plaintiff has failed to plead a due process violation and it must be dismissed.

---

[22] "[P]osting notice on real property is a singularly appropriate and effective way of ensuring that a person is actually apprised of proceedings against him." *Keene Grp.*, 998 F.3d at 313 (quoting *Jones v. Flowers*, 547 U.S. 220 (2006)).
[23] Public records reflect that as early as January 2020, Plaintiff was aware of the City's vacate orders but "removed earlier posted door hangers and told tenants nothing was wrong w/ building." Ex. K, 1/23/2020 Orders.

3. *Plaintiff failed to plead facts that City Defendants violated his Fifth Amendment rights.*

It is clearly established that a municipality, under its police power, may restrict the use of property without compensation, if the restriction is reasonably necessary for the preservation of the public health, morals, or safety, e.g. for building code enforcement. *See Davet v. City of Cleveland*, 456 F.3d 549, 553 (6th Cir. 2006). Whether Plaintiff alleges that the City's Foreclosure of his properties or James' vacate orders is the root of his Takings claim, Plaintiff has not pleaded facts against the City Defendants to overcome the established law that "compensation is not mandated when the state legitimately exercises police power to abate a property nuisance." *VJH Homes, LLC v. City of Cleveland*, N.D.Ohio No. 1:23 CV 00740, 2023 U.S. Dist. LEXIS 150764, at *16 (Aug. 28, 2023) (quoting *Embassy Realty Invs., Inc. v. City of Cleveland*, 572 F. App'x 339, 344 (6th Cir. 2014)). Though Plaintiff attempts to stamp the imprimatur of conspiracy throughout, there are simply no facts pleaded that suggest building enforcement actions were "illegitimate."

4. *Plaintiff failed to plead facts that City Defendants violated his Fourth Amendment rights.*

Plaintiff alleges an "unreasonable seizure" by City Defendants, in violation of the Fourth Amendment. Like the takings claim, "the enforcement of remedial orders against a nuisance property does not constitute an unreasonable seizure but is a proper use of 'established police power procedures.'" *Keene Grp., Inc. v. City of Cincinnati*, No. 1:19-CV-730-WOB, 2020 U.S. Dist. LEXIS 123134, at *14 (S.D. Ohio July 13, 2020). Plaintiff has not pleaded facts to establish building enforcement actions in the Amended Complaint were improper.

21

### iii.   Plaintiff's Amended Complaint fails to plead Monell liability.

Section 1983 does not impose vicarious liability on municipalities for the unconstitutional acts of its employees.  *Culberson v. Doan,* 125 F.Supp.2d 252, 263 (S.D. Ohio 2001).  A municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue.  *Monell v. New York Dep't of Social Services*, 436 U.S. 658 (1978).   Only where the action of the municipality reflects a "deliberate" or "conscious" choice by a municipality, i.e., a "policy," can a city be liable for such a failure under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Miller v. Calhoun County*, 408 F.3d 803, 815 (6th Cir. 2005).

The plaintiff must come forward with "specific allegations against the [d]efendants that would amount to violations of [p]laintiff's constitutional rights, violations of municipal policies or customs, or any failure by either [d]efendant to train, supervise, investigate, or discipline their officers with deliberate indifference." *Williams v. Warren County.*, Case No. 1:08-cv-899, 2011 U.S. Dist. LEXIS 54234, at *19 (S.D. Ohio Mar. 4, 2011); *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007). Specifically, in the context of an inadequate supervision claim:

> [a] *Monell* claim is inadequately pleaded where the plaintiffs allege no facts related to the municipal defendant's training or supervision of its officers; have provided no facts concerning what the defendant's training policies were, why they were inadequate, how the defendant was deliberately indifferent, or how any alleged failures in training or supervision related to the plaintiff's injuries.

*Heath v. Cole*, 2025 U.S. Dist. LEXIS 8743, *8, 2025 WL 223868 (E.D. Mich. Jan. 16, 2025) (quoting *Matuscak v. Argentine Twp. Police Dep't*, No. 22-12621, 2023 U.S. Dist. LEXIS 207609, at *6, 2023 WL 8016691 (E.D. Mich. Nov. 20, 2023)).

22

Here, the sole allegation that could be construed to allege a § 1983 claim against the City is that it "continues employing building inspectors with inadequate supervision." (Doc. 33, PageID#375). Plaintiff failed to plead an underlying civil rights violation by James. Plaintiff has failed to plead any facts related to the supervision of James, including why supervision of James was inadequate, or any causal relationship between Plaintiff's claimed harm and any policy or practice of the City. Plaintiff's § 1983 claim against the City of Cincinnati must be dismissed.

### F. Plaintiff Has Not Sufficiently Alleged a Claim Under 42 U.S.C. § 1985.

Plaintiff fails to allege a violation of 42 U.S.C. § 1985 against the City and Terry James. (Doc. 33, PageID#369). First, Plaintiff's claim is barred by the two-year statute of limitations on claims under § 1985. *Carter v. Natl. City Bank*, S.D.Ohio No. 1:17-cv-508, 2018 U.S. Dist. LEXIS 122683, at *16, 2018 WL 3543699 (July 23, 2018). 42 U.S.C. § 1985(3) prohibits a conspiracy "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985. In addition to alleging elements of a conspiracy to violate civil rights laws, there must be some racial or other class-based invidiously discriminatory animus behind the conspirators' actions. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005). The failure to provide evidence of racial or other class-based animus is fatal to claims under § 1985. *Id.*

In this case, Plaintiff does not allege that there was a racial or class-based animus behind the City Defendants' alleged actions. Without these necessary facts,

23

Plaintiff cannot prove a § 1985 violation. Therefore, Plaintiff's conspiracy claims against the City Defendants should be dismissed

### G. Plaintiff's State Law Claims Must Be Dismissed.

Plaintiff pleads three intentional tort claims under state law against both City Defendants, including conversion, fraud, and intentional infliction of emotional distress. Plaintiff also pleads a negligent supervision claim against the City. All of the claims are barred by the applicable statute of limitations, and the City Defendants are entitled to statutory immunity.

#### i. R.C. 2744.04(A) Time Bars Plaintiff's State Law Claims.

Plaintiff's tort claims under state law are statutorily time-barred. Ohio Rev. Code § 2744.04 shortens the statute of limitations for actions to recover damages for injury or loss of property "allegedly caused by any act or omission in connection with a governmental or proprietary function." *Abdalla v. Olexia*, 113 Ohio App. 3d 756, 759, 1996 Ohio App. LEXIS 3681, *4 (holding that the two-year limitation on tort claims against political subdivisions in R.C. 2744.04(A) prevails over the generally applicable four-year statute of limitations, barring an untimely fraud claim). Each of Plaintiff's state tort claims is subject to this time bar. *Id.*[24] "The two-year limitations period in R.C. 2744.04(A) applies to both political subdivisions and the employees thereof." *Robol v. City of Columbus*, 10th Dist. Franklin No. 24AP-348, 2025-Ohio-973,

---

[24] *Barton v. Cty. of Cuyahoga*, 2020-Ohio-6994, ¶ 50, *27, 2020 WL 7861361 (8th Dist. Cuyahoga) (holding R.C. 2744.04(A) applied to dismiss appellant's untimely conversion claim against county); *Robol v. City of Columbus*, 10th Dist. Franklin No. 24AP-348, 2025-Ohio-973, ¶ 17 (affirming dismissal of negligence and IIED claims time barred by R.C. 2744.04(A)).

¶ 15. For the reasons described *supra*, Section IV.E.*i.*, Plaintiff's state law claims are untimely and must be dismissed.

### ii. *The City is immune to intentional torts and negligence claims for the performance of governmental functions under Ohio law.*

Ohio municipalities are categorically immune from intentional tort claims under Ohio Rev. Code § 2744.02. *Walsh v. Village of Mayfield*, 8th Dist. Cuyahoga No. 92309, 2009-Ohio-2377, ¶ 11 ("As the Ohio Supreme Court has held, under R.C. 2744.02, political subdivisions are immune from intentional torts.") citing *Wilson v. Stark Cty. Dept. of Human Services*, 1994-Ohio-394, 639 N.E.2d 105, 107. R.C. 2744.02(B) enumerates certain exceptions for negligent acts, but "[t]here are no exceptions to immunity for [] intentional torts." *Wilson*, 639 N.E.2d at 107. And "[i]n most cases," unless one of the exceptions of R.C. 2744.02(B) applies (subject to the defenses in that section and R.C. 2744.03), the City is entitled to "broad immunity" for negligence claims. *Doe v. Greenville City Sch.*, 2022-Ohio-4618, ¶ 9, 220 N.E.3d 763, 766.

Here, three of Plaintiffs' remaining claims—conversion, fraud, and IIED—sound in intentional tort, and the City is entitled to immunity from these claims. The City, in completing building code enforcement activities and prosecuting its Collection Action and Foreclosure cases against Plaintiff, was engaged in governmental functions as defined in R.C. 2744.01(C). "[A] municipality is immune from claims that sound in tort stemming from its abatement of a nuisance[.]" *Stanton v. City of Cleveland*, 8th Dist. Cuyahoga No. 82614, 2003-Ohio-6618, ¶ 28 ("Building inspections and the taking of actions in connection with such inspections [. . .]

25

constitutes a governmental function.").[25] The City is explicitly authorized by statute to "pursue a foreclosure action to enforce [its] lien" to recover costs of public nuisance abatement activities. R.C. 715.261(B)(3).

Because the City was engaged in a governmental function, each of Plaintiff's intentional tort claims is subject to immunity. *Brown v. City of Cincinnati*, 2020-Ohio-5418, 162 N.E.3d 1274, ¶ 15 (1st Dist.) (conversion claim subject to statutory immunity); *Barnes v. City of Beachwood*, 8th Dist. Cuyahoga No. 87100, 2006-Ohio-3948, ¶ 16 (city defendant "clearly immune" from plaintiff's claim of intentional infliction of emotional distress); *Coventry Cts., LLC v. Cuyahoga Cnty.*, 2023-Ohio-1037, ¶ 17, 212 N.E.3d 373, 379 (quoting *Yoby v. City of Cleveland*, 2020-Ohio-3366, 155 N.E.3d 258, ¶ 85 (8th Dist.): "[T]here are no exceptions to immunity for the intentional tort of fraud."). There is no exception Plaintiff can plead to escape the City's Ohio Rev. Code § 2744.02 immunity. *See Holimon v. Sharma*, 2021-Ohio-3840, 180 N.E.3d 1226, ¶ 18 (1st Dist.) (failure to plead an exception to Ohio Rev. Code § 2744.02 immunity will result in dismissal of a plaintiff's intentional tort claim).

Plaintiff's final tort claim for negligent supervision also fails, because Plaintiff asserts no basis to overcome the presumption of immunity afforded to the City. No exception in Ohio Rev. Code 2744.02(B)(1)-(5) is applicable in this suit, and the claim must be dismissed. *Greenville City Schools*, at ¶ 9 (R.C.2744 is a "complete defense to a negligence cause of action" absent applicable R.C. 2744(02)(B) exception).

---

[25] Ohio Rev. Code 2744.01(C)(2) includes an elucidated list of "governmental functions" which includes building inspection and the enforcement of building, zoning, sanitation, fire, plumbing, and electrical codes, as well as "[u]rban renewal projects and the elimination of slum conditions[.]" O.R.C. 2744.01(C)(p)-(q).

### iii. *Terry James is entitled to immunity under Ohio law.*

Claims against the City rooted in James' alleged conduct fare no better: employees of political subdivisions are entitled to tort immunity unless a statutory exception applies. An employee is entitled to a presumption of immunity when performing a governmental function. *Johari v. City of Columbus Police Dept.*, 186 F.Supp.2d 821, 831 (S.D. Ohio 2002). Immunity applies under Ohio Rev. Code § 2744.03(A)(6) unless: (a) the employee's acts or omissions were manifestly outside the scope of employment; (b) the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (c) civil liability is expressly imposed upon the employee by a section of the Revised Code.

Here, prong (a) is inapplicable because James was clearly acting within the scope of his employment: assessing building safety and enforcing the building code. Prong (c) is inapplicable and not pleaded. As to prong (b), Plaintiff failed to plead that James acted in a malicious, wanton or reckless manner or in bad faith. The Court must assess the factual allegations underlying "whether [the] allegations sufficiently raised the [2744.03(A)(6)(b)] exception." *R.K. v. Little Miami Golf Ctr.*, 2013-Ohio-4939, 1 N.E.3d 833, ¶ 45 (1st Dist.)

To the extent that the Amended Complaint suggests an inference of wrongdoing, it is the lone allegation that James stated the building "was structurally safe" shortly after a tenant vacated 621 Delhi.[26] Even taken as true, the statement would be entirely consistent with James having performed his duties with total

---

[26] An affivadit that is "neither signed nor notarized [is] therefore inadmissible." *Newman v. Univ. of Dayton*, 2017 U.S. Dist. LEXIS 148877, *13, 2017 WL 4076517 (S.D. Oh. 2017).

competence, based upon the information available to him at the time he issued the relevant orders. The allegation is threadbare and cannot reasonably support the inference that James acted maliciously, recklessly, wantonly, or in bad faith.

### iv. *Plaintiff has Failed to Plead Facts in Support of His Tort Claims.*

Plaintiff has not pleaded the necessary elements of his conversion, fraud, and IIED claims against James.

Prospective rental income is not chattel property subject to conversion. "[C]onversion only applies to personal property, not real property[.]" *Bethel Oil & Gas, LLC v. Redbird Dev.*, LLC, 2024-Ohio-5285, 258 N.E.3d 470, ¶ 111 (4th Dist.); *Sandy v. Rataiczak*, 2008-Ohio-6212, ¶ 9 (7th Dist.); *First Fed. Bank v. Angelini*, 2007-Ohio-6153, ¶ 8 (3rd Dist.); *see also* Ernst, Ohio Tort Law, 2d, § 37:1 (2023). When a conversion claim is for money, conversion only lies against "specific segregated, identifiable money" e.g. "money in a bag"—not simply a sum certain. *Gascho v. Global Fitness Holdings, LLC*, 863 F.Supp.2d 677, 700 (S.D.Ohio 2012); *see also Bunta v. Superior VacuPress, L.L.C.*, 2022-Ohio-4363, 218 N.E.3d 838, ¶ 21.

Plaintiff fails to plead his fraud claim because, for the reasons described *supra*, Section IV.C. and shown in documents attached to the pleadings, Plaintiff has not alleged the element that a representation was "made falsely, with knowledge of its falsity" or "utter disregard and recklessness as to whether it is true or false." *Gaines v. Preterm-Cleveland, Inc.*, 514 N.E.2d 709, 712 (Ohio 1987).

Plaintiff, as the sole basis for his IIED claim, asserts all Defendants engaged in a "coordinated scheme to imprison Plaintiff, steal his property, and destroy his life's work." (Doc. 33, PageID#371). "[A] trial court may dismiss a claim for intentional

28

infliction of emotional distress under Civ.R. 12(B)(6), when the alleged conduct does not, as a matter of law reach the level of extreme and outrageous conduct." *Bentkowski v. Trafis*, 2015-Ohio-5139, ¶ 54, 56 N.E.3d 230, 244 (8th Dist. Cuyahoga). Plaintiff has not alleged any facts regarding James' knowing participation in a scheme to imprison or steal from Plaintiff, or that he was aware of such conduct by any Defendant. Plaintiff has not stated a legally or factually sufficient IIED claim.

## V.    CONCLUSION

For the reasons stated above, Plaintiff's Amended Complaint (Doc. 33) fails to state a claim upon which relief can be granted. Plaintiff's claims are barred by the *Rooker-Feldman* doctrine, collateral estoppel, and the applicable statutes of limitations and administrative exhaustion requirements. James is entitled to qualified immunity, and the City and James are entitled to statutory immunity under Ohio law. Therefore, the City Defendants' motion to dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b) should be granted.

Respectfully submitted,

**EMILY SMART WOERNER (0089349)**
**CITY SOLICITOR**

*/s/ Rebecca P. Salley*
Rebecca P. Salley (0097269)
Johnnie Fitzpatrick (0100476)
Mark Manning (0088331)
Assistant City Solicitors
801 Plum Street, Suite 214
Cincinnati, OH 45202
Phone: (513) 352-4576
Fax: (513) 352-1515
rebecca.salley@cincinnati-oh.gov

29

johnnie.fitzpatrick@cincinnati-oh.gov
mark.manning@cincinnati-oh.gov

*Counsel for Defendants City of Cincinnati, and Terry James*

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2025, a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

John Klosterman
5615 Sidney Road
Cincinnati, OH 45238
513-250-2610
johncklosterman@gmail.com
*Plaintiff, Pro Se*

*/s/ Rebecca P. Salley*
Rebecca P. Salley (0097269)

4919-2603-0165, v. 2