UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
AT CINCINNATI

| | | |
|---|---|---|
| JOHN KLOSTERMAN, | : | Civil Action No. 1:25-cv-00312-SJD-KLL |
| | : | (Judge Susan J. Dlott) |
| Plaintiff, | : | (Magistrate Judge Karen L. Litkovitz) |
| | : | |
| v. | : | |
| | : | |
| KONZA, LLC, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**DEFENDANTS KONZA, LLC, RICHARD BOYDSTON, AND
DENTONS BINGHAM GREENEBAUM LLP
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO RULES 12(B)(1) AND 12(B)(6)**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ i

LOCAL RULE 7.2(a)(3) SUMMARY ...................................................................... iv

I.    BACKGROUND FACTS ................................................................................. 1

    1.    City of Cincinnati Foreclosure Suit and Order Appointing Receiver. ........................ 1

    2.    Klosterman is ordered to remove personal property from the Properties more than four years ago and did not. ................................................................................. 5

    3.    Tri-State Organization, Klosterman's prior property manager, continues to provide services during the Receivership. ................................................................... 5

    4.    The Receiver and Receiver counsel fees and expenses are reported and approved by the Receivership Court over Klosterman's objections. ............................................ 6

    5.    Court's Order of foreclosure and approval of sale procedures. ................................ 8

    6.    Court approval of sale to the Landbank. .................................................................. 9

    7.    Klosterman is convicted of menacing by stalking and violation of a protective order obtained by TSO employee Angel Strunk. ......................................................... 9

    8.    Klosterman is declared a vexatious litigant. ......................................................... 10

    9.    Lentine and Strunk plead guilty to federal crimes relating to COVID-19 relief loans and funds. .................................................................................................... 10

10.     TSO and Lentine claims against Receiver for alleged unpaid fees and expenses

and Order regarding payment. ...................................................................................... 11

11.     Klosterman's allegations in the instant lawsuit................................................ 12

II.     LEGAL STANDARDS ........................................................................................ 13

  A.   Rule 12(b)(1)...................................................................................................... 13

  B.   Rule 12(b)(6)...................................................................................................... 14

III.    ARGUMENT ...................................................................................................... 15

  A.   This Court lacks subject-matter jurisdiction. ..................................................... 15

  1.   The *Barton* doctrine bars this suit against the Boydston Defendants. ............................. 15

    2.   The Court lacks jurisdiction over Klosterman's claims under the *Rooker-Feldman*

  doctrine. ................................................................................................................... 16

  B.   Klosterman's claims against the Boydston Defendants require dismissal pursuant to Rule

  12(b)(6). ................................................................................................................. 18

  1.   The Receiver and its counsel are entitled to quasi-judicial immunity. ............................. 19

    2.   Klosterman's claims are barred by collateral estoppel. ................................................. 21

      a.   Fees paid to Konza and Dentons............................................................................ 22

      b.   Sale of Receivership Properties. ........................................................................... 23

      c.   Unclaimed Personal Property at Receivership Properties. ......................................... 23

ii

3.    Klosterman fails to state claims for relief against the Boydston Defendants under
federal law theories. ................................................................................…........ 24

    a.    Klosterman fails to state a RICO or RICO conspiracy claim. ....................…....... 24

    (1)    Klosterman fails to plead an association-in-fact or threat of continued criminal
activity. ..............................................................................................…........ 25

        (2)    Klosterman fails to allege any predicate offenses. ............................................ 26

    b.    Klosterman fails to state claims under 42 U.S.C. § 1985. ....................…............ 30

    c.    Klosterman fails to state claims for relief against Boydston under 42 U.S.C. § 1983.
31

4.    Klosterman fails to state claims for relief against the Boydston Defendants under state
law theories. ........................................................................................ 33

     a.    Conversion. ........................................................................................ 33

    b.    Fraud. ................................................................................................ 35

    c.    Breach of fiduciary duty. ...................................................................... 37

    d.    Malicious Prosecution. ........................................................................ 38

    e.    Negligent Supervision. ........................................................................ 39

    f.    Intentional Infliction of Emotional Distress. .......................................... 40

IV.    CONCLUSION ............................................................................................ 41

## LOCAL RULE 7.2(a)(3) SUMMARY

John Klosterman acquired dozens of dilapidated properties in the Sedamsville neighborhood of Cincinnati for over two decades. In 2018, the City of Cincinnati obtained a more than $500,000 judgment against Klosterman for unpaid fines and fees arising from City building code violations in the Hamilton County Court of Common Pleas. Also in 2018, the Department of Justice filed a Fair Housing Act suit against Klosterman in this Court to protect his tenants, who suffered from poor housing conditions as well as Klosterman's sexual advances. The City filed an action to foreclose the 2018 judgment lien on the Klosterman Sedamsville properties and at the City's request Konza, LLC through its manager Richard Boydston was appointed as receiver. From that time on, Klosterman has complained in the Receivership Court and other forums about, among other things, the propriety of the foreclosure and Receivership, the cost and activities of the Receivership, the May 1, 2023 sale of the foreclosed Receivership Properties, and the payment of the Receiver's fees and legal fees – which were exacerbated by Klosterman's conduct throughout the Receivership.

Klosterman's instant lawsuit is an improper collateral attack on state court judgments and orders entered throughout the Receivership. This Court lacks subject matter jurisdiction against Konza, Boydston and Dentons Bingham Greenebaum LLP ("the Boydston Defendants") pursuant to the *Barton* doctrine which precludes suits against receivers and their counsel absent prior approval from the appointing forum. *Barton v. Barbour*, 104 U.S. 126, 127, 26 L.Ed. 672 (1881). *See* Section III.A.1 at pp. 15-16. This Court also lacks subject matter jurisdiction as to the entire case pursuant to the *Rooker-Feldman* abstention doctrine and the *Younger* doctrine. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of*

iv

*Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). *See* Section III.A.2 at pp. 16-18.

Klosterman fails to state claims for relief against the Boydston Defendants because they are entitled to quasi-judicial immunity as a matter of law, *see* Section III.B.I at pp. 19-21, and the issues about which Klosterman complains – his personal property, the sale of the Receivership Properties, and court-approved payments to the Receiver and legal counsel – are barred by the doctrine of collateral estoppel. *See* Section III.B.2 at pp. 21-24. Furthermore, Klosterman fails to plausibly state claims for relief against the Boydston Defendants under federal RICO and constitutional theories, including with the requisite specificity required by Rule 9(b), and his Section 1983 claims are time-barred as a matter of Sixth Circuit law. *See* Section III.B.3 at pp. 24-33. Finally, Klosterman fails to plausibly state claims for relief against the Boydston Defendants under his various alleged state law theories, including with the requisite specificity required by Rule 9(b), and his claims are time-barred. See Section III.B.4 at pp. 33-41. The Court should dismiss all Klosterman's claims with prejudice.

## I. **BACKGROUND FACTS**

### 1. **City of Cincinnati Foreclosure Suit and Order Appointing Receiver.**

After the City of Cincinnati (the "City") obtained a $578,801.23 judgment against Klosterman for failure to pay fines, fees and abate public nuisances,[1] and after the U.S. Department of Justice filed a Fair Housing Act lawsuit against Klosterman, alleging that Klosterman sexually harassed female tenants since at least 2013,[2] the City filed a *Complaint for Foreclosure and to Appoint Receiver* over more than 50 Klosterman-owned or -controlled properties (the "Properties"[3]) to satisfy its unpaid judgment (this is the "Receivership Proceeding" or "Receivership Court"). [*City of Cincinnati v. Klosterman*, Hamilton County Court of Common Pleas, A1905588, *Complaint* (Nov. 25, 2019)].[4] The City contemporaneously filed a *Motion to Appoint Receiver* in which it moved the Court "to appoint Konza, LLC by and through its Manager Richard Boydston pursuant to R.C. 2735.01(A)(1) and (4), as receiver[.]" [*Mot. to Appoint Receiver and Mem.* (Nov. 25, 2019), A1905588].[5]

---

[1] *See City of Cincinnati v. Klosterman et al.*, Hamilton County Court of Common Pleas, A1703772, *Compl.* ¶¶ 2-3 (July 19, 2017); Amended Certificate of Judgment (Mar. 12, 2019). The docket sheet is publicly available at https://www.courtclerk.org/records-search/case-number-search/, along with all court records in that case.

This Court may take judicial notice of court records and consider them for purposes of deciding a Rule 12 motion. *See* Fed. R. Evid. 201; *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023); *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010). The Boydston Defendants have attached certain court records as exhibits for the Court's convenience, and request that the Court take judicial notice of these and all other court records cited herein.

[2] *See U.S. v. Klosterman*, Case No. 1:18-cv-00194-MRB, *Complaint* (S.D. Ohio Mar. 21, 2018), Dkt. 1.

[3] The Properties consisted of 24 addresses with buildings and 33 separate vacant lots.

[4] The docket sheet for *City of Cincinnati v. Klosterman*, Hamilton County Court of Common Pleas, Case No. A1905588 (the "Receivership Proceeding" or "Receivership Court"), is attached as **Ex. 1** (last accessed July 31, 2025), and is publicly-available at https://www.courtclerk.org/records-search/case-number-search/, along with all court records in that case.

[5] Klosterman, through counsel, answered the foreclosure complaint and filed a *Memorandum in Opposition to Motion of Plaintiff to Appoint Receiver*. [*Mem. In Opp. To Mot. To Appoint Receiver* (Feb. 12, 2020), A1905588]. Within days of the Receiver's appointment, Klosterman's counsel filed a motion to withdraw which was granted.

Following a hearing, the Court entered its *Order Appointing Receiver* appointing Konza, LLC, by its Manager Richard Boydston (the "Receiver"). [*Order Appointing Receiver* p. 1, ¶ 1 (Feb. 14, 2020), attached as **Ex. 2**]. The Court granted the Receiver "all powers of a receiver under R.C. Chapter 2735 as to the Properties and as well as pursuant to all orders issued by the Court[.]" [*Id.* pp. 3-4, ¶ 3]. The Court authorized the Receiver to act as follows:

- "take any action to manage, maintain, preserve, lease and rent all of the Properties." [*Id.* p. 4, ¶ 3].

- "sell any and all of the Properties subject to further order of the Court." [*Id.* pp. 3-4, ¶ 3; *see also id.* p. 8, ¶ 17].

- "employ such attorneys, managers, agents, and persons as its judgment are advisable or necessary for performance of the duties of the Receiver;" [*Id.* pp. 3-4, ¶ 3(B)]; and "retain contractors and other persons and entities to make repairs to the Properties and to Maintain the Properties." [*Id.* pp. 4, ¶ 3(C)].

The Court further ordered:

- "The Receiver shall not be liable for any action taken or not taken by it in good faith and shall not be liable for any mistake or fact or error of judgment or for any actions or omissions of any kind unless caused by willful misconduct or gross negligence." [*Id.* p. 4, ¶ 4].

- "The Receiver and its employees, agents, and attorneys shall have no personal liability … with regard to the Properties or arising out of or related to the receivership." [*Id.* p. 7, ¶ 13].

- "The Receiver shall be entitled to reasonable compensation for services rendered and to reimbursement for expenses incurred, all as approved by the Court. All compensation and reimbursement of expenses awarded by the Court to the Receiver shall be an administrative expense priority in this case and for those arising from the Properties, a first and best lien on the Properties." [*Id.* p. 8, ¶ 19].

The Order specifically addressed Klosterman. He was: (1) "prohibited from taking any act interfering in any way with the acts of the Receiver" and ordered to "make available all books and records relating to the Properties, and disclose the nature, amount, and location of assets, books, and records connected with any of the Properties upon request of the Receiver or its agents" [*Id.*

2

p. 5, ¶ 5]; (2) ordered to "cooperate with the Receiver and promptly and fully respond to all reasonable requests made by the Receiver for the benefit of any of the Properties" [*Id.* p. 5, ¶ 7]; and (3) enjoined and stayed from "commencing … any action at law or suit or proceedings … against any of the Properties or the Receiver" or "doing any act or thing whatsoever which may impair, impede or interfere with the Receiver in the discharge of the performance of its duties and powers." [*Id.* p. 6, ¶ 8].

The Court "expressly determine[d] pursuant to Civ. R. 54(B) that there [wa]s no just reason for delay. This is a final and appealable order." [*Id.* p. 9, ¶ 22]. Klosterman's remedy was therefore to appeal, not to file separate actions collaterally attacking the judgment.

Klosterman immediately sought to stay, appeal, and object to the Receivership in multiple forums, all of which were rejected. In the Receivership Proceeding, he filed a *Motion to Vacate Order Appointing Receiver* and *Emergency Motion to Stay Order Appointing Receiver Pending Appeal* and *Notice of Appeal*, which he subsequently dismissed. [*See Mot. to Vacate* (Feb. 24, 2020), Case No. A1905588; *Mot. to Stay* (Feb. 28, 2020), Case No. A1905588].[6] In the U.S. District Court of Southern Ohio, Klosterman filed two different suits in the first year of the Receivership:

- First, he filed a complaint against anyone who may have had anything to do with enforcing City code and other laws with respect to the Klosterman Properties, including City building inspectors, City lawyers, a Municipal Court judge, Mayor John Cranley, the City itself, and the Landbank. [*Klosterman v. Sedamsville Cmty. Dev. Grp. et al.*, Case No. 1:20-cv-00119, *Compl.* (Feb. 13, 2020), Dkt. 1]. The District Court concluded, *inter alia*, that Klosterman's claims were barred by the *Rooker-Feldman* doctrine, *res judicata*, and he failed to state claims upon which relief could be granted. *Klosterman v. Sedamsville Cmty. Dev. Grp.*, 2020 WL 6440257 (S.D. Ohio Nov. 3, 2020), *report and rec. adopted sub nom.*, 2020 WL 7711627 (S.D. Ohio Dec. 29, 2020).

---

[6] Klosterman also refused to furnish information to the Receiver, which necessitated a show cause motion and hearing, after which Klosterman provided limited, incomplete information to the Receiver. [*Receiver's First Report* (Apr. 7, 2020), attached as **Ex. 3**].

- Second, Klosterman filed a complaint against Boydston, Konza, and Tri-State Organization, Inc. in which he asserted various state law claims. [*Klosterman v. Bodyston et al.*, Case No. 1:20-cv-00878-SJD-KLL, *Compl.* (Nov. 2, 2020), Dkt. 1]. The District Court granted dismissal in March 2021 for lack of diversity and subject matter jurisdiction. *Klosterman v. Boydston*, 2021 WL 602635, at *1 (S.D. Ohio Feb. 16, 2021), *report and rec. adopted*, 2021 WL 7908551 (S.D. Ohio Mar. 16, 2021).

Klosterman continued to object to and interfere with the Receivership.[7] On November 3, 2021, the Receivership Court entered an Order denying numerous motions that had been filed by Klosterman during the Receivership. [*Magistrate's Order on Defendant John C. Klosterman's Motions* (Nov. 3, 2021), attached as **Ex. 4**].[8]

The Receivership over the Properties, which were in varying states of distress and occupancy, proceeded during the COVID-19 pandemic with sale of the Properties on May 1, 2023 following the Court's approval of sale in December 2022. The Receiver reasonably and necessarily incurred operational and legal fees throughout this time, and beyond. And Klosterman continued with numerous repetitive filings that required responses by the City, Receiver and others, and which were addressed and denied by the Receivership Court.

---

[7] For example, on August 18, 2020, Klosterman filed a *Motion to Replace Receiver and TriState Organization, Inc. and Injunction*. [*Mot. to Replace Receiver* (Aug. 18, 2020), A1905588]. He complained about the activities and expenses reported by TSO, complained that the Receiver was unresponsive to his demands, and stated that he had been following, monitoring and photographing workmen. [*Id.*]. The Court found Klosterman's motion "not well-taken" and denied it. [Order Denying Moti. (Sept. 17, 2020), A1905588]. On September 30, 2020, Klosterman filed a *Motion to Amend or Alter Judgment*, asking that "the merits of his allegations be weighed more thoroughly and thoughtfully again by the officers of this Court. [*Motion to Amend*, (Sept. 30, 2020), A1905588].

[8] Therein, the Court denied: Klosterman's *Motion to Stay Further Action* filed February 28, 2020; *Request for Audit of Management Company Financial Reports* filed March 8, 2021; *Motion to Stay or Continue in Proceedings* filed April 30, 2021; *Motion to Compel Receiver, Richard Boydston/Konza LLC to Turn over Requested Business Documents Without Further Delay* and other motions filed June 10, 2021; *Motion to Ask That This Court Rule on all of the Defendant's Motions in Absentee and Motion to Ask the Court to Accept the Additional Reasons for the Immediate Removal of Receiver and Joseph Lentine and TSO* filed September 2, 2021 and untitled October 14, 2021 filing; and *Motion for Continuance* filed September 21, 2021. The Court also confirmed its August 17, 2021 denial of Klosterman's *Motion to Reconsider Removal of the Receiver*. [*Id.*]

### 2. **Klosterman is ordered to remove personal property from the Properties more than four years ago and did not.**

On September 17, 2020, the Court entered an *Order Directing Defendant John Klosterman to Remove Personal Property*. [*Order*, attached as **Ex. 5**]. Klosterman was ordered to provide a written notice listing any "Personal Property Claimed" to the Receiver no later than October 15, 2020. [*Id*. p. 1]. The Receiver was directed to respond in writing to Klosterman within 14 days of receipt of Klosterman's list. [*Id*. p. 2]. Klosterman was ordered to remove his Personal Property Claimed within 14 days thereafter, after which the Court ordered that "Klosterman and the Klosterman Entities shall have no right, title, interest or claim of any sort" to any Personal Property Claimed or otherwise located at the Properties. [*Id*.]. On October 19, 2020, the Receiver notified the Court that Klosterman "failed to file or serve anything in response or pursuant to that Order or to otherwise communicate in any form or manner with the Receiver with respect to any personal property which is, or may be, located on any of the real property subject to this receivership by the October 15, 2020 deadline." [*Receiver's Notice on Disposition of Personal Property*, attached as **Ex. 6**]. Consequently, "sole and exclusive ownership of all such personal property [wa]s transferred to the Receiver." [*Id*.; Ex. 5 p. 2 (Order)].

### 3. **Tri-State Organization, Klosterman's prior property manager, continues to provide services during the Receivership.**

Shortly before the Court entered its *Order Appointing Receiver*, Klosterman entered into an agreement with Tri-State Organization, Inc. ("TSO"), owned by Joseph Lentine, to manage the Properties. [Ex. 3, *First Report* p. 3]. TSO continued to provide property management services. Each of the Receiver's monthly reports attached TSO's reports on income and expenses with respect to the Properties. [*see, e.g.*, Ex. 3, *First Report* pp. 11-12; *Second Report* pp. 9-12 (May 21, 2020), attached as **Ex. 7**; *Fifth Report* pp. 5-10 (Aug. 14, 2020), attached as **Ex. 8**].

5

**4.** **The Receiver and Receiver counsel fees and expenses are reported and approved by the Receivership Court over Klosterman's objections.**

In initial reporting to the Court and parties, Konza reported that it was incurring fees for work as Receiver and for legal work, along with the hourly rates to be charged for these respective services by Konza and Dentons.[9] [Ex. 7, *Second Report* p. 2; *see also* Ex. 2, Order Appointing Receiver, p. 4]. Konza continued to file monthly reports and reported – among other things – that "incurred fees for work as receiver and also for legal counsel" continued to accrue and that "[a]n itemization of the Receiver's fees and expenses will be submitted for approval by the Court prior to any payment to the Receiver." [Ex. 8, *Fifth Report* p. 1(Aug. 14, 2020)].

On December 5, 2022, the Receiver filed a *Motion for Approval of Fees and Expenses through November 30, 2022 and Order Directing Payment*. [*Mot. by Receiver* (Dec. 5, 2020), attached as **Exhibit 9**]. Submitted with it were invoices reflecting the time, fees and expenses of counsel for the Receiver due to Dentons and the time, fees and expenses of the Receiver due to Konza. [*Id.* pp. 17-65 (Exhibit D – Dentons Invoices), pp. 66-103 (Exhibit E – Fees due to Konza LLC)]. Klosterman filed an *Objection to … Motion by Receiver for Approval of Fees and Expenses*. [*Objection* (Dec. 14, 2022), attached as **Exhibit 10**]. In it, among other things, Klosterman complained about: (a) what he believed to be "double billing" (*id.* p. 5 ¶ 27); (b) lack of information and attention from the Receiver for which he believed the Receiver "should be criminally liable" (*id.* pp. 5-6 ¶¶ 29-30); (c) alleged "collusion" between TSO, the City, and Boydston (*id.* p. 6 ¶ 31); (d) Boydston's "billing dollars spent" (*id.* p. 8 ¶ 42); and (e) other objections to the "legal billings" and activities (*id.* pp. 9-10 ¶¶ 43, 45-46). Klosterman requested a hearing (*id.* p. 12), which occurred on December 19, 2022.

---

[9] Konza further reported that "[c]ash flow for operations is not sufficient to cover all current operating expenses and therefore the Receiver will defer for now submission of time and billing statement and request for payment of fees for the Receiver and of fees for the Receiver's counsel." [*Id.* at pp. 2-3].

6

On December 20, 2022, the Magistrate entered an Order that granted the Receiver's Motion, ordered the Title Company to pay the Receiver the full sum sought out of the proceeds of the sale of the Properties, and ordered pursuant to Civ. R. 54(B) there was no just reason for delay. [*Magistrate's Order on Mot. by Receiver for Approval of Fees and Expenses Through Nov. 30, 2022 and Order Directing Payment* (Dec. 20, 2022), attached as **Ex. 11**].

On December 28, 2022, Klosterman filed an *Objection [to] ... Order to Distribute Fraudulent Sales Funds to Receiver and Richard Boydston.* [*Objection* (Dec. 28, 2022), attached as **Ex. 12**]. Klosterman again claimed there was "double billing by Richard Boydston" [*id.* p. 1], that his "review of the legal billings and investigation … [showed] alleged fraud … committed by … Boydston and the City Departments" [*id.*], and he complained about duplication between Konza and Dentons' "legal billing records" and the Receiver's hourly rate. [*Id.* at p. 2]. On January 18, 2023, the Court entered an *Entry Denying Klosterman's Motion to Set Aside Magistrate's Order.* [attached as **Ex. 13**]. Konza was paid the receivership fees and legal fees, as Ordered by the Receivership Court following Klosterman's objections, at the May 1,2023 closing on the sale of the Properties to the Landbank.[10]

On September 8, 2023, Konza requested approval and authorization of additional fees and expenses through August 31, 2023, and for an order terminating the receivership. [*Mot. by Receiver* (Sept. 8, 2023), attached as **Ex. 14**]. That Motion remains pending.[11]

---

[10] After the sale of the Properties, Klosterman continued to file motions and make demands relating to bank records, reports and other billing records. [*See, e.g., Motion to Compel Receiver* (Aug. 21, 2023), A1905588]. On March 21, 2024, the Magistrate Judge entered an order denying Klosterman's *Motion to Compel Receiver* and found it was "not well taken." The Magistrate Judge explained that **"The Receiver has fulfilled its obligation to provide documentation to the Court.** Therefore, Mr. Klosterman's motion is denied." [*Order* (Mar. 21, 2024), attached as **Ex. 15** (emphasis added)].

[11] The Landbank objected to fees and expenses sought by TSO and TSO and Lentine were allowed to intervene and pursue claims against the Receiver. Those claims were the subject of a 2025 Bench Trial. *See* Section 10 below.

### 5. **Court's Order of foreclosure and approval of sale procedures.**

On July 13, 2021, the Receiver filed a *Motion to Approve Sale of Properties by Public Auction*. [*Mot. to Approve Sale of Properties by Public Auction* (July 13, 2021), attached as **Ex. 16**]. On October 7, 2021, the Court entered a *Final Decree of Foreclosure*. [*Final Decree of Foreclosure* (Oct. 7, 2021)]. The Court ordered that following confirmation of the sale of the Properties, proceeds were to be paid in the order of priority in the Order Appointing the Receiver and "there [wa]s no just reason for delay." [*Id.* at p. 44].[12]

On October 8, 2021, the Receiver filed a *Notice of Revised Sale Terms* which submitted a Revised Sale Terms document. [*Notice of Revised Sale Terms* (Oct. 8, 2021), attached as **Ex. 17**]. On October 25, 2021, following a hearing on the *Motion to Approve Sale of Properties by Public Auction*, the Receiver filed an *Amended Motion by Receiver to Approve Sale and Sale Terms*, which contained a "Further Revised Sale Terms" sheet reflecting further revisions to the sales term sheet as had been discussed at the hearing. [*Amended Mot.* (Oct. 25, 2021), attached as **Ex. 18**]. Klosterman submitted a filing acknowledging receipt. [*See Defendant's Answer to the Revised Sales of Properties* (Nov. 17, 2021), A1905588]. On December 13, 2021, the Magistrate entered an *Order Granting Receiver's Motion for Sale* and approved the Further Revised Sale Terms. [attached as **Ex. 19**]. On March 4, 2022, the Court adopted the Magistrate's Order. [attached as **Ex. 20**].[13]

---

[12] The Decree of Foreclosure was preceded by a hearing at which Klosterman was present. [*See* Ex. 4, *Order on Klosterman's Motions* p. 4 (Nov. 3, 2021)].

[13] Klosterman continued filing frivolous motions during this time. [*See Mot. to Order Agent of City Richard Boydston to Sit for Deposition and Dismiss Without Prejudice and Audits* (March 23, 2022), attached as **Ex. 23**, in which Klosterman demanded Boydston's deposition, an audit, and dismissal without prejudice while simultaneously stating the "case should proceed to sale"].

6. **Court approval of sale to the Landbank.**

On September 26, 2022, the Receiver submitted a *Motion to Approve Sale of the Receivership Properties* to the Hamilton County Land Reutilization Corporation ("Landbank") for $1,474,017, which included a $674,017 credit on judgment in favor of the City, and $800,000 cash. [*Mot. by Receiver to Approve Sale* (Sept. 26, 2022), attached as **Ex. 21**]. Following a hearing, the Court entered its Order Approving Sale. [*Magistrate's Order on Mot. by Receiver to Approve Sale* (Oct. 19, 2022), attached as **Ex. 22**. *See also* Ex.11 (*Order Directing Payment* (Dec. 20, 2022)); Ex. 13 (*Entry Denying Klosterman's Mot. to Set Aside Magistrate's Order* (Jan. 18, 2023)].[14] The Court also entered an Order granting the City's and Landbank's motion to substitute the Landbank as the party plaintiff in the proceeding. [*Order Granting Mot. to Substitute* (Oct. 19, 2022), A1905588]. On May 1, 2023, the Receiver and Landbank closed on the sale of Properties. [*Report of Sale by Receiver* (May 22, 2023), attached as **Ex. 25**].

7. **Klosterman is convicted of menacing by stalking and violation of a protective order obtained by TSO employee Angel Strunk.**

Shortly before the Receivership Order was entered, Klosterman hired Angel Strunk to perform secretarial and related services. Lentine hired her in the same capacity for TSO. She resided in a property owned by Klosterman but not included in the Properties, across the street from TSO's offices. *See State v. Klosterman*, 2022-Ohio-4596, 2022 WL 17830269, ¶ 1-2 (1st Dist.). Strunk obtained a protective order against Klosterman after he continued to contact her – including to demand information relating to the Receivership – and visit her at the residence she rented from Klosterman. *Id.* at ¶ 3-5. Klosterman was convicted by a jury of menacing by

---

[14] Following the approval of the sale and in the weeks prior to closing, Klosterman filed a *Motion to Disqualify Magistrate Anita Berding*, in which he alleged bias and prejudice and espoused his dissatisfaction with various issues including the sale of the Properties. [*Mot. To Disqualify* (Apr. 18, 2023), attached as **Ex. 24**]. The Court denied the motion. [*Entry Denying Mot. to Disqualify* (May 19, 2023), A1905588].

stalking and violations of a protective order in August 2021. *See id.* at ¶ 8 (the "Stalking

Proceedings"). The judgment against Klosterman was affirmed on appeal. *Id.* at ¶ 27.[15] As

reflected in billing records about which Klosterman complains, Boydston was contacted by a

County prosecutor in connection with the charges against Klosterman and was subpoenaed to

testify at the criminal trial. [*See* Am. Compl. ¶ 25 (discussing Boydston's billing records)].[16]

### 8. Klosterman is declared a vexatious litigant.

In September 2023, Klosterman was deemed a vexatious litigant pursuant to O.R.C. §

2323.52(D) by the Hamilton County Court of Common Pleas pursuant to complaints filed by the

Landbank. [*See Hamilton Co. Land Reutilization Corp. v. John Klosterman*, A2300473, *Entry*

*Adopting Magistrate's Decision* (Oct. 27, 2023)]. The decision was affirmed on appeal.

[*Hamilton Co. Land Reutilization Corp v. John Klosterman*, C-230569, *Judgment Entry* (July 24,

2024)]. As a result, Klosterman is prohibited from instituting, continuing or making any civil

court filings (except for leave to plead) in any Ohio court. *See* O.R.C. § 2323.52(D).

### 9. Lentine and Strunk plead guilty to federal crimes relating to COVID-19 relief loans and funds.

In August 2021, TSO owner Joseph Lentine and Angel Strunk were charged with federal

crimes relating to obtaining and misusing SBA COVID-19 relief loans and funds.[17] Lentine pled

guilty to certain charges and was sentenced to 63 months of prison and ordered to pay restitution

---

[15] The docket sheet is publicly available at https://www.courtclerk.org/records-search/case-number-search/, along with all court records in that case.

[16] The Order Appointing Receiver authorized the Receiver to employ and retain persons to manage, maintain and repair the properties [*see, e.g.*, Ex. 2, p. 4 ¶ 3] and prohibited Klosterman from engaging in acts of interference. [*see id.*, p. 5 ¶ 5]. Furthermore, a Consent Decree had been entered in the federal Fair Housing Act suit against Klosterman which enjoined Klosterman from, among other things, "engaging in any other property-related activities that involve, or may involve, personal contact with tenants or prospective tenants." [*See U.S. v. Klosterman*, Case No. 1:18-cv-00194-MRB, *Consent Decree* p. 4 ¶ 12 (S.D. Ohio Oct. 1, 2020), Dkt. 92].

[17] [*U.S. v. Lentine*, Case No. 1:23-cr-30, *Compl.*(Aug. 31, 2021), Dkt. 1; *U.S. v. Strunk*, Case No. 1:22-cr-00070, *Compl.* (Aug. 31, 2021), Dkt. 1].

to the SBA and the Ohio Department of Job and Family Services.[18] Strunk also entered a guilty plea and awaits sentencing.[19]

**10. TSO and Lentine claims against Receiver for alleged unpaid fees and expenses and Order regarding payment.**

The Receiver separately filed a Motion for Approval of Fees and Expenses of TriState Organization on December 5, 2022. The Landbank filed a Memorandum in Opposition on January 3, 2023 [*Mem. in Opp.* (Jan. 3, 2023), A1905588] and a second memorandum in opposition on June 5, 2023. On September 23, 2023, TSO and Lentine moved for leave to file a complaint against the Receiver and others. [*See Mot. for Leave of Court to Assert Claims Against Receiver* (Sept. 22, 2023), A190558]. That motion was granted by a Magistrate's Order entered March 21, 2024. It was later agreed that all defendants named in the complaint except Konza would be dismissed, that the TSO and Lentine claims would be tried before the Magistrate and the ruling on the claims would resolve the pending fee motion.[20]

The total claimed by TSO and Lentine was $374,746 ($164,746 by TSO and $210,000 by Lentine).[21] Konza filed a counterclaim. [*Answer and Counterclaim*, A190558 (Aug. 13, 2024)]. After a four-day bench trial held in January and February 2025, a Magistrate's Decision was entered awarding TSO $74,211, to be reduced by $11,970 awarded to Konza and with no award in favor of Lentine. [*Magistrate's Decision as to TSO, Lentine & Konza Claims & Counterclaims* (Apr. 11, 2025), attached as **Ex. 26**]. The net award of $62,241 in favor of TSO was also to be

---

[18] [*U.S. v. Lentine*, Case No. 1:23-cr-30, Judgment (Jan. 16, 2025), Dkt. 65 pp. 1, 2, 6].

[19] [*U.S. v. Strunk*, Case No. 1:22-cr-00070, *Minute Entry* (Dec. 6, 2022), Dkt. 30; *Minute Entry* (July 22, 2025)].

[20] [*Order of Dismissal of Complaint of TriState Organization, Inc. and Joseph Lentine Civ. R. 41(A)(2)* (Aug. 19, 2024); *Magistrate's Order on Receiver's December 5, 2022 Mot. on Claims by TSO* (Aug. 19, 2024)].

[21] [*See Application for Payment of Costs, Expenses and Fees to TriState Organization, Inc. and Joseph Lentine* (May 1, 2023), A1905588]

reduced by the $4,970 awarded in favor of Konza against TSO and Lentine for suing Konza in this Court without leave of Court in the Receivership Proceeding. [*Id.*].[22] The Court acknowledged that Lentine's dealings during the Receivership resulted in criminal charges but concluded no "fraud or illegal acts were committed against Konza" and there was "no injury or unjust loss that resulted to Konza and is attributable to Lentine's conduct." [*Id.* p. 10].[23]

**11. Klosterman's allegations in the instant lawsuit.**

Klosterman filed his Complaint in this case on May 13, 2025. Klosterman filed an Amended Complaint on June 27, 2025. The Amended Complaint broadly alleges claims for RICO and RICO conspiracy (Counts I and II "Against All Defendants"), Section 1985 and 1983 violations (Counts III "Against All Defendants" and IV "Against Boydston, James and City"), and state-law claims of conversion (Count V "Against All Defendants"), fraud (Count VI "Against All Defendants"), breach of fiduciary duty (Count VII "Against Boydston, Konza LLC, Jennifer Donathan, Keller Williams"), malicious prosecution (Count VIII "Against Lentine, Strunk, and Boydston"), negligent supervision (Count IX "Against Dentons and City"), and intentional infliction of emotional distress (Count X "Against All Defendants"). With respect to the Boydston Defendants, Klosterman complains as follows:

- alleged simultaneous billing by Konza and Dentons, and that Dentons "failed to supervise Boydston's conflicts and criminal associations." [Am. Compl. ¶¶ 7, 45];

- alleged inadequacy of the May 2023 sale of the Properties by: (a) mischaracterizing Boydston's testimony discussing the structure and opinions relating to the sale at the TSO bench trial [*id.* ¶¶ 8-10], (b) claiming there was "a legitimate $1,000,000 cash offer" that should have been accepted instead of the $1,474,017 sale that had an

---

[22] [*See Tri-State Organization Inc. and Joseph Lentine v. Konza LLC, Richard Boydston, City of Cincinnati, Hamilton Co. Land Reutilization Corp. et al.*, 1:23-cv-00777-DRC, *Complaint* (Nov. 22, 2023), Dkt. 1; *Notice of Voluntary Dismissal* (March 8, 2024), Dkt. 24].

[23] After TSO, Lentine, the Receiver, and the Landbank filed objections to the Magistrate's Decision, on July 22, 2025, the Court entered an Order *Denying Objections and Adopting the Magistrate's Decision.* [Order (July 22, 2025), attached as **Ex. 27**].

$800,000 cash component [*see id.* ¶ 12; *see also* Ex. 21, *Mot. to Approve Sale*, p. 7 ¶ 2], and (c) alleging that unspecified defendants "modified" an "Original sales document" and an "Amended sales agreement" [Am. Compl. ¶¶ 13-14];

- "Defendants coordinated false criminal charges against him" [*id.*. ¶ 21], and Boydston's legal billing records showed that he had a discussion "with prosecutors, confirming his participation in the malicious prosecution." [*id.* ¶ 25]; and

- "Defendants converted [his] personal property including a … motorcycle . . . and [historical] documents" and, also, converted the Properties [*id.* ¶¶ 29, 41].

Klosterman also alleges that "Defendants" submitted "34 false monthly financial reports to court[,]" mailed "[f]alse billing statements and court filings" and "with[held] bank records[.]" [*id.* ¶ 34].

As detailed below, this Court lacks subject-matter jurisdiction over the Boydston Defendants because no leave was obtained in the Receivership Court to file suit, contrary to the *Barton* doctrine. Klosterman's Amended Complaint is also an improper collateral attack on state court proceedings contrary to *Rooker-Feldman*. Separately, the Court should dismiss the Boydston Defendants pursuant to Rule 12(b)(6) because immunity and collateral estoppel bar Klosterman's claims and Klosterman fails to state claims for relief under any of the federal and state law theories, many of which are also time-barred. This Court should dismiss the Boydston Defendants, with prejudice.

## II. <u>LEGAL STANDARDS</u>

### A. <u>Rule 12(b)(1)</u>

Challenges to subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) should be decided before any ruling on the merits under Rule 12(b)(6). *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). The party seeking to invoke jurisdiction bears the burden of proof. *Rogers v. Stratton*, 798 F.2d 913, 915 (6th Cir. 1986). A 12(b)(1) factual attack challenges the fact of jurisdiction. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In

such cases, the truthfulness of the complaint is not presumed, and the Court may weigh any evidence before it. *Morrison v. Circuit City Stores, Inc.*, 70 F.Supp.2d 815, 819 (S.D. Ohio 1999).

## B. Rule 12(b)(6)

When ruling on a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept well-pleaded facts as true, and examine the complaint for "'sufficient factual matter ... to state a claim to relief that is plausible on its face.'" *Brown v. City of Albion*, 136 F.4th 331, 337 (6th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868, (2009)). Courts must "disregard bare legal conclusions and 'naked assertion[s],'" affording the presumption of truth only to genuine factual allegations." *Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*, 17 F.4th 645, 648 (6th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Courts should not "'accept as true a legal conclusion'" nor "credit a '[t]hreadbare recital of the elements of a cause of action ... supported by mere conclusory statements.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). *See also Alshaibani v. Litton Loan Servicing, LP*, 528 F. App'x 462, 463 (6th Cir. 2013) (Court need not accept "unwarranted factual inferences."). Courts may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); *see also Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023) (Courts may "take judicial notice of matters of public record [and] orders"); *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) ("a court may take judicial notice of other court proceedings"); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).[24]

---

[24] "[A]t the motion to dismiss stage, courts play 'an important gatekeeper role,' as they ensure that 'claims rise beyond the level of speculation before submitting defendants to the potential rigors (and the costs) of the discovery process.'" *Childress v. City of Cincinnati, Ohio*, 765 F. Supp. 3d 662, 679 (S.D. Ohio 2025) (quotation omitted).

14

## III. ARGUMENT

### A. This Court lacks subject-matter jurisdiction.

#### 1. The *Barton* doctrine bars this suit against the Boydston Defendants.

The *Barton* doctrine requires that "leave of the court by which he was appointed must be obtained" before suit can be brought against a court-appointed receiver. *Barton v. Barbour*, 104 U.S. 126, 127, 26 L.Ed. 672 (1881). This is because the appointing court has *in rem* subject-matter jurisdiction over the receivership property and allowing the unauthorized suit to proceed "would [be] … a usurpation of the powers and duties which belonged exclusively to another court." *Id.* When leave to file is *not* first obtained from the appointing court, the other forum lacks subject-matter jurisdiction. *See, e.g.*, *In re Crown Vantage, Inc.*, 421 F.3d 963, 970–71 (9th Cir. 2005); *Bowman v. City of Olmsted Falls*, 2016 WL 7368720, at *4 (N.D. Ohio Dec. 19, 2016) (dismissing suit for lack of subject-matter jurisdiction against receiver and auctioneer alleging violations of 42 U.S.C. § 1983, Fifth Amendment takings, and breach of fiduciary duty).

Courts, including the Sixth Circuit, have applied *Barton* beyond receivers to other court-appointed officers such as trustees. *See, e.g.*, *In re McKenzie*, 476 B.R. 515, 529 (E.D. Tenn. 2012), *aff'd*, 716 F.3d 404 (6th Cir. 2013); *In re Sedgwick*, 560 B.R. 786, 793 (C.D. Cal. 2016). *Barton* also applies to actions filed against the court-appointed officer's attorneys. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993).

Klosterman's allegations directed to Konza, Boydston, and Dentons are all based on actions taken during the Receivership and pursuant to the Order Appointing Receiver and subsequent orders approving the actions and expenditures of the Receiver.[25] Klosterman has not sought or

---

[25] Klosterman complains about: the court-ordered sale of the Properties; fees and expenses charged by the Receiver and/or counsel paid subject to and following the Receivership Court's approval; personal property Klosterman left at the Properties contrary to court order; management of the Properties and related fees and expenses; and other actions

15

obtained leave from the Receivership Court. [*See* Docket, attached as **Ex. 1**]. This Court must

dismiss the Boydston Defendants for lack of jurisdiction. *See In re DeLorean Motor Co.*, 991

F.2d at 1241; *Austin v. Austin*, 2009 WL 10680527, at *4 (E.D. Mich. Feb. 26, 2009) (dismissing

counsel for bankruptcy trustee pursuant to Fed. R. Civ. P. 12(b)(1)); *Bowman*, 2016 WL

7368720, at *2.

### 2. The Court lacks jurisdiction over Klosterman's claims under the *Rooker-Feldman* doctrine.

This Court separately and additionally lacks jurisdiction to adjudicate Klosterman's claims

under the *Rooker-Feldman* doctrine because his Amended Complaint seeks to challenge, and is

inextricably intertwined with, state-court judgments and decisions in the Receivership

Proceeding.[26] When a complaint seeks to challenge state-court judgments, a federal court lacks

subject-matter jurisdiction under *Rooker-Feldman. See Rooker v. Fidelity Trust Co.,* 263 U.S.

413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460

U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Under this doctrine, federal district courts lack

jurisdiction to review state-court decisions whether final or interlocutory in nature. *RLR*

*Investments, LLC v. City of Pigeon Forge, Tennessee,* 4 F.4th 380, 396 (6th Cir. 2021). The

doctrine also prohibits district court review of state court judgment to claims that are

"inextricably intertwined" with a state court's determination. *Gilbert v. Ferry*, 401 F.3d 411, 416

(6th Cir.), *on reh'g in part,* 413 F.3d 578 (6th Cir. 2005) (affirming dismissal of § 1983 claims

against justices who failed to recuse themselves from pending cases). In the Sixth Circuit, a

"'federal claim is inextricably intertwined with a state-court judgment and thus implicates

---

or activities performed or undertaken by the Receiver or counsel consistent with its duties and obligations. [See, e.g., Am. Compl. ¶¶ 7, 8-10, 12, 25, 29].

[26] *Rooker-Feldman* also precludes this Court's exercise of jurisdiction to the extent Klosterman complains about his criminal conviction and the state court's affirmance of that conviction, in the Stalking Proceedings.

*Rooker–Feldman* when the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" *Id.* (quoting *Executive Arts Studio, Inc., v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004)). And, "a plaintiff cannot circumvent *Rooker–Feldman* by recasting his claim as a federal civil rights violation." *Huszar v. Zeleny*, 269 F. Supp. 2d 98, 103 (E.D.N.Y. 2003). "'The fact that [a] plaintiff alleges that the state court judgment was procured by fraud does not remove his claims from the ambit of *Rooker-Feldman*." *Id.* (quoting *Parra v. Greenpoint Mortgage*, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002), *aff'd sub nom.*, 53 Fed. Appx. 164 (2d Cir. 2002)); *see also Reguli v. Guffee,* 371 F. App'x 590, 593 (6th Cir. 2010) (claim that juvenile court official "conspired" against plaintiff was insufficient to avoid *Rooker-Feldman* dismissal); *Hillman v. Edwards*, No. 2:11-cv-00501, 2011 WL 4711979, at *2 (S.D. Ohio Oct. 6, 2011) (plaintiff "'cannot circumvent the *Rooker—Feldman* doctrine by recasting a request for the district court to review state-court rulings as a complaint about civil rights, due process, conspiracy, or RICO violations.'" (quotation omitted)).

Here, the source of all of Klosterman's claims and alleged injuries are state-court orders approving the sale of the Receivership Properties, approving payments of fees and expenses to the Boydston Defendants (and others), and addressing removal and ownership rights to personal property located in the Receivership Properties. [*See* Ex. 5, *Order Directing Klosterman to Remove Property* (Sept. 9, 2020); Ex. 20, *Entry Adopting Magistrate's Decision* (Mar. 4, 2022); Ex. 22, *Order on Mot. by Receiver to Approve Sale* (Oct. 19, 2022); Ex. 11, *Order on Mot. for Approval of Fees and Expenses* (Dec. 20, 2022); Ex. 13, *Entry Denying Klosterman's Mot. to Set Aside* (Jan. 18, 2023)]. Klosterman's claims "are nothing more than a direct attack on the state court ... action" and this court lacks jurisdiction to consider his claims. *Parra*, 2002 WL

17

32442231, at *2; *see also Huszar*, 269 F. Supp. 2d at 103 (dismissing claims against receiver and other defendants).

This Court correctly reached the same conclusion when it dismissed Klosterman's 2020 federal lawsuit in which he complained about the foreclosure proceeding, appointment of the Receiver, and other state-court proceedings leading to the foreclosure action and appointment of the Receiver. *Klosterman v. Sedamsville Cmty. Dev. Grp.*, 2020 WL 6440257, at *3 (S.D. Ohio Nov. 3, 2020), *report and recommendation adopted sub nom. Klosterman v. Sedamsville Cmty. Dev. Corp.*, 2020 WL 7711627 (S.D. Ohio Dec. 29, 2020).

Finally, while Klosterman's instant suit is properly subject to dismissal pursuant to *Rooker-Feldman* because injuries about which Klosterman complains are the result of state-court orders decided in the Receivership Proceeding, the Court's abstention pursuant to *Younger* is proper where Klosterman's allegations are construed as alleging damages beyond that which has already been decided by orders in the Receivership Proceeding. *See, e.g.*, *Childress v. City of Cincinnati*, 765 F. Supp. 3d 662, 687–88 (S.D. Ohio 2025) (concluding that *Younger* abstention was warranted for § 1983 claims involving pending public nuisance proceeding, as "'(1) state proceedings [were] currently pending, (2) the proceedings involve an important state interest, and (3) the state proceedings provide … an adequate opportunity to raise her constitutional claims.'" (quoting *Stewart v. Brown*, 2024 WL 3551151, at *2 (6th Cir. Apr. 4, 2024), *cert. denied*, 145 S. Ct. 276 (2024)).

## B. Klosterman's claims against the Boydston Defendants require dismissal pursuant to Rule 12(b)(6).

In addition to lack of subject-matter jurisdiction under Rule 12(b)(1), Klosterman's claims fail as a matter of law pursuant to Rule 12(b)(6). As detailed below, principles of immunity and collateral estoppel bar Klosterman's claims against the Boydston Defendants.

Additionally, Klosterman fails to state claims for relief under RICO, RICO conspiracy, § 1985, § 1983, and the various state-law causes of action alleged in the Amended Complaint. The Boydston Defendants should be dismissed, with prejudice.

### 1. The Receiver and its counsel are entitled to quasi-judicial immunity.

Klosterman's federal and state claims against the Boydston Defendants fail as a matter of law under Rule 16(b)(6) because the Boydston Defendants – a state-court receiver and its counsel – are entitled to quasi-judicial immunity. "A receiver acts as an 'arm of the court' and thus enjoys quasi-judicial immunity." *Davis v. LifeTime Capital, Inc.*, 740 Fed. Appx. 820, 829 (6th Cir. 2018); *see also Smith v. Martin*, 542 F.2d 688, 690 (6th Cir. 1976); *INF Ent., Inc. v. Donnellon*, 133 Ohio App.3d 787, 787-89, 729 N.E.2d 1221 (1st Dist.1999) ("Court appointed receivers act as arms of the court and are entitled to share the appointing judge's absolute immunity provided that the challenged actions are taken in good faith and within the scope of the authority granted to the receiver."). This is because receivers are "'performing tasks ... integral [to] or intertwined with the judicial process'" and "'stand ... as a ministerial officer of the court.'" *Davis*, 740 Fed. Appx. at 829 (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) and *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 626 (6th Cir. 2003)). Counsel for the court-appointed officer – here, Dentons – "are the functional equivalent" of the court-appointed officer and entitled to the same immunity defense and protection afforded the Receiver. *In re McKenzie*, 476 B.R. 515, 525–28 (E.D. Tenn. 2012), *aff'd*, 716 F.3d 404 (6th Cir. 2013) (application of Trustee's immunity applied to his counsel).

Klosterman's allegations about the Boydston Defendants are all based on actions taken pursuant to the Order Appointing Receiver and subsequent orders approving the actions and expenditures of the Receiver. Klosterman complains that Boydston provided both receivership

services and legal services, and about the billing for such services. [Am. Compl. ¶¶ 5, 7]. The state court's orders reflect that Boydston was authorized to do this [*see* Ex. 2, pp. 3-4 ¶ 3(B)], and "the judge was aware of, and approved of" the expenditures paid to the Boydston Defendants, including "legal fees[.]" *Trinh v. Fineman*, 9 F.4th 235, 239 (3d Cir. 2021) (affirming dismissal of § 1983 claims against receiver based on immunity where court had reviewed and approved expenditures, including legal fees, paid to receiver). [*See* Ex. 11, *Magistrate's Order on Mot. by Receiver for Approval of Fees and Expenses Through November 30, 2022 and Order Directing Payment* (Dec. 20, 2022); Ex. 13, *Entry Denying Klosterman's Mot.* (Jan. 18, 2023)].[27] Klosterman also complains about the sale of the Properties and claims a different offer was improperly rejected. [*See, e.g.*, Am. Compl. ¶ 12]. But the Receiver was authorized to sell the Properties with court approval [Ex. 2, p. 8, ¶ 17] and the Court subsequently approved the *Receiver's Motion for Sale* [Exs. 19-20], and the *Receiver's Motion to Approve Sale of the Receivership Properties* to the Landbank. [Ex. 21, *Mot. by Receiver to Approve Sale* (Sept. 26, 2022); Ex. 22, *Order on Mot. by Receiver to Approve Sale* (Oct. 19, 2022); Ex. 13, *Entry Denying Defendant's Mot. to Set Aside* (Jan. 18, 2023)]. Klosterman also complains about alleged conversion of personal property [Am. Compl. ¶¶ 29-30], but any disposal of such property occurred by court order after Klosterman failed to claim and remove it by the Court's deadlines. [Ex. 5, *Order Directing Defendant John Klosterman to Remove Personal Property* (Sept. 16, 2020); Ex. 6, *Receiver's Notice on Disposition of Personal Property* (Oct. 19, 2020)]; *see also Davis*, 740 Fed. Appx. at 830 (receiver was entitled to quasi-judicial

---

[27] The state court has also ordered that "[t]he Receiver has fulfilled its obligation to provide documentation to the Court" with respect to the Receiver's currently-pending motion for fees and expenses from December 1, 2022 through August 31, 2023, and denied Klosterman's Motion to Compel Receiver to provide additional reporting or information beyond the detailed bills of Konza and Dentons submitted for court approval. [Ex. 15, *Magistrate's Order* (Mar. 21, 2024)].

immunity against conversion claims where his conduct was consistent with authority granted by the court). To the extent Klosterman complains about the Receiver working with TSO as a property manager, the Receiver was authorized to do so [Ex. 2, pp. 3-4 ¶ 3], and expenditures or payments to TSO were also subject to court review and approval. [Ex. 26, Decision as to TSO, Lentine & Konza Claims & Counterclaims; Ex. 27, Order Adopting Magistrate Order].

The Boydston Defendants performed and received compensation for services pursuant to court authority, review, approval and orders. Apart from legal conclusions or conjecture, Klosterman has not plausibly alleged that the Boydston Defendants acted in bad faith or outside of the court's authority. Accordingly, "the policy behind immunity for receivers 'to prevent vexing suits against public officials' who are simply performing their duties … applies here." *Trinh*, 9 F.4th at 239. The Boydston Defendants are entitled to immunity and should be dismissed as a matter of law.

### 2. Klosterman's claims are barred by collateral estoppel.

Collateral estoppel also bars Klosterman's claims against the Boydston Defendants. Under various labels and theories, Klosterman seeks to impose liability and obtain damages based on: (1) the court-approved sale of Receivership Properties following the court's order of foreclosure, (2) the alleged impropriety of fees charged by the Receiver and its counsel, and (3) personal property that was unclaimed contrary to a 2020 court order. Collateral estoppel "holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different. *Fort Frye Teachers Ass'n, OEA/NEA v. State Emp't Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140, (1998). *See also Georgia-Pac. Consumer Prods. LP v. Four-U-*

21

*Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012). Collateral estoppel applies where there has

been a final, appealable order entered in the previous action. *Ohio Bureau of Workers' Comp. v.*

*Price*, 2023-Ohio-4395, 230 N.E.3d 1248, ¶ 14 (10th Dist.). Final orders within the meaning of

Ohio Revised Code 2505.02 meet the collateral estoppel standard. *State v. Williams*, 76 Ohio

St.3d 290, 294, 667 N.E.2d 932 (1996). "A receivership is a special proceeding" within the

meaning of R.C. 2505.02, and specifically within R.C. 2505.02(B)(2), defining a final order as

one that "'affects a substantial right made in a special proceeding.'" *Lucas, Tr. for Miriam C.*

*Lucas Tr. v. Reywal Co. Ltd. P'ship*, 2019-Ohio-27, 118 N.E.3d 505, ¶ 15 (10th Dist.). *See also*

*Forest City Inv. Co. v. Haas*, 110 Ohio St. 188, 190, 143 N.E. 549 (1924). Klosterman's claims

against the Boydston Defendants are barred by collateral estoppel because the issues raised by

Klosterman all relate to issues that have been litigated and decided in the Receivership

Proceeding.

### a. <u>Fees paid to Konza and Dentons.</u>

Klosterman complains about the court-approved fees paid to the Receiver and legal counsel.

[Am. Compl. ¶¶ 7, 25, 34, 42]. Klosterman raised these issues and made these same arguments

in his objection to the *Motion by Receiver for Approval of Fees and Expenses*. [Ex. 10, pp. 5-6 ¶¶

27, 29-30, 31; p. 8 ¶ 42; pp. 9-10 ¶¶ 43, 45-46]. After considering the arguments and conducting

a hearing, the Receivership Court fully granted the Receiver's and counsel's fees and expenses as

requested, entered the order as a final, appealable judgment, and directed the Receiver and

counsel be paid from the subsequent sale proceeds from the court-approved sale. [Ex. 11]. After

Klosterman filed another objection, the Receivership Court reviewed and denied that too. [Exs.

12-13]. The propriety of fees paid "has been actually and necessarily litigated and determined" in

the Receivership Court, the state considered and decided there was no merit to Klosterman's

claims, and collateral estoppel bars Klosterman from re-litigating the issue here. *Teays Valley Local Sch. Dist. Bd. of Educ. v. Struckman*, 2023-Ohio-244, 206 N.E.3d 796, ¶ 62(4th Dist.). *See also Golden Goose Properties, L.L.C. v. Leizman*, 2014-Ohio-4384, 2014 WL 4924131, ¶ 17-19 8th Dist.) (order directing distribution of garnished funds constituted a final, appealable order as it affected a substantial right).

**b. Sale of Receivership Properties.**

Klosterman next complains about the adequacy of the sale of the Receivership Properties to the Landbank, claiming the sale should have been rejected in favor of another purported offer. [Am. Compl. ¶¶ 8-12]. After a Foreclosure Decree was entered, and following a hearing on the sale procedures, the state court approved the sales terms and procedures. [Exs. 19-20]. Then, on September 26, 2022, the Receiver filed a *Motion to Approve Sale of the Receivership Properties* for the sale to the Landbank. [Ex. 21]. Following a hearing, the Court approved the sale on October 18, 2022. [Ex. 22]. The order was final and appealable. *See Lucas,* 2019-Ohio-27, 118 N.E.3d 505 ¶ 15 (order for receiver to proceed with purchase agreement affected a substantial right made in a special proceeding and was a final, appealable order). The Receivership Court reviewed the terms of the sale and approved it, so collateral estoppel precludes Klosterman from re-litigating the adequacy of the sale to the Landbank. *See Teays Valley Local Sch. Dist. Bd. of Educ.*, 2023-Ohio-244, 206 N.E.3d 796, at ¶ 62.

**c. Unclaimed Personal Property at Receivership Properties.**

Klosterman claims that his personal property located at the Receivership Properties was stolen, alleging that he was never given the opportunity to retrieve items. [Am. Compl. ¶¶ 29–30]. On September 16, 2020, the Receivership Court entered an *Order Directing Defendant John Klosterman to Remove Personal Property* which required Klosterman to give written notice of

23

his intent to remove any personal property no later than October 15, 2020 and set a "Personal Property Claimed Removal Deadline," after which the Court ordered that Klosterman relinquished title in any personal property left at the Receivership Properties. [Ex. 5]. Klosterman failed to provide notice, failed timely to retrieve his personal property, and the Receivership Court determined that he surrendered any claim of title to personal property left at the Receivership Properties. That was a final, appealable order within the meaning of O.R.C. § 2505.02(B)(2) as it affected "a substantial property interest" and therefore a "substantial right" as part of a special proceeding. *See, e.g.*, *Williams*, 76 Ohio St.3d at 294, 667 N.E.2d 932. (suspension of the use and possession of a driver's license affects a substantial right).

All of Klosterman's causes of action and allegations, to the extent they are directed to the Boydston Defendants, complain in some fashion about issues that have necessarily been determined in the Receivership Proceeding. The Court should dismiss the claims against the Boydston Defendants pursuant to the doctrine of collateral estoppel.

### 3. **Klosterman fails to state claims for relief against the Boydston Defendants under federal law theories.**

In addition to being barred by quasi-judicial immunity and collateral estoppel, Klosterman independently fails to state claims for relief against the Boydston Defendants for RICO, RICO conspiracy, § 1985, and § 1983 claims (Counts I-IV).

### a. **Klosterman fails to state a RICO or RICO conspiracy claim.**

Klosterman alleges a RICO claim under 18 U.S.C. § 1962(c) and a RICO conspiracy claim under 18 U.S.C. § 1962(d) broadly against "All Defendants". [Am. Compl. pp. 7-8]. Scraping away the inflammatory labels and legal conclusions, these are not plausible claims and should be dismissed pursuant to Rules 12(b)(6) and 9(b).

24

A violation of 18 U.S.C. § 1962(c) requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). [28] A pattern of racketeering activity requires at least two acts of racketeering activity within ten years of each other. 18 U.S.C. § 1961(5). To show a "pattern" of racketeering activity, a plaintiff must show "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–39, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *see also Brown v. Cassens Transp. Co.*, 546 F.3d 347, 355 (6th Cir. 2008). A RICO conspiracy requires allegations of "all the elements of a RICO action plus one additional element: 'an illicit agreement to violate the substantive RICO provision.'" *Am. BioCare Inc. v. Howard & Howard Attorneys Pllc*, 702 Fed. Appx. 416, 423 (6th Cir. 2017) (quoting *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 806 (6th Cir. 2015)). Where a plaintiff does not establish an underlying RICO violation, the RICO conspiracy claim also fails. *Id.*

### (1) Klosterman fails to plead an association-in-fact or threat of continued criminal activity.

"A properly pled RICO claim must cogently allege activity 'that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact.'" *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000) (quotation omitted). Klosterman's pleading "essentially lists a string of entities allegedly comprising the enterprise, and then lists a string of supposed racketeering activities in which the enterprise purportedly engages" which is insufficient as a matter of law. *Id.* at 781-82; [*see* Am. Compl. ¶¶ 32, 34]. His

---

[28] 18 U.S.C. § 1962(c) provides as follows: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

complaint is devoid of plausible factual allegations to establish that the listed behavior was "coordinated" in any way. *Begala*, 214 F.3d at 781-82 ("the complaint must contain facts suggesting that the behavior of the listed entities is 'coordinated' in such a way that they function as a 'continuing unit[.]'").

Klosterman's RICO claims additionally fail because his allegations are that the alleged "enterprise" existed with the single objective of depriving him of his property. [*See* Am. Compl. ¶¶ 31, 33]. A RICO claim does not lie when defendants embark on a scheme with the single objective of depriving a "single victim" of some benefit. *See Vemco, Inc. v. Camardella*, 23 F.3d 129, 135 (6th Cir. 1994). Klosterman's Amended Complaint lacks any plausible factual allegations "suggesting that the scheme would continue beyond the Defendants accomplishing their goal" of allegedly depriving him of his property through a receivership. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 725-26 (6th Cir. 2006). Klosterman's allegation that the enterprise is a state-court receivership which has deprived him of his property is insufficient as a matter of law and requires dismissal. *Id.*[29]

### (2) Klosterman fails to allege any predicate offenses.

To establish a "pattern of racketeering activity," Klosterman must plausibly allege that each of the Boydston Defendants committed at least two predicate offenses. 18 U.S.C. § 1961(5); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Klosterman summarily lists the following as having been committed by all "Defendants": "Wire Fraud: 34 false monthly financial reports to court"; "Mail Fraud: False billing statements and

---

[29] Klosterman also has not plausibly alleged an enterprise engaged in activities which affect interstate or foreign commerce. Klosterman's alleged RICO "enterprise" is one operating through a state court-appointed receivership. [Am. Compl. ¶ 31]. The Receivership about which he complains was ordered by the Hamilton County, Ohio Court of Common Pleas and involved Properties located exclusively in Hamilton County, Ohio.

court filings"; "Bank Fraud: Fraudulent PPP loan applications"; "Money Laundering: Concealing sources of fraudulent proceeds"; (18 U.S.C. § 1956); and "Obstruction: Withholding bank records, filing false reports[.]" [Am. Compl. ¶ 34].

Despite this Court's order directing Klosterman to specify the "claims for relief attributable to each defendant, and the factual allegations supporting each such claim," [Dkt. 32 p. 4], Klosterman does not allege which defendant he believes committed which predicate offense or any factual allegations directed to any defendant as to any predicate offense. A complaint "'may not rely upon blanket references to acts or omissions by all of the 'defendants,' for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the … conduct with which he individually stands charged.'" *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (quoting *Benoay v. Decker,* 517 F.Supp. 490, 493 (E.D. Mich. 1981)). Accordingly, and as detailed below for the Boydston Defendants, the RICO counts must be dismissed.

Klosterman's pleading lacks factual allegations directed to the Boydston Defendants to support any, let alone two, of the listed predicate offenses, and lacks the specificity required by Rule 9(b). Because Klosterman claims racketeering activities resulting from wire, mail or bank fraud, he "must state with particularity the circumstances constituting [such] fraud." Fed. R. Civ. P. 9(b); *see also Am. BioCare Inc. v. Howard & Howard Attorneys Pllc*, 702 Fed. Appx. 416, 421 (6th Cir. 2017). "At a minimum," Klosterman "must 'allege the time, place, and content of the alleged misrepresentation on which [he] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Id.* (quoting *Heinrich v. Waiting Angels Adoption Servs. Inc.*, 668 F.3d 393, 403 (6th Cir. 2012); *see also United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003)).

27

Klosterman's Amended Complaint does not meet this standard. He alleges "34 false monthly financial reports to court" that constitute "Wire Fraud" and "False billing statements and court filings" that constitute "Mail Fraud" [Am. Compl. ¶ 34], without specifying: any financial report, billing statement or court filing; whose report, statement or filing it was; its date, the "time, place, [or] content of the alleged misrepresentation on which [he] relied[,]" any fraudulent intent, or any resulting injury. *See Am. BioCare Inc.*, 702 Fed. Appx. at 421. *See also Cmty. Health Sys., Inc.*, 342 F.3d at 643. Because he fails to "give even one date on which an alleged misrepresentation occurred" in any financial report, billing statement, or court filing this "alone dooms [his] ability to allege fraud with particularity." *Id.* at 422. Moreover, separate and apart from the heightened Rule 9(b) standard, Klosterman does not allege facts about the Boydston Defendants plausibly setting forth any elements of 18 U.S.C. § 1341 or 18 U.S.C. § 1343.[30] Finally, none of the Boydston Defendants are alleged to have submitted any "PPP loan applications" on which an alleged "Bank Fraud" offense is premised. [Am. Compl. ¶ 34]. Regardless, no loan application is identified with requisite specificity – including any reliance or resulting injury to Klosterman. Nor has he alleged facts about the Boydston Defendants plausibly setting forth any elements of 18 U.S.C. § 1344.[31]

---

[30] The elements of mail fraud, 18 U.S.C. § 1341, are: "(1) devising or intending to devise a scheme to defraud (or to perform specified fraudulent acts); (2) involving a use of the mails; and (3) for the purpose of executing the scheme or attempting to do so." *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997). "A defendant does not commit mail fraud unless he possesses the specific intent to deceive or defraud," and "a scheme to defraud must involve '[i]ntentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed." *Id.* (quotations omitted). The elements of wire fraud, 18 U.S.C. § 1343, are: (1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *United States v. Prince*, 214 F.3d 740, 747–48 (6th Cir. 2000).

[31] The elements of bank fraud, 18 U.S.C. § 1344, are: "(1) the defendant must have knowingly executed or attempted to execute a scheme to defraud a financial institution; (2) the defendant must have done so with the intent to defraud; and (3) the financial institution must have been insured by the Federal Deposit Insurance Corporation." *United States v. Isaiah*, 434 F.3d 513, 520 (6th Cir. 2006) (quotation omitted).

For "Money Laundering," Klosterman offers merely a legal conclusion that unspecified defendants have "conceal[ed] sources of fraudulent proceeds," and he does not plausibly allege any facts supporting the statutory elements with respect to the Boydston Defendants.[32] There are no existing or alleged facts that the Boydston Defendants have used funds "that are the proceeds of unlawful activity" with "knowledge that the funds are proceeds of unlawful activity," or that the Boydston Defendants "conduct[ed] or attempt[ed] to conduct a financial transaction, knowing that the transaction is designed … to disguise the nature, location, source, ownership or control of the proceeds." *United States v. Prince*, 214 F.3d 740, 747 (6th Cir. 2000).

Last, and to the extent Klosterman intended to allege obstruction of justice as a predicate offense, nowhere does he allege that any Boydston Defendant has engaged in any "threats of force" or "any threatening letter of communication" to influence, intimidate, or impede any witness, juror or court official. *See U.S. v. Jester*, 775 F.2d 670, 675-76 (6th Cir. 1985) (discussing obstruction of justice elements).[33]

Klosterman has not alleged a single instance of fraud with respect to the Boydston Defendants, or any facts to plausibly support any of the predicate offenses he summarily listed. He has not plausibly pleaded that the Boydston Defendants violated 18 U.S.C. § 1962 because he

---

[32] The elements of money laundering, 18 U.S.C. § 1956 (a)(1)(A)(i), intent to promote the carrying on of specified unlawful activity, are: "Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity … with the intent to promote the carrying on of specified unlawful activity[.]" 18 U.S.C.A. § 1956(a)(1)(A)(i). The elements of money laundering, 18 U.S.C. § 1956(a)(1)(B)(i), knowing the transaction is designed to conceal facts related to proceeds, are: "(1) use of funds that are proceeds of unlawful activity; (2) knowledge that the funds are proceeds of unlawful activity; and (3) conduct or attempt to conduct a financial transaction, knowing that the transaction is designed in whole or in part to disguise the nature, location, source, ownership or control of the proceeds." *U.S. v. Prince*, 214 F.3d 740, 747 (6th Cir. 2000).

[33] 18 U.S.C. § 1503 "forbids the influencing, intimidation, or impeding of any witness, juror, or court official." *United States v. Jester*, 775 F.2d 670, 675-76 (6th Cir. 1985). "The omnibus clause covers 'whoever ... *corruptly* or by threats of force, or by any threatening letter of communication, influences, obstructs, or impedes, *or endeavors to influence, obstruct, or impede,* the due administration of justice[.]" *Id.* (emphasis in original) (quoting 18 U.S.C. § 1503).

has not alleged they acted in a RICO enterprise and he has not shown they participated in a pattern of racketeering activity. Klosterman's RICO and RICO conspiracy claims against the Boydston Defendants should be dismissed with prejudice.

### b. **Klosterman fails to state claims under 42 U.S.C. § 1985.**

Count III of Klosterman's pleading is a civil rights conspiracy claim under 42 U.S.C. § 1985 alleging that "All Defendants … conspired to deprive Plaintiff of constitutional rights through coordinated use of legal processes, regulatory authority, and false prosecutions." [Am. Compl. ¶ 39]. However, Klosterman does not identify which defendant(s) he believes he can proceed against or identify under which of the multiple parts of § 1985 he intends to proceed. Regardless, there are not any allegations that even remotely support § 1985 relief, and it is not a viable claim.

Klosterman is not a federal officer and therefore has no cognizable claim under § 1985(1). *Courser v. Allard*, 969 F.3d 604, 618 (6th Cir. 2020); *see also* 15 Am. Jur. 2d Civil Rights § 175 (Section 1985(1) "creates a cause of action for conspiracy to interfere with civil rights by preventing a federal officer from performing his or her duties" and "[i]t does not apply to private individuals or to nonfederal officials."). Section 1985(2) does not apply because it "'prohibits conspiracies to influence parties, witness[es], or jurors in federal court proceeding[.]'" *Id.* (quotation omitted). Klosterman's allegations do not involve any federal court proceeding, nor any alleged improper influence of any party, witness or juror. Section 1985(2) also prohibits "'two or more persons [from] conspir[ing]'" to interfere with state judicial proceedings "with intent to deny to any citizen the equal protection of the laws.'" *Alexander v. Rosen*, 804 F.3d 1203, 1207 (6th Cir. 2015) (quoting 42 U.S.C. § 1985(2)). This claim requires "that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the

30

conspirators' action.'" *Id.* at 1207-08 (quotation omitted). Klosterman does not allege racial or other class-based discrimination, and "[h]is § 1985[(2)] claim must therefore fail." *Id.*

A cause of action under § 1985(3) for "conspiracy to deny a citizen the equal protection of the laws" also "must be founded on a class-based invidious discrimination." *Smith v. Martin*, 542 F.2d 688, 690 (6th Cir. 1976). Klosterman "does not contend that there was '... some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action'" and accordingly such action may not be maintained. *Id.* (quotation omitted).[34] Because Klosterman has no cognizable claim under any part of § 1985, Count III must be dismissed.

### c. **Klosterman fails to state claims for relief against Boydston under 42 U.S.C. § 1983.**

In Count IV of his Amended Complaint, Klosterman alleges that Boydston, City building inspector Terry James, and the City are liable under 42 U.S.C. § 1983 because these "Defendants acting under color of state law violated Plaintiff's Fifth Amendment (taking without compensation), Fourteenth Amendment (due process), and Fourth Amendment (unreasonable seizure) rights." [Am. Compl. ¶ 40]. As detailed in Section III.B.1, Boydston is entitled to immunity against these claims. *See also Fontain v. Lane*, 2022 WL 6764821, at *10 (S.D. Ohio Oct. 11, 2022), *report and recommendation adopted*, 2025 WL 1671548 (S.D. Ohio June 13, 2025) (dismissing § 1983 claims against "Receiver defendants" as they were entitled to immunity). As detailed in Section III.B.2, collateral estoppel also bars Klosterman's claims relating to the "taking" or "seizure" of his property. He has no plausible "taking", denial of "due process" or "unreasonable seizure" claim under Section 1983, nor has he plausibly alleged facts supporting such claims. *See, e.g.*, *Davet v. City of Cleveland*, 456 F.3d 549, 553-54 (6th

---

[34] As detailed in Section III.B.1, the Boydston Defendants as a receiver and legal counsel are entitled to immunity even if facts were pled or existed to support the elements of any claim under any subsection of § 1985. *See, e.g. Smith*, 542 F.2d at 690.

Cir.2006) (§ 1983 due process and taking claims fail where the property was taken for the purpose of abating a property nuisance and in accordance with court orders and procedures mandated by city and state law); *Embassy Realty Investments, Inc. v. City of Cleveland*, 572 Fed. Appx. 339, 345 (6th Cir. 2014) ("taking" or "seizure" to "abate a nuisance after the entry of remedial orders does not violate the Fourth Amendment" or taking or due process rights); *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 311 (6th Cir. 2021) (affirming dismissal of § 1983 claims based on demolition of building as public nuisance on property owned by plaintiff).

Separately and additionally, Klosterman's Section 1983 claims against Boydston are subject to a two-year statute of limitations and are time-barred. *Childress v. City of Cincinnati, Ohio*, 765 F. Supp. 3d 662, 681 (S.D. Ohio 2025) (citing *Beaver St. Invs., LLC v. Summit Cnty.*, 65 F.4th 822, 826 (6th Cir. 2023)); *Filer v. Polston*, 886 F. Supp. 2d 790, 795 (S.D. Ohio 2012), *aff'd* (Apr. 24, 2013). To the extent Klosterman alleges that Boydston "took" or "seized" personal property located in the Properties [see Am. Compl. ¶ 29], the state court entered its *Order Directing ... Klosterman to Remove Personal Property* on September 16, 2020 [Ex. 5], Klosterman did not identify, claim or remove any personal property, and the Receiver then filed and served a *Notice on Disposition of Personal Property* on October 19, 2020. [Ex. 6]. To the extent that Klosterman claims that Boydston is responsible for "taking" his Properties, the state court entered its final decree of foreclosure in favor of the City on October 7, 2021, the court approved and ordered the sale of the Properties, with transfer of title and proceeds distributed pursuant to court order, on May 1, 2023. [*See* Ex. 22; Ex. 25]. All of this occurred more than two years before Klosterman filed this lawsuit on May 13, 2025. Accordingly, Klosterman's § 1983

claims are time-barred. *Beaver St. Investments, LLC v. Summit Cnty., Ohio*, 65 F.4th 822, 828 (6th Cir. 2023). *See also Childress*, 765 F. Supp. 3d at 682.[35]

Klosterman's "taking without compensation", "due process" and "unreasonable seizure" claims against Boydston are all time-barred because they accrued more than two years prior to the May 13, 2025 filing of the instant lawsuit. Count IV against Boydston should be dismissed.

### 4. Klosterman fails to state claims for relief against the Boydston Defendants under state law theories.

Klosterman's pleading should be dismissed in its entirety for lack of subject-matter jurisdiction under Rule 12(b)(1). Additionally, Klosterman's federal claims fail as a matter of law for the reasons stated in Sections III.B.1-3, *supra*. If this Court exercises supplemental jurisdiction over Klosterman's state-law claims, the Boydston Defendants should be dismissed with prejudice because those claims fail to state viable claims, are patently implausible, and are time-barred.

#### a. Conversion.

Klosterman alleges conversion against "All Defendants" in Count V. [Am. Compl. ¶ 41 ("Defendants intentionally converted over $4.5 million in property value, $437,000 in rental income, and $50,000+ in personal property.")]. While this claim is subject to dismissal based on his impermissible grouping of "All Defendants" and vagueness of this claim, any disposition of

---

[35] Klosterman does not allege §1983 malicious prosecution liability. However, any claim for malicious prosecution, whether under § 1983 or Ohio state law (*see* Am. Compl. Count VIII) is also time-barred and fails as a matter of law because Klosterman's appeal of that conviction was affirmed in December 2022, *see State v. Klosterman*, 2022-Ohio-4596, 2022 WL 17830269, ¶ 27 (1st Dist.), and that criminal proceeding did not terminate in Klosterman's favor. *Brown v. Louisville-Jefferson Cty. Metro Gov't*, 135 F.4th 1022, 1031 (6th Cir. 2025) (for a § 1983 malicious-prosecution claim, "'an element that must be alleged and proved ... is termination of the prior criminal proceeding in favor of the accused"); *Armatas v. Aultman Hosp.*, 2022-Ohio-4376, 203 N.E.3d 130, ¶ 24-28 (5th Dist.) ("termination of the prior proceedings in the plaintiff's favor" is a requisite element of a malicious prosecution claim); *King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (underlying state law malicious prosecution statute of limitations applies to § 1983 malicious prosecution claim); O.R.C. § 2305.11(a) (one-year statute of limitations applies to malicious prosecution claim).

property by the Boydston Defendants has been pursuant to court order and approval. *See* Section III.B.1, *supra*. Accordingly, the Boydston Defendants are entitled to immunity. *See Davis*, 740 Fed. Appx. at 830.

Additionally, in Ohio, "conversion only applies to personal property, not real property." *Bethel Oil & Gas, LLC v. Redbird Dev., LLC*, 258 N.E.3d 470, 505 (Ohio Ct. App. 2024), *appeal allowed sub nom.*, 253 N.E.3d 153 (2025); *McCarty v. River Pines RV Resort Condo. Assn., Inc.*, 951 N.E.2d 165, 174 (Com. Pl. 2011). Furthermore, a conversion claim under Ohio law requires that: "(1) the plaintiff had ownership or right of possession of the property at the time of conversion; (2) the defendant's conversion by a wrongful act or disposition of plaintiff's property or property rights; and (3) damages resulted therefrom." *RAE Assocs., Inc. v. Nexus Commc'ns, Inc.*, 2015-Ohio-2166, 36 N.E.3d 757, ¶ 30 (10th Dist.). "It is fundamental that a plaintiff in a conversion action must show *title or rightful ownership* of the chattel, including money, at the time of the alleged conversion." *Id.* (quotation omitted) (emphasis added). And where money is at issue, the plaintiff must establish that the funds were "earmarked," that is, "the defendant had an obligation to deliver a specific corpus of money capable of identification and not merely that the defendant had an obligation to pay a certain sum as a general debt." *Id.* at 765–66. Klosterman does not, and cannot plausibly, allege these elements or supporting factual allegations, and dismissal should be had. *See id.*

Finally, to the extent Klosterman complains that the Receiver disposed of personal property located on or in the Receivership Properties [*see* Am. Compl. ¶ 29], conversion fails as a matter of law because it is time-barred. The statute of limitations for conversion is four years. *Meehan v. Mardis*, 2019-Ohio-4075, 146 N.E.3d 1266, ¶ 43 (1st Dist.). The statute of limitations applicable to the Boydston Defendants is two years pursuant to O.R.C. § 2744(A). *See also* O.R.C. §

2744.01(B), (C)(2)(f). To be clear, Klosterman has no conversion claim because he did not have ownership or right of possession following the Court's order transferring "sole and exclusive ownership of all such personal property" to the Receiver after expiration of the Personal Property Claimed Removal Deadline in October 2020 [*see* Ex. 5], but any conversion claim would have accrued in or prior to October 2020 and is time-barred.

### b. **Fraud.**

Klosterman alleges fraud against "All Defendants" in Count VI. [Am. Compl. ¶ 42 ("Defendants made material misrepresentations regarding property values, sale processes, and financial reports with intent to deceive.")]. Klosterman fails to allege a cognizable fraud claim directed to the Boydston Defendants and his pleading lacks the specificity required by Rule 9(b). Rule 9(b) requires a plaintiff "at a minimum, to allege the time, place, and content of the alleged misrepresentation on which plaintiff relied, the fraudulent scheme, the fraudulent intent of the defendants, and the injury resulting from the fraud." *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 735 (S.D. Ohio 2009); *see also Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614–15 (6th Cir. 2024).[36]

Klosterman does not allege the "who, what, when, where, and how" of any purported fraud. *See, e.g., Greer*, 114 F.4th at 615 (dismissing fraud claim where plaintiffs made merely conclusory allegations of fraudulent statements). And, a complaint "'may not rely upon blanket references to acts or omissions by all of the 'defendants,' for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the … conduct with which

---

[36] In Ohio, the elements of fraud are: "(1) a representation of fact …; (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or with utter disregard and recklessness as to whether it is true or false; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the misrepresentation …; and (6) resulting injury proximately caused by the reliance." *Hayes v. Mingo Properties LLP*, 2025-Ohio-378, ---N.E.3d ---, 2025 WL 431657, ¶ 27 n.3 (8th Dist.) (citing *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167,169, 462 N.E.2d 407 (1984)).

he individually stands charged.'" *U.S. ex rel. Bledsoe*, 342 F.3d 634, 643 (6th Cir. 2003) (quotation omitted).

To the extent Klosterman quotes Boydston's testimony that "[i]t was hoped that would cover the expenses of the receivership … that was my belief at the time" when describing the 2023 sale of the Properties during the 2025 bench trial regarding TSO and Lentine's payment claims [Am. Compl. ¶ 9], this is a non-actionable statement of opinion or value. *See, e.g.*, *Duff v. Centene Corp.*, 565 F. Supp. 3d 1004, 1026 (S.D. Ohio 2021) (in Ohio, "to qualify as actionable misrepresentation, a statement typically must refer to a past or present fact . . . . Predictions about the future or statements of opinion, by contrast, are not actionable, because a person cannot justifiably rely upon them."); *Davish v. Arn*, 32 Ohio Law Abs. 646, 655 (Ohio App. 2nd Dist. 1940) (a representation "which is a mere matter of opinion will generally not constitute fraud nor can fraud be predicated upon representations in regard to matters of judgment."); *Ekins v. Auto Arc-Weld Mfg. Co.*, 175 N.E.2d 221, 228 (Ohio C.P. 1955). Beyond not amounting to a representation of fact, Klosterman does not allege materiality, how or why this statement was false, that it was made to or relied upon by Klosterman, or resulting injury proximately caused by the reliance. *Hayes v. Mingo Properties LLP*, 2025-Ohio-378, ---N.E.3d ---, 2025 WL 431657, ¶ 28 (8th Dist.) (reciting elements of fraud).[37] The same holds for the allegation claiming that language in a "sales document" was "fraudulently modified" by unspecified defendants. [Am. Compl. ¶¶ 13-14]. Klosterman does not allege, among other deficiencies, why the statements

---

[37] This Court can disregard Klosterman's allegation that "Boydston confessed under oath that the property sales were 'engineered.'" [Am. Compl. ¶ 8]. This was not a statement made by Boydston. It was Lentine – not Boydston – who opined and/or speculated at the 2025 trial where he sought additional sums from the Receiver that the 2023 sale was an "engineered sale." [Am. Compl. ¶ 11; *see also* Compl. Exhibit C (Lentine testimony)].

were fraudulent or false, materiality, intent to mislead, reliance, or resulting injury proximately caused by the reliance. *See, e.g., Greer*, 114 F.4th at 614–15.[38]

Klosterman's allegations regarding purported fraud are vague legal conclusions couched as factual allegations, which do not meet the *Twombly/Iqbal* plausibility standard nor do they meet the stringent requirements of Rule 9(b). The Court should dismiss Count VI with prejudice.

### c. **Breach of fiduciary duty.**

Klosterman alleges breach of fiduciary duty against Boydston, Konza, Donathan and Keller Williams in Count VII. [Am. Compl. ¶ 43 ("As court-appointed receiver, Defendants owed Plaintiff fiduciary duties which they breached through the admitted 'engineered sale', and Board of Revision testimony.")]. The elements of breach of fiduciary duty are: "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury proximately resulting from that failure." *Troja v. Pleatman*, 2016-Ohio-7683, 65 N.E.3d 809, ¶ 8 (1st Dist.). "[W]here a breach of fiduciary duty claim is based on fraud, the fraud must be pleaded with particularity." *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 735 (S.D. Ohio 2009).

Klosterman has not met the heightened pleading standard for fraud-based breach of fiduciary duty claims, or the *Twombly/Iqbal* standard.[39] His breach of fiduciary duty claim "is the quintessential 'the defendant-unlawfully-harmed-me accusation' mentioned in *Iqbal*" where a plaintiff alleges "the mere elements" of a claim – e.g. that a defendant "owed … a duty" and

---

[38] To the extent Klosterman's impermissibly vague fraud claim includes alleged misrepresentations occurring prior to May 13, 2023, such claims are time-barred. O.R.C. § 2744.04.

[39] The "engineered sale" quote used pervasively by Klosterman was not a statement by Boydston but rather an accusation by Lentine. *See* footnote 36, *supra*.

"breached this duty, thereby causing Plaintiffs damage."[40] *Alshaibani*, 528 Fed. Appx. at 465 (affirming dismissal of negligence claim) (quoting *Iqbal*, 556 U.S. at 678).

Ultimately, to the extent that Klosterman is claiming fraud or breach of fiduciary duty, those claims are directed to the perceived inadequacy of the $1.4 million sale, and the entirely implausible and unsupported theory that somehow an alleged $1 million offer was better than $1.4 million. [Am. Compl. ¶ 12; Ex. 21, *Mot. to Approve Sale*, p. 7 ¶ 2]. The sale was reviewed and approved by the Court, and the Receiver is entitled to immunity. *See* Section III.B.1. Collateral estoppel also bars this claim. *See* Section III.B.2. As does the applicable two-year statute of limitations. O.R.C. § 2744.04.

### d. Malicious Prosecution.

Klosterman alleges malicious prosecution against Boydston, Lentine and Strunk in Count VIII. [Am. Compl. ¶ 44 ("Defendants initiated criminal proceedings against Plaintiff based on demonstrably false allegations, causing his wrongful imprisonment.")].[41] A one-year statute of limitation applies. O.R.C. § 2305.11(a). The criminal proceeding for which Klosterman was imprisoned was not terminated in Klosterman's favor, and his conviction was affirmed on appeal in December 2022. Klosterman has no viable malicious prosecution claim against Boydston, and it is time-barred. *Armatas v. Aultman Hosp.*, 2022-Ohio-4376, 203 N.E.3d 130, ¶ 24-28 (5th Dist.) (termination of the prior proceeding in the plaintiff's favor is a requisite element of malicious prosecution).

---

[40] Klosterman does not assert, in any fashion, the requisite element of an injury resulting from an alleged breach – only the "owed a duty" and "breach" elements. [Am. Compl. ¶ 43].

[41] The elements of malicious prosecution are: "(1) malicious institution of prior proceedings against the plaintiff by the defendant; (2) lack of probable cause for filing the prior proceedings; (3) termination of the prior proceedings in the plaintiff's favor; and (4) the seizure of the plaintiff's person or property during the course of the prior proceedings." *Armatas v. Aultman Hosp.*, 2022-Ohio-4376, 203 N.E.3d 130, ¶ 24-28 (5th Dist.).

### e. Negligent Supervision.

Klosterman alleges negligent supervision against Dentons and the City in Count IX. [Am. Compl. ¶ 45 (Dentons failed to supervise Boydston's conflicts and criminal associations. City failed to supervise James's fraudulent condemnations.")]. In Ohio, the elements of negligent supervision are: "(1) an employment relationship; (2) incompetence of the employee; (3) actual or constructive knowledge of the incompetence by the employer; (4) an act or omission by the employee which caused the plaintiff's injuries; and (5) negligent retention of the employee by the employer, which action is the proximate cause of the plaintiff's injuries. *Sygula v. Regency Hosp. of Cleveland E.*, 2016-Ohio-2843, 64 N.E.3d 458, ¶ 35 (8th Dist.).

The Amended Complaint does not state these requisite elements or contain factual allegations to support this cause of action against Dentons. Among other deficiencies, Klosterman does not allege that Boydston is an employee of Dentons. Klosterman's references under this claim to "conflicts" and "criminal associations" are vague legal conclusions or "naked allegation[s]" that do not satisfy the federal pleading standard. *See Alshaibani*, 528 F. App'x at 463 (affirming dismissal of various state law theories that consisted of vague legal conclusions and/or legal conclusions "couched" as factual allegations). Beyond what is contained in Paragraph 45, the only other allegation referring to Dentons' conduct is the allegation of "simultaneous[] bill[ing]" by Konza and Dentons. [Am. Compl. ¶ 7]. Klosterman provides no substance to support this perceived misconduct. As detailed in Section I.4 and III.B.1, *supra*, any payment for legal services followed application and approval in the Receivership Court, wherein Klosterman already made – and the state court rejected – the same types of arguments about alleged duplication and other objections.[42]

---

[42] Immunity and collateral estoppel additionally preclude this cause of action against Dentons, and to the extent this cause of action is directed to the Receiver's conduct occurring more than two years prior to May 13, 2025, the action

**f.  Intentional Infliction of Emotional Distress.**

Count X alleges intentional infliction of emotional distress against "All Defendants." [Am.

Compl. ¶ 46 ("Defendants' coordinated scheme to imprison Plaintiff, steal his property, and

destroy his life's work was extreme, outrageous, and caused severe emotional distress.")].[43]

Klosterman's intentional infliction of emotional distress  ("IIED") claim "is grounded in the

same allegations" that are the basis for his malicious prosecution claim – his alleged wrongful

imprisonment – and is therefore subject to a one-year statute of limitation and time-barred. *See*

*Cleavenger v. B.O.*, 2022-Ohio-454, 184 N.E.3d 968, ¶ 16-17 (9th Dist.) (when claim is based on

conduct that is in substance another tort, statute of limitations for the other tort governs; applying

one-year statute of limitation to claim grounded in alleged defamation). Otherwise, the claim

against the Boydston Defendants is still time-barred, *see* O.R.C. § 2744.04, as Klosterman's

imprisonment and foreclosure and sale of the Properties, all occurred more than two years prior

to this suit.

Additionally, Klosterman has not plausibly stated facts about the Boydston Defendants to

support IIED, including any conduct that can be plausibly considered "Outrageous!" within the

required stringency of that term. *See, e.g., Sygula v. Regency Hosp. of Cleveland E.*, 2016-Ohio-

2843, 64 N.E.3d 458, ¶ 24-26 (8th Dist.) (reporting of suspected criminal conduct is not

"extreme or outrageous" as required to support IIED claim); *See*, 222 F. Supp. 3d at 577–78

(discussing stringency of "Outrageous!" conduct under Ohio law and Restatement (Second) of

---

is time-barred. See O.R.C. 2744.04. *Barton* and *Rooker-Feldman* also foreclose Klosterman's pursuit of this and every other alleged state-law cause of action. *See* Sections III.A.1 and III.A.2.

[43] The elements of intentional infliction of emotional distress are: "'(1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress.'" *See v. Cleveland Clinic Found.*, 222 F. Supp. 3d 569, 576 (N.D. Ohio 2016) (quoting *Phung v. Waste Mgt., Inc.*, 71 Ohio St.3d 408, 410, 644 N.E.2d 286 (1994)).

Torts). Regardless, the Boydston Defendants are entitled to immunity and this claim is appropriately barred by collateral estoppel because Klosterman is attempting to re-litigate issues already decided against him.

## IV. CONCLUSION

This Court has already reviewed and appropriately dismissed two prior lawsuits filed by Klosterman relating to his objections, complaints and implausible theories surrounding the City's foreclosure action and state court Receivership. *Klosterman v. Sedamsville Cmty. Dev. Grp.*, 2020 WL 6440257 (S.D. Ohio Nov. 3, 2020), *report and rec. adopted sub nom.*, 2020 WL 7711627 (S.D. Ohio Dec. 29, 2020); *Klosterman v. Boydston*, 2021 WL 602635, at *1 (S.D. Ohio Feb. 16, 2021), *report and rec. adopted*, 2021 WL 7908551 (S.D. Ohio Mar. 16, 2021). Like the prior suits, his latest re-hashes what has already been litigated and decided in the state court Receivership Proceeding and asserts implausible theories that lack bases in law and fact. The Boydston Defendants respectfully request that this Court dismiss Klosterman's instant lawsuit pursuant to Rules 12(b)(1) and 12(b)(6) for the reasons stated herein, with prejudice.

Dated: August 1, 2025

Respectfully submitted,

/s/ *James D. Houston*
James D. Houston (OH 0072794)
Stephen E. Schilling (OH 0086897)
STRAUSS TROY CO., LPA
150 East Fourth Street, 4th Floor
Cincinnati, OH 45202-4018
(513) 621-2120
Facsimile (513) 241-8259
jdhouston@strausstroy.com
seschilling@strausstroy.com

Andrew W. Hull (admitted *pro hac vice*)
Amanda L.B. Mulroony (admitted *pro hac vice*)
HOOVER HULL TURNER LLP

111 Monument Circle, Suite 4400
Indianapolis, IN 46204
Telephone: (317)-822-4400
awhull@hooverhullturner.com
amulroony@hooverhullturner.com

*Counsel for Defendants Konza, LLC,*
*Richard Boydston and Dentons Bingham*
*Greenebaum LLP*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed electronically with the U.S. District Court, Southern District of Ohio this 1st day of August, 2025. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

The following parties will be served by ordinary United States mail, first class postage prepaid:

Tri-State Organization, Inc.
[no address given by Plaintiff
and no summons filed]

Joseph Lentine
3633 Puhlman
Cincinnati, OH 45211

Angel Strunk
638 Steiner Ave
Cincinnati, OH 45204

Jennifer Donathan
3505 Columbia Parkway #125
Cincinnati, OH 45226

Terry James
[no address given by Plaintiff and no summons filed]

James Neiberding
810 Sycamore Street
Cincinnati, OH 45202

/s/James D. Houston

42