

D144500099

IN THE COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

CITY OF CINCINNATI[1],

    Plaintiff,

vs.

JOHN KLOSTERMAN, et al.,

    Defendants.

Case No. A1905588

Judge Wende C. Cross

<u>**MAGISTRATE'S DECISION
AS TO TSO, LENTINE & KONZA
CLAIMS & COUNTERCLAIMS**</u>

The present dispute involves only claims and counterclaims between Tri-State Organization (TSO), Mr. Joseph Lentine III (Lentine), and Konza LLC (Konza).[2]

The Court granted TSO and Lentine's motion for leave to assert claims against Konza. In essence, TSO and Lentine asserted four claims against Konza.[4] In response, Konza asserted counterclaims against TSO and Lentine.[5]

The undersigned Magistrate received testimony and evidence over the course of a four-day non-jury trial.[6] The relevant Parties rested their cases on February 12, 2025. Thereafter, written closings were submitted to the undersigned Magistrate for consideration.

This Magistrate's Decision provides findings for each of these respective claims and counterclaims. As a result of this analysis, this decision awards $62,241.18 in damages to TSO, which does not account for the previous award of attorney fees.[7]

---

[1] The Hamilton County Land Reutilization Corporation ("HCLRC") is a substitute plaintiff in the original case caption.
[2] To be clear, the City of Cincinnati, the Hamilton County Land Reutilization Corporation, and John Klosterman are not parties to the present dispute between the non-party intervenors and the receiver.
[3] The Magistrate's Decision from March 21, 2024 recast that motion as both one for leave to assert claims against the receiver, as well as a motion to intervene in this case.
[4] One additional tortious interference claim was asserted against HCLRC. However, the Magistrate's Decision from July 17, 2024 dismissed claims by TSO and Lentine against HCLRC.
[5] Two additional fraud and on account counterclaims were asserted by Konza. However, Konza filed a pre-trial notice of dismissal of those two counterclaims on December 23, 2024.
[6] A snow emergency/courthouse closure delayed the bench trial from January 6 to January 8, 2025. As such, the trial was conducted on January 8, January 10, January 31, and February 12, 2025.
[7] See, Judgment Entry Awarding Receiver Attorney Fees docketed on November 19, 2024.

1

**EXHIBIT 26**

## I. TSO AND LENTINE'S CLAIMS AGAINST KONZA

### (A) Breach of Contract by Konza as to TSO

The threshold question is whether the Parties entered into a contract of any kind. TSO submitted their proposed property management agreement to Konza.[8] Two days later, Konza delivered their own proposed agreement to TSO.[9] No written contract was ever executed by Konza or TSO.[10] Nevertheless, the Parties proceeded to perform on different aspects of their agreement from February of 2020 to January 20, 2023.[11]

In reality, Konza and TSO agreed that TSO would continue as property manager for the receivership properties upon appointment of Konza as receiver.[12] R.C. 2735.01, et. seq. permitted Konza to engage TSO to manage the properties. Also, R.C. 1335.05 (the Statute of Frauds) did not require a written contract because this was essentially an ongoing and indefinite agreement for the life of the receivership.[13]

In this context, in order for a contract to exist, there must be an offer, acceptance and consideration.[14] The alleged contract must also reflect the essential terms with definiteness and certainty, as there must be a meeting of the minds as to all essential terms.[15] A meeting of the minds occurs if "a reasonable person would find that the parties have manifested a present intention to be bound to an agreement."[16]

---

[8] TSO Exhibit A.
[9] TSO Exhibit B.
[10] T.p. from 1/8/25; pages 15-16 and 62-70.
[11] T.p. from 1/8/25; 1/10/25; passim.
[12] See, Answer and Counterclaim filed by Konza on August 13, 2024, Line 12.
[13] See, *Sherman v. Haines*, 73 Ohio St. 3d. 124, 1995-Ohio-222 (interpreting R.C. 1335.05).
[14] See, *Minister Farmers Coop. Exchange Co. Inc. v. Meyer*, 117 Ohio St. 3d. 459, 2008-Ohio-1259.
[15] See, *Episcopal Retirement Homes Inc., v. Ohio Dept. of Industrial Relations*, 61 Ohio St. 3d. 366, 575 N.E. 2d. 134.
[16] See, *Danzinger & DeLlano LLP v., Morgan Verkamp LLC*, 2023 Ohio App. LEXIS 1742, 2023-Ohio-1728.

2

The testimony and evidence established an implied-in-fact contract as to certain essential terms between TSO and Konza. There were draft proposals/offers from both sides, the Parties accepted the essential terms as demonstrated by their conduct, and Konza repeatedly promised to pay TSO from the proceeds of the final sale as a form of consideration.

As to the essential terms of this contract—TSO was to collect rents and deposits from tenants, TSO was to perform necessary maintenance, and TSO was to submit monthly written reports.[17] As part of this agreement, TSO was supposed to deduct operating expenses from the collected rents, while Konza worked on a plan to dispose of all the properties. However, multiple problems arose that were outside the scope of these essential terms.

Most notably—The rents didn't fully cover the operating expenses and created a deficit.[18] Konza wanted TSO and Lentine to do no more work than the rents would cover.[19] However, there were multiple property maintenance calamities and tenant problems. Some of the properties were subject to code enforcement orders. The Parties clearly had different visions to sell the properties. The receivership dragged on much longer than the Parties would have liked.[20] The properties were eventually sold for less money than what was necessary to fully compensate all the Parties.

To be clear, a breach does not occur if the disputed term was outside the scope of the implied-in-fact contract. TSO's compensation was contemplated in both Parties' proposed agreements as a percentage and portion of the collected rents. However, there was never any definiteness or certainty on this point, and Lentine's testimony focused on past experiences and industry customs. As such, the undersigned Magistrate finds a valid claim for unjust enrichment

---

[17] T.p. from 1/8/25, page 76; T.p. from 1/10/25, pages 179-180.
[18] T.p. from 1/10/25, pages 191-193.
[19] T.p. from 1/10/25, pages 179-180.
[20] T.p. from 1/10/25, pages 188-189.

3

(discussed infra), but the undersigned Magistrate declines to find a breach of contract for a term that wasn't part of the Parties' implied-in-fact agreement.

Along the same lines, a breach does not mean an unprofitable outcome for TSO. Instead, a breach occurs if either Party fails to perform on their end of the bargain. Of course, the Parties' implied-in-fact contract didn't contemplate that TSO would be on the hook for a cumulative deficit of $145,138.35 in operating expenses.[21] Instead, Konza simply reported that deficit over the course of thirty-five monthly reports to the Court, perhaps hoping that TSO'e expenses would be covered as administrative fees pursuant to R.C. 2735.04(C). As such, the undersigned Magistrate finds there was no contractual obligation for Konza to reimburse TSO for reasonable expenses that weren't covered by the rents. This deficit was simply an unprofitable and unplanned outcome for TSO.

In summary, the undersigned Magistrate does find an implied-in-fact contract existed between TSO and Konza, but only as to the essential terms discussed supra. Thereupon, the undersigned Magistrate declines to find a breach of those essential terms. Moreover, nothing else presented in the testimony or evidence amounted to a breach of those essential terms, because TSO and Konza essentially lived up to the parts of the agreement they actually agreed upon, which demonstrates the importance of having a comprehensive property management agreement.

For these reasons, the undersigned Magistrate declines to find breach of contract by Konza as to TSO, and no damages are awarded to TSO in this context.

**(B) Unjust Enrichment of Konza by TSO**

Liability in quasi-contract originates out of an obligation arising by law upon a person in receipt of benefits that he or she is not justly entitled to retain.[22] The elements of a quasi-contract

---

[21] See, Konza Exhibit K-94.
[22] See, *Estate of Neal v. White*, 2019 Ohio App. LEXIS 4370, 2019-Ohio-4280.

4

are (1) a benefit conferred by a plaintiff upon a defendant, (2) knowledge by the defendant of the benefit, and (3) retention of a benefit by the defendant under circumstances where it would be unjust to do so without payment of its value.[23]

Notably, a quasi-contract claim does not depend upon traditional contract formation elements such as a meeting of the minds.[24] As such, a plaintiff asserting a claim for unjust enrichment must only establish that (1) a benefit was conferred by the plaintiff upon the defendant; (2) the defendant had knowledge of the benefit; and (3) the benefit was retained by the defendant in circumstances where it would be unjust to do so without payment.[25]

In this case, Konza desperately needed a property manager, and TSO provided that necessary service. It was not possible for Konza to manage these properties without TSO. Moreover, Konza was unable to engage any other property managers for this purpose. TSO's management fee was contemplated in both Parties' proposed agreements as a percentage and portion of the collected rents. However, there was never any definiteness or certainty on this point, and the undersigned Magistrate mostly heard testimony about past experiences and industry customs.[26]

In this context, there was no meeting of the minds on property management compensation. However, the benefit of property management services was conferred by TSO on Konza. Moreover, Konza clearly had knowledge of those services as evidenced by the receiver reports. In the end, those services were retained by the Konza for the duration of the receivership in circumstances where it would be unjust to do so without payment.

---

[23] See, *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 12 Ohio B. 246, 465 N.E.2d 1298.
[24] See, *Hummel v. Hummel*, 133 Ohio St. 520, 526, 14 N.E.2d 923.
[25] See, *Helton v. Fifth Third Bank*, 1st Dist. Hamilton No. C-210451, 2022-Ohio-1023, ¶ 25.
[26] T.p. from 1/10/25, page 192.

5

To determine the value of that benefit, it's important to consider the actual value of the services, rather than what TSO would have liked to have charged Konza. It appears that Konza initially suggested 10% of all rent collected and an amount equal to one month rent for all new leases entered into by TSO with new tenants.[27] However, Konza's proposed/draft property management agreement suggested compensation to TSO for 15% of all rent collected and an amount equal to one month rent for all new leases entered into by TSO with new tenants.[28]

The undersigned Magistrate finds that 12.5% of all rent collected, plus one month rent for all new leases, best reflects the actual value of the required property management services. This compromise takes into account the distressed nature of the properties, the size of the portfolio, and the exigency of the circumstances. Indeed, based on industry practices, it reflects the actual value of the required property management services.

In this case, Konza reported rent received in the amount of $423,169.42.[29] It appears that 12.5% of that amount is $52,896.18. TSO also entered into several leases with new tenants, on behalf of the receivership, for which TSO was owed $21,315.00 in new lease commissions. As such, Konza was unjustly enriched in the amount of $74,211.18.

In contrast, the undersigned Magistrate declines to find unjust enrichment as to any additional construction or improvements. Indeed, the undersigned Magistrate finds it almost impossible to factually or contractually distinguish between TSO's regular property maintenance activities (which would be covered by this property management compensation) and the additional construction or improvements (which might be another retained benefit). Ultimately, the plaintiff has the burden to prove the elements of each claim, and the evidence was insufficient on this point.

---

[27] T.p. from 1/10/25, page 192; TSO Exhibit A, Cover Email.
[28] TSO Exhibit B, Part 9.
[29] Konza Exhibit K-94.

6

For these reasons, the undersigned Magistrate does find that Konza was unjustly enriched by TSO, but only as to the property management compensation of $74,211.18. In this context, nothing else presented in the testimony or evidence amounted to an unjust enrichment.

### (C) Breach of Contract by Konza as to Lentine

As previously noted, the threshold question is whether the Parties entered into a contract of any kind. The undersigned Magistrate found an implied-in-fact contract as to certain essential terms between TSO and Konza. However, Lentine argued that he, in his individual capacity, is also entitled to compensation as a construction manager for $210,000.[30]

To be clear, Lentine testified that he agreed with Konza to act as a construction manager, providing services for non-routine repairs. Konza disputed that assertion and clarified that Konza did not separately engage Lentine as a construction manager.[31] In any event, work was performed in order to bring in more tenants and bolster the collected rents.

The undersigned Magistrate finds there was no meeting of the minds on Lentine's additional services. Indeed, the Parties has not agreed on any essential terms with definiteness and certainty (beyond the TSO agreement). Moreover, it's extremely difficult to discern whether work was performed by Lentine for TSO or in his individual capacity.

For these reasons, there is insufficient evidence of a contract or agreement between Lentine and Konza. Therefore, the undersigned Magistrate declines to find a breach of contract by Konza, and no damages are awarded to Lentine in this context.

### (D) Unjust Enrichment of Konza by Lentine

As previously noted, a plaintiff asserting a claim for unjust enrichment must establish that (1) a benefit was conferred by the plaintiff upon the defendant; (2) the defendant had knowledge

---

[30] T.p. from 1/8/2025; page 29.
[31] T.p. from 1/10/25, pages 179-180.

7

of the benefit; and (3) the benefit was retained by the defendant in circumstances where it would be unjust to do so without payment.[32]

In this case, it's not clear that Konza understood that Lentine was attempting to perform construction management services in his individual capacity, separate from the agreed upon property management services conferred by agreement with TSO. Moreover, the effect of these construction management was to attract and retain tenants, which ultimately figured into the property management compensation of $74,211.18 (discussed supra).

For these reasons, there is insufficient evidence of unjust enrichment of Konza by Lentine, and the undersigned Magistrate declines to award damages to Lentine in this context.

## II. KONZA'S COUNTERCLAIMS AGAINST TSO AND LENTINE

### (A) Unjust Enrichment of TSO and Lentine

As previously noted, a plaintiff asserting a claim for unjust enrichment must establish that (1) a benefit was conferred by the plaintiff upon the defendant; (2) the defendant had knowledge of the benefit; and (3) the benefit was retained by the defendant in circumstances where it would be unjust to do so without payment.[33]

In this case, Konza asserts that TSO and Lentine were unjustly enriched by the rents collected from the tenants of the properties. However, TSO was supposed to deduct operating expenses from the collected rents, while Konza worked on a plan to dispose of all the properties. It was explained that operating expenses exceeded the collected rents. Moreover, there was no evidence presented to the contrary (that TSO and Lentine were paying themselves).

---

[32] See, *Helton v. Fifth Third Bank*, 1st Dist. Hamilton No. C-210451, 2022-Ohio-1023, ¶ 25.
[33] See, *Helton v. Fifth Third Bank*, 1st Dist. Hamilton No. C-210451, 2022-Ohio-1023, ¶ 25.

8

For these reasons, there is insufficient evidence of unjust enrichment of TSO and Lentine by Konza, and the undersigned Magistrate declines to award damages to Konza in this context.

**(B) Breach of Contract by TSO**

As previously noted, the threshold question is whether the Parties entered into a contract of any kind? On one hand, Konza argues there was no contract between itself and TSO. On the other hand, Konza argues a breach of that contract by TSO.

The undersigned Magistrate found an implied-in-fact contract as to certain essential terms between TSO and Konza. However, there was no clear breach of those essential terms, because the Parties essentially performed on their basic obligations.

For these reasons, there is insufficient evidence of breach of contract by TSO, and the undersigned Magistrate declines to award damages to Konza in this context.

**(C) Breach of Contract by Lentine**

Again, the threshold question is whether the Parties entered into a contract of any kind? On one hand, Konza argues there was no contract between itself and Lentine. On the other hand, Konza argues a breach of that contract by Lentine.

The undersigned Magistrate declined to find a contract of any kind between Konza and Lentine (in his individual capacity). Moreover, Konza would have to pierce the corporate veil of TSO, in order to find a breach of the TSO contract by Lentine.

The Supreme Court of Ohio held that when a plaintiff pursuing a civil lawsuit against a corporation seeks to pierce the corporate veil, the plaintiff must show that the shareholder used its control of the corporation "in such a manner as to commit fraud, an illegal act, or a similarly unlawful act."[34]

---

[34] See, *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, ¶ 20.

9

Specifically, Konza must prove that Lentine: (1) had control over TSO that was so complete that the corporation has no separate mind, will, or existence of its own, (2) that control over TSO was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) that injury or unjust loss resulted to Konza from such control and wrong.[35]

In this case, Lentine appears to have complete control over TSO, and his dealings apparently resulted in federal criminal charges.[36] However, the undersigned Magistrate cannot say that any fraud or illegal acts were committed against Konza. Moreover, there's no injury or unjust loss that resulted to Konza and is attributable to Lentine's conduct.

For these reasons, the undersigned Magistrate declines to pierce the corporate veil of TSO. Thereupon, there is insufficient evidence of breach of contract by Lentine, and the undersigned Magistrate declines to award damages to Konza in this context.

**(D) Conversion by TSO and Lentine**

Conversion is the wrongful exercise of dominion over property to the exclusion of the rights of an owner, or withholding it from his possession under a claim inconsistent with his rights.[37] Notably, a finding of conversion against a corporate officer requires active and substantial interference by that individual.[38]

In this case, Konza alleges that TSO converted the prepaid rents it collected for rent due in February 2023. Also, Konza alleges that TSO converted all of the security deposits it had collected and had not paid to tenants or properly charged against them as of January 20, 2023. Those

---

[35] *Id.* at ¶ 18.
[36] See, Federal Case # 1:23-cr-00030 (regarding conspiracy to commit bank fraud and false statement on a loan and credit application).
[37] See, *R&S Distrib. v. Hartge Smith Nonwovens, LLC*, 2010 Ohio App. LEXIS 3414, 2010-Ohio-3992, ¶ 28.
[38] *Id.* at ¶ 30, citing *Cincinnati Bible Seminary v. Griffiths*, 1st Dist. No. C-830867, 1984 Ohio App. LEXIS 11028.

10

amounts are shown in the rent roll dated January 19, 2024.[39] They total $2,100 for prepaid rent and $9.870 in security deposits for a total of $11,970. The undersigned Magistrate finds that TSO wrongfully exercised dominion over these prepaid rents and security deposits, beyond the scope of any contract or agreement with Konza. As such, Konza's argument that TSO converted $11,970 is well taken.

In addition, Konza alleges that TSO occupied 671-673 Delhi rent free for 35 months from March 2020 until at least May 1, 2023, when the sale of properties was finalized. However, the use and enjoyment of real estate is not an interest in personal property, tangible or intangible, that would support a conversion claim.[40] In addition, the undersigned Magistrate finds that Konza acquiesced to TSO's use of 671-673 Delhi to manage the other properties, and this use wasn't really an issue until after the litigation commenced. As such, Konza's argument that TSO converted $19,250 is not well taken.

Finally, Konza alleges that Lentine also converted loans to TSO for payroll expenses from Stock Yard Banks and Fifth Third Bank. However, the threshold inquiry for a conversion claim is whether there exists some property interest or right.[41] In this context, the undersigned Magistrate finds that Konza has no cognizable interest in loans made to TSO by the non-Party banks. As such, Konza's argument that TSO converted $51,272 in loans is not well taken.

For these reasons, the undersigned Magistrate does find that TSO converted the prepaid rents and security deposits. Therefore, the undersigned Magistrate awards $11,970.00 to Konza (which is essentially an offset of damages awarded to TSO). Finally, nothing else presented in the testimony or evidence amounted to a conversion.

---

[39] Exhibit TSO-HH.
[40] See, *STE Invs. LLC v. Macprep Ltd.*, 2022 Ohio App. LEXIS 2472, 2022-Ohio-2614.
[41] See, *Bunta v. Superior VacuPress LLC*, 171 Ohio St. 3d. 464, 2021-Ohio-4363.

11

### III. CONCLUSION, DAMAGES AND SET OFFS

In conclusion, the focus of this Magistrate's Decision are the claims and counterclaims of TSO, Lentine, and Konza. It's beyond the scope of this proceeding to determine if TSO has paid its bills to other non-parties, if Lentine has committed any federal crimes, or if Konza acted properly in the sale of the properties.

The undersigned Magistrate hereby sustains TSO's unjust enrichment claim against Konza, and awards property management compensation of $74,211.18 to TSO. In addition (or subtraction), the undersigned Magistrate hereby sustains Konza's conversion claim against TSO, and awarded $11,970.00 for prepaid rents and security deposits to Konza. The remaining claims and counterclaims are all overruled and dismissed. In total, the undersigned Magistrate awards $62,241.18 in damages to TSO.[42]

There is a prior decision from another Magistrate, and Judge Cross, that awarded $4,970.00 in attorney fees to Konza based on a finding of contempt. TSO and Lentine were found jointly and severally liable for that amount. It's unclear if that amount has been paid or not. However, if that amount is still outstanding, then Konza could resolve both balances by paying $57,271.18 in damages to TSO.[43]

Finally, because each side prevailed on one of their claims/counterclaims, the undersigned Magistrate declines to award any additional attorney fees or costs to TSO, Lentine or Konza as part of this judgment. To be clear, money owed to TSO for their property management fee should be considered a cost of the receivership for the purposes of R.C. 2735.04. In contrast, the money owed to Konza for contempt related attorney fees is not an administrative expense of this action, and should be paid by TSO and Lentine.

---

[42] Calculate $74,211.18-$11,970.00=$62,241.18.
[43] Calculate $74,211.18-$11,970.00-$4,970.00=$57,271.18.

IT IS SO ORDERED.

_____
CHRIS LIU
MAGISTRATE
COURT OF COMMON PLEAS

13

## NOTICE

Objections to the Magistrate's Decision must be filed **within fourteen days** of the filing date of the Magistrate's Decision. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ. R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ. R. 53(D)(3)(b).

Copies to be sent to:

**Richard Boydston, Esq.**
312 Walnut Street, #2450
Cincinnati, OH 45202

**James Nieberding, Esq.**
810 Sycamore Street, Suite 423
Cincinnati, OH 45202

**Joseph Lentine**
673 Delhi Avenue
Cincinnati, OH 45204

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT COPIES OF THE FOREGOING ORDER HAVE BEEN SENT BY ORDINARY MAIL TO ALL PARTIES OR THEIR ATTORNEYS AS PROVIDED ABOVE.

Date: 4/11/25    Deputy Clerk: _____