

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF OHIO

# WESTERN DIVISION

JOHN KLOSTERMAN, et al
Plaintiff,

v.

          Case No. 1:25-cv-00312-SJD-KLL

          Judge Susan J. Dlott
          Magistrate Karen L. Litkovitz

KONZA, LLC, RICHARD BOYDSTON,

and DENTONS BINGHAM

GREENEBAUM LLP, et al.,

Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO CITY DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION

The City's motion represents a desperate attempt to escape accountability that includes breathtaking fraud perpetrated directly upon this Court. Most shocking is the City's fraudulent "Appendix B"( exhibit A)—which falsely claims that 665 Delhi, the very property where defendant Terry James and Building Director Cunningham stood with its actual owner (Mrs. Rosemary Sweeny) granting a decade-long "free pass," was somehow owned by Plaintiff. This calculated lie demonstrates the desperate measures the City will employ to escape accountability.

This federal RICO action, pleaded comprehensively in Plaintiff's 367-paragraph Complaint, demonstrates how the City weaponized building code enforcement to destroy the only successful property rehabilitation business operating in Sedamsville's historic district for 25 years—while systematically granting "free passes" to adjacent properties in far worse condition. The evidence reveals calculated targeting orchestrated through the Building Department under Terry James's direction, with then-City AttorneyJacklyn Martin (resigned from City) serving as the strategic spearhead after James completed his ground-level targeting work.

Plaintiff has included corrected photographic evidence as( Exhibit B) exposing the fraudulent nature of the City's Appendix B, and documented examples of systematic targeting as Exhibit B, demonstrating the desperate measures municipal defendants employ when facing federal accountability.

## II. THE CITY'S FRAUDULENT APPENDIX B CONSTITUTES FRAUD UPON THIS COURT

The City's "Appendix B" falsely claims properties as Plaintiff's that were never owned by Plaintiff—most egregiously including 665 Delhi Avenue. This fraud is particularly stunning because 665 Delhi is the exact property where Plaintiff photographed defendant Terry James and Building Director Cunningham standing with the actual owner (Mrs. Rosmery Sweeny) and her family granting preferential treatment: decade-long vacancy, boarded condition, porch roof falling away, yet no VBML requirement, no fines, no enforcement action despite Plaintiff's multiple complaints about discriminatory treatment.

The City now claims this very property—their example of granting preferential treatment to non-Plaintiff owners—was actually owned by Plaintiff. This is calculated fraud designed to support a false "slumlord" narrative when the property proves the opposite: systematic discriminatory targeting. Plaintiff's corrected Exhibit A exposes fraudulent properties in the City's Appendix B. When municipal defendants commit fraud directly upon federal court to escape RICO liability, they demonstrate the criminal mindset underlying the entire conspiracy.

# III. SYSTEMATIC TARGETING PROVES DISCRIMINATORY ENFORCEMENT AND CRIMINAL INTENT

## A. The Martin Walking Tour: Strategic Intelligence Operation

As pleaded, then-City Attorney Jacklyn Martin (now retired), her assistant, Plaintiff's attorney Mr. Mank Chatfield, and Plaintiff conducted a requested walking tour of Sedamsville before foreclosure proceedings. This tour reveals Martin's role as strategic spearhead—coordinating enforcement after James completed ground-level targeting.

**Two-Tier Criminal Structure:** James functioned as enforcement weapon (issuing violations, fraudulent condemnations); Martin operated as strategic coordinator (directing legal justifications, timing enforcement escalations, orchestrating receivership recommendation).

**The 787 Delhi Test:** Plaintiff specifically pointed out 787 Delhi (owned via unrecorded land contract) noting porch soffit with a board dropping and needing repair—deliberately not revealing ownership to test whether enforcement was based on property condition or ownership identity. Result: No violation issued despite obvious defects pointed out directly to Martin. To this day no violations have been issued even though years passed without the repairs needed. Proving even a drive by would clearly see the needed repair. No orders.

**Immediate Retaliatory Action:** Within one week of Martin's intelligence-gathering tour, violations issued for 649 Sedam (handrail) and 667 Delhi (tuck pointing)—proving direct coordination between City legal department (strategic level) and building department (tactical level).

**City Property Suddenly Maintained:** During tour, Plaintiff complained to Martin about City's failure to maintain its own Sedamsville steps. Martin noted it; steps addressed within days—proving City could act quickly when desired but had deliberately neglected Sedamsville for decades until targeting Plaintiff.

**B. Pattern of Discriminatory Enforcement: Two Irrefutable Examples Plus Documented Record**

**Example 1: 665 Delhi - Top-Level Coordination Proving Municipal Policy**

4

Mrs. Rosmery Sweeny's 665 Delhi, directly adjacent to Plaintiff's 667 Delhi, remained vacant and boarded over 10 years with the porch roof visibly falling away. The plaintiff filed multiple complaints about discriminatory enforcement. Rather than routine enforcement, the City deployed top leadership. Plaintiff unaware of the meeting was at 667 doing repairs for a new tenant and personally photographed the following standing together on the street directly in front of 665 Delhi (photograph will be presented at trial):

1. Mr. Cunningham - Building Department Director (top administrator)
2. Terry James - Building Inspector (enforcement weapon)
3. Mrs. Sweeny
4. Mrs Sweeny's granddaughter and grandson ( who I had contacted and offered to purchase the property)

This photograph proves:

- **Top-Level Involvement: Director Cunningham's personal presence demonstrates coordinated targeting policy set at highest departmental level, establishing Monell municipal liability beyond individual misconduct**
- **Discriminatory Treatment Protocol: Meeting resulted in quiet accommodation—porch removed a year later, no fines, no VBML, no enforcement action; property remains boarded/vacant decade later with continued tolerance**
- **Systematic Double Standard: While Director personally attended to protect non-Plaintiff owner, Plaintiff's properties faced relentless violations, impossible standards, fraudulent condemnations**

- **Consciousness of Guilt:** City's false claim in Appendix B that 665 Delhi was Plaintiff's property is breathtaking because they photographed themselves granting preferential treatment to actual owner—this lie demonstrates consciousness of guilt

The Message: When the Building Director personally intervenes to grant "free pass" while adjacent Plaintiff properties face systematic targeting, discriminatory enforcement becomes municipal policy under Monell, not individual misconduct.

Example 2: 787 Delhi - The Controlled Test Property

As described above, Plaintiff strategically maintained 787 Delhi ownership through a paid for but unrecorded land contract to test City's enforcement basis. During Martin walking tour, Plaintiff directly pointed out obvious code violations to the City's chief legal officer on property matters. No enforcement action taken—proving enforcement was based on ownership identity, not property conditions. This controlled test eliminates any claim of neutral code enforcement.

Additional Documented Examples:

Example 3: 793 Delhi - Manufactured Violations

Plaintiff purchased vacant building, made structural repairs, painted exterior, installed new light and mailbox, maintained grounds as if occupied. After five years with no neighbor complaints, Terry James, without any complaint, peered into first-floor windows, claimed "water damage visible on the first floor wall," issued a repair order and required VBML. Plaintiff proved it was old wallpaper peeling, not water damage from two stories up. The building was secure and looked occupied. More fines issued despite correction.

6

Example 4: 794 Delhi - The Impossible Moving Goalposts Strategy

Plaintiff was ordered to repair a small porch section from downspout leak. The plaintiff rebuilt the entire porch floor. First inspector: not satisfied. James: satisfied with the porch after a minor unnecessary repair, but now the chimney needs tuck pointing. Plaintiff complied. James: The storage room has mold spots. Plaintiff repaired. James: second floor drywall repair not up to standards, more repairs needed. After investing in complete porch rebuild, chimney tuck pointing, mold remediation, and drywall repairs—with each compliance triggering new demands—Plaintiff recognized no level of compliance would ever satisfy James because satisfaction was never the goal. The goal was property abandonment. The plaintiff gave up, allowing the building to remain vacant. Result: VBML required, more fines. This systematic escalation strategy—visible across multiple Plaintiff properties—proves enforcement was designed to force abandonment, not achieve compliance.

Example 5: 749 Steiner - Impossible Standards

Terry James issued a repair order on a vacant building being rehabilitated after a previous decade-long tenant. The plaintiff hired a skilled carpenter, documented repairs with photographs during and after completion. James: repairs not good enough. Plaintiff, shocked by inspection rejection, decided to allow the building to remain vacant rather than continue fighting impossible standards.

Example 6: 667 Delhi - Post-Tour Retaliation

During Martin's walking tour, discussed this former bakery building owned by Plaintiff for over a decade. One week after tour: tuck pointing violation issued for rear of building. No

7

prior complaints in over 10 years of ownership. Strategic timing proves retaliatory targeting following Martin's intelligence gathering. Plaintiff complied.

## IV. 621 DELHI: PINNACLE OF ILLEGAL TARGETING AND PROXIMATE CAUSE FOR CITY'S RICO LIABILITY

As pleaded (¶¶ 49-50, 67, 104), the City's illegal actions at 621 Delhi represent the culmination of their targeting strategy and proximate cause for their inclusion in this RICO action. Licensed structural engineer Richard Graman, P.E. stated September 18, 2020: "From a structural perspective, I did not observe any structural deficiencies in the 623 Delhi Avenue building or in the original L-shaped brick portion of the 621 Delhi Avenue building."

Despite professional engineering confirmation of structural safety, Terry James: (1) condemned entire 621 Delhi property; (2) forced removal of income-producing tenants; (3) refused to discuss GEI report despite Plaintiff's multiple attempts; (4) lured tenants away with offers of free deposit and first month's rent.

**James's Post-Condemnation Admission:** Randy Hatfield's affidavit documents James's damning admission: "We didn't have to go through all this, because the building was structurally safe." This admission, combined with GEI engineering report, proves condemnation was pretextual—designed to destroy Plaintiff's income stream and facilitate the "engineered sale" confessed to by attorney Richard Boydston under oath.

**Strategic Property Acquisition Plan:** Boydston's legal records show inquiries into ownership of 621, 623, 634, 787, and 801 Delhi—proving targeting extended beyond receivership

8

properties to force Plaintiff completely out of Sedamsville after City failed to acquire five other Plaintiff properties. When the sale of 5 properties would have paid the fines.

## V. THE CITY AS ACTIVE RICO ENTERPRISE PARTICIPANT, NOT INNOCENT BYSTANDER

As pleaded (¶¶ 41-44, 67-68, 161-163, 182-183), the City was not passive observer but active enabler:

Andrew Garth's Protection of Federal Felon (¶¶ 161-163): When Plaintiff moved to dismiss Lentine after federal arrest, then-City Solicitor Garth responded "Lentine was only arrested," suggesting he continue operating—constituting obstruction of federal investigation (18 U.S.C. § 1503), conscious protection of federal criminals, and active facilitation of ongoing criminal activity. Garth is now employed by HCLRC (ultimate property purchaser), proving predetermined coordination.

City Created Boydston's Double Billing Opportunity (¶ 47): City's recommendation of Konza LLC as receiver enabled Boydston's systematic double billing netting him personally over $200,000, creating immediate conflict of interest.

Systematic Receipt and Ignoring of Fraudulent Reports (¶¶ 94-112): City received all fraudulent receiver reports and deliberately said nothing despite obvious red flags—their position: "it wasn't their money"—demonstrating deliberate indifference because they bore no financial responsibility or loss while properties flowed to Land Bank.

Discriminatory Enforcement Proving Enterprise Coordination: City immediately condemned Plaintiff's properties despite engineering reports confirming safety, while investigating

multiple fires in receivership buildings supposed to remain vacant yet permitting occupancy by unqualified tenants, and filing hundreds of code violations but ignoring full compliance but never demanding that they be removed on receivership properties while relentlessly pursuing Plaintiff's properties.

Pre-Sale Judgment Assignment Proving Criminal Planning: City assigned Plaintiff's judgment to Land Bank BEFORE fraudulent sale, demonstrating consciousness of guilt (knew sale was predetermined), criminal planning (assignment allowed distance from criminal proceeds), and systematic coordination (timing proves advance knowledge of "engineered" outcome).

## VI. POST-LAWSUIT RETALIATION PROVES CONTINUING CRIMINAL ENTERPRISE*

*Note: Plaintiff has concurrently filed a Motion for Leave to Add Extortion Claims pursuant to Federal Rule 15(a)(2) detailing this continuing criminal conduct. This section provides context for the continuing nature of the enterprise without asserting claims not yet authorized by the Court.

In direct retaliation for this federal lawsuit, the current Building Department administration issued the first-ever VBML invoice demanding $15,015.00 from John Jennagans LLC for "Unpaid VBML fees for over 3 years plus late fees" for 621 Delhi, allegedly beginning January 2020.

Consciousness of Guilt: Never sent prior invoices despite allegedly owing fees since January 2020; no invoices until after federal lawsuit filed. Create Problem, Then Charge: James first forced 621 Delhi vacant through fraudulent condemnation, then current administration

demands retroactive fees for vacancy James created. Enterprise Continuity: Current administration's continuation proves institutional criminality beyond individual actors—when James retired, criminal enterprise seamlessly continued under new management, demonstrating the systematic nature of City's RICO participation rather than isolated individual misconduct.

## VII. SIXTY-YEAR SEDAMSVILLE NEGLECT FOLLOWED BY SUDDEN HCLRC-ERA INVESTMENT

For over 60 years the City issued no City-funded upgrades in Sedamsville. During Martin's tour, Plaintiff pointed out missing federally-mandated wheelchair ramps at Lonwick and Sedam corners and 4 other corners. Plaintiff had a wheelchair-bound tenant forced to use streets instead of sidewalks. Since HCLRC took control: all Sedamsville corners now have new wheelchair ramps, with the City willing to "spare no expense" for infrastructure. Plaintiff has before-and-after photographic evidence that will be shown at trial. This will prove the City's previous neglect was deliberate policy to maintain neighborhood conditions justifying their targeting of the only successful rehab developer while building a complaint-based enforcement system—true neighborhood "sweep" would have generated hundreds of violations throughout Sedamsville given widespread deterioration, but City selectively targeted only property owner completing rehabilitations.

## VIII. FEDERAL CRIMINAL VALIDATION DESTROYS CITY'S DEFENSES

Federal Prosecutors Validated Criminal Enterprise: Federal law enforcement prosecuted and convicted enterprise members Joseph Lentine (wire fraud, money laundering, 63-month

sentence) and Angel Strunk, validating criminal nature of conspiracy City actively enabled by protecting Lentine after arrest.

**Boydston's Sworn Confession:** At February 2025 bench trial, Harvard-educated attorney Richard Boydston confessed under oath the entire transaction was "engineered" rather than legitimate. When a licensed attorney admits to systematic fraud under penalty of perjury, no procedural technicality shields municipal co-conspirators.

## IX. JURISDICTIONAL AND IMMUNITY ARGUMENTS FAIL

**Rooker-Feldman:** Does not prevent federal courts from holding defendants accountable for federal crimes committed during state proceedings. The court is not asked to review state decisions, but impose accountability for criminal conduct manipulating those proceedings.

**Federal Jurisdiction:** Established under RICO (18 U.S.C. § 1964(c)) (¶ 41), civil rights (28 U.S.C. § 1343, 42 U.S.C. § 1983) (¶ 42), supplemental (28 U.S.C. § 1367) (¶ 43). Federal criminal convictions validate jurisdiction. Interstate commerce impact (¶ 68) through multi-state wire/mail fraud, federal COVID-19 relief fraud, interstate banking, real estate transactions.

**No Immunity for Criminal Conspiracy:** Ohio immunity statutes cannot shield municipal actors engaging in criminal conspiracy with federal felons—Supremacy Clause preempts conflicting state immunity. Under Malley v. Briggs, qualified immunity does not protect criminal conduct. Systematic targeting pattern, discriminatory enforcement between adjacent properties, and coordination with federal criminals forfeit immunity claims.

## X. RICO AND CONSTITUTIONAL CLAIMS SUFFICIENTLY PLEADED

**Enterprise Element (¶¶ 67-68):** Structure—municipal building department (James under Martin's strategic direction), City legal (Martin strategic command, Garth criminal protection), court-appointed receiver (Boydston/Konza), day-to-day operations (TSO/Lentine), legal cover (Dentons), ultimate beneficiary (County Land Bank with Garth now employed there). Common Purpose—systematic acquisition through weaponized building code enforcement combined with fraudulent receivership, eliminating only successful historic rehab developer in 25 years. Coordination—Martin walking tour intelligence, immediate post-tour violations, James's fraudulent condemnation despite engineering report, Garth's Lentine protection, pre-sale judgment assignment, discriminatory enforcement pattern.

**Pattern of Racketeering Activity:** Mail fraud (false condemnation orders, fraudulent court filings transmitted through U.S. Mail), wire fraud (electronic fraudulent billing/sale documents), money laundering (processing proceeds through Land Bank), obstruction of justice (Garth's Lentine protection), extortion under color of official right (systematic targeting through building code enforcement to force property surrender).

**Constitutional Violations:** Due Process—fraudulent condemnation despite a professional engineering report violates fundamental fairness. Equal Protection—discriminatory enforcement between 787 Delhi (no action despite obvious violations), 665 Delhi (decade of tolerance with Director-level protection), and Plaintiff's properties (relentless targeting). Fourth/Fifth Amendments—criminal seizure through fraudulent condemnation and weaponized code enforcement.

Monell Liability: City maintained policies/customs enabling Enterprise—pattern of granting "free passes" to non-targeted owners while imposing impossible standards on Plaintiff, inadequate supervision allowing inspectors to coordinate with criminal enterprises and ignore professional engineering reports, deliberate indifference to constitutional violations, official recommendation of Boydston/Konza arrangement constituting official policy. Director Cunningham's personal intervention at 665 Delhi establishes this as municipal policy, not individual misconduct.

## XI. DISCOVERY WILL PROVE ENTERPRISE COORDINATION

Plaintiff entitled to expedited discovery regarding: Martin-James communications regarding walking tour, property targeting strategy, enforcement action coordination; Boydston property inquiries for 621, 623, 634, 787, 801 Delhi proving systematic targeting; City-Enterprise coordination, financial relationships with ultimate property purchasers, judgment assignment decision timeline; complete Sedamsville building code enforcement records showing selective targeting pattern over others; post-tour violation timeline proving violations issued within one week of Martin intelligence gathering.

## XII. CONCLUSION

The City was not an innocent bystander attempting to improve Sedamsville—they were the central coordinator of a criminal enterprise systematically destroying the only successful property rehabilitation business operating in the historic district for 25 years. The Martin walking tour smoking gun evidence, combined with 787 Delhi "test" proving discriminatory enforcement based on ownership rather than conditions, and Director Cunningham's personal

intervention to protect 665 Delhi owner while adjacent Plaintiff property faced relentless targeting, demonstrates calculated targeting rather than neutral code enforcement.

When City condemns property despite professional engineering reports confirming structural safety, protects federal criminals after arrest, issues retaliatory violations within days of intelligence-gathering tours, and commits fraud upon this Court by falsely claiming the very properties proving discriminatory enforcement were owned by Plaintiff, they have become criminal enterprise participants rather than municipal regulators.

The motion should be denied because: (1) Fraud Upon Court—City's Appendix B including 665 Delhi where they photographed themselves granting preferential treatment warrants sanctions; (2) Systematic Targeting Pattern—665 Delhi and 787 Delhi examples plus documented record (Exhibit B) prove discriminatory enforcement establishing Monell liability; (3) 621 Delhi Fraud—condemnation despite GEI engineering report represents pinnacle of illegal targeting; (4) Federal Criminal Validation—Lentine and Strunk convictions validate enterprise's criminal nature; (5) Boydston Confession—"engineered sale" admission destroys legitimacy claims; (6) Martin's Strategic Role—walking tour and immediate post-tour violations prove City legal department coordination as spearhead of conspiracy; (7) Garth's Criminal Protection—protection of federally-arrested Lentine proves obstruction; (8) Continuing Enterprise—post-lawsuit retaliation proves institutional criminality; (9) 60-Year Neglect Pattern—deliberate Sedamsville deterioration followed by sudden HCLRC-era investment proves coordinated property acquisition strategy.

## XIII. RELIEF REQUESTED

**WHEREFORE, Plaintiff respectfully requests this Court:**

15

1. DENY City Defendants' Motion to Dismiss in its entirety
2. IMPOSE SANCTIONS against City Defendants and counsel for fraud upon Court through Appendix B containing properties not belonging to Plaintiff, including 665 Delhi where they photographed themselves with actual owner granting preferential treatment
3. ORDER expedited discovery regarding Martin-James communications, Boydston property inquiries, complete Sedamsville enforcement records, post-tour violation timeline, judgment assignment decision-making
4. SCHEDULE case management conference for aggressive discovery deadlines
5. PRESERVE ASSETS of all City Defendants pending judgment
6. ENJOIN City from further retaliatory conduct including all collection of fees for properties wrongfully forced vacant
7. DECLARE City's systematic targeting and criminal coordination falls outside immunity protections
8. REFER evidence of continuing criminal conduct and fraud upon Court to appropriate federal prosecutors
9. AWARD reasonable attorney's fees and costs
10. GRANT such other relief as Court deems just and proper

When municipal defendants weaponize building code enforcement to destroy successful rehabilitation businesses while protecting federal criminals, and commit fraud upon federal court to escape accountability, they must face full accountability under federal RICO and civil rights laws.

Respectfully submitted,

16

/s/ John Klosterman
John Klosterman, Pro Se
Plaintiff
5615 Sidney Road
Cincinnati, Ohio 45238
(513) 250-2610
johncklosterman@gmail.com

---

EXHIBIT A: Pictures addressed as Appendix Plaintiff properties as stated at top of page 1

EXHIBIT B: Corrected Property Photographs with key to true owner identification and condition of Plaintiff's actual properties.

---

CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2025, a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ John Klosterman

---

Counsel for City Defendants:

Rebecca P. Salley (0097269)
Johnnie Fitzpatrick (0100476)
Mark Manning (0088331)
Assistant City Solicitors
801 Plum Street, Suite 214

Cincinnati, OH 45202
Phone: (513) 352-4576