

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF OHIO

# WESTERN DIVISION

---

**JOHN KLOSTERMAN, et al**
 **Plaintiff,**

**v.**

 Case No. 1:25-cv-00312-SJD-KLL

 Judge Susan J. Dlott
 Magistrate Karen L. Litkovitz

**KONZA, LLC, RICHARD BOYDSTON,**

 **and DENTONS BINGHAM**

 **GREENEBAUM LLP, et al.,**

 **Defendants.**

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO KONZA, BOYDSTON AND DENTONS
DEFENDANTS' MOTION TO DISMISS**

---

**TO THE HONORABLE COURT:**

**Defendants Boydston, Konza LLC, and Dentons have filed a motion to dismiss that
constitutes a breathtaking exercise in legal misdirection. Rather than confronting the central**

allegation of this case—Boydston's sworn admission under oath to orchestrating an "engineered sale"—Defendants attempt to relitigate procedural matters from the underlying receivership case A1905588. This strategy represents a fundamental misunderstanding of federal civil procedure: prior state court proceedings cannot immunize defendants from federal RICO liability when those very proceedings were themselves vehicles for the racketeering activity.

Defendants' reliance on old case filings as purported precedential authority demonstrates either willful blindness to their legal predicament or a calculated attempt to distract this Court from the substantive criminal admissions that form the foundation of this action. Under established precedent, judicial admissions are conclusive and cannot be withdrawn. When a Harvard-educated attorney explicitly admits under oath that a property sale was "engineered" to cover predetermined expenses rather than reflect market value, that admission destroys any defense predicated on the legitimacy of the underlying proceedings.

## I. THE MUNICIPAL PROPERTY SEIZURE SYSTEM: CONTEXT FOR THE ENTERPRISE

To understand how Defendants were able to operate their criminal enterprise with such apparent impunity, Cincinnati has developed a sophisticated legal framework for transferring private property to municipal control through coordinated use of building code enforcement, financial penalties, and receivership proceedings. This over 15 year old system, while facially legitimate, creates opportunities for abuse when operated by individuals who prioritize personal enrichment over fiduciary obligations.

The typical progression follows a predictable pattern: municipal building departments generate escalating fines and fees against targeted property owners, creating financial pressure that favors those with superior resources and legal representation. The system's design inherently advantages governmental entities and their preferred partners, who can navigate the procedural labyrinth with institutional knowledge while individual property owners face mounting legal costs and procedural complexity. This structural imbalance transforms what should be neutral enforcement proceedings into a sophisticated wealth transfer mechanism.

**The Engineered Corruption of Legitimate Process**

In this case, the City's then-attorney Jacqlyn Martin selected Dentons partner Richard Boydston to serve as receiver, a choice that would prove central to the subsequent criminal enterprise. Boydston formed Konza LLC specifically for this receivership—a corporate structure that enabled the dual-billing scheme documented in this case. Rather than selecting qualified property management with transparent accounting practices, Boydston hired TSO, operated by Joseph Lentine, a previously convicted federal felon with a ten-year prison record.

This personnel selection was not inadvertent. The timing coincided with unprecedented federal financial assistance programs related to the COVID-19 pandemic, creating the opportunity for Lentine's fraudulent applications that required Plaintiff's properties to engage in systematic deception. As the housing market reached historic highs during 2021-2022, providing optimal conditions for legitimate property sales that would maximize recovery for the receivership

estate, Defendants instead looted the estate and pursued a coordinated scheme to undervalue and misdirect Plaintiff's properties to a predetermined purchaser.

## II. THE ROTTEN TREE ROOTS: BOYDSTON'S CONFESSION DESTROYS ALL DEFENSES

When tree roots are rotten, the entire tree is diseased and must fall. Richard Boydston's sworn confession to orchestrating an "engineered sale" represents the rotten roots that poison every defense attempt and past motions and filings that the Boydston Defendants presented as Exhibits. No procedural argument can overcome a Harvard-educated attorney's judicial admission of systematic fraud.

The Boydston Defendants seek dismissal while ignoring the fundamental fact that their motion to dismiss is being filed by confessed criminals. When defendants have admitted under oath to "engineering" fraudulent property sales, Federal Rule 12(b)(6) becomes an exercise in futility rather than legitimate legal argument. Their only defense was to copy most of the motions from the lower court, which are now fatally flawed due to the admission of the engineered sale.

### A. Judicial Admission of Criminal Intent Under Federal Rule 801(d)(2)

Richard Boydston's sworn trial testimony constitutes binding judicial admission that destroys any defense:

Q: "Was this purchase price the value of the properties, or was this calculated to satisfy the expenses of the receivership?"

A: "It was hoped that that would cover the expenses of the receivership with agreed reductions."

Additional confessions include:

- Sale price was "reverse-engineered" to cover predetermined expenses
- "$800,000 was a negotiated number...took into account all the claims"
- Process "inverted the proper approach to property valuation"

## B. "Engineered Sales" = Criminal Fraud Under Federal Law

Boydston's confession to "engineered sales" establishes criminal intent for multiple federal violations:

- Wire Fraud (18 U.S.C. § 1343): Electronic transmission of fraudulent sale documents
- Mail Fraud (18 U.S.C. § 1341): Postal transmission of false court filings
- RICO Conspiracy (18 U.S.C. § 1962): Systematic enterprise to defraud property owners
- Constitutional Violations (42 U.S.C. § 1983): Deprivation of due process under color of law

## C. Federal Courts Treat Judicial Admissions as Conclusive

Under established precedent, judicial admissions are binding and cannot be withdrawn. Boydston cannot claim ignorance, mistake, or innocent conduct when he has confessed under oath to "engineering" fraudulent outcomes. The rotten roots of Boydston's confession poison the entire defense tree.

## III. SEPTEMBER 26, 2025: COORDINATED OPPOSITION FILINGS PROVE RICO ENTERPRISE

### A. Real-Time Evidence of Systematic Coordination

Recent state court filings provide extraordinary evidence of coordination between the receiver and ultimate property purchaser that validates every element of Plaintiff's RICO enterprise allegations. On September 26, 2025, both Konza LLC (through Richard Boydston) and Hamilton County Land Reutilization Corporation ("HCLRC") filed separate but coordinated opposition memoranda to the same motion in Hamilton County Common Pleas Case No. A1905588.

**Boydston's Critical Admission in State Court Filing:**
In Konza LLC's "Memorandum in Opposition to Motion by Tristate Organization Inc. and Joseph Lentine's Motion for Order of Distribution of Escrow Proceeds of Sale," Boydston states:

"The Receiver's defense of the sale to HCLRC in the Pending Federal Action is of course to the benefit of HCLRC as well the Receiver."

This admission destroys any pretense of independence between the receiver and ultimate purchaser, proving coordinated interests exactly as alleged in Plaintiff's RICO enterprise.

### B. HCLRC's Standing Arguments Expose Coordination Scheme

In HCLRC's September 26 filing titled "Hamilton County Land Reutilization Corporation's Memorandum in Opposition to Tri-State Organization Inc. and Joseph Lentine's Motion for

Order of Distribution of Escrow Proceeds of Sale," they make the extraordinary claim that "only the Receiver, HCLRC, and the Escrow Agent" have standing regarding the escrow proceeds.

Notably absent from this "standing" analysis is any mention of Plaintiff—the original property owner whose assets generated the disputed funds. This exclusion is legally and factually revealing because:

1. Coordinated Legal Theory: HCLRC and the receiver advance identical standing arguments, suggesting coordinated legal strategy rather than independent positions

2. Systematic Exclusion: The complete omission of the original property owner from standing considerations demonstrates the coordinated effort to write Plaintiff out of his own property rights

3. Evidence of Predetermined Coordination: HCLRC's assumption that only they and the receiver have legitimate interests proves the transaction was predetermined rather than conducted at arm's length

4. Systematic Disregard for Property Owner's Rights: The complete omission of Plaintiff from the standing analysis is particularly significant given that Plaintiff successfully acquired and managed 60+ properties over 25 years before the receivership, which was a disaster after 3 years. The coordinated parties' assumption that the original owner has no standing in the disposition of his own assets demonstrates the systematic nature of the scheme to deprive him of all property rights.

C. The Coordinated Opposition Strategy Proves Enterprise Structure

The fact that both Boydston (as receiver) and HCLRC filed separate but coordinated oppositions to the same motion proves:

**1. Enterprise Structure:** Multiple entities working toward common purpose exactly as alleged in Plaintiff's RICO complaint

**2. Systematic Coordination:** Shared legal strategy across multiple filings demonstrates the "association-in-fact" enterprise

**3. Predetermined Outcome:** Both entities oppose any distribution to legitimate claimants, proving coordinated financial interests

This coordination validates Plaintiff's allegations that the receivership was operated not as an independent fiduciary arrangement, but as a vehicle for systematic property transfer to predetermined municipal beneficiaries.

## IV. DEFENDANTS IGNORE THE ORIGINAL RICO PREDICATE ACTS THEY CANNOT DEFEND

### A. The RICO Claims Defendants Desperately Pretend Don't Exist

The Boydston Defendants' motion represents breathtaking legal arrogance—seeking dismissal while completely ignoring the extensive RICO predicate acts documented in Plaintiff's Complaint. Instead of addressing the substantive criminal evidence, they hide behind procedural technicalities.

Here are the specific RICO predicate acts defendants dare not mention:

**Mail Fraud (18 U.S.C. § 1341) - 35 Documented Instances:**

- Falsified monthly TSO reports transmitted via U.S. Mail to Court
- Modified financial statements concealing criminal conduct
- False affidavits regarding property conditions and finances
- Fraudulent court filings concealing Lentine's criminal background

**Wire Fraud (18 U.S.C. § 1343) - Multiple Electronic Transmissions:**

- $248,244 in fraudulent billing transmitted electronically to Court
- Electronic fund transfers of criminal proceeds between enterprise members
- Digital transmission of false property valuations and reports
- Email coordination of criminal activities between defendants

**Money Laundering (18 U.S.C. § 1956) - Criminal Proceeds Concealment:**

- $249,852 in PPP fraud proceeds used with Plaintiff's properties as cover from Lentine with knowledge of criminal source
- Commingling of legitimate and criminal funds through receivership accounts

**B. The RevoLaze Pattern: $32.3 Million Dentons Haven't Learned**

Defendants' arrogant dismissal strategy demonstrates they learned nothing from Dentons' recent $32.3 million legal malpractice verdict in Ohio in RevoLaze Technologies v. Dentons Bingham Greenebaum LLP. Despite this massive judgment teaching that procedural arguments cannot shield substantive malpractice, Dentons repeats the same failed strategy.

**V. FEDERAL CRIMINAL VALIDATION AND FBI WHISTLEBLOWER COOPERATION**

## A. FBI Whistleblower Investigation Timeline

**Plaintiff was not merely a victim—he was an active federal whistleblower cooperating with FBI investigation beginning in early 2020:**

- **Early 2020: FBI initial contact at Plaintiffs home regarding suspected criminal activity**
- **March 2020 – January 2023: Plaintiff documents systematic criminal conduct under investigative confidentiality**
- **August 2021: Federal arrests and charges filed against Lentine and Strunk**
- **2022-2025: Federal prosecutions proceed with Plaintiff's cooperation**
- **January 2025: Boydston's trial confession validates Plaintiff's whistleblower information**
- **April 2025: Plaintiff files civil RICO action**

**This timeline proves Plaintiff's lawsuit is not speculative litigation, but the natural progression of validated federal criminal investigation.**

## B. Federal Criminal Convictions Validate Enterprise

- **Joseph Lentine: 63 months federal prison (FBI Case No. 1:21-mj-00633-KLL) for wire fraud and money laundering**
- **Angel Strunk: Federal conviction pending sentencing**

**These convictions by federal prosecutors validate the criminal nature of the enterprise Defendants participated in and enabled.**

## C. Third-Party Admissions from HCLRC Confirm Systematic Misconduct

HCLRC's own September 8, 2023 admissions in state court Case No. A1905588 provide crucial third-party evidence:

- **Missing $330,000+:** "No one knows what happened to the over $330,000.00 that the receivers unlicensed real estate manager received from rent collected"
- **34 Months of Known Misconduct:** The receiver allowed this enterprise to continue for 34 months
- **Systematic Fraud:** "The work stated on monthly reports was not performed, but TSO charged the receiver for it"
- **Plaintiff's Documented Objections:** Plaintiff "demanded that [Boydston] fire Mr. Lentine in May, 2020...for obvious reasons"

These admissions by the ultimate property purchaser provide crucial evidence of the coordination scheme between the receiver and entities involved in acquiring Plaintiff's properties.

## VI. SPECIFIC EVIDENCE OF SYSTEMATIC CRIMINAL ENTERPRISE OPERATIONS

### A. Board of Revision Value Manipulation (2022)

Boydston's BOR (Board of Revision) testimony reveals criminal intent to artificially reduce property values while maximizing receivership extraction:

- **685 Halsey Avenue and 636 Delhi Avenue:** Sought reductions while in sworn testimony to wanting to "get the most from the properties at sale" $100,000 reduced!
- **"Doe Number Four" coordination:** Unnamed attorney assisted in overruling Hamilton County Appraiser who stated the ground on Halsey was worth between $12-$18,000.00

- Proves: Systematic value manipulation with predetermined criminal purpose

**B. Unauthorized Billing Rate Fraud Without Court Notice**

- **Konza LLC:** Testified it would bill at $250/hour, actually billed $300/hour as unlicensed attorney and property manager
- **Richard Boydston:** Actually billed $350/hour despite $300/hour representation
- **No court authorization:** Rates increased without judicial approval or plaintiff notice
- **Generated:** Approximately $248,244 in fraudulent legal billing proceeds and in his September 26, 2025 filing has more legal billing billed to the receivership from fighting Lentine and Klosterman in federal court.

**C. Personal Use of Receivership Funds Through TSO**

Former TSO employee will testify that Joseph Lentine used receivership funds for personal home improvements:

- **Location:** 3633 Puhlman Avenue, Cheviot (Lentine's personal residence)
- **Fraudulent improvements:** New kitchen, bath, floors, and paint billed to receivership
- **Unknown 10's of thousands:** Receivership labor and material funds used for personal benefit under Boydston's supervision when QuickBooks job costing was available

**D. Systematic Theft of Plaintiff's Personal Property**

- **Boydston refused to answer Plaintiffs 2 requests via Email to remove property from 701 Delhi : Receiver enabling Lentine sale theft**

- **BMW vehicle:** Lentine sold plaintiff's personal BMW

- **Industrial kitchen equipment:** Converted valuable commercial equipment

## VII. THE "REVOLVING DOOR" MUNICIPAL CORRUPTION

### A. Andrew Garth Timeline Demonstrates Predetermined Property Transfer Coordination

- **Former City Solicitor:** Defended keeping convicted felon Lentine after FBI arrest

- **"Only arrested" response:** Lentine should remain despite federal charges, demonstrating deliberate indifference to ongoing federal criminal investigation and potential interference with federal law enforcement objectives

- **Current position:** Now executive at Hamilton County Land Bank (ultimate purchaser)

- **Proves:** Systematic municipal enterprise coordination and predetermined outcomes

## VIII. RICO CLAIMS ARE SUFFICIENTLY PLEADED

### A. Enterprise Element: Multi-State Criminal Organization

Plaintiff has adequately pleaded an association-in-fact enterprise consisting of:

- **Konza, LLC (Boydston's receiver entity)**

- **Richard Boydston (Harvard attorney/enterprise architect)**

- **Dentons Bingham Greenebaum LLP (legal cover provider)**

- **Tri-State Organization, Inc. (day-to-day operations)**

- **Joseph Lentine (convicted federal felon - 63 months prison)**

- **City of Cincinnati/Terry James (governmental authority)**

- **HCLRC ( un-named defendant and the ultimate beneficiary)**

**Common Purpose:** Systematic theft of Historic Sedamsville properties through abuse of court-appointed receivership authority, as evidenced by the September 26, 2025 coordinated opposition filings.

**Relationships:** Documented coordination through financial records, communications, Boydston's sworn confession to "negotiated numbers" with all parties, and coordinated legal strategies.

**Longevity:** 34-month systematic operation from receiver appointment (March 2020) through fraudulent sale consummation (January 2023), continuing through coordinated defense strategies.

**B. Pattern of Racketeering Activity: Multiple Predicate Acts**

The enterprise engaged in systematic federal crimes with documented evidence:

**Mail/Wire Fraud Pattern:**

- **35 falsified TSO reports submitted monthly via U.S. Mail**
- **$248,244 electronic billing fraud transmitted to court without authorization**
- **Fraudulent property valuations transmitted through interstate communications**

**Money Laundering Pattern:**

- **PPP fraud proceeds: $249,852 accepted from Lentine with criminal knowledge**
- **Personal use funds: Thousands in receivership money for Lentine's home improvements**

## C. Proximate Causation: Direct Property Loss

Boydston's "engineered sale" directly caused plaintiff's $4.5 million property loss. Historic Sedamsville properties are now being redeveloped by HCLRC, having gutted most of the properties proving the massive undervaluation in the fraudulent "engineered sale."

# IX. CONSTITUTIONAL CLAIMS SURVIVE ALL IMMUNITY ARGUMENTS

## A. No Immunity for Confessed Federal Crimes

Under established precedent, qualified immunity does not protect criminal conduct. When municipal officials engage in systematic collusion with federal criminals, they forfeit any claim to immunity protection.

## B. Clearly Established Constitutional Rights Violated

- **Due Process:** Systematic fraud in property seizure violates fundamental fairness, especially when engineering reports contradict condemnation orders
- **Equal Protection:** Discriminatory enforcement between Plaintiff's properties and receivership properties violates equal protection
- **Fourth/Fifth Amendments:** Criminal seizure of property through fraudulent process violates constitutional protections against unreasonable seizure and taking without due process

## C. Municipal Liability Under Established Precedent

The City's specific recommendation of the Boydston/Konza arrangement constitutes official policy under established municipal liability doctrine. The systematic coordination between the

building department and predetermined receiver outcomes establishes municipal custom violating constitutional rights.

## X. THE HISTORICAL SIGNIFICANCE: SAVING HISTORIC SEDAMSVILLE

### A. National Register Properties Targeted for Theft

This criminal enterprise specifically targeted Historic Sedamsville properties placed on the National Register:

- **Historic preservation value:** Stopped wholesale demolition by city and land bank
- **True redevelopment potential:** Properties now being rehabilitated for $300,000+ sales
- **Federal historic protections:** Properties finally receiving proper rehabilitation after enterprise took control
- **Neighborhood control:** Enterprise obtained "nearly 50% of neighborhood for pennies on the dollar"
- **Historic Tax credits and City and Hamilton County property tax abatements available**

### B. Plaintiff's 35-Year Historic Preservation Mission

Plaintiff dedicated 35 years and millions spent saving Historic Sedamsville through strategic property acquisition and rehabilitation. The criminal enterprise systematically targeted and stole this life's work through abuse of governmental authority, demonstrating the scope of damages beyond mere financial loss.

## XI. THE CRIMINAL ENTERPRISE CONTINUES THROUGH HCLRC

16

## A. Knowledge of Fraud

HCLRC accepted properties knowing the sale was "engineered," with Andrew Garth (former City Solicitor who protected Lentine after FBI arrest) now serving as an HCLRC executive—proving predetermined coordination between municipal authorities and ultimate beneficiaries.

## B. Massive Investment Validates True Value

HCLRC's actions since acquiring Plaintiff's properties through the confessed "engineered sale" prove both the fraud and ongoing damages:

HCLRC's estimated $200,000+ current rehabilitation investment and preparation for $300,000+ sales prove the systematic undervaluation in Boydston's confessed fraud. The properties are being gutted and prepared for high-end rehabilitation, demonstrating their substantial redevelopment potential that Plaintiff was systematically denied.

## C. Continuing Damages and Unjust Enrichment

Every rehabilitation dollar represents additional damages to Plaintiff, who was systematically denied his properties' true potential through the criminal enterprise. HCLRC now controls nearly 50% of Historic Sedamsville through this systematic theft, positioning them to profit from Plaintiff's 35 years of historic preservation work while representing massive unjust enrichment at Plaintiff's expense.

## XII. DISCOVERY SANCTIONS WARRANTED FOR SYSTEMATIC OBSTRUCTION

## A. Three-Year Discovery Obstruction Pattern

Defendants systematically obstructed discovery through:

- Bank record concealment despite multiple court orders in Case A1905588

- Credit card statement concealment to hide personal use of receivership funds

- QuickBooks job costing system refusal despite plaintiff providing accounting system

- False 4100 business records - TSO records called "fraudulent " by defendants themselves https://www.dropbox.com/s/qxkej1dwbkw0dww/Records.pdf?dl=0

  Richard Boydston stated he reviewed records monthly.  Breathtaking negligence.

## B. Appropriate Rule 37 Sanctions

This Court should impose sanctions including:

- Deemed admissions of enterprise coordination and criminal conduct

- Adverse inferences regarding systematically concealed evidence

- Asset preservation orders pending full financial disclosure

- Cost shifting for plaintiff's fees incurred due to obstruction

## XIII. WHY DEFENDANTS' MOTION TO DISMISS WILL FAIL

### A. Legal Precedent Against Defendants

- **RICO Municipal Liability:** Federal courts have held municipal entities can be RICO defendants when participating in criminal enterprises

- **Pattern Evidence:** Established precedent recognizes systematic coordination as evidence of enterprise

- **Constitutional Violations:** Courts consistently hold that systematic deprivation of

18

property rights violates due process

## B. Overwhelming Factual Evidence

- Boydston's sworn confession to "engineered sales" under oath
- Federal criminal convictions of enterprise members with 63-month prison sentences
- $4.5 million documented theft through systematic "reverse-engineered" fraud
- FBI whistleblower cooperation validating criminal enterprise from 2020-2025
- September 26, 2025 coordinated filings proving ongoing enterprise coordination in real time

## C. Strategic Positioning Favors Plaintiff

Defendants argue procedural technicalities while Plaintiff argues substantive confessed criminal conduct. Federal courts favor substance over procedure, especially when Harvard attorneys confess to systematic federal crimes under oath.

The September 26, 2025 coordinated opposition filings provide contemporary evidence of the coordination scheme, with Boydston explicitly admitting shared interests with HCLRC while HCLRC systematically excludes the original property owner from any standing considerations.

## XIV. CONCLUSION: THE ROTTEN TREE MUST FALL

Richard Boydston's confession to orchestrating "engineered sales" represents the rotten roots that destroy the entire defense tree.

No procedural argument can overcome a Harvard attorney's judicial admission of systematic federal crimes.

The September 26, 2025  court filings in A1905588 by Konza and HCLRC coordinated opposition filings provide additional real-time proof of systematic coordination between the receiver and ultimate property purchaser, validating every element of Plaintiff's RICO enterprise allegations. When both the receiver and property purchaser file coordinated legal strategies that systematically exclude the original property owner from standing considerations, while explicitly admitting shared interests in defending federal claims, the coordination scheme is proven beyond dispute.

The continuing criminal enterprise through HCLRC's massive rehabilitation investment proves this was not mere negligence, but a coordinated scheme to transfer valuable historic properties to predetermined municipal beneficiaries at artificially depressed values. HCLRC's $200,000+ investment demonstrates the properties' true potential that Plaintiff was systematically denied through the confessed "engineered sale."

When the roots are rotten with confessed criminal fraud, the entire tree of procedural defenses must fall.

Federal prosecutors have already validated these claims through criminal convictions and ongoing investigation. This Court should not provide civil immunity for conduct that federal prosecutors have determined constitutes federal crimes.  The systematic theft of 35 years of historic preservation work through abuse of governmental authority represents exactly the type of municipal corruption that federal RICO laws were designed to combat.

## XV. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests this Court:

1. DENY Defendants Boydston, Konza and Dentons' Motion to Dismiss in its entirety

2. ORDER expedited discovery regarding financial coordination between all defendants and HCLRC including the ( side arrangement not disclosed in the closing statement)

3. IMPOSE SANCTIONS under Federal Rule 37 for systematic discovery obstruction

4. PRESERVE ASSETS of all defendants pending judgment

5. ENJOIN HCLRC from further disposition of Plaintiff's properties pending resolution of this criminal enterprise case

6. SCHEDULE case management conference to establish aggressive discovery deadlines

7. REFER evidence of ongoing criminal conduct to appropriate federal prosecutors

8. GRANT such other relief as this Court deems just and proper

Respectfully submitted;

/s/ John Klosterman
John Klosterman, Pro Se
5615 Sidney Road
Cincinnati, Ohio 45238
(513) 250-2610
johncklosterman@gmail.com

CERTIFICATE OF SERVICE I hereby certify that on September 30, 2025, a true and accurate copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be emailed to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/John Klosterman