# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JOHN KLOSTERMAN,et al
 Plaintiff,

Case No. 1:25-cv-00312-SJD-KLL

V.

Judge Susan J. Dlott
Magistrate Karen L. Litkovitz

KONZA, LLC, RICHARD BOYDSTON,

and DENTONS BINGHAM

GREENEBAUM LLP, et al.,

Defendants.

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO FRI MASON, LLC'S MOTION TO DISMISS

Plaintiff thanks this Court for the guidance in its orders (Doc. 63, 64).

INTRODUCTION

Defendant FRI Mason, LLC d/b/a Keller Williams Advisors Realty moves to dismiss,

claiming "no factual allegations whatsoever of any wrongdoing." (Doc. 53 at 1). This is

demonstrably false. The Amended Complaint contains extensive specific allegations against

Keller Williams, including receipt of a $147,401 commission for a predetermined "engineered

sale," participation in property valuations reducing values by over $100,000, active

coordination documented in Boydston's billing records to restructure sales documents, and multiple RICO predicate acts. Moreover, Keller Williams has failed to disclose its complete corporate ownership structure, raising questions about its true role and liability.

---

**ARGUMENT**

## I. THE AMENDED COMPLAINT STATES MULTIPLE SPECIFIC CLAIMS AGAINST KELLER WILLIAMS

Contrary to Keller Williams's assertion, the defendant is referenced throughout the pleading with specific factual allegations:

**RICO Violations (¶170(g)):** Wire fraud through fraudulent listing agreements, mail fraud through commission processing, and money laundering through accepting the $147,401 commission for a non-arm's length transaction.

**Breach of Fiduciary Duty (¶¶243-258):** Deliberately misrepresenting property values (¶250(d)), facilitating sale $2.5 million below fair market value (¶250(f)), and collecting fees for services violating professional standards (¶250(h)).

**Fraudulent Misrepresentation (¶269):** Specific misrepresentations regarding HCLRC's offer, the arm's-length nature of the transaction, and removal of building code violations from sale documents.

**Other Counts:** Civil conspiracy (¶¶275-281), unjust enrichment (¶284(c)), and civil aiding and abetting (¶¶323-324).

**Specific Factual Conduct Alleged:**

**Property Value Manipulation (¶35):** Donathan, at Boydston's direction, valued 685 Halsey (nearly one acre with cottage) at $1,000 and reduced 636 Delhi from $137,000 to $50,000, resulting in over $100,000 in devaluation. While Donathan did not personally appear ( as BOR transcripts tell) at Board of Revision hearings, her documents were submitted and—despite initial rejection by the Board and the County's own appraiser—Doe #4 intervened and convinced the Board to accept the fraudulent valuations anyway.

**Active Coordination in Fraudulent Sale Structure:** Boydston's legal billing records document multiple communications with Donathan concerning the sales documents, wherein Boydston altered the agreement to direct any remaining funds after the sale to HCLRC rather than to Plaintiff. HCLRC allegedly demanded these concessions due to poor property conditions—despite Lentine allegedly spending over $300,000 on improvements. Donathan served as intermediary between HCLRC and Boydston/Konza, and subsequently offered Lentine $50,000 to settle and remain silent (¶54). When Lentine refused, he sued Konza at bench trial and prevailed, further evidencing the fraudulent nature of the entire transaction.

**Wire/Mail Fraud (¶¶103-104):** Transmitted fraudulent listing agreements for artificially valued properties and processed commission payments for the engineered sale.

**Money Laundering (¶¶124, 129):** Concealed the true nature of the $147,401 payment by characterizing it as legitimate commission when it was compensation for facilitating a predetermined transfer.

3

**Enterprise Role (¶58):** Explicitly described as "disposition (Donathan/Keller Williams)" in the criminal enterprise.

**Coordinated Scheme (¶¶251-252):** Facilitated preferential treatment for HCLRC while denying access to other bidders, and actively participated in restructuring the sales agreement to deprive Plaintiff of proceeds.

These allegations far exceed Federal Rule of Civil Procedure 8(a) requirements and clearly establish participation in the fraudulent scheme.

---

## II. COUNT VII ADEQUATELY ALLEGES BREACH OF FIDUCIARY DUTY

### A. Fiduciary Relationship Exists as Matter of Law

Keller Williams argues no fiduciary duty existed absent "special confidence and trust." (Doc. 53 at 5-6). This misapprehends Ohio law. Real estate agents owe fiduciary duties to clients as a matter of law, not based on subjective trust.

As alleged at ¶248, Ohio courts recognize that "the relationship between a real estate agent and his client is a fiduciary one, and it is incumbent upon the agent to exercise fidelity and good faith toward his principal in all matters that fall within the scope of his employment." Parahoo v. Mancini, 2009-Ohio-459 (Ohio Ct. App. 1st Dist.).

The Amended Complaint alleges Donathan and Keller Williams were "engaged to market and sell at auction Plaintiff's properties" (¶249), sufficient to establish fiduciary relationship under Ohio law. Paragraph 249 specifically alleges standard fiduciary duties including: honestly

4

marketing properties, obtaining highest possible price, disclosing material facts, acting in Plaintiff's best interest, and avoiding fraudulent practices. The complaint alleges specific breaches of each duty, including Donathan's active role in restructuring the sales agreement with Boydston to benefit HCLRC and deprive Plaintiff of proceeds, and her intermediary role in attempting to silence Lentine with a $50,000 payment. ( the exact verbiage between Lentine and his counsel at the bench trial were and still are unavailable in the 258 page transcript from the bench trial) ( Clerk of Courts :error in loading)

**B. Discovery Rule Tolls Statute of Limitations**

**1. Exception for Fraud-Based Breaches**

While Investors REIT One v. Jacobs, 46 Ohio St.3d 176 (1989), holds the discovery rule doesn't generally apply to fiduciary breach claims, Ohio courts recognize an exception when breach is accomplished through fraud. Wilmington Trust Co. v. AEP Generating Co., 2004-Ohio-887 (when fiduciary breach is "grounded in fraud," discovery rule applies).

The Amended Complaint extensively alleges fraudulent conduct to conceal the "engineered" sale nature, including sworn admissions at trial that the sale price was designed to cover expenses rather than reflect market value (¶¶24-26), and Boydston's documented communications with Donathan regarding alteration of the sales documents to eliminate Plaintiff's right to excess proceeds.

**2. Discovery Occurred January-February 2025**

Plaintiff did not discover the fraud's full extent until the January-February 2025 bench trial, when Boydston and Lentine made damning admissions under oath (¶¶1, 3, 24-26), revealing:

5

the sale was "engineered" to cover receivership expenses (¶24); the $800,000 was a "negotiated number" accounting for "all claims" (¶25); and this was explicitly an "engineered sale" rather than legitimate market transaction (¶26). Additionally, Boydston's billing records document his coordination with Donathan to restructure the sales agreement, and Donathan's intermediary role in attempting to silence Lentine. Prior to these trial revelations, Plaintiff lacked evidence confirming the transaction's fraudulent nature and Donathan's active participation.

### 3. Continuing Violation Doctrine

Ohio recognizes that when fiduciary breach involves continuing conduct, limitations don't begin until the last act. Johnson v. Johnson, 2002-Ohio-4400. The scheme continued 34 months (¶11), with Keller Williams's $147,401 commission received in 2022, and Donathan's attempted payment to Lentine occurring in late 2022 or 2023, supporting continuing violation doctrine application.

### C. Rule 9(b) Particularity Satisfied

The Amended Complaint provides extensive fraud detail:

Who: Keller Williams through agent Jennifer Donathan

What: $147,401 commission for engineered sale; $100,000+ artificial property value reduction; active participation in restructuring sales agreement to deprive Plaintiff of proceeds; intermediary role in attempting to silence Lentine with $50,000 payment

When: Valuations reduced 2021-2022; sales document altered 2022; sale closed 2022; commission paid 2022; settlement offer to Lentine late 2022/2023

Where: Hamilton County; Lentine v. Konza, LLC within case A1905588; bench trial proceedings

How: Knowingly participating in predetermined sale through coordinated communications with Boydston documented in billing records; providing HCLRC preferential access; accepting commission despite knowing sale wasn't arm's length; serving as intermediary to conceal fraudulent activities

This exceeds Rule 9(b) requirements under Sanderson v. HCA-The Healthcare Co., 447 F.3d 873, 877 (6th Cir. 2006).

---

## III. CORPORATE OWNERSHIP DISCLOSURE DEFICIENCY

The Amended Complaint names "KELLER WILLIAMS ADVISORS REALTY" (¶55), while the motion is filed for "FRI MASON, LLC." Keller Williams has not provided: (1) complete ownership information for FRI Mason, LLC; (2) relationship between FRI Mason, LLC and Keller Williams Realty, Inc. (national franchisor); (3) whether additional entities were involved in commission payment; (4) identity of owners/controllers of FRI Mason, LLC; or (5) whether FRI Mason, LLC is properly registered in Ohio.

This incomplete disclosure is relevant to: diversity jurisdiction (citizenship determined by all members, Delay v. Rosenthal Collins Group, LLC, 585 F.3d 1003, 1005 (6th Cir. 2009)); alter

ego liability (complex franchise relationships require investigation); and veil piercing (Ohio courts pierce veils for fraud, Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos., 67 Ohio St.3d 274 (1993)).

Discovery is necessary regarding ownership structure, agreements with Keller Williams Realty Inc., commission payment flow, owner/officer knowledge, and relationships with other defendants. Dismissal would be premature without discovery opportunity.

---

## IV. ROOKER-FELDMAN DOES NOT BAR THIS ACTION

### A. Plaintiff Seeks No State Court Judgment Review

Keller Williams argues Rooker-Feldman bars jurisdiction because "plaintiff claims the source of his injury is the state court judgment." (Doc. 53 at 9-10). This mischaracterizes Plaintiff's claims.

Rooker-Feldman applies only when the plaintiff seeks review of state court judgment itself. Lance v. Dennis, 546 U.S. 459, 464 (2006). Plaintiff brings independent federal claims based on fraudulent conduct during receivership, not review of any court judgment.

Plaintiff alleges Defendants engaged in criminal conduct (RICO) and constitutional violations during the receivership—conduct independently actionable regardless of state court proceedings.

### B. Supreme Court Narrowly Construes Rooker-Feldman

Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), emphasized Rooker-Feldman is "narrow" and does not bar claims simply because they relate to state court proceedings. Id. at 293. The doctrine applies only when: (1) federal plaintiff lost in state court; (2) plaintiff complains of injuries caused by state court judgment; (3) plaintiff invites district court judgment review/rejection; and (4) state judgment preceded federal suit.

The plaintiff doesn't meet these requirements. Plaintiff complains of injuries from Defendants' fraudulent conduct—conduct occurring in receivership context but independently actionable under federal RICO and constitutional law.

## C. Receivership Context Doesn't Trigger Rooker-Feldman

Federal claims based on conduct during court-appointed receiverships are not Rooker-Feldman barred. Cvetich v. Federal Land Bank of Louisville, 614 F.2d 1070 (6th Cir. 1980) (constitutional claims against court-appointed receivers could proceed).

The injury source isn't any state court judgment, but rather: the below-market "engineered sale"; $437,000 misappropriated rental income; fraudulent property valuations; the $147,401 commission for non-arm's length transaction; Donathan's active restructuring of sales documents to deprive Plaintiff of proceeds; and coordinated RICO enterprise. These injuries flow from Defendants' conduct, not court orders.

---

# V. COLORADO RIVER ABSTENTION INAPPROPRIATE

## A. Receivership Has Substantially Concluded

Keller Williams argues for Colorado River abstention due to potentially pending state proceedings. (Doc. 53 at 10-12). This fails because the receivership has substantially concluded.

The receivership essentially concluded in December 2023 (¶11). Properties are sold, receiver filed final invoice which Plaintiff objected to due to fraudulent legal billing. The court must rule on several issues including disposition of the escrow account balance of $84,000. Lentine's successful bench trial suit against Konza concluded in February 2025, confirming the fraudulent nature of the entire transaction. This marks the second time a convicted federal felon (Lentine, who served 10 years for his previous conviction and recently received a 63-month sentence) was permitted to operate through the receivership.

## B. Even If Ongoing, Abstention Would Be Improper

Colorado River abstention is "extraordinary and narrow exception" to adjudication duty. Romine v. Compuserve Corp., 160 F.3d 337, 339 (6th Cir. 1998). Exceptional circumstances aren't present because: federal claims predominate (RICO and constitutional claims cannot be adequately addressed in state court); no inconsistent judgment risk (receivership concluded); federal forum benefits (RICO expertise, complex multi-defendant coordination); and abstention prejudices Plaintiff (forcing RICO/constitutional claims to state court).

---

## VI. PLEADING REQUIREMENTS SATISFIED

## A. Complaint Provides Fair Notice

The 104-page complaint is necessarily lengthy given: RICO enterprise complexity, 34-month time period, multiple defendants with interconnected roles, extensive racketeering pattern, and Rule 9(b) particularity requirements for fraud.

The complaint clearly identifies specific Keller Williams claims: Count I (¶170(g)), Count II (¶178(l)-(m)), Count VII (¶¶243-258), Count VIII (¶¶266-274, specifically ¶269), Count IX (¶¶275-281), Count X (¶¶282-289, specifically ¶284(c)), and Count XIV (¶¶321-328, specifically ¶¶323-324).

This detail exceeds Rule 8(a) requirements for "short and plain statement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## B. Plausible Claims for Relief Stated

Under Iqbal and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), claims must be "plausible on its face." The Amended Complaint easily meets this standard:

Breach of Fiduciary Duty: Keller Williams engaged to market/sell properties (creating duty); knew sale was "engineered"; received $147,401 despite knowing predetermined sale; participated in $100,000+ artificial value reduction; Donathan actively coordinated with Boydston to restructure sales agreement eliminating Plaintiff's right to proceeds; Donathan served as intermediary attempting to silence Lentine with $50,000 payment.

RICO: Participated in enterprise (receivership fraud scheme); committed predicate acts (wire fraud, mail fraud, money laundering); acts formed a racketeering pattern; Plaintiff injured.

Fraud: Made specific misrepresentations about sale nature; misrepresentations material and false; knew falsity; Plaintiff reasonably relied; Plaintiff damaged.

Civil Aiding and Abetting: Keller Williams had knowledge of fraudulent scheme (through Donathan's coordination with Boydston documented in billing records) and provided substantial assistance (fraudulent valuations submitted to Board of Revision, transmission of fraudulent listings, removal of code violation disclosures, facilitation of HCLRC's exclusive access, acceptance of commission for predetermined transaction).

## C. Discovery Will Reveal Additional Details

To the extent additional detail is needed, the remedy is discovery, not dismissal. Plaintiff has had no discovery opportunity regarding: communications between Keller Williams and other defendants; internal Keller Williams sale documents; commission payment flow and recipients; Keller Williams's knowledge of "engineered" sale nature; complete billing records documenting Boydston-Donathan coordination; documentation of the $50,000 settlement offer to Lentine; and FRI Mason, LLC's complete ownership structure.

Dismissal would be premature when discovery may reveal additional supporting facts.

---

## VII. UNIQUE CIRCUMSTANCES WARRANT DENIAL

### A. Sworn Admissions Distinguish This Case

Key defendants admitted under oath to central complaint allegations (¶¶24-26): Boydston testified sale price "was hoped that would cover receivership expenses" rather than reflect

market value; Boydston testified $800,000 was "negotiated number" accounting for "all claims"; and Lentine testified this was "an engineered sale."

Additionally, trial testimony by Lentine revealed Donathan's intermediary role in attempting to silence Lentine. Lentine's successful bench trial verdict against Konza further confirms the fraudulent scheme's existence.

These post-limitations-period sworn admissions and trial revelations support discovery rule arguments and demonstrate claim plausibility.

## B. RevoLaze Precedent Establishes Substantial Liability for Similar Conduct

Recent case law demonstrates courts' willingness to hold professional fiduciaries accountable for admitted misconduct. In RevoLaze LLC v. Dentons US LLP, 2022-Ohio-1392, the Ohio Court of Appeals upheld a $32.2 million verdict against a law firm that breached its fiduciary duties to its client.

Similarly, Defendant Boydston's explicit admission under oath that the sale was structured to cover receivership expenses rather than to obtain fair market value constitutes a clear acknowledgment of breach of fiduciary duty. Just as in RevoLaze, this admission serves as powerful evidence that Defendants put their own interests above their legal and fiduciary obligations to Plaintiff, causing substantial damages directly attributable to their misconduct.

This Court has ample precedent to award significant damages, including treble damages under RICO, based on Defendants' orchestrated scheme to defraud Plaintiff through the "engineered sale" and other predicate acts.

## C. Sophisticated Multi-Party Fraud Warrants Federal Jurisdiction

The alleged sophisticated fraud: spanned 34 months with the case now in its 5th year; involved multiple coordinated defendants; included Plaintiff's wrongful incarceration; involved private actors and government officials; implicated federal COVID relief programs (PPP loans); extended to coordinated attempts to silence whistleblowers through cash payments; and manipulated governmental proceedings (Board of Revision) where Doe #4 overrode professional appraisers to accept fraudulent valuations.

This is precisely the coordinated criminal activity RICO was designed to address. United States v. Turkette, 452 U.S. 576, 583 (1981).

---

## CONCLUSION

Defendant FRI Mason, LLC's Motion to Dismiss should be DENIED IN ITS ENTIRETY.

The Amended Complaint contains extensive specific allegations against Keller Williams stating plausible claims under multiple legal theories. These include not only receipt of commission for a fraudulent sale, but active coordination with Boydston—documented in billing records—to restructure sales documents to deprive Plaintiff of proceeds, property value manipulation through Board of Revision proceedings where Doe #4 overrode professional appraisers, and Donathan's intermediary role in attempting to silence Lentine with a $50,000 payment. Lentine's successful bench trial suit against Konza further validates these allegations.

14

Statute of limitations arguments fail because discovery rule applies, tolling limitations until

Plaintiff discovered fraud through January-February 2025 trial admissions and revelations.

Rooker-Feldman doesn't apply because Plaintiff doesn't seek state court judgment review.

Colorado River abstention is inappropriate because state proceedings substantially concluded

and federal claims predominate.

At minimum, Plaintiff is entitled to discovery regarding: FRI Mason, LLC's complete

corporate ownership; Keller Williams's knowledge/participation in "engineered sale";

communications between Keller Williams and other defendants documented in billing records;

commission payment flow; details of $50,000 settlement offer to Lentine; Board of Revision

proceedings and Doe #4's identity; and additional RICO enterprise facts.

Dismissal would be premature and deny Plaintiff discovery opportunity to develop claims that

are already plausibly pleaded.

Respectfully submitted,

John Klosterman
Plaintiff Pro Se
5615 Sidney Road
Cincinnati, Ohio 45238
513-250-2610
johncklosterman@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all represented parties through
the Court's CM/ECF system and by email on this 8th day of October, 2025.

John Klosterman