# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOHN KLOSTERMAN, et al.,
    **Plaintiff,**

v.

KONZA, LLC, RICHARD BOYDSTON,
DENTONS BINGHAM
GREENEBAUM LLP, CITY OF
CINCINNATI, et al.,
    **Defendants.**

Case No. 1:25-cv-00312-SJD-KLL
Judge Susan J. Dlott
Magistrate Karen L. Litkovitz

---

### PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER COMPELLING RECEIVER'S FINAL ACCOUNTING TO PRESERVE AND DISTRIBUTE RICO PROCEEDS

---

## I. INTRODUCTION

Plaintiff John Klosterman moves this Court pursuant to Federal Rules of Civil Procedure 65, 28 U.S.C. §§ 2283 and 1651, and this Court's inherent authority for an emergency temporary restraining order ("TRO"), preliminary injunction, and order compelling receiver's final accounting to:

Freeze $85,950.62 in escrow at Provident Title Company from state receivership Case A1905588;

Compel Defendant Richard Boydston/Konza, LLC to submit complete final billing to this Court within ten (10) days using the identical format from their two previous billing submissions in Case A1905588;

Transfer jurisdiction over these RICO proceeds to this Court;

Stay Hamilton County Case A1905588 proceedings on distribution; and

Distribute remaining proceeds to Plaintiff after federal Court review.

This motion is necessitated by compelling evidence that $85,950.62 represents the final remnant of a confessed "engineered sale" that systematically stripped Plaintiff of 59 Cincinnati properties valued at over $3.5 million for only $785,000. These funds constitute RICO proceeds requiring immediate preservation to prevent dissipation through fraudulent billing by defendants whose criminal enterprise this Court must adjudicate.

## II. FACTUAL BACKGROUND

### A. The Federal RICO Action and "Engineered Sale"

This action alleges systematic property theft through fraudulent receivership proceedings in Hamilton County Case A1905588, asserting violations of 18 U.S.C. §§ 1962(c) and (d). The RICO enterprise comprises Defendants Boydston, Konza LLC, City of Cincinnati officials, Jennifer Donathan, Keller Williams, Joseph Lentine, and Angel Strunk.

The enterprise's objective was an "engineered sale" — Defendant Boydston's sworn characterization — designed to generate predetermined fee payments and properties to enterprise members while eliminating the property owner's recovery. Direct evidence includes:

**Boydston's Confession:** Under oath in January 2025, Boydston admitted the sale price was "hoped to cover the expenses of the receivership with agreed reductions" rather than reflect fair market value. When asked if the price represented property value or was "calculated to satisfy the expenses of the receivership," he testified: "it was hoped that that would cover the expenses of the receivership."\

**Federal Criminal Convictions:** Co-conspirators Joseph Lentine and Angel Strunk were convicted in federal criminal proceedings for conduct directly related to this receivership, including bank fraud and money laundering using Plaintiff's properties. The FBI's arrest warrant specifically referenced "bank fraud and money laundering using [Plaintiff's] properties to launder the funds."

**Systematic Fraud:** The receivership sale returned excess proceeds to the buyer (Hamilton County Land Reutilization Corporation) rather than the property owner — confirming enterprise members' intent to eliminate Plaintiff's recovery while enriching themselves.

**B. The $85,950.62 Escrow and State Case Status**

Following the fraudulent May 2022 sale, $85,950.62 remains in escrow at Provident Title Company. State Case A1905588 remains open after five years with only two outstanding issues: (1) distribution of the escrow; and (2) Defendant Boydston's unfiled final billing. The

receivership has never been formally terminated. **Magistrate Anita Berding has entered no orders addressing these matters for over one year.**

**C. Boydston's Billing History and Double-Billing Scheme**

The federal complaint alleges systematic double-billing wherein Richard Boydston charged the receivership as both: (1) Konza, LLC at $300/hour for property management despite lacking required Ohio real estate broker licensing under Ohio Rev. Code § 4735.01; and (2) Dentons Bingham Greenebaum LLP attorney at $350/hour for legal services as "receiver's counsel."

**First Fee Application (December 6, 2022) - $499,000:**

- **Magistrate Berding refused to approve this billing**

- **The next day, an order approving payment was mysteriously signed "for Magistrate Berding" by Magistrate Thomas Berdoin**

- **This extraordinary procedure — having another magistrate sign "for" a refusing magistrate — evidences irregularities**

- **Payment was made over Plaintiff's timely objection without any ruling or requested hearing**

**Second Fee Application (September 8, 2023) - $104,438.75:**

- **Plaintiff filed detailed objections**

- **Application remains unpaid**

- **No hearing or ruling ever occurred**

**Unfiled Third Billing:**

Boydston acknowledged possessing additional billing including charges for "defending Konza receiver against Lentine in the bench trial" and "defending against [Plaintiff] in the federal case." Neither activity constitutes legitimate receivership management. Boydston seeks to charge the receivership estate for defending himself against his own alleged RICO violations.

**D. Due Process Violations — Three Unnoticed Hearings**

Plaintiff received no notice of three hearings before Magistrate Berding:

**December 30, 2022:** Boydston's billing records confirm "hearing before Berding" — no notice to Plaintiff

**January 31, 2023:** Boydston's billing records reference "hearing before Berding" — no notice to Plaintiff

**May 24, 2023:** Hamilton County Land Reutilization Corporation sought a vexatious litigator order. Law clerk Alexis Royce told Plaintiff "nothing of consequence" occurred. After Plaintiff purchased Transcripts, they revealed substantial proceedings affecting his rights. This intentional misrepresentation, combined with lack of notice, evidences systemic bias.

**E. Federal Jurisdiction Over These Funds**

The $85,950.62 represents RICO proceeds from the admitted "engineered sale" that forms predicate acts for federal violations. All defendants with potential claims (Boydston, Konza, City of Cincinnati) are defendants in this federal action. Federal jurisdiction is necessary because state proceedings have been tainted by lack of notice, irregularities in billing approval, and apparent bias.

## III. LEGAL STANDARD

A TRO and preliminary injunction require the plaintiff to demonstrate: (1) substantial likelihood of success on merits; (2) irreparable injury absent injunction; (3) minimal harm to others from granting injunction; and (4) public interest served by injunction. *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). These factors are balanced, not prerequisites. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

The Anti-Injunction Act, 28 U.S.C. § 2283, permits federal injunctions against state proceedings when "necessary in aid of [federal court] jurisdiction." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). The All Writs Act, 28 U.S.C. § 1651(a), authorizes courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions," including authority to preserve assets subject to federal claims. *Pennsylvania Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).

## IV. ARGUMENT

### A. Substantial Likelihood of Success on RICO Claims

Plaintiff's RICO claims possess overwhelming evidentiary support:

Confessed Predicate Acts: Boydston's sworn testimony constitutes judicial admission of fraudulent intent. His acknowledgment that the sale price was "hoped to cover the expenses of the receivership" rather than reflect fair market value directly establishes mail and wire fraud predicate acts.

**Federal Criminal Convictions:** Lentine and Strunk's federal convictions for conduct involving Plaintiff's properties provide direct proof of the enterprise's criminal nature. Federal prosecutors proved beyond reasonable doubt that enterprise members engaged in bank fraud and money laundering using these properties.

**Pattern of Racketeering:** The complaint alleges numerous predicate acts spanning three years: mail/wire fraud in receiver appointment and sale, money laundering through corporate structures, obstruction through destruction of financial records, and systematic billing fraud. This constitutes a clear "pattern of racketeering activity" under 18 U.S.C. § 1961(5).

**Enterprise Structure:** The alleged enterprise encompasses Konza/Boydston, City officials, un-named defendant, Hamilton County Land Reutilization Corporation , Donathan/Keller Williams, Lentine/Tri-State Organization, and Strunk. The enterprise's admitted objective was to "engineer" a sale that would "cover expenses" for members while eliminating the owner's recovery.

**Injury:** Plaintiff suffered direct injury through loss of 59 properties valued at $4.5 million, forced acceptance of $785,000 (17% of value), payment of $499,000 despite fraudulent billing, and ongoing litigation costs — precisely the injury § 1964(c) was designed to remedy.

**B. Irreparable Harm Without Immediate Relief**

Irreparable harm exists where money damages cannot adequately compensate. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). Here, irreparable harm is imminent:

**Dissipation of RICO Proceeds:** The $85,950.62 represents the final recoverable proceeds. Without federal protection, these funds face dissipation through Boydston's unpaid invoice

and unfiled billing for defending himself against alleged RICO violations, potential state court orders approving fraudulent charges, and inability to recover funds once distributed.

**Frustration of RICO Remedies:** RICO authorizes courts to "prevent and restrain violations" through injunctive relief. 18 U.S.C. § 1964(a). If state court distributes RICO proceeds before federal adjudication, this Court cannot provide effective remedies.

**Inability to Monitor State Proceedings:** Three documented unnoticed hearings demonstrate systematic due process violations that cannot be remedied through additional state court litigation.

**Defendants' Judgment-Proof Status:** Multiple defendants face criminal convictions and lack significant assets. If distributed improperly, recovery through subsequent judgments will be impossible. The $85,950.62 represents Plaintiff's only realistic opportunity for partial recovery.

**Time-Sensitive Nature:** After five years, Magistrate Berding's year-long + absence of any orders suggests abandonment or intentional delay to benefit defendants. Money damages cannot remedy permanent loss of federal jurisdiction over RICO proceeds.

## C. Balance of Harms Favors Plaintiff

**No Legitimate Competing Interests:** Boydston/Konza claim additional billing for defending themselves against RICO claims — inherently illegitimate charges that should not be paid from receivership proceeds. City of Cincinnati has no financial claim whatsoever. Hamilton County Land Reutilization Corporation already received the properties and has no provable claim to remaining proceeds.

**Preservation, Not Deprivation:** This motion preserves the status quo. Defendants suffer no harm from continued escrow pending federal adjudication. In contrast, Plaintiff faces loss of his only realistic recovery avenue, permanent inability to collect if funds dissipate, five years without resolution, and ongoing financial strain from loss of $3.5+ million.

## D. Public Interest Favors Federal Jurisdiction

Federal RICO statutes embody congressional determination that federal courts should adjudicate systematic criminal enterprises. Allowing state court distribution of RICO proceeds while federal liability is pending undermines federal supremacy. Permitting receivers to profit from confessed fraudulent conduct would undermine public confidence and encourage future misconduct. Parallel proceedings waste resources and risk inconsistent judgments. The documented unnoticed hearings demonstrate need for federal protection of constitutional rights. The public interest decisively favors federal jurisdiction.

## E. Federal Jurisdiction Necessary in Aid of This Court's Jurisdiction

The Anti-Injunction Act exception for orders "necessary in aid of jurisdiction" applies when state proceedings threaten to frustrate federal jurisdiction. *In re DeLorean Motor Co.*, 991 F.2d at 1240.

**RICO Proceeds Central to Federal Claims:** The $85,950.62 represents proceeds from the alleged RICO violation forming the basis of this Court's subject matter jurisdiction. Federal court cannot provide effective relief if defendants dissipate proceeds through state court orders before federal adjudication.

**All Claimants Are Federal Defendants:** Every party with potential claim to these funds is already a defendant in this federal action: Richard Boydston, Konza, LLC, and City of Cincinnati. No third parties require separate state adjudication. All issues can be efficiently resolved in this single federal forum.

**Federal Claims Encompass State Issues:** This federal RICO action necessarily encompasses all questions relevant to distributing funds: Was the sale fraudulent? (RICO claim) Did Boydston engage in systematic billing fraud? (RICO claim) Should Boydston receive additional payments? (RICO remedies) How should proceeds be distributed? (RICO remedies) The state proceeding adds no value and creates only risk of inconsistent adjudication.

**State Proceedings Tainted:** Documented due process violations, irregularities (12 audit denials, orders signed "for" refusing magistrate), and systematic bias demonstrate state court cannot provide fair forum. Federal intervention is necessary to protect constitutional rights.

**Preventing Dissipation Is Core Federal Interest:** Federal courts routinely exercise jurisdiction to preserve assets subject to federal claims. *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). The All Writs Act specifically authorizes orders necessary to preserve federal jurisdiction, including asset freezes. Failing to preserve these RICO proceeds would permanently frustrate this Court's ability to provide effective remedies.

## F. Ordering Receiver's Final Accounting to Federal Court

This Court should order Boydston/Konza to submit complete final billing to this Court rather than Hamilton County. This serves multiple purposes:

10

**Standardized Format Prevents Manipulation: Requiring the identical format from previous submissions prevents restructuring to obscure fraudulent charges, provides clear separation of Konza vs. Dentons charges, detailed task descriptions, and ability to identify non-receivership activities.**

**Federal Review of Allegedly Fraudulent Billing: The complaint specifically alleges systematic billing fraud. Federal review allows this Court to assess the double-billing scheme, identify litigation defense charges, determine legitimacy of expenses, and prevent dissipation through fraudulent charges.**

**Illuminates RICO Enterprise Evidence: Boydston's billing provides additional enterprise evidence through documentation of coordination with members, evidence of time defending RICO violations, proof of overbilling patterns, and confirmation of unauthorized activities.**

**Expedites Federal Resolution: Rather than await protracted state proceedings that consumed five years, federal review proceeds expeditiously with a ten-day deadline, opportunity for objections, and efficient resolution.**

**Prevents Strategic Withdrawal: The ten-day deadline prevents Boydston from strategically withdrawing billing to avoid federal scrutiny. Faced with justifying charges in federal court, Boydston may withdraw illegitimate billing — confirming its fraudulent nature.**

**Precedent for Federal Review: Federal courts possess authority to review state-appointed receivers when their conduct implicates federal claims. *SEC v. Lincoln Thrift Ass'n*, 577 F.2d 600, 606 (9th Cir. 1978). Federal review is particularly appropriate given: receiver is a named federal defendant, billing is alleged to constitute RICO predicate acts, funds are RICO proceeds subject to federal jurisdiction, and state court failed to provide adequate oversight.**

**G. Abstention Inappropriate**

*Colorado River* abstention applies only in "exceptional circumstances." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Federal and state proceedings are not parallel: State Case A1905588 is limited to receivership dissolution and distribution, while Federal Case 1:25-cv-00312 encompasses comprehensive RICO claims including fraud, conspiracy, money laundering, and civil rights violations. RICO claims raise uniquely federal questions requiring federal expertise. Ohio has no significant interest in adjudicating RICO proceeds from admitted fraudulent sale. While the state case was filed first (2019), the specific distribution issue arose only after May 2022 sale, and this federal action (2025) first comprehensively addressed proceeds distribution. Federal resolution addresses questions state court cannot: RICO enterprise liability, federal convictions' preclusive effect, civil rights violations from deprivation of notice, and systematic fraud spanning multiple states. Abstention would undermine judicial efficiency. State proceedings have been fundamentally inadequate with three unnoticed hearings, false information from court staff, irregular billing approval, and five-year delay without resolution. *Romine v. Compuserve Corp.*, 160 F.3d 337, 340 (6th Cir. 1998) (abstention inappropriate unless state proceedings adequately protect federal rights).

**H. Distribution to Plaintiff Appropriate**

After federal review of Boydston's final billing and rejection of charges for non-receivership activities , remaining proceeds should be distributed to Plaintiff. The $85,950.62 represents proceeds from sale of Plaintiff's properties — no legitimate basis exists to withhold proceeds from the property owner after substantial evidence establishes fraudulent sale. Boydston's

claim for defending himself against his own alleged RICO violations is illegitimate. Distribution provides partial restitution for $3.5 million in actual damages ($10.5 million trebled). While $85,950.62 represents only 2% recovery, it provides meaningful relief pending full RICO adjudication. After five years and loss of $4.5 million through confessed fraud, Plaintiff is entitled to this modest relief. Distribution does not prejudice ongoing RICO litigation, as Plaintiff may still recover full trebled damages — it merely provides partial interim relief.

## V. CONCLUSION

This motion presents compelling facts warranting emergency federal intervention: (1) Boydston's confessed "engineered" sale to "cover expenses"; (2) federal criminal convictions of co-conspirators; (3) three unnoticed hearings; (4) $499,000 billing approved through order signed "for" refusing magistrate; (5) imminent dissipation through Boydston seeking billing for defending against RICO claims; (6) five-year delay with only two outstanding issues; (7) $85,950.62 as Plaintiff's only realistic recovery opportunity.

Federal jurisdiction is necessary to preserve RICO proceeds, prevent frustration of federal jurisdiction, protect constitutional due process rights, enable comprehensive resolution of RICO enterprise claims, and provide partial relief to defrauded property owner.

## VI. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court:

GRANT emergency temporary restraining order:

- FREEZING $85,950.62 in escrow at Provident Title Company

**- PROHIBITING any distribution without further order of this Court**

**- STAYING all Hamilton County Case A1905588 proceedings on distribution**

**ORDER Defendant Richard Boydston and/or Konza, LLC to submit within ten (10) days:**

**- Complete final billing for all receivership services**

**- Using identical format from their two previous billing submissions in Case A1905588**

**- Itemizing all charges since last billing submission**

**- Separately identifying Konza, LLC receiver fees vs. Dentons legal fees**

**SET hearing on preliminary injunction within fourteen (14) days**

**ISSUE preliminary injunction maintaining freeze pending final adjudication**

**After review of Boydston's billing and opportunity for objections:**

**- DETERMINE legitimacy of claimed charges**

**- REJECT billing for non-receivership activities including litigation defense**

**- ORDER DISTRIBUTION of remaining proceeds to Plaintiff**

**EXERCISE continuing jurisdiction over all issues related to these RICO proceeds**

**STAY Hamilton County Case A1905588 in its entirety pending resolution of federal RICO claims**

**GRANT such other and further relief as this Court deems just and proper**

14

**Respectfully submitted,**

/s/ John Klosterman

**John Klosterman**

**Plaintiff Pro Se**

**5615 Sidney Road**

**Cincinnati, Ohio 45238**

**(513) 250-2610**

**johncklosterman@gmail.com**

**CERTIFICATE OF SERVICE**

**I hereby certify that a true and correct copy of this Emergency Motion was served upon all counsel of record via the Court's CM/ECF system and or Email on 11/13/25:**

/s/ John Klosterman

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**JOHN KLOSTERMAN, et al.,**
   **Plaintiff,**

**v.**

**KONZA, LLC, RICHARD BOYDSTON,**
**DENTONS BINGHAM**
**GREENEBAUM LLP, CITY OF**
**CINCINNATI, et al.,**
   **Defendants.**

**Case No. 1:25-cv-00312-SJD-KLL**
**Judge Susan J. Dlott**
**Magistrate Karen L. Litkovitz**

---

### DECLARATION OF JOHN KLOSTERMAN IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

---

I, John Klosterman, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct based on my personal knowledge:

## I. PERSONAL BACKGROUND AND PROPERTY OWNERSHIP

My name is John Klosterman. I am over the age of 18, competent to testify, and have personal knowledge of the facts stated in this declaration.

I am the plaintiff in this federal RICO action, Case No. 1:25-cv-00312-SJD-KLL, proceeding pro se.

For over 25 years, I have been involved in historic preservation and property rehabilitation in Cincinnati's Historic Sedamsville neighborhood.

Between approximately 1982 and 2020, I acquired and managed over 60 properties ( 40 lots) in Cincinnati, in Sedamsville . I personally rehabilitated 21 of these properties tax returns prove over 3 million spent in rehabilitation.

Prior to the receivership, I owned 60 properties free and clear or subject only to minimal liens. These properties had a collective fair market value of approximately $4.5 million based on comparable sales.

## II. THE FRAUDULENT RECEIVERSHIP

In 2019, the City of Cincinnati filed a lawsuit against me in Hamilton County Court of Common Pleas, Case No. A1905588, seeking appointment of a receiver to pay Vacant Building Maintenance fees and other fraudulent add on's totalling over $500,000.00. The receiver was to ready them in under 6 months and sell them at auction.

The City recommended Richard Boydston as receiver. I later learned that Boydston owned the receiver entity, Konza, LLC, creating an inherent conflict of interest.

On or about February 2020, the Hamilton County Court appointed Konza, LLC as receiver with Richard Boydston serving simultaneously as receiver and as receiver's counsel through Dentons Bingham Greenebaum LLP.

This dual role allowed Boydston to charge the receivership twice for the same work:

- As Konza, LLC at $300/hour for property management

- As Dentons attorney at $350/hour for legal services

Neither Konza, LLC nor Richard Boydston possessed an Ohio real estate broker's license required under Ohio Rev. Code § 4735.01 for property management activities, yet they charged over $248,000 for such services.

## III. THE "ENGINEERED SALE"

In May 2022, my 59 properties were sold to Hamilton County Land Reutilization Corporation for approximately $1,474,017, of which only $785,000 was cash, with the remainder consisting of assumed obligations. Others bid $1,000.000' as addressed in the federal suit.

This sale price represented approximately 17% of the properties' fair market value.

At the January 8-12, 2025 bench trial in Case A1905588, Richard Boydston testified under oath regarding how the sale price was determined. When asked if the purchase price was the value of the properties or was calculated to satisfy the expenses of the receivership, Boydston admitted: **"it was hoped that that would cover the expenses of the receivership with agreed reductions."**

Boydston further testified that the sale was **"negotiated"** to ensure **"everybody could be covered"** — referring to the various parties claiming fees and expenses, not to fair value for the property owner.

Co-defendant Joseph Lentine testified that this was an **"engineered sale"** — a direct admission that the transaction was designed to achieve predetermined financial outcomes for enterprise members rather than obtain fair market value.

The purchase agreement contained an extraordinary provision: any excess funds after paying receivership fees would be **returned to the buyer** (Hamilton County Land Reutilization Corporation) rather than the property owner. This provision confirms the fraudulent intent to deprive me of any recovery.

3

## IV. THE $85,950.62 IN ESCROW

Following the May 2022 sale, approximately $85,950.62 was placed in escrow with Provident Title Company in Cincinnati, Ohio.

These funds represent the final remnant of proceeds from the sale of my 59 properties after payment of various fees and expenses.

I believe and therefore allege that these funds are rightfully mine as the former property owner and should be distributed to me after deduction of any legitimate receiver fees.

However, Defendant Boydston claims entitlement to these funds through additional billing and fees that have never been filed with the Hamilton County Court.

Case A1905588 has been pending for over five years and contains over 3,100 pages of filings, yet remains unresolved with only two outstanding issues:

- Distribution of the $85,950.62 escrow

- Resolution of Boydston's 2nd invoice which has been proven to be fraudulent and is a part of the RICO action, and his unfiled billing

The receivership has never been formally terminated although Boydston asked for payment and wrote an order for essentially forgiveness for any and all actions by any person who were involved in the receivership. Judge Cross has not signed that proposed order. It is an exhibit in the original RICO filing.

## V. BOYDSTON'S BILLING HISTORY

### A. First Fee Application - $499,000 (December 2022)

On or about December 6, 2022, Boydston submitted a fee application seeking payment of $499,000 from receivership proceeds.

This billing included both Konza, LLC charges and Dentons Bingham Greenebaum LLP legal charges, demonstrating the systematic double-billing scheme.

I filed timely objections to this billing, citing excessive charges, unauthorized activities, and lack of proper documentation including no bank records.

On December 20, 2022 — without my objections or requested hearing could be heard — Magistrate Anita Berding appeared in court but **did not sign the order** approving payment of the $499,000.

The very next day, December 21, 2022, an order approving payment of the full $499,000 was mysteriously entered, signed **"for Magistrate Berding"** by Magistrate Thomas Berdoin.

I have never encountered any explanation for why Magistrate Berdoin signed an order "for" Magistrate Berding the day after she refused to sign it herself Plaintiff alleges that she felt it was fraudulent and did not want her signature on the document.

The $499,000 was paid to Boydston/Konza over my objection without any hearing or ruling on my objections.

**B. Second Fee Application - $104,438.75 (September 2023)**

On or about September 8, 2023, Boydston submitted a second fee application seeking $104,438.75.

I again filed detailed objections documenting:

- Unauthorized charges for non-receivership activities

- Excessive hourly rates

- Lack of proper accounting

- Double-billing between Konza and Dentons

To date — over two years later — no hearing has been held on these objections, and the $104,438.75 has not been paid.

The Hamilton County Court has entered no ruling whatsoever on my objections to this second billing.

**C. Unfiled Third Billing**

In his testimony at the January 2025 bench trial, Boydston acknowledged having additional billing that he has not yet filed.

Boydston stated this unfiled billing includes charges for:

- "Defending Konza receiver against Lentine in the bench trial" (January 2025)

- "Defending against [me] in the federal case" (this action)

Neither of these activities constitutes legitimate receivership management. Boydston seeks to charge the receivership estate for defending himself in litigation arising from his own alleged RICO violations. His first billing had tens of thousands of fees totally unrelated to the orderly operation of a receivership. It was truly breathtaking.

This represents the ultimate absurdity of the fraudulent billing scheme: the alleged RICO defendant wants to charge my property proceeds for the cost of defending against my RICO claims.

**VI. DEPRIVATION OF DUE PROCESS - UNNOTICED HEARINGS BENCH TRIAL EVICTION**

6

I received no notice of at least three hearings in Case A1905588 before Magistrate Berding:

**Hearing #1 - December 30, 2022**

Boydston's billing records, which I obtained through discovery, show he "prepared for and attended hearing before Magistrate Berding" on December 30, 2022.

I received no notice of this hearing and was not present.

I have no record in the Case A1905588 docket of any notice being sent to me regarding this hearing.

**Hearing #2 - January 31, 2023**

Boydston's billing records again reference a "hearing before Magistrate Berding" on January 31, 2023.

I received no notice of this hearing and was not present.

I have no record in the Case A1905588 docket of any notice being sent to me regarding this hearing.

**Hearing #3 - May 24, 2023**

A hearing was scheduled for May 24, 2023, regarding Hamilton County Land Reutilization Corporation's request for an order declaring me a vexatious litigator.

The hearing was rescheduled, but I received no notice of the rescheduling time via a call

When I inquired with law clerk Alexis Royce about what happened at the hearing, she told me that **"nothing of consequence"** occurred.

I subsequently paid for and obtained transcripts of the May 24, 2023 hearing.

The transcripts revealed that substantial proceedings occurred that directly affected my rights, including arguments about my litigation conduct and future filing restrictions.

Law clerk Royce's statement that "nothing of consequence" occurred was deliberately false and prevented me from understanding what transpired in proceedings affecting my rights.

This intentional misrepresentation by court staff, combined with the systematic failure to provide notice, demonstrates bias in the state court proceedings.

The Bench trial eviction: I can't recall how I found out that there was to be a Bench Trial Lentine v. Konza a trial with-in case A1905588. The cases were claims for contract fraud, unjust enrichment etc. I planned to go to the trial , even though once again I had no notice. It was scheduled to be in Magistrate Berdings courtroom. When I arrived, I was told by Alexis Roice of two changes: 1.Magisrate Berding would not be conducting the hearing ( once again no notice) 2. It would be held in room 411 Magistrate Berdion's court room. I proceeded to room 411 and encountered Richard Boydston coming out of that room. Surprised, he said the time was moved to later that day. I arrived late for the start of the trial . No one except Lentine and his counsel James Neiberding, Richard Boydston and surprisingly I found out later that Magistrate Berdoin was not conducting but Magistrate Cris Liu both who I had never met before. To this day I don't know who said I was a non- party to the bench trial and did not need notice of the bench trial.

So, I walked quietly into the courtroom late by 10 minutes which was just underway with opening statements. Immediately the hearing stopped and Magistrate Liu asked : Who are you? My reply : John Klosterman. I'm here as a public spectator. Liu to Boydston: Are you going to ask him to testify in this case? Yes, maybe. Is he on your witness list? No. I stated: I was not subpoenaed and will not testify if asked Once again I just want to be a public person and be here to listen to the trial. Magistrate Liu then asked me to leave the courtroom just in case Boydston wanted to call me. I left the courthouse never to return to the 4day trial. Magistrate Liu ordered the complete transcripts and the

exact words are contained in them. Plaintiff has emailed the Clerk of courts about having deep difficulty opening critical files in the case before this court. I have no animosity toward the error m ade on Magistrate Liu's part. He was tossed into this convoluted case by Magistrate Burding. allegedly communicated to Magistrate Liu that I was a non party, to the bench trial which I am a party.

**However the bench trial revealed the "Smoking Gun" for the RICO case.**

## VII. FEDERAL CRIMINAL CONVICTIONS OF CO-CONSPIRATORS

Joseph Lentine, who served as property manager during the receivership through his company Tri-State Organization Inc., has been convicted in federal court of bank fraud and other charges related to his conduct during the receivership.

Angel Strunk, who provided perjured testimony supporting the receivership, has been convicted in federal court of fraud charges including PPP fraud.

The FBI's arrest warrant for both Lentine and Strunk specifically referenced **"bank fraud and money laundering using [my] properties to launder the funds."**

These federal criminal convictions provide direct proof that the receivership was used as a vehicle for criminal activity by enterprise members.

## VIII. CURRENT STATUS AND IMMINENT HARM

Case A1905588 has been active for over five years with no meaningful progress toward final resolution.

Magistrate Berding has entered no orders addressing the distribution of the $85,950.62 or Boydston's final billing for over one year.

I face imminent harm because:

- Boydston could file his third billing at any time seeking the full $85,950.62 or more

- The state court could approve such billing without notice to me, as occurred with the $499,000 billing

- Once the $85,950.62 is dissipated, I will have no realistic opportunity for recovery

- Multiple defendants are judgment-proof due to criminal convictions and lack of assets

The $85,950.62 represents my only realistic opportunity for any recovery from the fraudulent "engineered sale" that stripped me of $4.5 million in property value.

## IX. NECESSITY FOR FEDERAL INTERVENTION

I cannot protect my interests in the state court proceedings because:

- Three documented instances of hearings without notice demonstrate systematic due process violations as well as eviction from a public courtroom proceeding without cause

- Court staff has provided false information about hearing outcomes

- The $499,000 billing was approved despite my objections through an irregular process

 Federal court intervention is necessary to:

- Preserve these RICO proceeds for proper distribution

- Prevent dissipation through additional fraudulent billing

- Enable review of Boydston's past billing by an impartial tribunal

- Provide a fair forum where I receive notice and opportunity to be heard

10

All parties with potential claims to the $85,950.62 are defendants in this federal RICO action, making federal court the efficient and proper forum for resolving distribution.

## X. REQUESTED RELIEF

I request that this Court:

- Immediately freeze the $85,950.62 in escrow to prevent dissipation

- Order Boydston to submit his complete final billing to this federal Court

- Review Boydston's billing and reject charges for non-receivership activities

- Distribute remaining proceeds to me as the former property owner

- Exercise continuing jurisdiction over these RICO proceeds

This relief is necessary to preserve the final remnant of my property proceeds and prevent complete dissipation through fraudulent billing by the alleged RICO defendants.

## XI. VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct based on my personal knowledge.

Executed on November 13, 2025, in Cincinnati, Ohio.

_____

**John Klosterman**

5615 Sidney Road

Cincinnati, Ohio 45238

(513) 250-2610

johncklosterman@gmail.com

**CERTIFICATE OF SERVICE**

**I hereby certify that a true and correct copy of this Emergency Motion was served upon all counsel of record via the Court's CM/ECF system and or Email on 11/13/25:**

_____

**/s/ John Klosterman**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOHN KLOSTERMAN, et al.,
   **Plaintiff,**

v.

KONZA, LLC, RICHARD BOYDSTON,
DENTONS BINGHAM
GREENEBAUM LLP, CITY OF
CINCINNATI, et al.,
   **Defendants.**

**Case No. 1:25-cv-00312-SJD-KLL**
  **Judge Susan J. Dlott**
  **Magistrate Karen L. Litkovitz**

---

### DECLARATION OF JOHN KLOSTERMAN IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

---

I, John Klosterman, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct based on my personal knowledge:

## I. PERSONAL BACKGROUND AND PROPERTY OWNERSHIP

My name is John Klosterman. I am over the age of 18, competent to testify, and have personal knowledge of the facts stated in this declaration.

I am the plaintiff in this federal RICO action, Case No. 1:25-cv-00312-SJD-KLL, proceeding pro se.

For over 25 years, I have been involved in historic preservation and property rehabilitation in Cincinnati's Historic Sedamsville neighborhood.

Between approximately 1982 and 2020, I acquired and managed over 60 properties ( 40 lots) in Cincinnati, in Sedamsville . I personally rehabilitated 21 of these properties tax returns prove over 3 million spent in rehabilitation.

Prior to the receivership, I owned 60 properties free and clear or subject only to minimal liens. These properties had a collective fair market value of approximately $4.5 million based on comparable sales.

## II. THE FRAUDULENT RECEIVERSHIP

In 2019, the City of Cincinnati filed a lawsuit against me in Hamilton County Court of Common Pleas, Case No. A1905588, seeking appointment of a receiver to pay Vacant Building Maintenance fees and other fraudulent add on's totalling over $500,000.00. The receiver was to ready them in under 6 months and sell them at auction.

The City recommended Richard Boydston as receiver. I later learned that Boydston owned the receiver entity, Konza, LLC, creating an inherent conflict of interest.

On or about February 2020, the Hamilton County Court appointed Konza, LLC as receiver with Richard Boydston serving simultaneously as receiver and as receiver's counsel through Dentons Bingham Greenebaum LLP.

This dual role allowed Boydston to charge the receivership twice for the same work:

- As Konza, LLC at $300/hour for property management

- As Dentons attorney at $350/hour for legal services

Neither Konza, LLC nor Richard Boydston possessed an Ohio real estate broker's license required under Ohio Rev. Code § 4735.01 for property management activities, yet they charged over $248,000 for such services.

## III. THE "ENGINEERED SALE"

In May 2022, my 59 properties were sold to Hamilton County Land Reutilization Corporation for approximately $1,474,017, of which only $785,000 was cash, with the remainder consisting of assumed obligations. Others bid $1,000.000' as addressed in the federal suit.

This sale price represented approximately 17% of the properties' fair market value.

At the January 8-12, 2025 bench trial in Case A1905588, Richard Boydston testified under oath regarding how the sale price was determined. When asked if the purchase price was the value of the properties or was calculated to satisfy the expenses of the receivership, Boydston admitted: **"it was hoped that that would cover the expenses of the receivership with agreed reductions."**

Boydston further testified that the sale was **"negotiated"** to ensure **"everybody could be covered"** — referring to the various parties claiming fees and expenses, not to fair value for the property owner.

Co-defendant Joseph Lentine testified that this was an **"engineered sale"** — a direct admission that the transaction was designed to achieve predetermined financial outcomes for enterprise members rather than obtain fair market value.

The purchase agreement contained an extraordinary provision: any excess funds after paying receivership fees would be **returned to the buyer** (Hamilton County Land Reutilization Corporation) rather than the property owner. This provision confirms the fraudulent intent to deprive me of any recovery.

## IV. THE $85,950.62 IN ESCROW

Following the May 2022 sale, approximately $85,950.62 was placed in escrow with Provident Title Company in Cincinnati, Ohio.

These funds represent the final remnant of proceeds from the sale of my 59 properties after payment of various fees and expenses.

I believe and therefore allege that these funds are rightfully mine as the former property owner and should be distributed to me after deduction of any legitimate receiver fees.

However, Defendant Boydston claims entitlement to these funds through additional billing and fees that have never been filed with the Hamilton County Court.

Case A1905588 has been pending for over five years and contains over 3,100 pages of filings, yet remains unresolved with only two outstanding issues:

- Distribution of the $85,950.62 escrow

- Resolution of Boydston's 2nd invoice which has been proven to be fraudulent and is a part of the RICO action, and his unfiled billing

The receivership has never been formally terminated although Boydston asked for payment and wrote an order for essentially forgiveness for any and all actions by any person who were involved in the receivership. Judge Cross has not signed that proposed order. It is an exhibit in the original RICO filing.

## V. BOYDSTON'S BILLING HISTORY

### A. First Fee Application - $499,000 (December 2022)

4

On or about December 6, 2022, Boydston submitted a fee application seeking payment of $499,000 from receivership proceeds.

This billing included both Konza, LLC charges and Dentons Bingham Greenebaum LLP legal charges, demonstrating the systematic double-billing scheme.

I filed timely objections to this billing, citing excessive charges, unauthorized activities, and lack of proper documentation including no bank records.

On December 20, 2022 — without my objections or requested hearing could be heard — Magistrate Anita Berding appeared in court but **did not sign the order** approving payment of the $499,000.

The very next day, December 21, 2022, an order approving payment of the full $499,000 was mysteriously entered, signed **"for Magistrate Berding"** by Magistrate Thomas Berdoin.

I have never encountered any explanation for why Magistrate Berdoin signed an order "for" Magistrate Berding the day after she refused to sign it herself Plaintiff alleges that she felt it was fraudulent and did not want her signature on the document.

The $499,000 was paid to Boydston/Konza over my objection without any hearing or ruling on my objections.

**B. Second Fee Application - $104,438.75 (September 2023)**

On or about September 8, 2023, Boydston submitted a second fee application seeking $104,438.75.

I again filed detailed objections documenting:

- Unauthorized charges for non-receivership activities

- Excessive hourly rates

- Lack of proper accounting

- Double-billing between Konza and Dentons

To date — over two years later — no hearing has been held on these objections, and the $104,438.75 has not been paid.

The Hamilton County Court has entered no ruling whatsoever on my objections to this second billing.

**C. Unfiled Third Billing**

In his testimony at the January 2025 bench trial, Boydston acknowledged having additional billing that he has not yet filed.

Boydston stated this unfiled billing includes charges for:

- "Defending Konza receiver against Lentine in the bench trial" (January 2025)

- "Defending against [me] in the federal case" (this action)

Neither of these activities constitutes legitimate receivership management. Boydston seeks to charge the receivership estate for defending himself in litigation arising from his own alleged RICO violations. His first billing had tens of thousands of fees totally unrelated to the orderly operation of a receivership. It was truly breathtaking.

This represents the ultimate absurdity of the fraudulent billing scheme: the alleged RICO defendant wants to charge my property proceeds for the cost of defending against my RICO claims.

## VI. DEPRIVATION OF DUE PROCESS - UNNOTICED HEARINGS BENCH TRIAL EVICTION

I received no notice of at least three hearings in Case A1905588 before Magistrate Berding:

**Hearing #1 - December 30, 2022**

Boydston's billing records, which I obtained through discovery, show he "prepared for and attended hearing before Magistrate Berding" on December 30, 2022.

I received no notice of this hearing and was not present.

I have no record in the Case A1905588 docket of any notice being sent to me regarding this hearing.

**Hearing #2 - January 31, 2023**

Boydston's billing records again reference a "hearing before Magistrate Berding" on January 31, 2023.

I received no notice of this hearing and was not present.

I have no record in the Case A1905588 docket of any notice being sent to me regarding this hearing.

**Hearing #3 - May 24, 2023**

A hearing was scheduled for May 24, 2023, regarding Hamilton County Land Reutilization Corporation's request for an order declaring me a vexatious litigator.

The hearing was rescheduled, but I received no notice of the rescheduling time via a call

When I inquired with law clerk Alexis Royce about what happened at the hearing, she told me that **"nothing of consequence"** occurred.

I subsequently paid for and obtained transcripts of the May 24, 2023 hearing.

The transcripts revealed that substantial proceedings occurred that directly affected my rights, including arguments about my litigation conduct and future filing restrictions.

7

Law clerk Royce's statement that "nothing of consequence" occurred was deliberately false and prevented me from understanding what transpired in proceedings affecting my rights.

This intentional misrepresentation by court staff, combined with the systematic failure to provide notice, demonstrates bias in the state court proceedings.

The Bench trial eviction: I can't recall how I found out that there was to be a Bench Trial Lentine v. Konza a trial with-in case A1905588. The cases were claims for contract fraud, unjust enrichment etc. I planned to go to the trial , even though once again I had no notice. It was scheduled to be in Magistrate Berdings courtroom. When I arrived, I was told by Alexis Roice of two changes: 1.Magisrate Berding would not be conducting the hearing ( once again no notice) 2. It would be held in room 411 Magistrate Berdion's court room. I proceeded to room 411 and encountered Richard Boydston coming out of that room. Surprised, he said the time was moved to later that day. I arrived late for the start of the trial . No one except Lentine and his counsel James Neiberding, Richard Boydston and surprisingly I found out later that Magistrate Berdoin was not conducting but Magistrate Cris Liu both who I had never met before. To this day I don't know who said I was a non- party to the bench trial and did not need notice of the bench trial.

So, I walked quietly into the courtroom late by 10 minutes which was just underway with opening statements. Immediately the hearing stopped and Magistrate Liu asked : Who are you? My reply : John Klosterman. I'm here as a public spectator. Liu to Boydston: Are you going to ask him to testify in this case? Yes, maybe. Is he on your witness list? No. I stated: I was not subpoenaed and will not testify if asked Once again I just want to be a public person and be here to listen to the trial. Magistrate Liu then asked me to leave the courtroom just in case Boydston wanted to call me. I left the courthouse never to return to the 4day trial. Magistrate Liu ordered the complete transcripts and the

8

exact words are contained in them. Plaintiff has emailed the Clerk of courts about having deep difficulty opening critical files in the case before this court. I have no animosity toward the error m ade on Magistrate Liu's part. He was tossed into this convoluted case by Magistrate Burding. allegedly communicated to Magistrate Liu that I was a non party, to the bench trial which I am a party.

**However the bench trial revealed the "Smoking Gun" for the RICO case.**

## VII. FEDERAL CRIMINAL CONVICTIONS OF CO-CONSPIRATORS

Joseph Lentine, who served as property manager during the receivership through his company Tri-State Organization Inc., has been convicted in federal court of bank fraud and other charges related to his conduct during the receivership.

Angel Strunk, who provided perjured testimony supporting the receivership, has been convicted in federal court of fraud charges including PPP fraud.

The FBI's arrest warrant for both Lentine and Strunk specifically referenced **"bank fraud and money laundering using [my] properties to launder the funds."**

These federal criminal convictions provide direct proof that the receivership was used as a vehicle for criminal activity by enterprise members.

## VIII. CURRENT STATUS AND IMMINENT HARM

Case A1905588 has been active for over five years with no meaningful progress toward final resolution.

Magistrate Berding has entered no orders addressing the distribution of the $85,950.62 or Boydston's final billing for over one year.

I face imminent harm because:

- Boydston could file his third billing at any time seeking the full $85,950.62 or more

- The state court could approve such billing without notice to me, as occurred with the $499,000 billing

- Once the $85,950.62 is dissipated, I will have no realistic opportunity for recovery

- Multiple defendants are judgment-proof due to criminal convictions and lack of assets

The $85,950.62 represents my only realistic opportunity for any recovery from the fraudulent "engineered sale" that stripped me of $4.5 million in property value.

## IX. NECESSITY FOR FEDERAL INTERVENTION

I cannot protect my interests in the state court proceedings because:

- Three documented instances of hearings without notice demonstrate systematic due process violations as well as eviction from a public courtroom proceeding without cause

- Court staff has provided false information about hearing outcomes

- The $499,000 billing was approved despite my objections through an irregular process

 Federal court intervention is necessary to:

- Preserve these RICO proceeds for proper distribution

- Prevent dissipation through additional fraudulent billing

- Enable review of Boydston's past billing by an impartial tribunal

- Provide a fair forum where I receive notice and opportunity to be heard

10

All parties with potential claims to the $85,950.62 are defendants in this federal RICO action, making federal court the efficient and proper forum for resolving distribution.

## X. REQUESTED RELIEF

I request that this Court:

- Immediately freeze the $85,950.62 in escrow to prevent dissipation

- Order Boydston to submit his complete final billing to this federal Court

- Review Boydston's billing and reject charges for non-receivership activities

- Distribute remaining proceeds to me as the former property owner

- Exercise continuing jurisdiction over these RICO proceeds

This relief is necessary to preserve the final remnant of my property proceeds and prevent complete dissipation through fraudulent billing by the alleged RICO defendants.

## XI. VERIFICATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct based on my personal knowledge.

Executed on November 13, 2025, in Cincinnati, Ohio.

**John Klosterman**

5615 Sidney Road

Cincinnati, Ohio 45238

(513) 250-2610

johncklosterman@gmail.com

**CERTIFICATE OF SERVICE**

**I hereby certify that a true and correct copy of this Emergency Motion was served upon all counsel of record via the Court's CM/ECF system and or Email on 11/13/25:**

_____

/s/ John Klosterman