IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| John Klosterman**,** | : | Case No. 1:25-cv-312 |
| | : | |
| Plaintiff, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | Order Granting Defendants' Motions to |
| | : | Dismiss Plaintiff's Amended Complaint |
| Konza, LLC, *et al*., | : | and Denying Request for Leave to Add |
| | : | Extortion Claim |
| Defendants. | : | |

This matter is before the Court on four Motions to Dismiss the Amended Complaint filed

by *pro se* Plaintiff John Klosterman:

- Motion to Dismiss filed by Defendant Keller Williams Realty;[1]

- Motion to Dismiss filed by Defendants City of Cincinnati and Terry James (collectively, "the City Defendants");

- Motion to Dismiss filed by Defendants Konza, LLC, Richard Boydston, and Dentons Bingham Greenebaum LLP (collectively, the "Boydston Defendants"); and

- Motion to Dismiss filed by Jennifer Donathan.

(Docs. 53–55, 74.) Also pending before the Court is Klosterman's Request for Leave to Add

Extortion Claims against the City Defendants. (Docs. 61–62.) For the reasons that follow, the

Court will **GRANT** Defendants' Motions to Dismiss and **DENY** Klosterman's Request for

Leave to Add Extortion Claims.

## I.    BACKGROUND

Plaintiff John Klosterman filed a Consolidated Complaint for Civil Violations of the

---

[1] Defendant identifies itself in the pleading as FRI Mason, LLC (dba Keller Williams Realty) and Keller Williams. (Doc. 53.) Plaintiff identifies the party as Keller Williams Advisors Realty in the Amended Complaint. (Doc. 33.) For the sake of clarity and simplicity, the Court will continue to refer to it as Keller Williams Realty.

Racketeer Influenced and Corrupt Organizations Act (18 USC 1961–1968) & Deprivations of Constitutional Rights (42 USC § 1983) ("Complaint") on May 13, 2025.  (Doc. 1.)  The 104-page Complaint named eleven Defendants including Keller Williams Realty, the City Defendants, and the Boydston Defendants.  (*Id.*)  On June 26, 2025, Magistrate Judge Karen L. Litkovitz ordered Klosterman to "file an amended complaint, which must not exceed 20 pages in length, setting forth in clear, short and concise terms the names of each defendant, the specific claims for relief attributable to each defendant, and the factual allegations supporting each such claim."  (Doc. 32 at PageID 360.)  Klosterman filed an Amended Complaint the next day, listing ten Defendants: Konza LLC; Richard Boydston; Dentons Bingham Greenbaum LLP; Tri-State Organization, Inc.; Joseph Lentine; Angel Strunk; Jennifer Donathan; Keller Williams Advisors Realty; Terry James; and the City of Cincinnati.  (Doc. 33 at PageID 363–364.)

A.      **Factual Allegations in the Amended Complaint**

1.      **Fraudulent Foreclosure and Receivership Allegations**

The crux of Klosterman's allegations are that Defendants engineered a fraudulent scheme to deprive him of his ownership of 59 properties worth more than $4.5 million in the Sedamsville neighborhood of Cincinnati, Ohio through manipulation of a court-appointed receivership in property foreclosure proceedings.  The allegations are disjointed and difficult to understand.  The Court primarily will focus in this Order on the allegations relevant to the moving Defendants. Klosterman alleges, in part, that his property values were artificially reduced, that he was defrauded of rental income during the receivership, that false police reports were filed against him leading to his imprisonment, that false financial reports were filed in state court, and that his properties were sold to HCLRC in a fraudulent and "engineered" sale for a reduced price.  (*Id.* at PageID 364–368, 372–375.)  Klosterman does not otherwise identify the entity he calls HCLRC.

Klosterman's allegations arise from an underlying litigation, *City of Cincinnati v. Klosterman*, No. A1905588 (Hamilton County, Ohio C.P), to foreclose on 59 properties owned or controlled by Klosterman to satisfy a judgment in favor of the City in an earlier public nuisance lawsuit against him.[2]  (Docs. 55-2 to 55-28.)[3]  The common pleas court entered its order appointing "Konza, LLC by its Manager Richard Boydston" as the receiver over the 59 Klosterman properties on February 14, 2020 under Ohio Revised Code § 2735.01(A)(1).  (Doc. 55-3.)  Boydston was an attorney with Dentons Bingham Greenbaum LLP.  (Doc. 55-22 at PageID 1219.)  The court expressly stated that the receivership order was "a final and appealable order."  (*Id.* at PageID 893.)  On October 7, 2021, the court entered a Final Decree in Foreclosure finding the City's liens on the properties to be valid and ordering the foreclosure sale.  (Doc. 54-7.)  On March 4, 2022, the court entered a final order approving sale of the Klosterman properties.  (Doc. 55-21.)  Jennifer Donathan of Keller Williams Realty was named the listing realtor for the sale of the Klosterman Properties in the written sales terms approved by the court.  (Doc. 55-21 at PageID 1205; Doc. 55-22 at PageID 1220.)  Then on October 19, 2022, the court approved the sale of the Klosterman properties to the Hamilton County Land Reutilization Corporation, also known as Landbank, which appears to be the entity which Klosterman refers to as HCLRC.  (Docs. 55-22 to 55-23.)

### 2. 621 Delhi Avenue and Malicious Prosecution Allegations

Klosterman's allegations regarding 621 Delhi Avenue and his criminal prosecution stand apart from the other allegations.  The Court will begin with the malicious prosecution

---

[2]  The litigation appears to be ongoing as to collateral matters not involving Klosterman.

[3]  The Court can consider public records encompassing matters alleged in the Amended Complaint without converting the Rule 12(b)(6) motion to a Rule 56 motion.  *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011).

3

allegations, which are asserted against only Defendants Richard Boydston, Joseph Lentine, and Angel Struck. Klosterman alleges that Lentine was the owner of and Strunk was an employee of Defendant Tri-State Organization, Inc., an organization retained by the receiver to manage the 59 Klosterman properties during the foreclosure proceedings. (Doc. 33 at PageID 363–364.) Relevant to the malicious prosecution claim, Klosterman alleges that in September 2021 Lentine and Strunk "filed false police reports alleging [Klosterman] stalked them." (*Id.* at PageID 366.) This led to Klosterman's "wrongful imprisonment for one year." (*Id.* at PageID 367.) Klosterman also alleges that "[Richard] Boydston's legal billing records show coordination with prosecutors, confirming his participation in the malicious prosecution." (*Id.*) Although Klosterman purports to attach the pertinent legal billing records, the Court could not find legal billing records matching this description in the CM/ECF record.

As to the 621 Delhi Avenue property, Klosterman asserts that Defendant Terry James, on behalf of the City of Cincinnati, issued fraudulent condemnation notices for 621 Delhi Avenue, "allegedly at the urging of [Defendant] Boydston[.]" (Doc. 33 at PageID 367.) The 621 Delhi Avenue property was not a part of the foreclosure lawsuit filed by the City. (Doc. 55-3 at PageID 885–887.) Klosterman does not state when or how or why Richard Boydston allegedly urged for the condemnation, nor when the City issued the condemnation notices. He alleges that the "fraudulent condemnation destroyed rental income and property value." (*Id.*)

The City Defendants, however, submitted the relevant property records for 621 Delhi Avenue. The City Defendants issued written Notices of Violations and Notices of Civil Offense and Civil Fines for 621 Delhi Avenue in January, September, and October 2020. (Docs. 54-10.)[4]

---

[4] Again, the Court can consider these public records encompassing matters alleged in the Amended Complaint in adjudicating the Motions to Dismiss. *See Rondigo*, 641 F.3d at 681.

The Notices of Violations stated that the property must be vacated because the "building is unsafe for occupancy." (Doc. 54-10 at PageID 729, 736, 742.) The records show that the City inspector recommended closing the file in December 2020 because the tenants had vacated the building. (Doc. 54-11 at PageID 754.)

Significantly, the property records do not indicate that John Klosterman is the owner of 621 Delhi Avenue. Instead, the Notices are all directed to "John Jennagans LLC c/o John Klosterman." (Docs. 54-10.)

Klosterman asserts two facts in support of his allegation that the condemnation of 621 Delhi Avenue was fraudulent, but both are dubious. First, he states that a GEI engineering report confirmed the structural safety of the property. (Doc. 33 at PageID 367.) This allegation is at least partially refuted by the exhibit Klosterman incorporated in the Amended Complaint. (*Id.* at PageID 367; Doc. 1-1 at PageID 137–139.) The GEI Engineering's Structural Investigation Report dated September 18, 2020 stated that the original L-shaped brick portion of the building at 621 Delhi Avenue did not have "structural deficiencies[,]" but it found structural deficiencies in the wood-framed addition. (Doc. 1-1 at PageID 137.) The deficiencies included that "the basement wall and areas of the first level floor framing [were] deteriorated," that the first-floor level floor joists were "in poor condition and need[ed] to be repaired or replaced," and that "temporary shoring [was] not adequate to support the code required loads." (*Id.* at PageID 138.)

Second, Klosterman asserts that his former tenant, Randy Hatfield, provided an affidavit stating that Terry James admitted to Hatfield that the building was structurally safe. (Doc. 33 at PageID 367.) But the affidavit Klosterman submitted into evidence is not signed under oath by Hatfield or notarized. (Doc. 1-1 at PageID 150–151.) The line for Hatfield's signature simply states "on file" and the line for the date is empty. (*Id.* at PageID 151.) Likewise, the notary

section is blank. (*Id.*) For these reasons, the affidavit is inadmissible and is not considered a part of the well-pleaded factual allegations which the Court must accept as true for purposes of ruling on these Motions to Dismiss.

During the briefing of the Motions to Dismiss, Klosterman filed a Request for Leave to Add Extortion Claim against the City Defendants which contains new allegations concerning 621 Delhi Avenue. (Docs. 61–62.) Therein, Klosterman asserts that he received an Invoice dated August 6, 2025 from the City of Cincinnati directed to "John Jennagans, LLC c/o John Klosterman" for $15,015. (Doc. 62 at 1426.) The Invoices states as follows:

> The subject building was ordered to be vacated or kept vacant on January 17, 2020. A Vacant Building Maintenance License (VBML) for the subject building is due for renewal each and every year until the building is code compliant and no longer vacated. The VBML must be renewed each year no later than January 17. You are required to apply for a VBML by the due date annually to avoid a late fee equal to the License fee or $1000.00 for each late fee, whichever is less; Section 1101-77 Cincinnati Building Code (CBC). Our records indicate the VBML application has not been made each year as required. Pay the back fees within 30 days of this notice to avoid collections.
>
> **The unpaid VBML fee total owed for this property is $15,015.00**

(*Id.* (emphasis in the original).)

### 3.   Procedural Posture

Klosterman asserts ten causes of action in the Amended Complaint:

Count I: RICO Violation (18 U.S.C. § 1962(c)) against all Defendants;

Count II: RICO Conspiracy (18 U.S.C. § 1962(d)) against all Defendants;

Count III: Civil Rights Conspiracy (42 U.S.C. § 1985) against all Defendants;

Count IV: Civil Rights Violations (42 U.S.C. § 1983) against Richard Boydston and the City Defendants;

Count V: Conversion against all Defendants;

Count VI: Fraud against all Defendants;

6

Count VII: Breach of Fiduciary Duty against the Boydston Defendants, Jennifer Donathan, and Keller Williams Realty;

Count VIII: Malicious Prosecution against Joseph Lentine; Angel Strunk, and Richard Boydston;

Count IX: Negligent Supervision against Dentons Bingham Greenbaum LLP and the City of Cincinnati; and

Count X: Intentional Infliction of Emotional Distress against all Defendants.

(Doc. 33 at PageID 369–371.)

On August 1, 2025, Keller Williams Realty, the City Defendants, and the Boydston Defendants filed their separate Motion to Dismiss arguing that the Court lacked subject-matter jurisdiction and that Klosterman failed to state a claim for relief upon which relief can be granted.  (Docs. 53–55.)  Klosterman filed timely Responses in Opposition to only the Motions filed by the City Defendants and the Boydston Defendants.  (Doc. 59–60.)[5]  Those Defendants filed Reply briefs.  (Docs. 67–68.)  Then, on October 31, 2025, Jennifer Donathan filed her Motion to Dismiss.  (Doc. 74.)  Klosterman filed a Response in Opposition, to which Donathan filed a Reply.  (Docs. 75–76.)[6]

Klosterman has also filed a Request for Leave of Court to Add Extortion Claim against the City Defendants regarding 621 Delhi Avenue.  (Docs. 61–62.)  The City Defendants oppose Klosterman's Request to Add Extortion Claim.  (Doc. 70.)

---

[5]  The Court has not considered new factual allegations contained in Klosterman's briefs.  In evaluating a motion to dismiss, a district court cannot examine the sufficiency of allegations made in a brief that are not in the operative complaint.

Also, the Court granted Klosterman an extension of time to respond to the Motions to Dismiss until October 1, 2025.  (Doc. 58 at PageID 1348.)  Plaintiff did not file a purported Memorandum in Opposition to Keller Williams Realty's Motion to Dismiss until October 8, 2025.  (Doc. 66.)  The Court will not consider this untimely response.

[6]  Klosterman then attempted to file a second opposition brief which he captioned as "Reply: Memorandum in Opposition."  (Doc. 79.)  Klosterman did not request leave of the Court to file an additional brief as required by the Southern District of Ohio Local Rule 7.2(a)(2).  Donathan filed a Motion to Strike.  (Doc. 80.)  The Court notationally granted the Motion to Strike and struck the Klosterman's second opposition brief.

## II.     STANDARD OF LAW FOR MOTIONS TO DISMISS

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint where the Court lacks jurisdiction over the subject matter of the complaint.  Fed. R. Civ. P. 12(b)(1).  The plaintiff has the burden of establishing jurisdiction when such a dismissal motion is filed under Rule 12(b)(1).  *See Rogers v. Stratton Industs., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).  The district court can "look beyond the jurisdictional allegations in the complaint and consider submitted evidence."  *Taylor v. KeyCorp*, 680 F.3d 609, 612 (6th Cir. 2012).  Finally, the district court can resolve factual disputes without converting a Rule 12(b)(1) motion to a motion for summary judgment.  *Rogers*, 798 F.2d at 915.

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To withstand a dismissal motion, a complaint must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Courts do not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A district court examining the sufficiency of a complaint must accept the well-pleaded allegations of the complaint as true.  *Id.*; *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014).

## III.     ANALYSIS OF MOTIONS TO DISMISS

## A.     Lack of Subject-Matter Jurisdiction

Keller Williams Realty, the City Defendants, the Boydston Defendants, and Jennifer

Donathan argue that Klosterman's claims are barred by the *Rooker-Feldman* doctrine. (Doc. 53 at PageID 516–517; Doc. 54 at PageID 529–531; Doc. 55-1 at PageID 783–785.) The *Rooker-Feldman* doctrine precludes lower federal courts "from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006). The doctrine also prohibits district courts from exercising jurisdiction over interlocutory state court judgments, s*ee RLR Invs., LLC v. City of Pigeon Forge, Tenn.*, 4 F.4th 380, 396 (6th Cir. 2021), and claims that are "inextricably intertwined with issues decided in state court opinions[,]" *Exec. Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004) (internal quotation and citation omitted). "A federal claim is inextricably intertwined with a state court judgment and thus implicates *Rooker-Feldman* when the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Exec. Arts Studio, Inc.*, 391 F.3d at 793 (internal quotation and citation omitted). Put differently, *Rooker-Feldman* applies if "the source of the plaintiff's injury is the state-court judgment itself." *Kost v. Hoseth Kreeger*, 832 F. App'x 438, 439 (6th Cir. 2021).

Defendants argue that *Rooker-Feldman* precludes this Court from exercising jurisdiction over the Amended Complaint because the gravamen of Klosterman's claims is that Defendants conspired to use a court-appointed receivership to wrongfully deprive him of properties worth more than $4.5 million. Klosterman does not meaningfully respond to their arguments—he only asserts in conclusory fashion that *Rooker-Feldman* does not apply when Defendants commit crimes in state court proceedings. (Doc. 59 at PageID 1360.)[7] As explained immediately below,

---

[7] Although Klosterman has not clearly asserted the issue nor provided legal analysis on it, the Court notes that the extrinsic fraud exception to *Rooker-Feldman* does not apply. There is an exception to the *Rooker-Feldman* doctrine when a plaintiff alleges that the source of his injury is not the adverse state court judgment, but rather extrinsic fraud in procuring the state court judgment. *See Miniz v. Stone*, No. 21-5489, 2022 WL 3031259, at *2 (6th Cir. Feb. 7, 2022). Still, a plaintiff cannot avoid "the restraints of *Rooker-Feldman* by raising fraud claims that were raised and rejected in state-court proceedings." *Id.*; *HPIL Holding v. Zhang*, No. 1:23-cv-12050, 2025 WL 975444, at *14 (E.D. Mich. Mar. 31, 2025) (applying exception to the extrinsic fraud exception to *Rooker-Feldman*). Here,

the Court agrees that *Rooker-Feldman* applies here, except as to the 621 Delhi Avenue allegations and the malicious prosecution claim. Neither the 621 Delhi Avenue property nor the malicious prosecution allegations were litigated in the state foreclosure proceedings. The 621 Delhi Avenue allegations and the malicious prosecution claim are addressed on the merits in a separate section.

The core allegations in the Amended Complaint arise from the state court foreclosure proceedings. For example, Klosterman explicitly references the receivership authorized by the state court in paragraphs 5, 31–32, 43, 48, and 55 of the Amended Complaint. (Doc. 33 at PageID 354, 368, 371, 374.) He suggests in paragraph 58 that Defendants used the court proceedings to commit organized fraud. (*Id.* at 374.) He alleges in paragraphs 12–16 that the sale of his properties—approved by the state court—was fraudulent in that it included "artificially reduced" property values and the modification of the sales agreement to exclude Klosterman's claims to the sales funds. (*Id.* at PageID 365.)

These allegations are inextricably intertwined with state court proceedings for purposes

---

Klosterman repeatedly argued in the underlying state court foreclosure proceedings that the Defendants committed fraud.

Klosterman argued in the state foreclosure proceedings that the order appointing a receiver was fraudulently obtained. (Doc. 54-1 at PageID 555.) He later argued that the receiver was corrupt and self-serving. (Doc. 54-5 at PageID 590.) He argued that the City made false representations in targeting his properties and that he was treated adversely and in a disparate manner. (*Id.* at PageID 593; Doc. 54-1 at PageID 554–555.) He sought to have the receiver replaced. (*Id.* at PageID 590–594.) He alleged wrongdoing and sought an audit of the management company retained by the receiver to manage the properties during the foreclosure proceedings, and he alleged that the City and the receiver knew about and implicitly condoned the wrongdoing. (Doc. 54-6 at PageID 596; Doc. 54-8.) For example, in a Motion for Expedited Hearing filed on June 10, 2021, Klosterman argued that the management company's expenditures in the foreclosure were unreasonable, that the City approved of the unreasonable spending, and that receiver breached his fiduciary duties. *City of Cincinnati v. Klosterman*, No. A1905588, Motion at 2 (Hamilton Cnty. C.P, Ohio June 10, 2021). The state court denied this motion and related motions on November 3, 2021. (Doc. 54-6.) The state court did not remove the receiver, and it approved the sale of the Klosterman properties in foreclosure despite all of Klosterman's allegations of wrongdoing. (Docs. 55-21 to 55-23.) Accordingly, the extrinsic fraud exception does not bar the application of *Rooker-Feldman* here. Moreover, even if *Rooker-Feldman* did not apply, this analysis demonstrates that Klosterman's claims in this suit would likely be barred by issue or claim preclusion.

of *Rooker-Feldman* because his claims here succeed only if the state court wrongly decided the issues before it in the foreclosure proceedings. *See Exec. Arts Studio, Inc.*, 391 F.3d at 793. Klosterman is in essence asking this Court to improperly act as an appellate court over the final decisions in the state court foreclosure proceedings. He asks in the Prayer for Relief for "disgorgement of fraudulent commissions and fees" and a "[d]eclaration that the 'engineered sale' was fraudulent and [should be] dismissed with prejudice." (Doc. 33 at PageID 376.) Klosterman contends that the source of his injury was the state court decisions allowing the foreclosures and the sale of his properties, so the *Rooker-Feldman* doctrine precludes jurisdiction. *Kost*, 832 F. App'x at 439.

This Court cannot exercise "appellate jurisdiction over final state-court judgments." *Lance*, 546 U.S. at 463.[8] The Court concludes that it lacks subject-matter jurisdiction pursuant to *Rooker-Feldman* over the claims asserted by Klosterman against Keller Williams Realty, the Boydston Defendants, the City Defendants, and Jennifer Donathan, except as to the 621 Delhi

---

[8] As stated in an earlier footnote, the underlying state court foreclosure proceedings appear to be on-going as to ancillary matters not pertaining to Klosterman or his legal rights as to disposition of his properties. Even if this fact precluded the application of *Rooker-Feldman*, the Court would nonetheless decline to exercise jurisdiction under the *Colorado River* doctrine. A district court can decline to exercise jurisdiction in limited circumstances when a substantially similar state court proceeding was filed first and is still pending. *Colo. River Water Cons. Dist. v. United States*, 424 U.S. 800, 817–818 (1976). For example, "the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Id.* at 818. Courts consider eight factors when deciding whether to apply *Colorado River* abstention:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; ... (4) the order in which jurisdiction was obtained[;] ... (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001). Here, the factors weigh in favor of abstention. The state court exercised jurisdiction over the foreclosed properties. Klosterman has litigated his fraud and wrongdoing allegations in the state court proceedings, as discussed in the previous footnote, so piecemeal litigation is not needed. And the state court proceedings had been pending for years before Klosterman filed his action. The state court fully resolved the issue of foreclosure and sale of Klosterman's properties.

Avenue allegations and the malicious prosecution claim. *See Childress v. City of Cincinnati, Ohio*, 765 F. Supp. 3d 662, 687 (S.D. Ohio 2025) (barring federal claims when the plaintiffs' theory was that the defendants "violated his constitutional rights when they engaged in the very activities the state court approved"). The claims must be dismissed with prejudice.

Separately, the Boydston Defendants assert that the Court lacks subject-matter jurisdiction over them under a separate legal theory called the *Barton* doctrine. The Supreme Court stated a general rule in 1881 that "before suit is brought against a receiver leave of the court by which he was appointed must be obtained." *Barton v. Barbour*, 104 U.S. 126, 127 (1881). The Sixth Circuit has applied the *Barton* doctrine to suits against receivers, trustees, and legal counsel assisting them. *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993) (stating that the doctrine applies to trustees and their attorneys); *OHM Syss., Inc. v. Park Place Corp.*, No. 1:19-cv-0907, 2020 WL 2572203, at *4–5 (S.D. Ohio May 21, 2020) (applying the doctrine to bar suit against a receiver). The Court agrees that the *Barton* doctrine bars this suit against the Boydston Defendants who were appointed as the receiver (or legal counsel to the receiver) of the Klosterman properties in the state court foreclosure action.

## B.    Failure to State a Claim Upon Which Relief Can Be Granted

Both the 621 Delhi Avenue allegations and the malicious prosecution allegations require a separate analysis. Klosterman alleges that the City Defendants wrongfully issued condemnation notices for 621 Delhi Avenue at the urging of Richard Boydston. (Doc. 33 at PageID 367.) Though it is difficult to discern from the Amended Complaint, the Court assumes that Klosterman intended the 621 Delhi Avenue allegations to support all of his claims against both the City Defendants and Richard Boydston. The *Rooker-Feldman* doctrine does not apply to the claims based on these allegations because the 621 Delhi Avenue property was not a part of

the state court foreclosure proceedings. (Doc. 55-3 at PageID 885–887.) Likewise, Klosterman's arrest on criminal charges was separate from the foreclosure proceedings. He alleges that Richard Boydston's legal billing records show coordination with the prosecutors. (Doc. 33 at PageID 366–367.)

### 1. Standing to Assert Claims Based on the 621 Delhi Avenue Allegations

Preliminarily, all claims based on the 621 Delhi Avenue allegations fail because Klosterman has no standing to sue based on actions taken against John Jennagans LLC by the City Defendants or Richard Boydston. The Notices issued by the City Defendants in 2020 about 621 Delhi Avenue are directed to John Jennagans, LLC c/o Klosterman. (Docs. 54-10, 54-11.) Klosterman is merely the statutory agent of the limited liability company as stated in the articles of organization on file with the Ohio Secretary of State. *See* Ohio Secretary of State, Search by Business Name, https://businesssearch.ohiosos.gov/ (last viewed on November 10, 2025). "A limited liability company exists as an entity separate from its members and is capable of suing and being sued. Thus, members of a limited liability company, even if they are the sole members of the company, do not have standing to sue on its behalf." *Miller v. Bates*, — N.E.3d —, 2025-Ohio-1679, ¶ 45 (Ohio App. 2d Dist. May 9, 2025) (cleaned up); *see also CajunLand Pizza, LLC. v. Marco's Franchising, LLC*, No. 3:20-cv-536-JGC, 2021 WL 9166417, at *3–4 (N.D. Ohio June 8, 2021) (same holding); *Torrance v. Rom*, 157 N.E.3d 172, 185 (Ohio App. 8 Dist. 2020) (same holding).[9] The claims based on 621 Delhi Avenue can be dismissed for this reason alone. That said, these claims fail as a matter of law for other reasons as well.

### 2. RICO Claims

The RICO claims based on the 621 Delhi Avenue allegations fail because Klosterman has

---

[9] Additionally, a limited liability company must be represented in court by an attorney. *Disciplinary Counsel v. Kafele*, 108 Ohio St. 3d 283, 843 N.E.2d 169, 174 (2006).

not pleaded a pattern of racketeering activity as required to prove a RICO violation. *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (setting out elements of RICO claim). Courts in the Sixth Circuit have repeatedly held that a single, limited time scheme targeting a single victim is inadequate to constitute a racketeering pattern. *See Bachi-Reffitt v. Reffitt*, 802 F. App'x 913, 918 (6th Cir. 2020) (finding that a single scheme to deny marital assets to a single victim during the limited period of divorce proceedings is not a RICO pattern); *Moon*, 465 F.3d at 725–726 (finding that a single scheme lasting two and one-half years to deprive workers' compensation benefits to one person would not constitute a closed-ended scheme); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 135 (6th Cir. 1994) (allegations "involving a single victim and a single scheme for a single purpose over seventeen months [do not] constitute the type of 'long-term criminal conduct' Congress sought to prohibit with RICO"); *Cyr v. Battah*, No. 22-10290, 2023 WL 1798733, at *4 (E.D. Mich. Feb. 7, 2023) (stating that "a scheme involving a single objective to defraud a single victim cannot sustain a closed-period continuity § 1962(c) claim"); *Percival v. Girard*, 692 F. Supp. 2d 712, 723 (E.D. Mich. 2010) (finding that a single scheme to deprive a single victim of rights under a settlement agreement is not a RICO pattern). The alleged acts here of issuing successive condemnation notices as to a single property owned by a single individual does not satisfy the pattern of racketeering activity requirement.

The RICO claims against the City of Cincinnati also fail because a government entity cannot form the intent necessary to engage in a racketeering activity. *See Mathis v. Ohio Dep't of Job & Fam. Servs.*, No. 2:11-cv-395, 2011 U.S. Dist. LEXIS 123436, *4–5 (S.D. Ohio Oct. 25, 2011); *Cnty. of Oakland v. Detroit*, 784 F. Supp. 1275, 1283 (E.D. Mich. 1992).

### 3.      42 U.S.C. §§ 1983 and 1985 Claims

Next, the 42 U.S.C. §§ 1983 and 1985 claims, to the extent they are based on the 621

Delhi Avenue allegations, are time-barred. The statute of limitations for §§ 1983 and 1985

claims arising from conduct that occurred in Ohio is two years. *Trzebuckowski v. City of

Cleveland*, 319 F.3d 853, 855–856 (6th Cir. 2003) (§ 1983); *Savage v. Unknown FBI Agents*, No.

97-3311, 1998 WL 69318, at *1 (6th Cir. Feb. 10, 1998). The two-year statute of limitations

began to run when Klosterman knew or had reason to know about the injury which is the basis of

his claim. *Trzebuckowski*, 319 F.3d at 856. Here, Klosterman had reason to know about any

injury which arose from the allegedly fraudulent Notice of Violations for 621 Delhi Avenue

when the Notices of Violations were issued in 2020. The §§ 1983 and 1985 claims are time-

barred, accordingly, because the statute of limitations expired in 2022.[10]

### 4. State Law Claims Against the City of Cincinnati

Likewise, the statute of limitations for Klosterman's state law claims against the City

Defendants is two years. The Ohio Revised Code provides:

> (A) An action against a political subdivision to recover damages for injury, death,
> or loss to person or property allegedly caused by any act or omission in
> connection with a governmental or proprietary function, whether brought as an
> original action, cross-claim, counterclaim, third-party claim, or claim for
> subrogation, shall be brought within two years after the cause of action accrues, or
> within any applicable shorter period of time for bringing the action provided by
> the Revised Code. The period of limitation contained in this division shall be

---

[10] To the extent that these statutory claims are based on a lack of due process, "[a] due process claim for the deprivation of his alleged property interest is not cognizable in a federal district court where state courts provide a remedy for the deprivation of that property interest." *Pappas v. Nash*, No. 1:04CV01641, 2006 WL 2813681, at *4 (N.D. Ohio Sept. 28, 2006), *amended on other grounds,* 2006 WL 2865503 (Oct. 4, 2006). Defendants are entitled to dismissal of a § 1983 claim where the plaintiff makes no showing of the inadequacy of the state regulatory or common law remedies. *Id.* at *5; *see also Magnum Towing & Recovery v. City of Toledo*, No. No. 3:04CV7671, 2007 WL 2492434, at *6 (N.D. Ohio Aug. 29, 2007) ("Magnum's procedural due process claims fail because Magnum failed to plead and prove that state remedies were inadequate to correct the alleged deprivation of Magnum's property interest."), *aff'd* 287 F. App'x 442, 446–447 (6th Cir. 2008).

John Jennagans LLC had such remedies available to it to challenge the issuance of the Notices of Violation concerning 621 Delhi Avenue. The Notices of Violation stated the right to appeal to the Board of Building Appeals or the Board of Housing Appeals as provided in the Cincinnati Municipal Code §§ 1101-83. (Doc. 70-1 at PageID 1483–1487.) Chapter 2506 of the Ohio Revised Code provides review by an Ohio court of common pleas of the final decisions of those Boards. Klosterman did not assert that he or John Jennagans LLC availed himself of the state law remedies nor that the remedies are inadequate.

> tolled pursuant to section 2305.16 of the Revised Code. This division applies to actions brought against political subdivisions by all persons, governmental entities, and the state.

Ohio Rev. Code § 2744.04(A).  "The limitations period in R.C. 2744.04(A) applies to both political subdivisions and their employees."  *Pearson v. Columbus*, 26 N.E.3d 842, 847, 2014-Ohio-5563, ¶¶ 9–10 (Ohio App. 2014).  Therefore, the state law claims against the City Defendants based on the 621 Delhi Avenue allegations are time-barred.

### 5.      State Law Claims Against Richard Boydston

#### a.      Conversion

The conversion claim fails as a matter of law.  The elements of tort of conversion in Ohio are: "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 700 (S.D. Ohio 2012).  To recover for conversion of property, a plaintiff must establish that he demanded a return of the property and that the defendant refused to return it.  *Id.*  Klosterman does not allege facts sufficient to prove that Boydston exercised possession over 621 Delhi Avenue, or that Klosterman asked for the property back and was refused.  The Court will dismiss the conversion claim against Boydston.

#### b.      Fraud and Breach of Fiduciary Duty

The fraud claim against Boydston fails for lack of particularity.  Fraud claims require a material misrepresentation, made with intent to mislead, justifiable reliance, and resulting injury.  *See E-Poch Properties, LLC v. TRW Auto. U.S., LLC*, 286 F. App'x 276, 281 (6th Cir. 2008); *Glassner v. R.J. Reynolds Tobacco Co.,* 223 F.3d 343, 352 (6th Cir. 2000).  Federal Rule of Civil Procedure 9(b) requires that fraud claims be pleaded with particularity.  The 621 Delhi Avenue allegations against Boydston are not alleged with particularity.  Klosterman pleads that Boydston

"allegedly" urged Terrry James to issue condemnation notices. (Doc. 33 at PageID 367.) This is the only fact pleaded in the Amended Complaint for which Klosterman uses the qualifier "allegedly," which undermines the veracity of the fact pleaded. More importantly, Klosterman does not state when Boydston allegedly urged James to issue the notices, what form of communication—such as a letter, email, or phone call—Boydston used, or why Boydston made the request. He has not pleaded the fraud claim with particularity against Boydston, and therefore the claim must be dismissed.

Likewise, the breach of fiduciary duty claim against Boydston must be dismissed. Because the breach of fiduciary duty claim arising from the 621 Delhi Avenue allegations is based on the alleged fraud, it also fails for lack of particularity. *See Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 735 (S.D. Ohio 2009) ("[W]here a breach of fiduciary duty claim is based on fraud, the fraud must be pleaded with particularity.") This claim also fails because Klosterman has pleaded no facts to support a finding that Boydston owed him a fiduciary duty as to the property at 621 Delhi Avenue. "Under Ohio law, a fiduciary relationship is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtues of this special trust." *Vesi Inc. v. Vera Bradley Designs Inc.*, No. 23-3071, 2023 WL 7448754, at *2 (6th Cir. Nov. 9, 2023) (internal quotation and citation omitted). Klosterman has no direct relationship with Boydston as to the 621 Delhi Avenue property under the facts pleaded in the Amended Complaint. The claim must be dismissed.

### c. Malicious Prosecution

Klosterman also asserts a malicious prosecution claim against Boydston. He asserts that Defendants Joseph Lentine and Angel Strunk filed false police reports alleging that Klosterman

stalked them. These allegations led to Klosterman's imprisonment for one year. (Doc. 33 at PageID 366–367.) He then alleges that "Boydston's legal billing records show coordination with prosecutors, confirming his participation in the malicious prosecution." (*Id.* at PageID 367.) He cites "Exhibit O: Boydston billing records" in support, but no such billing records are attached to his Complaint or Amended Complaint. (*Id.*)

This sparse, unsupported allegation does not state a plausible claim for malicious prosecution against Boydston. Malicious prosecution claims arise from criminal charges brought with malice and without probable cause. *Criss v. Springfield Twp.*, 56 Ohio St. 3d 82, 84, 564 N.E.2d 440, 443 (1990) ("The tort of malicious criminal prosecution is the right to recover damages for the harm caused to a defendant in a criminal case by the misuse of criminal actions. . . . In order to prevail the plaintiff must prove the following elements: (1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused.") (citations omitted). Klosterman has not stated a plausible claim for malicious prosecution against Boydston upon which relief can be granted absent facts supporting the conclusory allegation that Boydston coordinated with prosecutors.

### d. Negligent Infliction of Emotional Distress

Finally, Klosterman has not stated a claim for intentional infliction of emotional distress against Boydston stemming from the 621 Delhi Avenue or the malicious prosecution allegations. The elements of intentional infliction of emotional distress in their simplest form are intent, outrageous conduct, proximate causation, and mental anguish. *See*, *e.g.*, *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995); *Ashcroft v. Mt. Sinai Medical Ctr.*, 68 Ohio App.3d 359, 588 N.E.2d 280, 284 (1990). Klosterman's barebones allegation against Boydston are not sufficient to meet any of these elements.

## IV.    ANALYSIS OF REQUEST FOR LEAVE TO ADD EXTORTION CLAIMS

Finally, the Court will address Klosterman's Request for Leave to Add Extortion Claims against the City and Terry James based on the Invoice for VBLM fees sent to John Jennagans LLC.  Federal Rule of Civil Procedure 15(a)(2) allows a party to amend its pleading only with the written consent of the opposing party or with the Court's leave.  A motion for leave to amend is addressed to the discretion of the district court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  A party seeking leave to amend should file a separate motion and attach a proposed amended pleading.  *See*, *e.g.*, *C&L Ward Bros., Co. v. Outsource Solutions, Inc.*, 547 F. App'x 741, 745 (6th Cir. 2013) ("A properly filed motion for leave complete with an indication of the grounds on which the amendment is sought and the general contents of the amendment is preferable.).  Klosterman failed to do so here.  The Court could deny leave to amend on that basis, but there is a second reason here to deny leave to amend.

A district court may deny leave to amend where it appears that doing so would be futile.  *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003).  To the extent Klosterman seeks to add a separate cause of action for extortion under the Hobbs Act, 18 U.S.C. § 1951(b)(2), adding such a claim would be futile.  The Hobbs Act is a criminal statute and does not create a private right of action.  *See*, *e.g.*, *Page v. United States*, No. 3:23-CV-00851, 2024 WL 3739401, at *3 (M.D. Tenn. June 17, 2024), *report and recommendation adopted,* 2024 WL 3549228 (July 26, 2024); *Allen v. eBay, Inc.*, No. 2:20-CV-1744, 2020 WL 3396656, at *3 (S.D. Ohio June 19, 2020).

To the extent that Klosterman seeks merely to add allegations about these purported Hobbs Act violations as support for the RICO claims against the City and Terry James, allowing the amendment still would be futile.  The Court already concluded that the City cannot be held

liable under RICO.  *See Mathis*, 2011 U.S. Dist. LEXIS 123436, at *4–5; *Cnty. of Oakland*, 784

F. Supp. at 1283.  The allegations would add nothing to the claims against James Terry because

the parties agree that Terry was retired before the VBML Invoice was sent in August 2025.

(Doc. 62 at PageID 1421; Doc. 70 at PageID 1480.)  Moreover, as stated earlier, the broader

RICO claim is precluded by the *Rooker-Feldman* doctrine, and a RICO claim based solely on the

621 Delhi Avenue allegations fails because a single scheme against a single victim about a single

property cannot satisfy the pattern of racketeering activity requirement.  *See Bachi-Reffitt*, 820 F.

App'x at 918; *Moon*, 465 F.3d at 725; *Vemco, Inc. v. Camardella*, 23 F.3d at 135.  Accordingly,

the Court will deny the Request for Leave to Add Extortion Claims.

## V.      CONCLUSION

For the above reasons, Defendants' Motions to Dismiss (Doc. 53–55, 74) are

**GRANTED** and Klosterman's Request for Leave to Add Extortion Claims (Docs. 61–62) is

**DENIED**.  Klosterman's claims in the Amended Complaint are **DISMISSED WITH**

**PREJUDICE** against Keller Williams Realty, the City of Cincinnati, Terry James, Konza LLC,

Richard Boydston, Dentons Bingham Greenbaum LLP, and Jennifer Donathan.

**IT IS SO ORDERED.**

BY THE COURT:


S/Susan J. Dlott
Susan J. Dlott
United States District Judge