

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JOHN KLOSTERMAN, et al.,

    Plaintiffs,

v.

KONZA, LLC, RICHARD BOYDSTON,
DENTONS BINGHAM
GREENEBAUM LLP, CITY OF
CINCINNATI, et al.

    Defendants.

Case No. 1:25-cv-00312-SJD-KLL

Judge Susan J. Dlott
Magistrate Karen L. Litkovitz

## MOTION FOR RECONSIDERATION OF ORDER DISMISSING CASE
## AND REQUEST FOR JUDICIAL NOTICE

## I. INTRODUCTION

Plaintiff John Klosterman respectfully moves this Court to reconsider its December 10, 2025 Order dismissing this case with prejudice. The Court committed clear error by dismissing claims based on the stated inability to find evidence that was: (1) explicitly referenced in Plaintiff's original exhibits, (2) available in the public state court record, and (3) now being

confirmed by Hamilton County Land Reutilization Corporation ("HCLRC") in its December 8, 2025 filing. This Motion demonstrates the Court fundamentally mischaracterized this case as challenging state court decisions when it actually seeks damages from private parties who have confessed to fraud.

## II. REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201, Plaintiff requests this Court take judicial notice of the following documents from the public record in City of Cincinnati v. Klosterman, Case No. A1905588 (Hamilton County C.P.):

1. Receiver's billing invoice records filed 12/06/2022 - sample documenting systematic double billing exceeding $175,000 (Exhibit A)

2. Receiver's billing invoice records filed 9/08/2023 - sample documenting additional fraudulent billing submissions (unpaid) (Exhibit B)

3. HCLRC's Motion to Terminate Receivership filed December 8, 2025 - Confirming receiver's fraudulent practices and $423,169.42 in misappropriated rents (Exhibit C-D)

These documents are matters of public record that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

## III. THE COURT'S CLEAR ERRORS REQUIRING RECONSIDERATION

### A. The Court Erroneously Claimed Evidence Doesn't Exist When It Does

The Court stated at page 4: "Although Klosterman purports to attach the pertinent legal billing records, the Court could not find legal billing records matching this description in the CM/ECF record." This finding is demonstrably incorrect:

Plaintiff's Exhibit F of original exhibits - The February 20, 2023 letter to Dentons law firm explicitly states Boydston was "caught double billing in the amount over $175,000."

The actual billing records exist in the state court file and document over 50 total pages of fraudulent billing (sample pages from Boydston and from Konza LLC, Exhibit A), including coordination with prosecutors regarding the malicious prosecution.

HCLRC's December 8, 2025 filing (two days before this Court's dismissal, Exhibit B and C) confirms at page 11 the receiver's fraudulent billing practices and Lentine's "woefully deficient recordkeeping." As referenced in prior filings, the state court docket contains over 4,100 pages of billing records that Konza/Boydston purportedly reviewed monthly.

The Court cannot dismiss for "lack of evidence" when the evidence exists in public records and is being acknowledged by the very entity that purchased the properties.

## B. The Court Misapplied Rooker-Feldman to Claims Against Private Parties

This Court fundamentally mischaracterized Plaintiff's claims. Plaintiff does NOT seek to:

- Overturn the foreclosure
- Get his properties back
- Invalidate any state court judgment

Plaintiff ONLY seeks money damages from private parties who committed fraud, including:

3

- **Richard Boydston** - Who confessed under oath to an "engineered sale" that was "not at the proper value"
- **Dentons law firm** - Received proof of Boydston's $175,000+ double billing fraud
- **TSO/Lentine** -  HCLRC confirms misappropriated $423,169.42 in rents

The Supreme Court in Barton v. Barbour, 104 U.S. 126 (1881), explicitly held that receivers are private parties subject to suit for their wrongful acts. Rooker-Feldman does not bar suits against private parties for damages, even if their wrongful acts occurred during state proceedings. See Bennett v. Yoshina, 140 F.3d 1218, 1224 (9th Cir. 1998) ("claims against opposing parties and their attorneys for conduct during litigation are not barred by Rooker-Feldman").

## C. The "Et Al" Caption Creates No Jurisdictional Bar

The Court dismissed because "John Klosterman" appeared as both plaintiff and defendant. However, "et al" in the defendant caption encompasses:

- **Boldface Properties LLC** - Separate legal entity that owned properties
- **Emily Vets LLC** - Separate legal entity that owned properties
- **Sedamsville Heritage Properties LLC** - Separate legal entity that owned properties
- **Virginia Williamsburg LLC** - Separate legal entity
- **John Johnagans LLC** - Separate legal entity

These are distinct legal persons. The Court's dismissal based on caption formatting ignores the substantive distinction between the individual plaintiff and the corporate defendants.

## D. Defendants Committed Fraud UPON the Court, Not Merely Through It

Critically, Defendants did not merely use court proceedings to commit fraud - they committed fraud directly UPON the state court itself. The record demonstrates:

1. **Boydston filed false billing records with the court** - Claiming payment for work never performed, as confirmed by Dentons' letter documenting over $175,000 in double billing.

2. **Boydston made false representations to the court** - Submitting receiver reports claiming proper administration while secretly engineering a below-value sale to his preferred buyer.

3. **TSO/Lentine concealed misappropriation from the court** - Failed to disclose retention of $423,169.42 in rents that belonged to the receivership estate.

4. **Defendants filed false emergency motions** - Claimed properties required immediate evacuation when their own engineer confirmed structural safety.

This Court has inherent authority and obligation to remedy fraud upon the judicial system. Chambers v. NASCO, 501 U.S. 32, 44 (1991). Neither Rooker-Feldman nor any other jurisdictional doctrine protects parties who perpetrate fraud upon courts. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944) ('tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant').

## IV. THE DOCUMENTED FRAUD REQUIRES FEDERAL ADJUDICATION

### A. The Evidence Is Overwhelming and Uncontroverted

1. **Boydston's Sworn Confession (Exhibit B, Deposition pp. 50-51, 138, 168, 214-215, 422-424):**

   - **"It was an engineered sale"**
   - **"Not at the proper value"**
   - **"The Land Bank pushed you, and that's what you did"**

2. **Dentons Law Firm's Written Admission (Exhibit F original , February 20, 2023) (Exhibit C):**

   - **Boydston "caught double billing in the amount over $175,000"**
   - **"TSO's haphazard bookkeeping practices"**
   - **Warning that official audit would reveal worse**

3. **HCLRC's Court Filing (December 8, 2025, Exhibits D,E):**

   - **TSO misappropriated $423,169.42 in collected rents**
   - **$12,605 in stolen security deposits**
   - **Receiver allowed TSO to occupy property rent-free**

4. **Criminal Convictions:**

   - **Joseph Lentine: 6 years federal prison for fraud**
   - **Angel Strunk: Criminal conviction**

## B. This Creates Manifest Injustice

**No federal court should dismiss with prejudice a RICO case where:**

- **The lead defendant confessed under oath to fraud**
- **The defendant's own law firm documented the fraud in writing**
- **A government entity confirmed theft of nearly half a million dollars**

- Criminal convictions validate the RICO enterprise

- The plaintiff lost $3.5 million in property through admitted fraud

The Sixth Circuit has repeatedly held that Rooker-Feldman does not bar damages claims against private parties who commit wrongful acts during state proceedings. Berry v. Schmitt, 688 F.3d 290, 299 (6th Cir. 2012) ('The doctrine applies only when the source of the injury is the state court decision itself'); McCormick v. Braverman, 451 F.3d 382, 393 (6th Cir. 2006) (Rooker-Feldman 'does not bar actions against third parties'); Todd v. Weltman, 434 F.3d 432, 437 (6th Cir. 2006) (claims against attorneys for litigation misconduct not barred). Here, Plaintiff's injury stems not from the state court's foreclosure order, but from Defendants' admitted fraud in stealing over $1 million during the receivership. No circuit has affirmed dismissal of a RICO case where defendants confessed under oath to the fraudulent scheme.

Finally, this Court should not allow its dismissal to shield those who corrupted the judicial process through deliberate deception of the state court.

## V. THE COURT SHOULD RECONSIDER UNDER RULE 59(e)

Under Federal Rule 59(e), reconsideration is appropriate to:

1. Correct clear error of law

2. Prevent manifest injustice

3. Consider newly available evidence

All three grounds exist here. The Court clearly erred by claiming evidence doesn't exist when it does. Dismissing a case with confessions and criminal convictions creates manifest injustice. HCLRC's December 8 filing provides additional confirmation of the fraud.

7

Alternatively, if the Court maintains any concerns about Rooker-Feldman, Plaintiff requests certification of this question to the Sixth Circuit under 28 U.S.C. § 1292(b), as this presents a controlling question of law with substantial ground for difference of opinion, and immediate appeal would materially advance the ultimate termination of this litigation.

## VI. CONCLUSION

This is not a case challenging state court decisions. This is a case against private parties who stole over $3 million through admitted fraud. The defendants have confessed. Their own attorneys documented the fraud. Criminal convictions prove the enterprise.

The Court's dismissal based on Rooker-Feldman and alleged lack of evidence constitutes reversible error requiring immediate reconsideration.

WHEREFORE, Plaintiff respectfully requests this Court:

1. **GRANT this Motion for Reconsideration**

2. **VACATE the December 10, 2025 dismissal order**

3. **TAKE JUDICIAL NOTICE of the state court billing records case #A1905588**

4. **REINSTATE this case for adjudication on the merits**

5. **GRANT such other relief as justice requires**

Plaintiff respectfully requests a ruling within 14 days given the time-sensitive nature of the ongoing property and financial harm.

Respectfully submitted,

8

John Klosterman
Pro Se Plaintiff
5615 Sidney Road
Cincinnati, Ohio 45238
513-250-2610
johncklosterman@gmail.com

Exhibits list

A. 12/06/22 double billing from Dentons/Boydston/Konz, LLC

B. 09/08/23 double billing from Dentons/ Boydton /Konza, LLC

C. Denton's letter from plaintiff

D,E. HCLRC December 8, 2025 filing in HC court case A1905588

CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2025, I served copies of this Motion on all counsel of record via CM/ECF or Email.

John Klosterman

# EXHIBIT D
## Fees and Expenses Due to Dentons Bingham Greenebaum LLP



exhibit

A

22931785.v2

Dentons Bingham Greenebaum LLP

Konza LLC
131170.000002

| Invoice No.: | ****** |
| Invoice Date: | September 7, 2023 |
| Page | 4 |

| DATE | ATTORNEY/ PARALEGAL | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|---|
| 12/14/22 | RB | Conferences Joseph Lentine; properties drive by; email Ron Shouse | 0.10 | 35.00 |
| 12/15/22 | RB | Phone conferences Joseph Lentine | 0.10 | 35.00 |
| 12/16/22 | RB | Review 12/14/22 John Klosterman filing; emails Kelley Allesee; phone conferences Joseph Lentine, Ms. Allesee and Shannon Price | 0.20 | 70.00 |
| 12/19/22 | RB | Prepare for and attend hearing before Magistrate Berding; conference Kelley Allesee, Kate Burroughs and Shannon Price; emails Ms. Allesee | 0.50 | 175.00 |
| 12/20/22 | RB | File Magistrate's Order and have served; phone conferences Joseph Lentine and Robert Calabreze | 0.40 | 140.00 |
| 12/22/22 | RB | Phone conferences Tara Weber, Joseph Lentine and Kelley Allesee; email Ms. Weber | 0.20 | 70.00 |
| 12/23/22 | RB | Phone conferences Joseph Lentine | 0.10 | 35.00 |
| 12/26/22 | RB | Phone conferences Joseph Lentine | 0.10 | 35.00 |
| 12/27/22 | RB | Phone conferences Joseph Lentine, GCWW; emails GCWW and Kelley Allesee | 0.10 | 35.00 |
| 12/28/22 | RB | Phone conferences Joseph Lentine | 0.10 | 35.00 |
| 12/29/22 | RB | Review John Klosterman 12/28/22 filing and draft response; emails Kelley Allesee and Jennifer Donathan; phone conferences Joseph Lentine | 0.80 | 280.00 |
| 12/30/22 | RB | Conference Alexis Royse ; phone conferences Jennifer Donathan and Joseph Lentine; emails Kelley Allesee and Tara Weber; draft response to John Klosterman 12/28/22 filing | 1.10 | 385.00 |
| 01/01/23 | RB | Phone conferences Joseph Lentine; review 12/21/22 court of appeals decision in John Klosterman criminal case | 0.10 | 35.00 |
| 01/02/23 | RB | Email Kelley Allesee | 0.10 | 35.00 |
| 01/03/23 | RB | Phone conferences Joseph Lentine; emails Kelley Allesee | 0.10 | 35.00 |
| 01/04/23 | RB | Email Joseph Lentine | 0.10 | 35.00 |
| 01/05/23 | RB | Phone conferences Joseph Lentine | 0.10 | 35.00 |
| 01/06/23 | RB | Edit response to John Klosterman 12/28/22 filing | 0.70 | 245.00 |
| 01/09/23 | RB | Emails Joseph Lentine; conference Allen Teetor; properties drive by; phone conferences Jennifer Donathan, Liz Eddy; conference Laura Finke; review Landbank motion; attend to filing and service of receiver's report | 0.30 | 105.00 |
| 01/10/23 | RB | Phone conferences Dion Crockett, Joseph Lentine and | 0.20 | 70.00 |

# EXHIBIT E
## Fees Due to Receiver

22931785.v2

| | | receiver at $300/hour | |
|---|---|---|---|
| date | description | time | amount |
| | Joseph Lentine, Ms. Allesee and Shannon Price | | |
| 12/19/22 | prepare for and attend hearing before Magistrate Berding; conference Kelley Allesee, Kate Burroughs and Shannon Price; emails Ms. Allesee | 0 | 0 |
| 12/20/22 | file Magistrate's Order and have served; phone conferences Joseph Lentine and Robert Calabreze | .80 | 240.00 |
| 12/22/22 | phone conferences Tara Weber, Joseph Lentine and Kelley Allesee; email Ms. Weber | .20 | 60.00 |
| 12/23/22 | phone conferences Joseph Lentine | .20 | 60.00 |
| 12/26/22 | phone conferences Joseph Lentine | .20 | 60.00 |
| 12/27/22 | phone conferences Joseph Lentine, GCWW; emails GCWW and Kelley Allesee | .60 | 180.00 |
| 12/28/22 | phone conferences Joseph Lentine | .10 | 30.00 |
| 12/29/22 | review John Klosterman 12/28/22 filing and draft response; emails Kelley Allesee and Jennifer Donathan; phone conferences Joseph Lentine | .30 | 90.00 |
| 12/30/22 | conference Alexis Royse; phone conferences Jennifer Donathan and Joseph Lentine; emails Kelley Allesee and Tara Weber; draft response to John Klosterman 12/28/22 filing | .50 | 150.00 |
| 1/1/23 | phone conferences Joseph Lentine; review 12/21/22 court of appeals decision in John Klosterman criminal case | .20 | 60.00 |
| 1/2/23 | email Kelley Allesee | 0 | 0 |
| 1/3/23 | phone conferences Joseph Lentine; emails Kelley Allesee | .50 | 150.00 |
| 1/4/23 | email Joseph Lentine | 0 | 0 |
| 1/5/23 | phone conferences Joseph Lentine | 0 | 0 |
| 1/6/23 | edit response to John Klosterman 12/28/22 filing | 0 | 0 |
| 1/9/23 | emails Joseph Lentine; conference Allen Teetor; properties drive by; phone conferences Jennifer Donathan, Liz Eddy; conference Laura Finke; review Landbank motion; attend to filing and service of receiver's report | 1.20 | 360.00 |
| 1/10/23 | phone conferences Dion Crockett, Joseph Lentine and Kelley Allesee; emails Ms. Allesee and Erica Faaborg | 1.10 | 330.00 |

22699801.v3

EXHIBIT D

Fees and Expenses due to Dentons Bingham Greenebaum LLP as Receiver's Counsel



Dentons Bingham Greenebaum LLP

Konza LLC
131170.000002

| | | Invoice No.: | ****** |
| | | Invoice Date: | December 2, 2022 |
| | | Page | 22 |

| DATE | ATTORNEY/ PARALEGAL | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|---|
| | | and attend phone conference with chapter 13 trustee's office and other counsel; phone conferences Joseph Lentine and Susan Zurface | | |
| 04/27/21 | RB | Office conference Joseph Lentine and Angel Strunk; properties drive by; prepare receiver expense report; update operating charts; draft response to John Klosterman information requests | 1.30 | 455.00 |
| 04/28/21 | RB | Prepare for and attend phone conference with Chapter 13 trustee and staff and other counsel; phone conferences Anne Smith and Jaci Martin and Joseph Lentine; emails Angel Strunk, Vicki Asbury and Mr. Lentine; pick up and review documents assembled by TriState; properties drive by; review lease; draft response to John Klosterman information requests | 3.50 | 1,225.00 |
| 04/29/21 | RB | Office conference Joseph Lentine and Angel Strunk; draft response to John Klosterman information request; emails Vicki Ashbury; edit operating charts; email GCWW | 1.50 | 525.00 |
| 04/30/21 | RB | Draft letter to John Klosterman on document and information requests; phone conferences Jaci Martin and Joseph Lentine emails Susan Zurface | 1.20 | 420.00 |
| 05/03/21 | RB | Meetings Susan Zurface and Joseph Lentine; properties drive by; emails Ms. Zurface, Mr. Lentine and Angel Strunk; edit property charts; emails Katie Towt and Matthew Horowitz; internet search Takeout Taxi; phone conference John Schuh | 1.50 | 525.00 |
| 05/04/21 | RB | Prepare for and attend phone conference with Bankruptcy Court and counsel in Chapter 13; phone conferences Joseph Lentine; draft building list; phone conference Leslie Foster | 0.70 | 245.00 |
| 05/05/21 | RB | Phone conferences Joseph Lentine; draft letters to Energy Insurance | 0.80 | 280.00 |
| 05/06/21 | RB | Office conference Joseph Lentine and Angel Strunk; properties drive by; email Susan Zurface | 1.00 | 350.00 |
| 05/07/21 | RB | Office conference Jospeh Lentine; properties drive by | 0.40 | 140.00 |
| 05/10/21 | RB | Phone conferences Joseph Lentine; ready 14th receiver report for filing and service; letters to Energy Insurance; phone conference Omri Levi | 1.00 | 350.00 |
| 05/11/21 | RB | Phone conferences Omri Levin, Rob Kern and MSD and emails Levi; draft response to Klosterman 4/30/21 motion; phone conference Joseph Lentine | 1.50 | 525.00 |
| 05/12/21 | RB | Phone conferences Joseph Lentine | 0.10 | 35.00 |
| 05/13/21 | RB | Phone conferences Joseph Lentine | 0.10 | 35.00 |

Dentons Bingham Greenebaum LLP

| Invoice No.: | ****** |
| --- | --- |
| Invoice Date: | December 2, 2022 |
| Page | 23 |

Konza LLC
131170.000002

| DATE | ATTORNEY/ PARALEGAL | DESCRIPTION | HOURS | AMOUNT |
| --- | --- | --- | --- | --- |
| 05/14/21 | RB | Office conference Jopseh Lentine and Angel Strunk; properties drive by; phone conferences Jaci Martin and Mr. Lentine; draft auction terms; emails Ms. Martin | 0.50 | 175.00 |
| 05/17/21 | RB | Edit auction term sheet; emails Jaci Martin; phone conferences Joseph Lentine | 0.80 | 280.00 |
| 05/19/21 | RB | Edit auction term sheet; emails Jaci Martin and Jennifer Donathan; phone conferences Joseph Lentine; emails Angel Strunk | 0.70 | 245.00 |
| 05/21/21 | RB | Phone conference Jaci Martin; emails and phone conferences Joseph Lentine; emails Susan Zurface, Matthew Horwitz and Katie Towt | 0.20 | 70.00 |
| 05/24/21 | RB | Phone conferences and emails Joseph Lentine; prepare lot chart for auction; phone conference Jennifer Donathan | 0.40 | 140.00 |
| 05/25/21 | RB | Phone conferences Joseph Lentine and Marty Arlinghaus; office conference Mr. Lentine and Angel Strunk; properties drive by | 0.50 | 175.00 |
| 05/26/21 | RB | Phone conferences Joseph Lentine and Marty Arlinghaus | 0.20 | 70.00 |
| 05/27/21 | RB | Meeting Marty Arlinghaus; conferences Joseph Lentine; draft response to 5/19/21 John Klosterman reply; review draft order granting City motion for summary judgment; meeting Matthew Flannery and Mr. Lentine; conference Ken Westlake; email Susan Zurface; properties drive by | 1.00 | 350.00 |
| 05/28/21 | RB | Emails Susan Zurface; phone conference Jaci Martin; emails Ms. Martin and Jennifer Donathon; edit auction term sheet | 0.80 | 280.00 |
| 06/01/21 | RB | Phone conferences Joseph Lentine; office conference Mr. Lentine and Angel Strunk; properties drive by; emails Ken Westlake and Marty Arlinghaus | 0.20 | 70.00 |
| 06/02/21 | RB | Prepare for 6/3/21 Magistrate hearing; phone conferences Jaci Martin and Joseph Lentine; properties drive by; emails Ms. Martin; edit building/lot charts | 0.50 | 175.00 |
| 06/03/21 | RB | Prepare for and attend hearing before Magistrate and post hearing conferences Tina Woods and Jaci Martin | 2.00 | 700.00 |
| 06/04/21 | RB | Phone conferences Jaci Martin and Joseph Lentine; office conference Mr. Lentine and Angel Strunk | 0.50 | 175.00 |
| 06/07/21 | RB | Emails John Klosterman, Joseph Lentine, Marty Arlinghaus and Angel Strunk; edit building/lot charts | 0.50 | 175.00 |
| 06/08/21 | RB | Emails from John Klosterman; office conference Joseph Lentine and Angel Strunk; phone conferences Mr. Lentine and Marty Arlinghaus; email Jaci Martin; edit | 1.00 | 350.00 |

# EXHIBIT E

## Fees due to Konza LLC as Receiver

| date | description | time | amount |
|------|-------------|------|--------|
| 4/18/21 | Edit motion to excuse turnover in chapter 13; phone conferences Joseph Lentine; update operating charts | .70 | 210.00 |
| 4/19/21 | Edit motion to excuse turnover in chapter 13; office conferences Joseph Lentine and Angel Strunk; phone conferences Mr. Lentine and Jaci Martin; arrange for copying of papers request by Sharri Rammelsberg; properties drive by | 2.00 | 600.00 |
| 4/20/21 | Edit motion to excuse turnover in chapter 13; phone conferences Marty Arlinghaus, Joseph Lentine | .50 | 150.00 |
| 4/21/21 | Emails John Klosterman, Joseph Lentine and Marge Burks, phone conferences Joseph Lentine; emails Susan Zurface; office conferences Angel Strunk and Joseph Lentine; properties drive by; deliver copies of vendor invoices to Judith Tausel | 1.80 | 540.00 |
| 4/22/21 | Emails and phone conferences Chapter 13 staff and other counsel and Joseph Lentine; email Jaci Martin; draft auction terms; edit work schedule | 1.00 | 300.00 |
| 4/23/21 | Phone conferences Joseph Lentine and Jaci Martin; legal research 11 U.S.C. § 543 emails Frank Dicesare and John Klosterman | .70 | 210.00 |
| 4/26/21 | Emails John Klosterman and Jaci Martin; prepare for and attend phone conferences with chapter 13 trustee's office and other counsel; phone conference Joseph Lentine and Susan Zurface | 1.10 | 330.00 |
| 4/27/21 | Office conference Joseph Lentine and Angel Strunk; properties drive by; prepare receiver expenses report; update operating charts; draft response to John Klosterman information requests | 2.20 | 660.00 |
| 4/28/21 | Prepare for and attend phone conference with Chapter 13 trustee and staff and other counsel; phone conferences Anne Smith and Jaci Martin and Joseph Lentine; emails Angel Strunk, Vicki Ashbury and Mr. Lentine; pick up and review documents assembled by TriState; properties drive by; review lease; draft response to John Klosterman information request | 3.50 | 1,050.00 |
| 4/29/21 | Office conferences Joseph Lentine and Angel Strunk; draft response to John Klosterman information request; emails Vicki Ashbury; edit operating charts; email GCWW | 1.50 | 450.00 |
| 4/30/21 | Draft letter to John Klosterman on document and information request; phone conferences Jaci Martin and Joseph Lentine; emails Susan Zurface | 1.30 | 390.00 |
| 5/3/21 | Meetings Susan Zurface and Joseph Lentine; properties drive by; emails Ms. Zurface, Mr. Lentine and Angel Schuh; edit property charts; emails Katie Towt and | 3.50 | 1,050.00 |

14

| date | description | time | amount |
|---|---|---|---|
| | Matthew Horowitz; internet search Takeout Taxi; phone conference John Schuk | | |
| 5/4/21 | Prepare for and attend phone conference with Bankruptcy Court and counsel in Chapter 13; phone conferences Joseph Lentine; draft building list; phone conference Leslie Foster | 1.00 | 300.00 |
| 5/5/21 | Phone conferences Joseph Lentine; draft letters to Energy Insurance | .70 | 210.00 |
| 5/6/21 | Office conference Joseph Lentine and Angel Strunk; properties drive by; email Susan Zurface | 2.50 | 750.00 |
| 5/7/21 | Office conference Joseph Lentine; property drive by | .60 | 180.00 |
| 5/10/21 | Phone conferences Joseph Lentine; ready 14th receiver report for filing and service; letters to Energy Insurance; phone conference Omri Levi | 1.50 | 450.00 |
| 5/11/21 | Phone conferences Omri Levin, Rob Kern and MSD and emails Levi; draft response to Klosterman 4/30/21 motion; phone conference Joseph Lentine | 1.50 | 450.00 |
| 5/12/21 | Phone conferences Joseph Lentine | .30 | 90.00 |
| 5/13/21 | Phone conferences Joseph Lentine | .30 | 90.00 |
| 5/14/21 | Office conference Joseph Lentine and Angel Strunk; properties drive by; phone conferences Jaci Martin and Mr. Lentine; draft auction terms; emails Ms. Martin | 2.00 | 600.00 |
| 5/17/21 | Edit auction term sheet; emails Jaci Martin; phone conferences Joseph Lentine | 2.20 | 660.00 |
| 5/19/21 | Edit auction term sheet; emails Jaci Martin and Jennifer Donathan; phone conferences Joseph Lentine; emails Angel Strunk | 1.80 | 540.00 |
| 5/21/21 | Phone conference Jaci Martin; emails and phone conferences Joseph Lentine; emails Susan Zurface, Matthew Horwitz and Katie Towt | 1.00 | 300.00 |
| 5/24/21 | Phone conferences and emails Joseph Lentine; prepare lot chart for auction; phone conference Jennifer Donathan | 1.70 | 510.00 |
| 5/25/21 | Phone conferences Joseph Lentine and Marty Arlinghaus; office conference Mr. Lentine and Angel Strunk; properties drive by | 2.00 | 600.00 |
| 5/27/21 | Meeting Marty Arlinghaus; conferences Joseph Lentine; draft response to 5/19/21 John Klosterman reply; review draft order granting City motion for summary judgment; meeting Matthew Flannery and Mr. Lentine; conference Ken Westlake; email Susan Zurface; properties drive by | 5.00 | 1,500.00 |
| 5/28/21 | Emails Susan Zurface; phone conference Jaci Martin; emails Ms. Martin and Jennifer Donathon; edit auction term sheet | .70 | 210.00 |

| date | description | time | amount |
|------|-------------|------|--------|
| 6/1/21 | Phone conferences Joseph Lentine; office conference Mr. Lentine and Angel Strunk; properties drive by; emails Ken Westlake and Marty Arlinghaus | 1.50 | 450.00 |
| 6/2/21 | Prepare for 6/3/21 Magistrate hearing; phone conferences Jaci Martin and Joseph Lentine; properties drive by; emails Ms. Martin; edit building/lot charts | 2.00 | 600.00 |
| 6/4/21 | Phone conferences Jaci Martin and Joseph Lentine; office conference Mr. Lentine and Angel Strunk; properties drive by | 1.50 | 450.00 |
| 6/7/21 | Emails John Klosterman, Joseph Lentine, Marty Arlinghaus and Angel Strunk; edit building/lot charts | 1.50 | 450.00 |
| 6/8/21 | Emails from John Klosterman; office conference Joseph Lentine and Angel Strunk; phone conferences Mr. Lentine and Marty Arlinghaus; emails Jaci Martin; edit building/lot charts | 2.00 | 600.00 |
| 6/10/21 | Phone conferences Joseph Lentine and Matthew Flannery; office conference Mr. Lentine and Angel Strunk; properties drive by | 1.20 | 360.00 |
| 6/11/21 | Office conference Joseph Lentine and Angel Strunk; properties drive by; phone conference Mr. Lentine and Jaci Martin; emails Robert Hines; research and draft request for 2 family change of use on 659 Sedam; final, file and serve receiver's 15th report | 2.00 | 600.00 |
| 6/14/21 | Phone conferences Joseph Lentine; edit 701 Delhi letter of intent; review John Klosterman 6/10/21 filings; edit operations charts; edit auction building and lot charts; emails Angel Strunk, Robert Hines and Christian Donovan | 1.50 | 450.00 |
| 6/15/21 | Edit operations charts; edit email Tina Woods on auction property lists and emails to her and Janet Sauer; emails Angel Strunk; phone conferences Joseph Lentine and emails Randy Williams | 2.00 | 600.00 |
| 6/16/21 | Inspection of 794 Delhi and Matthew Daniels; office conference Joseph Lentine; properties drive by; emails Angel Strunk; phone conferences Mr. Lentine | 2.50 | 750.00 |
| 6/17/21 | Phone conferences Joseph Lentine; emails Katie Towt and Matt Horwitz and Susan Zurface, Angel Strunk, Mr. Lentine; edit auction property chart | .80 | 240.00 |
| 6/18/21 | Edit operations charts; office conference and phone conferences Joseph Lentine; properties drive by | 1.20 | 360.00 |
| 6/21/21 | Draft memo in opposition to Klosterman motion to compel; conference Joseph Lentine and Angel Strunk; phone conference Jaci Martin; phone conferences GCWW on 753 Delhi; Jaci Martin; emails Tim Burke | 1.80 | 540.00 |
| 6/22/21 | Phone conferences Jaci Martin, Joseph Lentine and Susan Zurface; emails Mr. Lentine and Ms. Zurface; Auditor | 2.50 | 750.00 |

16

April 28, 2023

John Klosterman
5615 Sidney Road
Cincinnati, Ohio 45238

Dentons Bingham Greenebaum LLP
Bradley Arnett
312 Walnut Street #2450
Cincinnati, Ohio 45202
Via Email: bradley.arnett@dentons.com

RE: Richard Boydston double legal billing in case #A1095588

Dear Mr. Arnett:

I am writing this letter regarding a matter that requires your immediate attention. It came to my attention that Mr. Boydston has been caught double billing in the amount over $175,000.00. (enclosed) It is not alleged, it is on the enclosed document examples. The complete document is over 90 pages long.

## BACKGROUND

Mr. Boydston, created an LLC to shield himself as well as ready that LLC to be involved in real estate investment and management, as he stated in the filing in 2018. As you are aware, he made himself the manager of Konza, LLC in the above case.

When he submitted his invoice to the courts for payment several months ago, red flags were raised. Konza, LLC , on the same dates, memo's, as he Mr. Boydston, as the manager had, only the billing rate was reduced, were almost exactly the same. (enclosed) I set them side by side to show the false billing. It's as though two attorneys were present for all that he billed for by himself and an associate. Legal law firms are responsible for the actions of their lawyers. In this case, it is clear that Mr. Boydston's actions have not only put your firm's reputation at risk but also exposed it to legal liability.

It is imperative that your firm takes swift action to address this issue. I, as the defendant in the case am+ required to pay the legitimate bills from the recent letter. I would request that you perform an internal investigation to find the extent of the wrongdoing. I have received no answers from any of my requests via email. He has used obfuscation on every motions and not answered

EXHIBIT
F

# EXHIBIT D
## Fees and Expenses Due to Dentons Bingham Greenebaum LLP

exhibit

A

Dentons Bingham Greenebaum LLP

Konza LLC
131170.000002

| | | | | |
|---|---|---|---|---|
| Invoice No.: | ****** | | | |
| Invoice Date: | September 7, 2023 | | | |
| Page | 4 | | | |

| DATE | ATTORNEY/ PARALEGAL | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|---|
| 12/14/22 | RB | Conferences Joseph Lentine; properties drive by; email Ron Shouse | 0.10 | 35.00 |
| 12/15/22 | RB | Phone conferences Joseph Lentine | 0.10 | 35.00 |
| 12/16/22 | RB | Review 12/14/22 John Klosterman filing; emails Kelley Allesee; phone conferences Joseph Lentine, Ms. Allesee and Shannon Price | 0.20 | 70.00 |
| 12/19/22 | RB | Prepare for and attend hearing before Magistrate Berding; conference Kelley Allesee, Kate Burroughs and Shannon Price; emails Ms. Allesee | 0.50 | 175.00 |
| 12/20/22 | RB | File Magistrate's Order and have served; phone conferences Joseph Lentine and Robert Calabreze | 0.40 | 140.00 |
| 12/22/22 | RB | Phone conferences Tara Weber, Joseph Lentine and Kelley Allesee; email Ms. Weber | 0.20 | 70.00 |
| 12/23/22 | RB | Phone conferences Joseph Lentine | 0.10 | 35.00 |
| 12/26/22 | RB | Phone conferences Joseph Lentine | 0.10 | 35.00 |
| 12/27/22 | RB | Phone conferences Joseph Lentine, GCWW; emails GCWW and Kelley Allesee | 0.10 | 35.00 |
| 12/28/22 | RB | Phone conferences Joseph Lentine | 0.10 | 35.00 |
| 12/29/22 | RB | Review John Klosterman 12/28/22 filing and draft response; emails Kelley Allesee and Jennifer Donathan; phone conferences Joseph Lentine | 0.80 | 280.00 |
| 12/30/22 | RB | Conference Alexis Royse ; phone conferences Jennifer Donathan and Joseph Lentine; emails Kelley Allesee and Tara Weber; draft response to John Klosterman 12/28/22 filing | 1.10 | 385.00 |
| 01/01/23 | RB | Phone conferences Joseph Lentine; review 12/21/22 court of appeals decision in John Klosterman criminal case | 0.10 | 35.00 |
| 01/02/23 | RB | Email Kelley Allesee | 0.10 | 35.00 |
| 01/03/23 | RB | Phone conferences Joseph Lentine; emails Kelley Allesee | 0.10 | 35.00 |
| 01/04/23 | RB | Email Joseph Lentine | 0.10 | 35.00 |
| 01/05/23 | RB | Phone conferences Joseph Lentine | 0.10 | 35.00 |
| 01/06/23 | RB | Edit response to John Klosterman 12/28/22 filing | 0.70 | 245.00 |
| 01/09/23 | RB | Emails Joseph Lentine; conference Allen Teetor; properties drive by; phone conferences Jennifer Donathan, Liz Eddy; conference Laura Finke; review Landbank motion; attend to filing and service of receiver's report | 0.30 | 105.00 |
| 01/10/23 | RB | Phone conferences Dion Crockett, Joseph Lentine and | 0.20 | 70.00 |

# EXHIBIT E
## Fees Due to Receiver

22931785.v2

|  |  | receiver at $300/hour | |
| --- | --- | --- | --- |
| date | description | time | amount |
|  | Joseph Lentine, Ms. Allesee and Shannon Price |  |  |
| 12/19/22 | prepare for and attend hearing before Magistrate Berding; conference Kelley Allesee, Kate Burroughs and Shannon Price; emails Ms. Allesee | 0 | 0 |
| 12/20/22 | file Magistrate's Order and have served; phone conferences Joseph Lentine and Robert Calabreze | .80 | 240.00 |
| 12/22/22 | phone conferences Tara Weber, Joseph Lentine and Kelley Allesee; email Ms. Weber | .20 | 60.00 |
| 12/23/22 | phone conferences Joseph Lentine | .20 | 60.00 |
| 12/26/22 | phone conferences Joseph Lentine | .20 | 60.00 |
| 12/27/22 | phone conferences Joseph Lentine, GCWW; emails GCWW and Kelley Allesee | .60 | 180.00 |
| 12/28/22 | phone conferences Joseph Lentine | .10 | 30.00 |
| 12/29/22 | review John Klosterman 12/28/22 filing and draft response; emails Kelley Allesee and Jennifer Donathan; phone conferences Joseph Lentine | .30 | 90.00 |
| 12/30/22 | conference Alexis Royse; phone conferences Jennifer Donathan and Joseph Lentine; emails Kelley Allesee and Tara Weber; draft response to John Klosterman 12/28/22 filing | .50 | 150.00 |
| 1/1/23 | phone conferences Joseph Lentine; review 12/21/22 court of appeals decision in John Klosterman criminal case | .20 | 60.00 |
| 1/2/23 | email Kelley Allesee | 0 | 0 |
| 1/3/23 | phone conferences Joseph Lentine; emails Kelley Allesee | .50 | 150.00 |
| 1/4/23 | email Joseph Lentine | 0 | 0 |
| 1/5/23 | phone conferences Joseph Lentine | 0 | 0 |
| 1/6/23 | edit response to John Klosterman 12/28/22 filing | 0 | 0 |
| 1/9/23 | emails Joseph Lentine; conference Allen Teetor; properties drive by; phone conferences Jennifer Donathan, Liz Eddy; conference Laura Finke; review Landbank motion; attend to filing and service of receiver's report | 1.20 | 360.00 |
| 1/10/23 | phone conferences Dion Crockett, Joseph Lentine and Kelley Allesee; emails Ms. Allesee and Erica Faaborg | 1.10 | 330.00 |

2

**COURT OF COMMON PLEAS**
**HAMILTON COUNTY, OHIO**

| | |
|---|---|
| **CITY OF CINCINNATI,** an Ohio municipal corporation, | **Case No. A 1905588** |
| **Plaintiff,** | **Judge Wende C. Cross** |
| v. | **Chief Magistrate Judge Anita P. Berding** |
| **JOHN KLOSTERMAN a/k/a** **JOHN C. KLOSTERMAN a/k/a** **JOHN CAMPBELL KOSTERMAN,** *et al.,* | |
| **Defendants.** | |

## SUBSTITUTE PLAINTIFF HAMILTON COUNTY LAND REUTILIZATION CORPORATION'S MOTION TO TERMINATE THE RECEIVERSHIP

Substitute Plaintiff Hamilton County Land Reutilization Corporation ("HCLRC"), by and through counsel, respectfully moves the Court to order the Receiver to file a final report, and for an Order terminating the Receivership and discharging the Receiver. The purpose of the Receivership has been fulfilled, and all remaining funds in the Receivership estate have been allocated to existing obligations. Accordingly, the Court can authorize the disposition of remaining assets and terminate the Receivership. A Memorandum more fully explaining the grounds for this Motion is attached hereto.



exhibit
E

1

Respectfully submitted,

*/s/ Kara A. Czanik*
Kara A. Czanik (0075165)
Brian E. Schultz (0102339)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel: (513) 977-8200
Fax: (513) 977-8141
kara.czanik@dinsmore.com
brian.schultz@dinsmore.com
*Counsel for Hamilton County
Land Reutilization Corporation*

## MEMORANDUM

### I.     INTRODUCTION

This case has no remaining issues to decide, and the connected Receivership has no remaining business to conduct.  It is time to terminate the Receivership, discharge the Receiver, and close the matter for good.

Over six years ago, the City of Cincinnati filed a Complaint to foreclose fifty-nine blighted Properties formerly owned by Defendant John Klosterman and related entities.  Over five years ago, the Court placed those Properties in Receivership, and the appointed Receiver took control of the Properties during the pendency of the foreclosure action.  Over four years ago, the Court entered a Final Decree in Foreclosure, disposing of the underlying controversy.  Over two years ago, the Receiver sold the Properties with the Court's approval.  For a matter of years, the central controversy of this case has been decided and the *res* at issue—the Properties in Receivership—have been completely disposed.

The Receiver has no business left to conduct, and it has not had any business to conduct since the Receiver sold the Properties in May of 2023.  Its Court-appointed tasks have long fallen to other Parties (including HCLRC).  The Receivership effectively has no property to administer, left with a nominal cash balance after distributing the funds from the sale of the Properties.  Any "expenses" the Receiver has accrued since that time are not the result of work on Receivership matters.

Nevertheless, the Receiver now argues that the Receivership should remain open. Essentially, the Receiver argues that the Receivership should serve as a vehicle to finance ongoing litigation costs it continues to incur.  But the Receiver has not established how those litigation costs qualify as expenses *of the Receivership*, and even if it could, the Receivership simply does

3

not have the funds to pay those expenses. The Receiver seems to suggest that other Parties, namely Substitute Plaintiff HCLRC, should contribute to those costs as parties to the Receivership. But the Receiver's practices already entangled HCLRC in unnecessary litigation, and HCLRC has already incurred its own substantial legal fees as a result. There is no basis in the law for also holding HCLRC – who purchased the subject receivership property *free and clear of all liens, claims and interests* – responsible for *the Receiver's* expenses beyond the funds left in the Receivership estate, and to the extent not already spoken for.

The Receiver cannot offer any grounds for keeping the Receivership open. Accordingly, the Court should order the Receiver to file his Final Report and enter an Order discharging the Receiver and terminating the Receivership.

## II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

On November 25, 2019, the City of Cincinnati filed a Complaint in Foreclosure to enforce a certified judgment. The City sought foreclosure of numerous blighted real estate parcels, including rental properties (the "Properties"), owned by Defendant John Klosterman and various related entities (collectively, "Klosterman"). The City moved for appointment of a receiver, and the Court appointed Konza, LLC as receiver (the "Receiver") on February 21, 2020. Pursuant to the Order Appointing Receiver, Klosterman turned over possession of the Properties to the Receiver. (*See* Order Appointing Receiver ¶¶ 1,3,5, entered Feb. 14, 2020). The Receiver had the authority to take actions necessary to preserve the Properties, and all rent was to be paid to the Receiver while the Properties remained in receivership. (*Id.* ¶¶ 3, 6). The Order also entitled the Receiver "to reasonable compensation for services rendered and to reimbursement for expenses incurred, all as approved by the Court." (*Id.* ¶ 18). The Court required the Receiver to submit monthly reports outlining receivership activities beginning March 15, 2020. (*Id.* ¶ 20).

The Receiver obtained Court approval to sell and sold the Properties to HCLRC. (*See* Magistrate's Order on Motion by Receiver to Approve Sale, entered Oct. 19, 2022). Pursuant to the sale agreement, HCLRC purchased the Properties "free of all liens, claims, charges and encumbrances." (*See* Motion by Receiver to Approve Sale, Ex. A ¶ 5, filed Sept. 26, 2022). The sale agreement also allocated funds for "all costs expenses and fees, as approved by the Court, payable to or for the benefit of" the Receiver. (*Id.*, Ex. 5 ¶ 2). On December 5, 2022, the Receiver applied for and the Court approved $499,717.76 in fees and expenses to be paid to the Receiver out of the sale proceeds. (*See* Motion by Receiver for Approval of Fees and Expenses Through November 30, 2022, "First Application," filed Dec. 5, 2022).

HCLRC and the Receiver finalized the sale of the Properties on May 1, 2023. (Report of Sale by Receiver, filed May 22, 2023). HCLRC took possession of the Properties and the sale funds were distributed to the Receiver and creditors, leaving $85,960.00 as the sole remaining asset of the receivership estate. (*See* "Escrow Agreement," attached to Motion for Order of Distribution of Escrow Proceeds of Sale, filed Sept. 12, 2025). On September 8, 2023, the Receiver applied for a second disbursement of fees and expenses and moved to terminate the Receivership. (Motion by Receiver for Approval of Payment of Fees and Expenses from December 1, 2022 Through August 31, 2023, "Second Application," filed Sept. 8, 2022). The fees and expenses claimed in the Second Application amount to $104,438.75, exceeding the funds remaining in the Receivership at that time by $18,478.75. (*Id.* at 3). The Court has not ruled on the Second Application or the Receiver's Motion to Terminate the Receivership. The Receiver has not filed a Report since May 22, 2023. (*See* Report of Sale by Receiver, *supra*).

On March 22, 2024, the Court permitted Tri-State Organization, Inc. ("TSO") and its proprietor Joseph Lentine to intervene for the limited purposes of asserting claims against the

5

Receiver. (*See* Order Granting Motion for Leave to Assert Claims Against Receiver, entered Mar. 22, 2024). TSO and Lentine claimed to have performed work as property managers for the Properties while in Receivership, demanding reimbursement for expenses allegedly incurred and services allegedly rendered. After trial, the Court awarded TSO $57,271.18,[1] which the Court taxed as an administrative cost. (Magistrate's Decision as to TSO, Lentine & Konza Claims & Counterclaims, "Magistrate's Decision," at 12, entered Apr. 11, 2025). The Court found that, while the parties never reduced an agreement to writing, the Receiver did have an implied contract with TSO that entitled TSO to payment for some of its claims. (*Id.* at 2–3). Accounting for TSO's $57,271.18 judgment leaves $23,709.44 remaining in the Receivership. The Court also determined that, while they acted as property managers, Lentine and TSO collected and kept all rents due for the Properties—amounting to $423,169.42. (*Id.* at 6). According to Lentine and TSO, the $423,169.42 in withheld rent purportedly represents their expenses to maintain and repair the Properties over a period of nearly three years, claiming that they operated the Properties at a $145,138.35 loss. (*Id.* at 3–4).

After disposing of Lentine and TSO's claims, no claims or other business affecting the Receivership estate remain pending. The Properties have been sold and transferred. The assets left in the estate amount to only $23,709.44. The Receivership must be closed.

Nevertheless, the Receiver has now indicated that he intends to keep the Receivership open despite his prior Motion to Terminate. (*See generally* Memorandum of Receiver in Opposition to Motion by Tristate Organization, Inc. for Order of Distribution, "Mem. Opp. Motion for Distribution," filed Sept. 26, 2025). The Receiver argues that he "continues to incur fees and expenses," primarily in defending legal actions by Klosterman. (*Id.* at 1–3). This Court has

---

[1] This represents the net amount of TSO's compensation, after subtracting an award of $11,970.00 to the Receiver on a counterclaim and $4,970.00 previously awarded to the Receiver for attorney's fees on a contempt order.

already deemed Klosterman a vexatious litigator. *See* Entry Adopting Magistrate's Decision, *Hamilton Cnty. Land Reutilization Corp. v. Klosterman*, Hamilton Cnty. C.P. No. A2300473 (entered Sept. 14, 2023). Klosterman has now initiated proceedings in the Southern District of Ohio raising claims similar or identical to claims he has made in the present action. *See Klosterman v. Konza, LLC*, S.D. Ohio No. 1:25-cv-00312-SJD-KLL. According to the Receiver, "the termination of the Pending Federal Action (and any appeal) is necessary before the receivership is terminated." (Mem. Oppo. Motion for Distribution at 3).

The Receiver has also indicated that he intends to file a *Third* Application for payment of fees and expenses to cover his costs in defending the federal suit brought by Klosterman. (*Id.* at 1). The Receiver has stated that he plans to incorporate the costs of defending the claims brought by Lentine and TSO in this forthcoming Third Application as well. (*Id.* at 2). As it currently stands, the Receiver has a pending claim for $104,438.75 in the Second Application, with only $23,709.44 remaining in the receivership estate. Therefore, claims made by the Receiver against the estate's assets already create a $80,729.31 deficit *before* considering any Third Application. The Receiver has not proposed how to address this deficit given the lack of funds.

## III.   LEGAL STANDARD

An interested party may move for the termination of a receivership at any time. *Eureka Specialty Co. v. Settelmeyer*, 22 Ohio App. 197, 199 (1st Dist. 1926). "The decision whether to terminate a receivership and discharge a receiver is within the sound discretion of the trial court . . . ." *Fifth Third Bank v. Dayton Lodge, LLC*, 2013-Ohio-5755, 6 N.E.3d 638, ¶ 52 (2d Dist.). Ordinarily, a receiver must offer a final report and dispose of receivership property, as approved by the court, prior to discharge and termination of the receivership. *See id.* ¶ 24. Debts and expenses of the receivership, including any claims for compensation by the receiver, are

generally paid out of the property in receivership. *See id.* ¶ 42; *Dyczkiewycz v. Tremont Ridge Phase 1 L.P.*, 2012-Ohio-5173, 981 N.E.2d 941, ¶¶ 39–44 (8th Dist.); *Sobin v. Lim*, 2014-Ohio-4935, 21 N.E.3d 344, ¶ 36 (8th Dist.). When the estate's assets fail to satisfy the receivership's expenses, the plaintiff does not become liable for any deficit unless "special circumstances" exist. *Fifth Third Bank*, 2013-Ohio-5755, ¶¶ 42–48; *Dyczkiewycz*, 2012-Ohio-5173, ¶¶ 39–40; *Sobin*, 2014-Ohio-4935, ¶ 36.

"A receiver is entitled to reasonable compensation for his services, which typically requires consideration of the interest involved, the amount of skill necessary to perform the duties of the receivership, and the time and labor expended." *Sobin*, 2014-Ohio-4935, ¶ 36; *see also Nowman v. Nowman*, 8 Ohio L. Abs. 429, 1930 Ohio Misc. LEXIS 1025, at *2 (1st Dist. 1930). Similarly, the Court at its discretion can approve payment for a receiver's legal fees. *See Nowman*, 1930 Ohio Misc. LEXIS 1025, at *1 (syllabus); *Liberty Folder Co. v. Anderson*, 55 Ohio L. Abs. 268, 269, 89 N.E.2d 500 (2d Dist. 1949). "The general test . . . is that the [legal] services to be performed are necessary to produce, preserve or protect a fund which has, or may be, brought into the hands of the receiver and that such payment is to the interest of the receivership." *Liberty Folder Co.*, 55 Ohio L. Abs. at 269. An order placing rental properties into receivership "does not justify the receiver to make any or all repairs at his discretion without advance application to the court." *Am. Sav. Bank Co. v. Union Tr. Co.*, 124 Ohio St. 126, 126, 177 N.E. 199 (1931). Accordingly, the Court should not approve reimbursement for major expenditures on the properties without an "advance application" and an opportunity for interested parties to object before incurring the expense. *Id.* at 131–34.

## IV.     ARGUMENT

The Receivership has no remaining receivership business – and has not for over two years. It now operates at an extreme deficit without any remaining "receivership" business to carry out. Unquestionably, it is time to terminate the Receivership and discharge the Receiver.

The Court originally appointed the Receiver to take custody of the distressed Properties prior to adequate disposition. That disposition took place on May 1, 2023, when the parties finalized the sale of the Properties and the Receiver transferred ownership to HCLRC. The sale to HCLRC was made pursuant to R.C. 2735.04, and was sold to HCLRC <u>free and clear of all liens, claims and interests</u>, which would necessarily include any continuing claims or interests of the Receiver. After distributing the sale funds to known creditors (including a substantial portion to the Receiver), and after satisfying the claims of Lentine and TSO, the Receivership now contains only $23,709.44. The Receiver's pending claims for compensation (the Second Application) already exceed that amount, notwithstanding any future claims for compensation (the forthcoming Third Application). There is no conceivable reason to continue operating the Receivership at such a loss, without any income or other means of satisfying the Receivership's expenses.

The Receiver now asserts that the Receivership should remain open solely to finance his litigation expenses, tacitly suggesting that HCLRC contribute out-of-pocket for these "costs and fees." But the Receivership is not a litigation war chest with unlimited resources, and the Receiver's arguments do not support keeping the Receivership open. There are no circumstances present that could make HCLRC, as the purchaser of the property free and clear of any liens, claims and interests, liable for any costs and fees beyond what currently exists in the Receivership estate. Moreover, nothing suggests that the litigation expenses claimed by the Receiver qualify as "costs and fees" compensable from the Receivership.

First, only "special circumstances" can make HCLRC liable for any deficit, and those circumstances do not exist here. "Special circumstances" that can make a plaintiff liable for deficiencies include litigation misconduct, such as "irregular or unauthorized appointment of a receiver" or when the underlying lawsuit "has unjustly been maintained without right." *Fifth Third Bank*, 2013-Ohio-5755, ¶ 43. They can also include express promises by the plaintiff to satisfy deficiencies (such as contractual obligations or furnishing a bond) and instances where the plaintiff has been grossly overcompensated. *Id.*

None of these circumstances apply to HCLRC. The Court appointed the Receiver by Order, and the Court has already entered judgment on the merits of the claims of HCLRC's predecessor, Plaintiff City of Cincinnati.[2] (*See* Entry Adopting Magistrate's Decision and Final Decree in Foreclosure, entered Oct. 7, 2021). No procedural irregularities or litigation misconduct attributable to HCLRC took place. HCLRC never guaranteed payment for any deficiencies. Nor has HCLRC been compensated in any way; HCLRC entered the case as a buyer of the Properties, and the Receiver took part in drafting and expressly agreed to the terms of that sale. That sale was expressly made free and clear of any and all liens, claims and interests, including any existing claims of the receivership. HCLRC did not receive anything disproportionate from the Receivership in its role as a buyer and Substitute Plaintiff. The Receiver has no argument that HCLRC (as a free and clear purchaser) should finance any continuing operations of the Receivership, and the Receiver has not proposed any alternative source to fund the Receivership. There is no basis for keeping the Receivership open when it has no funds to operate.

Second, none of the litigation for which the Receiver seeks additional compensation was "necessary to produce, preserve or protect" the rapidly dwindling Receivership estate. *See Liberty*

---

[2] HCLRC was substituted as Plaintiff on October 19, 2022. (*See* Order Granting Substitute Party Plaintiff and for Substitution of Counsel, entered Oct. 19, 2022).

*Folder Co.*, 55 Ohio L. Abs. at 269. Indeed, the litigation costs will ensure the ultimate *depletion* of all Receivership assets. That cannot justify keeping the Receivership open, and the Court should deny any forthcoming request for costs and fees related to these legal expenses.

Regarding the Receiver's claim for compensation defending against Lentine's and TSO's claims, those claims pursued the Receiver's purported failure to pay for services rendered. Whatever the relationship between the Receiver and TSO/Lentine, no one disputes that the Receiver never memorialized that relationship in a written contract. The Court ultimately determined that the Receiver did in fact fail to pay TSO.

Moreover, it became clear during the litigation that the Receiver voluntarily relinquished all rental payments from the Properties to TSO and Lentine, amounting to $423,169.42. (Magistrate's Decision at 3–6). While none of the Parties established with certainty the exact amount spent on upkeep for the Properties, the Receiver knew that Lentine and TSO would retain the $423,169.42 as a form of compensation. (*Id.* at 3).[3] The Receiver never sought approval for these significant expenditures, unilaterally surrendering the Receivership's only source of income and compensating TSO and Lentine without any application to the Court. "[I]f the expenditures are extraordinary, and involve a large outlay of money, the receiver should first apply to the court and obtain authority for making the expenditures." *Am. Sav. Bank Co. v. Union Tr. Co.*, 124 Ohio St. 126, 130–31 (1931). It ultimately required litigation to resolve whether that $423,169.42 "payment," unsanctioned by the Court, overcompensated or undercompensated Lentine and TSO—a factual issue exacerbated by the lack of written contract and woefully deficient recordkeeping.[4] The facts underlying the litigation ultimately cost the Receivership significant

---

[3] TSO also apparently collected and retained security deposits without accounting for them.
[4] It was actually HCLRC that initially raised TSO and Lentine's accounting of expenses and proposed compensation, not the Receiver. (*See* HCLRC's Memorandum in Opposition to TSO and Lentine's Application for Payment of

11

sums of money.  Recovery of legal fees in these circumstances would completely contradict the purposes of the Receivership, inflating losses instead of preserving the Receivership's assets.

Regarding Klosterman's ongoing litigation, any claims for compensation similarly would be unjustified.  The Receiver claims that "[o]bviously the termination of the federal action (and any appeal) is necessary before the receivership is terminated."  (Mem. Opp. Motion for Distribution at 3).  But it is not at all "obvious" why the termination of Klosterman's federal case is "necessary."  That case is not "necessary to produce, preserve or protect" Receivership assets. *See Liberty Folder Co.*, 55 Ohio L. Abs. at 269.  Indeed, almost no assets remain in the Receivership estate, and the Receiver does not explain how the federal case implicates any property under his care—all funds in the Receivership are already allocated to other expenses. More generally, HCLRC cannot keep Klosterman from filing new lawsuits.  The Receiver already enjoys a form of immunity conferred by the Order Appointing Receiver, and Klosterman, as a vexatious litigator, already cannot file new suits in Hamilton County.  The Receivership cannot remain open indefinitely, solely to address Klosterman's continual violations of the Court's orders, and certainly not at the cost of HCLRC, who purchased the property free and clear of all claims.

In sum, nothing justifies charging these additional litigation costs to the Receivership, and even if some justification existed, the Receivership would not have the funds to pay these costs. The Receivership has fulfilled its purpose and it has nothing left to spend.  Accordingly, the Court should terminate the Receivership.

## V.    CONCLUSION

For the foregoing reasons, the Court should order the Receiver to file a final report and enter an Order terminating the Receivership and discharging the Receiver.

---

Costs, Expenses, and Fees, filed June 5, 2023).  HCLRC incurred significant expenses compiling its opposition to TSO and Lentine's accounting, and in litigating the matter in general since that time.

Respectfully submitted,

*/s/ Kara A. Czanik*
Kara A. Czanik (0075165)
Brian E. Schultz (0102339)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel: (513) 977-8200
Fax: (513) 977-8141
kara.czanik@dinsmore.com
brian.schultz@dinsmore.com
*Counsel for Hamilton County*
*Land Reutilization Corporation*

13

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing were served upon the following parties via U.S. Mail this 8th day of December, 2025:

James L. Nieberding, Esq.
Nieberding & Nieberding Co LPA
810 Sycamore St., Suite 423
Cincinnati, Ohio 45202

Richard Boydston, Esq.
Dentons Bingham Greenebaum LLP
312 Walnut St., Suite 2450
Cincinnati, Ohio 45202-4028

Christian D. Donovan, Esq.
Luper Neidenthal & Logan
1160 Dublin Road, Suite 400
Columbus, OH 43215-1052

C/O Prosecuting Attorney
Hamilton County Prosecutor's Office
230 East Ninth Street, Suite 4000
Cincinnati, OH 45202

John Klosterman
5615 Sidney Rd.
Cincinnati, Ohio 45238

Erica Faaborg, Esq.
Counsel for City of Cincinnati
214 City Hall
801 Plum Street
Cincinnati, OH 45202

Amy K. Kaufman, Esq.
150 East Gay Street
Columbus, OH 43215-3130

Teresa Perkins, Esq.
222 E. Central Pkwy. 6NW711
Cincinnati, Ohio 45202

*/s/ Kara A. Czanik*
Kara A. Czanik (0075165)

14

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

| | |
|---|---|
| **CITY OF CINCINNATI,** an Ohio municipal corporation, | **Case No. A 1905588** |
| Plaintiff, | **Judge Wende C. Cross** |
| | **Chief Magistrate Judge Anita P. Berding** |
| v. | |
| **JOHN KLOSTERMAN a/k/a JOHN C. KLOSTERMAN a/k/a JOHN CAMPBELL KOSTERMAN, et al.,** | |
| Defendants. | |

## SUBSTITUTE PLAINTIFF HAMILTON COUNTY LAND REUTILIZATION CORPORATION'S MEMORANDUM IN OPPOSITION TO RECEIVER'S SECOND APPLICATION FOR APPROVAL OF PAYMENT OF FEES AND EXPENSES

Substitute Plaintiff Hamilton County Land Reutilization Corporation ("HCLRC"), by and through counsel, respectfully offers the following Memorandum in Opposition to the Motion by Receiver for Approval of Payment of Fees and Expenses from December 1, 2022 Through August 31, 2023 and for an Entry of an Order Terminating the Receivership and Discharging and Releasing the Receiver (the "Second Application"). HCLRC does not oppose terminating the Receivership and discharging the Receiver, but it does oppose the assessment of any additional fees and expenses. Accordingly, the Court should deny the Receiver's Second Application to the extent that it seeks additional fees and expenses.

## I. FACTUAL BACKGROUND

HCLRC has laid out the relevant procedural history in its Motion to Terminate the Receivership, being filed concurrently with the present Memorandum. For purposes of brevity, HCLRC will not restate those facts and incorporates them by reference as if fully stated herein. Exhibit D

Specifically relevant to this Memorandum, on September 8, 2023, Richard Boydston filed a Second Application on behalf of Konza, LLC (the "Receiver") seeking $104,438.75 in additional fees and expenses. (Second Application at 1). Richard Boydston is the Manager of Konza, LLC and acts as its legal counsel. (*See generally id.*; Order Appointing Receiver ¶ 1, entered Feb. 14, 2020). In the Second Application, the Receiver sought: (1) $38,393.86 for amounts owed to third parties, including $10,658.30 owed to Gateway Home Services Team, the property manager for the Receivership Properties; (2) $28,654.89 for services by legal counsel; and (3) $37,390.00 for services by the Receiver. (Second Application at 3).

Between the filing of the Second Application and filing of this Memorandum, the Receivership Properties' former property manager, Tri-State Organization Inc. ("TSO") and its proprietor Joseph Lentine, intervened in this action. (*See* Order Granting Motion for Leave to Assert Claims Against Receiver, entered Mar. 22, 2024). TSO obtained a $57,271.18 judgment against the Receiver for property management services conducted between February 2020 and January 2023. (Magistrate's Decision as to TSO, Lentine & Konza Claims & Counterclaims, "Magistrate's Decision," at 3–12, entered Apr. 11, 2025). While litigating TSO and Lentine's claims, it became clear that the Receiver did not proceed under a written contract with TSO or Lentine, but nevertheless the Receiver utilized their services. (*Id.* at 2–3). The Receiver also permitted TSO and Lentine to retain all rents due from the Receivership Properties, the Receivership's only source of income amounting to $423,169.42. (*See id.* at 6). The Receiver never sought Court approval for this expenditure.

After selling the Receivership Properties, distributing the funds, and accounting for TSO's judgment, the Receivership estate has only $23,709.44 remaining. The Receiver's Second

Application creates a deficit of $80,729.31. The Receiver has not proposed how the Receivership would satisfy this $80,729.31 deficit.

## II.    LEGAL STANDARD

"A receiver is entitled to reasonable compensation for his services, which typically requires consideration of the interest involved, the amount of skill necessary to perform the duties of the receivership, and the time and labor expended." *Sobin v. Lim*, 2014-Ohio-4935, 21 N.E.3d 344, ¶ 36 (8th Dist.); *see also Nowman v. Nowman*, 8 Ohio L. Abs. 429, 1930 Ohio Misc. LEXIS 1025, at *2 (1st Dist. 1930). Similarly, the Court at its discretion can approve payment for a receiver's legal fees. *See Nowman*, 1930 Ohio Misc. LEXIS 1025, at *1 (syllabus); *Liberty Folder Co. v. Anderson*, 55 Ohio L. Abs. 268, 269, 89 N.E.2d 500 (2d Dist. 1949). "The general test . . . is that the [legal] services to be performed are necessary to produce, preserve or protect a fund which has, or may be, brought into the hands of the receiver and that such payment is to the interest of the receivership." *Liberty Folder Co.*, 55 Ohio L. Abs. at 269. An order placing rental properties into receivership "does not justify the receiver to make any or all repairs at his discretion without advance application to the court." *Am. Sav. Bank Co. v. Union Tr. Co.*, 124 Ohio St. 126, 126, 177 N.E. 199 (1931). Accordingly, the Court should not approve reimbursement for major expenditures on the properties without an "advance application" and an opportunity for interested parties to object before incurring the expense. *Id.* at 131–34.

## III.    ARGUMENT

Awarding the Receiver the fees and expenses requested in the Second Application would be unreasonable and inequitable in these circumstances. As an initial matter, the Receivership does not have $104,438.75 to pay the Receiver. The Receiver has not identified any source of income or any method of funding these fees and expenses. To the extent that the Receiver suggests

HCLRC should contribute out-of-pocket, there is no support for that contention. Only in very limited "special circumstances" will a plaintiff become directly liable for the expenses of a receivership. *Fifth Third Bank v. Dayton Lodge, LLC,* 2013-Ohio-5755, 6 N.E.3d 638, ¶¶ 42–48 (2d Dist.); *Dyczkiewycz v. Tremont Ridge Phase 1 L.P.,* 2012-Ohio-5173, 981 N.E.2d 941, ¶¶ 39–40 (8th Dist.); *Sobin,* 2014-Ohio-4935, ¶ 36. As fully explained in HCLRC's Motion to Terminate Receivership, those "special circumstances" are not present here. This is especially true in this case because HCLRC only became involved in this case to purchase the subject property in a sale from the Receiver pursuant to R.C. 2735.04. That sale was expressly made free and clear of *all* liens, claims and interests – including any interests of the receivership estate. Forcing a purchaser such as HCLRC to incur costs that predated a sale free and clear of liens would be improper, and would undermine the finality and reliability of all future sales under R.C. 2735.04.

Moreover, the Receiver does not justify the amounts sought in the Second Application. The Receiver's central task was to prudently manage the Receivership Properties. As became clear in the Receiver's litigation with TSO and Lentine, the Receiver already distributed $423,169.42 of Receivership income without seeking Court approval. The Receivership then became liable for an additional $57,271.18 in property management services from TSO. The Receiver now seeks an *additional* $10,658.30 in property management services, plus his own fee of $37,390.00. From the exhibits to the Receiver's Second Application, it is not clear how his own services contributed anything to the already massive expenditures incurred by the Receivership.

The Receiver's claim for legal fee reimbursement similarly lacks justification. The Receiver provides no explanation as to how the purported legal services "are necessary to produce, preserve or protect" Receivership assets. All of the purported legal services took place after the Court approved the sale of the Receivership Properties. Moreover, the summaries of services

simply copy verbatim the language of the summaries of the Receiver's services. In other words, for each entry summarizing a service by Konza, LLC as Receiver, there is a corresponding entry for an identical service provided by Richard Boydston as legal counsel. That simply does not meet the standard for reimbursement of legal fees under Ohio law.

## IV.     CONCLUSION

For the foregoing reasons, the Court should deny in part the Motion by Receiver for Approval of Payment of Fees and Expenses from December 1, 2022 Through August 31, 2023 and for an Entry of an Order Terminating the Receivership and Discharging and Releasing the Receiver.

Respectfully submitted,

*/s/ Kara A. Czanik*
Kara A. Czanik (0075165)
Brian E. Schultz (0102339)
Dinsmore & Shohl LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel: (513) 977-8200
Fax: (513) 977-8141
kara.czanik@dinsmore.com
brian.schultz@dinsmore.com
*Counsel for Hamilton County*
*Land Reutilization Corporation*